IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-077-JJF |
| | ) | |
| FIBERWEB SIMPSONVILLE, INC., and FIBERWEB, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO TRANSFER OR STAY THIS ACTION**

                                                                       Francis DiGiovanni (#3189)
                                                                       CONNOLLY BOVE LODGE & HUTZ LLP
                                                                       The Nemours Building
                                                                       1007 North Orange Street
                                                                       P.O. Box 2207
                                                                       Wilmington, Delaware 19899-2207
                                                                       Telephone: 302-888-6316
                                                                       Facsimile: 302-658-5614
                                                                       fdigiovanni@cblh.com

Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
KIRKPATRICK & LOCKHART
 PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

## TABLE OF CONTENTS

                                                                                                        **Page**

I.     Introduction ............................................................................................................... 5

        A.     Background ................................................................................................... 5

        B.     The Parties ................................................................................................... 6

        C.     The Siebert Litigation .................................................................................. 7

        D.     Status of this Case ........................................................................................ 7

II.    Argument .................................................................................................................. 8

        A.     Motion to Transfer this Action to the Northern District of Illinois ............ 8

        B.     Motion to Stay Pending Resolution of the Siebert Appeal ....................... 11

III.   Conclusion ............................................................................................................. 13

TABLE OF AUTHORITIES

FEDERAL CASES

*Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690 (E.D. Va. 2006) ......................7

*Burbank International Ltd. v. Gulf Consolidated International, Inc.*, 441 F. Supp. 819 (N.D. Tex. 1977) ..................................................................................................5

*Cashedge, Inc. v. Yodlee, Inc.*, No. 06-170-JJF, 2006 U.S. Dist. LEXIS 50488 (D. Del. July 19, 2006) .................................................................................................7

*Carolina Archery Products v. Alpine Archery, Inc.*, 2004 U.S. Dist. LEXIS 11069 (4th Cir. 2004) .........................................................................................................7

*Continental Grain*, 364 U.S. at 26, 80 S. Ct. 1470, 4 L. Ed. 2d 1540 ................................5

*Dehmlow v. Austin Fireworks*, 963 F.2d 941 (7th Cir. 1992) .............................................5

*Hanson v. Denckla*, 357 U.S. 235 (1958) ............................................................................4

*Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975) ...........................4

*International Shoe Co. v. Wash.*, 326 U.S. 310 (1945) ......................................................5

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995) .....................................5

*In re Medrad, Inc.*, 1999 U.S. App. LEXIS 17011 (Fed. Cir. 1999) ................................6, 7

*Micron Tech., Inc. v. Rambus Inc.*, 189 F. Supp. 2d 201 (D. Del. 2002) .......................7, 8

*N. America Philips Corp. v. America Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994) ...................................................................................................................4, 5

*Paxonet Communications Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027 (N.D. CA. 2003) ...............................................................................................................7

*Sandvik AB v. Rockmore International, Inc.*, No. 4:05cv575, 2005 U.S. Dist. LEXIS 31583 (M.D. Pa. Nov. 28, 2005) ..................................................................5

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ....................................5

## FEDERAL STATUTES

35 U.S.C. § 271(a) ...................................................................................................................9

Under 28 U.S.C. § 1404................................................................................................... 8, 10

## STATE STATUTES

735 Ill. Comp. Stat. Ann. 5/2-209(a)(2)..................................................................................8

I.  **INTRODUCTION**

The plaintiff in this patent infringement action, Baldwin Graphic Systems, Inc. ("Baldwin") has previously asserted the same patents at issue in this case against another party, *Seibert, Inc.* ("Seibert"), in another court (*Baldwin Graphic Sys. v. Siebert Inc.* 1:03-CV-07713 N.D. Ill.) That court has already construed these patents and granted summary judgment of non-infringement to Seibert. These prior decisions are highly relevant to this action. An appeal of the decisions is now pending before the United States Court of Appeals for the Federal Circuit. Given the procedural history of the patents-in-suit, it is inefficient and would be unjust to litigate them before another court, and before the Siebert Appeal has been resolved. Accordingly, the defendants (collectively "Fiberweb") respectfully request a transfer of this case to the Northern District of Illinois, or in the alternative, a stay of this action pending resolution of the Seibert Appeal.

A.  *Background*

The subject of this litigation concerns a system for cleaning the blanket cylinders of printing equipment, and involves a variety of technical disciplines including chemical engineering, material science, and textile sciences. The two patents-in-suit (United States Patent No. Re 5,976 ("the Re'976 patent") and United States Patent No. 5,974,976 (the '976 patent")) have lengthy histories. Indeed their combined prosecutions lasted more than six years and total nearly five hundred pages. During the prosecution of the patents-in-suit, the inventors submitted many prior art references and numerous substantive declarations, while Examiners issued a variety of office actions and conducted multiple interviews. The patents-in-suit also have lengthy litigation histories.

B.   *The Parties*

Baldwin is a Delaware Corporation with a principal place of business in Connecticut. (Complaint, Docket No. 1, ¶ 2). The inventors of the asserted patents are employees of Baldwin. According to the patents, the inventors reside in Connecticut. (Declaration of Francis DiGiovanni ("DiGiovanni Decl."), ¶ 6 & 7, Ex. C and D). Upon information and belief there are no important witnesses or documents located within this District. (Declaration of Kevin Dill "Dill Decl.," ¶ 2).

Defendant Fiberweb, Inc. is a South Carolina Corporation with a principal place of business in Tennessee. (Dill Decl., ¶ 3). Defendant Fiberweb Simpsonville, Inc. is a Delaware Corporation with a principal place of business in South Carolina. (Dill Decl., ¶ 4). Fiberweb's operations are multinational, but its relevant activity is concentrated in South Carolina and Tennessee. Fiberweb performs its most significant research, development, manufacturing and sales functions relating to the accused products in Gray Court, South Carolina. (Dill Decl., ¶ 5). Fiberweb has sold the allegedly infringing products (Elixir™) in many locations, including Illinois.[1] (Dill Decl., ¶ 7). However, it has not sold *any* product accused of infringement by Baldwin in this District. (Dill Decl., ¶ 8). In fact, none of Fiberweb's witnesses or relevant documents is located within this District. (Dill Decl., ¶ 9).

C.   *The Siebert Litigation*

In 2003, the plaintiff Baldwin sued third party Siebert in the United States District Court for the Northern District of Illinois. In the Siebert litigation, Baldwin asserted the Re '976 patent and the '976 patent, which it also asserts against Fiberweb in this action. After considerable discovery—both fact and expert—Siebert moved for summary judgment of non-infringement with respect to both patents. In connection with that motion, the Transferee Court conducted a

---

[1] Fiberweb sold the accused products to at least Brown Printing and American Litho, Inc., both of Illinois, prior to Baldwin filing its Complaint in this action. (Dill Decl., ¶ 6).

2

Markman hearing and, on July 28, 2005, issued its first claim construction ruling, granting partial summary judgment of non-infringement. (DiGiovanni Decl., Ex. A.) Later, the Transferee Court reconsidered its prior claim construction ruling and granted complete summary judgment of non-infringement to Siebert. (DiGiovanni Decl., ¶5, Ex. B.) Both of these decisions are highly relevant to Baldwin's current action against Fiberweb. Baldwin has appealed these decisions to the United States Court of Appeals for the Federal Circuit. Importantly, the construction of key claim limitations of both the Re '976 patent and the '976 patent are presently before the Federal Circuit – among the same limitations that are likely at issue in the instant case. Judge Moran's decisions and the Federal Circuit's impending review of the same are highly relevant to this case.

### D.    *Status of this Case*

Baldwin filed its Complaint in this action on February 3, 2006. Until April of this year, the parties engaged in extensive, substantive settlement discussions.[2] At the end of April, the settlement discussions broke down and it became clear for the first time that the parties would have to proceed with litigating this case. Accordingly, the issue of where to most efficiently and fairly litigate is now ripe for determination.

## II.    ARGUMENT

For the reasons set forth below, this case should be transferred to the Northern District of Illinois, or in the alternative stayed, pending the outcome of the Siebert appeal.

### A.    *Motion to Transfer this Action to the Northern District of Illinois*

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, *in the interest of justice*, a district court may transfer any civil action to any other district or division

---

[2] In the interim, the parties exchanged written discovery, but have taken no depositions, have engaged in no expert discovery and have undertaken no substantive motion practice.

where it might have been brought." 28 U.S.C.S. § 1404(a) (2007); *Cashedge, Inc. v. Yodlee, Inc.*, No. 06-170-JJF, 2006 U.S. Dist. LEXIS 50488, at * 3 (D. Del. July 19, 2006) (emphasis added).

### 1. This Action Could Have Been Brought In The Northern District Of Illinois

The threshold question is whether this action could have been brought in the Transferee Court, *i.e.* whether jurisdiction is proper in the Northern District of Illinois (the "Transferee Court"). To establish that this action could have been brought in the Transferee Court, Fiberweb must show (1) that Illinois' long arm statute reached Fiberweb's activity, (2) Fiberweb has the requisite minimum contacts with Illinois, and (3) requiring Fiberweb to litigate in Illinois would not offend traditional notions of fair play and substantial justice. *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir. 1975). Fiberweb addresses each of these factors in turn.

First, the Illinois long-arm statute explicitly provides for personal jurisdiction over a defendant who has committed a tortious act within the state. 735 ILL. COMP. STAT. ANN. 5/2-209(a)(2) (2007). Patent infringement is a tortious act and "to sell an infringing article to a buyer in Illinois is to commit a tort there." *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994). Here, Baldwin accuses Fiberweb's Elixir™ products of patent infringement. Prior to February 3, 2006, the day on which this litigation began, Fiberweb made at least two shipments of Elixir™ to printers in Illinois. (Dill Decl., ¶ 10). These shipments totaled 15 cases, or 75 rolls, of Elixir™. (Dill Decl., ¶ 11). This activity falls within section 5/2-209(a)(2) of Illinois' long-arm statute.

Second, the exercise of jurisdiction in Illinois is consistent with Fiberweb's constitutional right to due process of law. Due process requires that the defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Minimum contacts exist where a defendant "purposefully avails itself of the privilege of

conducting activities within the forum [s]tate." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Here, Fiberweb purposefully shipped its Elixir™ product to customers in Illinois and, thus, "should reasonably anticipate being haled into court there." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Finally, Fiberweb's interstate travel to Illinois would not have offended traditional notions of fair play and substantial justice. Indeed, the Seventh Circuit has found that "[t]he journey from Kansas to Illinois is not an onerous one." *Dehmlow v. Austin Fireworks*, 963 F.2d 941, 945 (7th Cir. 1992) (discussing a corporation). While Fiberweb had only a minimal burden in interstate travel, Illinois had a strong interest in prohibiting the importation of infringing articles into its territory. *See N. Am. Philips Corp.*, 35 F.3d at 1580. Similarly, Baldwin had a strong interest in enforcing its statutory right to exclude others from selling infringing articles in Illinois. *See* 35 U.S.C. § 271(a) (2007). Thus, because there would have been personal jurisdiction over Fiberweb, the present action could have been brought in federal district court in Illinois.

### 2. The Relevant 28 U.S.C. § 1404 Factors Favor Transfer

The next step in the transfer inquiry is to consider the § 1404(a) standard. Ordinarily, this analysis begins with a discussion of the so called private and public factors[3]. However, in this instance, the interest of justice prong so clearly trumps the private and public factors, itself compels a transfer.

---

[3] *See, e.g., Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995). Moreover, the *Jumara* factors favor transfer. In particular, the fact that none of the accused infringing activity has occurred in this district and that none of the parties has a principal place of business in this district favors transferring this case. *See Sandvik AB v. Rockmore Int'l, Inc.*, No. 4:05cv575, 2005 U.S. Dist. LEXIS 31583, at *13 (M.D. Pa. Nov. 28, 2005) (where the "center of gravity" for the case is outside of the district, the plaintiff's choice warrants less deference); *Burbank Int'l Ltd. v. Gulf Consol. Int'l, Inc.*, 441 F.Supp. 819, 822 (N.D. Tex. 1977) (where defendants' principal place of business is outside of this district, plaintiff's choice is afforded less deference).

The "interest of justice" prong is of principal concern and can indeed supercede all other transfer considerations. Citing a leading authority on procedure, the Federal Circuit has observed:

> 28 U.S.C. § 1404(a) says that actions may be transferred 'for the convenience of parties and witnesses, in the interest of justice.' Although, as Judge Friendly has pointed out, 'the letter of the section might suggest otherwise,' it is well established that the interest of justice is a factor to be considered on its own and an important one, and that the interest of justice may be decisive in ruling on a transfer motion even though the convenience of the parties and witnesses point in a different direction.

*In re Medrad, Inc.*, 1999 U.S. App. LEXIS 17011, *6 (Fed. Cir. 1999) (citing 15 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3854 at 439-41 (1986) (citations omitted)). The interest of justice is served by transferring this action.

Judge Moran in the Siebert case has already invested considerable time and resources learning the various technologies, the asserted patents and their intrinsic records as well as many factual matters that are common to this case and the Siebert litigation. Given the complexity of the subject patents, this was a substantial undertaking. It would be an ill-advised and uneconomical use of judicial resources to have this Court to duplicate Judge Moran's efforts. Moreover, justice will not be served by the possibility of inconsistent outcomes. Other courts faced with similar scenarios have concluded that transfer is a sensible solution. As the Eastern District of Virginia recently noted:

> **[The] prospect of having two or more courts construe the same, or essentially similar, claim terms in the same or related patents may well warrant transfer.** *See In re Medrad, Inc.*, 1999 U.S. App. LEXIS 17011 at *3-9 (affirming district court's decision to transfer case to "avoid duplicative litigation and prevent the possibility of inconsistent judgments, particularly on the patent infringement claims"); *Paxonet Communications Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027, 1028-29 (N.D. CA. 2003) (consolidating suits which would require two courts to construe the terms and determine the validity of the same patents and staying matter pending decision of second court on motion to transfer). **Where two or more courts are required to construe the same or essentially similar claim terms in the same or related patents, the result is an uneconomical use of judicial resources and the risk of conflicting judicial determinations.** *See Continental Grain*, 364 U.S. at 26, 80 S. Ct. 1470, 4 L. Ed.

> 2d 1540; see also *In re Medrad, Inc.*, 1999 U.S. App. LEXIS 17011 at *3-9; *Carolina Archery Prods. v. Alpine Archery, Inc.*, 2004 U.S. Dist. LEXIS 11069 at *32 (4th Cir. 2004) (granting transfer because requiring two proceedings that concern the same series of events and many of the same factual determinations "would create unnecessary burden and expense for both the Court and the parties").

*Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690, 692 (E.D. Va. 2006) (emphasis added). As these decisions acknowledge, transfer promotes the interests of justice and judicial economy more than re-litigating the same patents in different courts.

The fact that this case is not newly filed does not weigh against transfer. This case has essentially been at a mutual standstill for over a year due to the parties' settlement negotiations. The parties have taken no depositions, have not filed claim constructions briefing, have not served expert reports, and have not engaged in substantive motion practice. In sum, the case is at a very early litigation stage, making it ripe for transfer, especially in view of the strong policy considerations.

### B. Motion to Stay Pending Resolution of the Siebert Appeal

In the event that the Court declines to transfer this action, Fiberweb requests that it be stayed pending resolution of the Siebert appeal. This case bears similarity to a pair of actions described in *Micron Tech., Inc. v. Rambus Inc.*, 189 F. Supp. 2d 201 (D. Del. 2002). As the *Micron* decision explains, Rambus first sued a third party for patent infringement in United States District Court for the Eastern District of Virginia. While Rambus' first action was pending, Micron initiated a second action in this Court concerning the same patents. Rambus lost its first case in Virginia. Following that loss, Micron sought an immediate entry of summary judgment based on a theory of collateral estoppel, and Rambus requested a stay of the Micron matter pending its appeal. The *Micron* Court declined to rule on Micron's summary judgment

7

and denied Rambus' request for a stay.[4] However, and most importantly, the *Micron* Court did recognize the inefficiencies and injustices of litigating the same patent simultaneously while an appeal of a prior court's decision was pending and ordered that claim construction and trial be delayed until the Federal Circuit rendered its decision regarding the Virginia action. *Id.* at 211-213.

Fiberweb contends that a complete stay is appropriate because discovery has just commenced there is no undue burden to either party in waiting for the appeal from the Siebert case to be resolved. This stay should include all discovery activity, because the discovery sought by both parties will likely be impacted and streamlined by the Federal Circuit's decision. For example, expert discovery on issues of infringement on invalidity have not yet begun and are closely tied to claim construction. If the parties are required to complete discovery without the benefit the Federal Circuit's ruling, they will be forced to do so assuming various possible claim construction determinations, which is highly inefficient and wasteful. It is simply more efficient to complete discovery, if necessary at all, upon the resolution of the appeal from the Siebert case.

In sum, because of the numerous complexities and inefficiencies associated with commencing with deposition and expert discovery before the Siebert Appeal is resolved, Fiberweb alternatively requests that this case be stayed pending the Siebert Appeal.

---

[4] It appears that the *Micron* Court denied Rambus' request for a stay because the parties were approaching the end of discovery. For example, the *Micron* Court noted that "the parties have identified further discovery that needs to be taken. Particularly, Micron has moved to compel Rambus' production of documents and deposition testimony pursuant to the crime-fraud exception to the attorney-client privilege. There are also several depositions that remain to be taken and further discovery on Micron's antitrust claims." *Id.* at 213. By contrast, here, the parties to this action have taken relatively little discovery. Baldwin and Fiberweb have merely exchanged documents and written discovery. No depositions and no expert discovery have been taken. It would not be disrupted to delay all such activity until after the Siebert appeal resolves.

### III.  CONCLUSION

For the foregoing reasons, Fiberweb respectfully requests transfer of this case to the United States District Court for the Northern District of Illinois.  In the alternative, Fiberweb requests that this case be stayed, pending the Baldwin appeal of the Siebert decisions.

Date: June 14, 2007                                                      Respectfully submitted,

                                                       **CONNOLLY BOVE LODGE & HUTZ LLP**

                                                       /s/ Francis DiGiovanni  
                                                       Francis DiGiovanni (#3189)  
                                                       The Nemours Building  
                                                       1007 North Orange Street  
                                                       P.O. Box 2207  
                                                       Wilmington, Delaware 19899-2207  
                                                       Telephone:  302-888-6316  
                                                       Facsimile:  302-658-5614  
                                                       fdigiovanni@cblh.com

Of Counsel:

Michael E. Zeliger  
Christopher Centurelli  
Jackson Ho  
**KIRKPATRICK & LOCKHART  
  PRESTON GATES ELLIS LLP**  
State Street Financial Center  
One Lincoln Street  
Boston, MA 02111-2950  
Telephone:  (617) 261-3100

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, Esq., hereby certify that on June 14, 2007, copies of the foregoing DEFENDANT'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER OR STAY THIS ACTION were caused to be served upon the following:

**BY HAND DELIVERY**

    Jack Blumenfeld, Esquire
    Morris, Nichols, Arsht & Tunnell
    1201 N. Market Street
    P.O. Box 1347
    Wilmington, DE 19899

**BY E-MAIL AND FEDERAL EXPRESS**

    Keith J. McWha, Esquire
    Morgan & Finnegan
    3 World Financial Center
    New York, New York 10281-2101

    /s/ Francis DiGiovanni
    Francis DiGiovanni (#3189)

544891