IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BALDWIN GRAPHIC SYSTEMS, INC.,

                Plaintiff,

      v.

FIBERWEB SIMPSONVILLE INC., and
FIBERWEB, INC.

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Civil Action. No. 06-077-JJF

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO TRANSFER OR STAY THIS ACTION**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
lpolizoti@mnat.com
   *Attorneys for Plaintiff*
   *Baldwin Graphic Systems, Inc.*

OF COUNSEL:

James W. Gould
Keith J. McWha
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, NY  10281-2101
(212) 415-8700

July 2, 2007

i.

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.   SUMMARY OF ARGUMENT ...................................................................................1

III.  STATEMENT OF FACTS ........................................................................................1

IV.   ARGUMENT ..........................................................................................................3

    A.    Legal Test For Transfer ...........................................................................3

    B.    Fiberweb's Motion to Transfer this Action to the Northern District
        of Illinois Should Be Denied Because Venue Is Proper In This
        District..........................................................................................................4

        1.    The Relevant 28 U.S.C. § 1404(a) Factors Do Not Favor
                Transfer ..........................................................................................5

        2.    This Action Could Not Have Been Brought In The
                Northern District Of Illinois.......................................................10

    C.    Defendants' Motion to Stay Pending Resolution of the Siebert
        Appeal Should Be Denied Because Baldwin Would Be Severely
        Prejudiced ..................................................................................................11

        1.    Granting A Stay Pending The Appeal Of The Siebert Case
                Would Cause Baldwin To Suffer Undue Prejudice And
                Allow Fiberweb To Gain A Business Advantage Over The
                Non-Moving Party ......................................................................12

        2.    Granting A Stay Until Decision In The Appeal Will Not
                Simplify The Issues For Trial .....................................................13

        3.    Discovery Has Significantly Progressed Since The
                Commencement Of This Action ..................................................15

V.    CONCLUSION........................................................................................................15

## TABLE OF AUTHORITIES

Cases

*Allied-Signal Inc. v. Honeywell, Inc.,*
   No. 90-395-JJF, 1991 U.S. Dist. LEXIS 21660 (D. Del. 1991) .................................................3

*Apple Computer, Inc. v. Unova, Inc.,*
   No. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843 (D. Del. 2003) .................................................9

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.,*
   480 U.S. 102 (1987)........................................................................................................10

*Avaya, Inc. v. Mitel Networks Corp.,*
   460 F. Supp. 2d 690 (E.D. Va. 2006) ............................................................................7

*Bio-Technology Gen. Corp. v. Genentech, Inc.,*
   267 F.3d 1325 (Fed. Cir. 2001).....................................................................................13

*C.R. Bard Inc. v. Guidant Corp.,*
   997 F. Supp. 556 (D. Del. 1998) ............................................................................3, 4, 9

*Carolina Archery Prods., Inc. v. Alpine Archery, Inc.,*
   No. 1:03CV00176, 2004 U.S. Dist. LEXIS 11069 (4th Cir. 2004) ........................................8

*Continental Grain Co. v. Barge FBL-585,*
   364 U.S. 19 (1960).......................................................................................................8

*Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.,*
   185 F. Supp. 2d 407 (D. Del. 2002)...................................................................................6

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.,*
   734 F. Supp. 656 (D. Del. 1990)........................................................................................11

*Erbamont Inc. v. Cetus Corp.,*
   720 F. Supp. 387 (D. Del. 1989).......................................................................................9

*Ferrell v. Wyeth-Ayerst Labs., Inc.,*
   No. 1:01-cv-447, 2005 U.S. Dist. LEXIS 25358 (S.D. Ohio 2005) ........................................13

*Furmanite America, Inc. v. Durango Assocs., Inc.,*
   662 F. Supp. 348 (E.D. Va. 1986) ...............................................................................8, 9

*Guidant Corp. v. St. Jude Med., Inc.,*
   No. 04-067-SLR, 2004 U.S. Dist. LEXIS 17218 (D. Del. 2004) ........................................9

*In re Medrad, Inc.,*
   No. 586, 1999 U.S. App. LEXIS 17011 (Fed. Cir. 1999) ........................................................7

*Jumara v. State Farm Ins. Co.,*
   55 F.3d 873 (3d Cir. 1994)..................................................................3, 4

*Kollmorgen Corp. v. Gettys Corp.,*
   760 F. Supp. 65 (D. Del. 1991)…………………..……………………..6

*Micron Tech., Inc. v. Rambus Inc.,*
   189 F. Supp. 2d 201 (D. Del. 2002)....................................................14

*Nice Sys., Inc. v. Witness Sys., Inc.,*
   No. 06-311-JJF, 2006 U.S. Dist. LEXIS 74642 (D. Del. 2006) ............5, 9

*Optical Recording Corp. v. Capitol-Emi Music, Inc.,*
   803 F. Supp. 971 (D. Del. 1992)...........................................................9

*Padcom, Inc. v. Netmotion Wireless, Inc.,*
   No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658 (D. Del. 2004) ...............4

*Paxonet Communications Inc. v. Transwitch Corp.,*
   303 F. Supp. 2d 1027 (N.D. Ca. 2003) ..................................................8

*Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.,*
   820 F. Supp. 150 (D. Del. 1992)...................................................4, 5, 10

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.,*
   No. 01-557-JJF, 2003 U.S. Dist. LEXIS 27397 (D. Del. 2003) ...............11

*Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.,*
   No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653 (D. Del. 2002) ...............5, 6

*Trilegiant Loyalty Solutions, Inc v. Maritz, Inc.,*
   No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825 (D. Del. 2005) ..................5

*Winner Int'l Royalty Corp. v. Wang,*
   202 F.3d 1340 (Fed. Cir. 2000)..............................................................3

*World Wide Volkswagen Corp. v. Woodson,*
   444 U.S. 286 (1980)..............................................................................10

*Ziegler v. Dart Indus., Inc.,*
   383 F. Supp. 362 (D. Del. 1973)............................................................9

**STATUTES**

28 U.S.C. § 1404(a) (2007)...................................................................4-5, 10

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case brought by plaintiff Baldwin Graphic Systems, Inc. ("Baldwin") against defendants Fiberweb Simpsonville, Inc. and Fiberweb, Inc. (collectively, "Fiberweb") that was filed over a year ago. Although the parties have stipulated to extend the case schedule, the parties are now actively litigating the case, have exchanged discovery requests, and have produced documents. Depositions are about to begin.

Now -- a year after the case was filed, a year after Fiberweb admitted that venue was proper in this district, and in the middle of discovery -- Fiberweb moves to transfer and/or stay. This is Baldwin's brief in opposition to that motion.

## II.    SUMMARY OF ARGUMENT

1.    Fiberweb's motion to transfer should be denied because it has already admitted in its Answer -- more than a year ago -- that venue in Delaware is proper.

2.    The convenience of the parties and the interests of justice also warrants denial of transfer. The parties are Delaware corporations. The litigation in the Northern District of Illinois does not involve the same parties or products, and Fiberweb did not argue that this action could even have been brought in that district.

3.    Fiberweb's motion to stay should be denied. There is substantial prejudice to Baldwin, because a stay would allow Fiberweb to continue making the accused products here in the United States and then selling them abroad. In addition, Fiberweb has not shown that a stay would simply the issues for trial -- and it will not.

## III.    STATEMENT OF FACTS

Baldwin Graphic Systems, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in Connecticut. Baldwin, together with its affiliated companies, is a worldwide leader in the design, manufacture and sale of

printing press accessories and controls for the commercial and newspaper printing industries, such as automatic cleaning systems, fountain solution cooling, pumping and mixing systems, ink systems, infrared drying systems, press protection systems, spray dampening systems, and web accessories.

Baldwin is also renowned for its research and development of printing press cleaning techniques, including, particularly, its development of a process and product used for cleaning printing press cylinders known as "IMPACT® and PREPAC®" and commonly referred to in the industry as the "Baldwin Wash Cloth System" and the "Baldwin Wash Cloth Roll," respectively. Baldwin invested significant amounts of resources into the development and marketing of the IMPACT® and PREPAC® products which are covered by both U.S. Patent Number 5,974,976 and Reissued Patent Number 35,976. Baldwin is assignee of these two patents at issue in this litigation.

Defendant Fiberweb Simpsonville, Inc. is a corporation incorporated in the State of Delaware, having its principal place of business in South Carolina, and defendant Fiberweb, Inc., is a South Carolina corporation, having its principal place of business in Tennessee. Fiberweb is offering for sale and selling the accused product under the trademark ELIXIR™, in direct competition with Baldwin. Indeed, Fiberweb's ELIXIR™ is marketed as a direct replacement for Baldwin's patented PREPAC®. Fiberweb has regularly transacted and continues to regularly transact business within the State of Delaware.

An affiliated Fiberweb entity, Fiberweb Plc has filed the equivalent of a declaratory judgment action in the United Kingdom against Baldwin's foreign counterparts to the patents-in-suit, consistent with its plan to manufacture all ELIXIR™ products in the United States and sell them worldwide. (Exhibit 1, Fiberweb Plc's U.K. Particulars of Claim). In the U.K. action,

Fiberweb has admitted that it "calendars" the fabric and "heat-seals" the sleeves of its ELIXIR™ products, two key admissions toward establishing infringement of the U.S. patents-in-suit, whether under the existing claim interpretation of the Northern District of Illinois, or the interpretation that Baldwin argued in the Northern District of Illinois and will pursue on appeal. (*Id.*, Annex A at 2-3). If this case proceeds to summary judgment under the current schedule entered by the Court, Baldwin will be able to use Fiberweb's admissions as part of its proof to stop the manufacture of infringing ELIXIR products in the U.S. If Fiberweb's motion is granted, however, the resulting delay will cause real harm to Baldwin's sales.

IV.    ARGUMENT

A.    Legal Test For Transfer

A motion to transfer is governed by the law of the regional circuit. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1352 (Fed. Cir. 2000). In the Third Circuit, the transfer analysis includes consideration of many factors under the public and private interests. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1994). The defendant has the burden of proving that these factors militate in favor of a transfer. *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del. 1998). Transfer should be denied where the factors to be considered are evenly balanced or only slightly favor a transfer. *Allied-Signal Inc. v. Honeywell, Inc.*, No. 90-395-JJF, 1991 U.S. Dist. LEXIS 21660, at *4 (D. Del. Feb. 6, 1991).

Private interests considered by the courts include plaintiff's forum preference as manifested in its original choice, the defendant's preference, whether the claim arose elsewhere, the convenience of the parties as indicated by their relative physical and financial condition, the convenience of witnesses to the extent that they may be unavailable for trial in one of the fora, and the location of books and records to the extent that these files could not be produced in the alternative forum. *Jumara*, 55 F.3d at 879. As shown below, these favor Delaware.

Public interests considered by the courts include the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies, the public policies of the fora, and the familiarity of the trial judge with applicable state law in diversity cases. *Jumara*, 55 F.3d at 879-80. These factors also point to Delaware.

A court may transfer an action only if the transfer would promote the convenience of the parties and witnesses and would be in the interest of justice. 28 U.S.C. § 1404(a) (2007); *C.R. Bard*, 997 F. Supp. at 561. In balancing the convenience of the parties, transfer is inappropriate when it would merely shift the burden from the defendant to the plaintiff. *Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 152 (D. Del. 1992). Further, where the defendant is a company conducting business on a nationwide basis, litigation can be maintained in Delaware without undue burden to the parties. *Padcom, Inc. v. Netmotion Wireless, Inc.*, No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658, at *24-25 (D. Del. May 24, 2004). As shown below, under the balance of convenience as well, this case should remain in Delaware.

B.     Fiberweb's Motion to Transfer this Action to the Northern District of Illinois Should Be Denied Because Venue Is Proper In This District

Fiberweb has already admitted that venue in Delaware is proper and that this court has both subject matter and personal jurisdiction. (D.I. 9, Fiberweb's Answer to Complaint). For this reason alone, Fiberweb's motion should be denied. Additionally, neither the private nor public *Jumara* factors under §1404(a) support transfer, as set forth below.

1.    The Relevant 28 U.S.C. § 1404(a) Factors Do Not Favor Transfer.

a.    Private Factors Do Not Favor Transfer

A corporation's decision to incorporate in a particular state is a rational and legitimate reason to keep litigation in that state. *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311-JJF, 2006 U.S. Dist. LEXIS 74642, at *4-5 (D. Del. Oct. 12, 2006); *Trilegiant Loyalty Solutions, Inc v. Maritz, Inc.*, No. 04-360-JJF, 2005 U.S. Dist. LEXIS 2825, at *6 (D. Del. Feb. 15, 2005). Where, as here, the defendant Fiberweb is incorporated in Delaware, and chose to be a corporate citizen of Delaware for legal and other purposes, the defendant "cannot now complain because they are involved in litigation in Delaware." *Nice Sys.*, 2006 U.S. Dist. LEXIS 74642, at *6; *see also Stratos Lightwave, Inc. v. E2O Commc'ns, Inc.*, No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, at *7 (D. Del. March 26, 2002) (finding that where defendant received the benefits of Delaware incorporation, it should not complain that another corporation has chosen to sue it in Delaware). Indeed, Fiberweb has cited no case where a party incorporated in Delaware was transferred from the forum.

This conclusion that Delaware is proper is reinforced by a second principle that Plaintiff's choice of a proper forum (here, Delaware) is a "paramount consideration" and "should not be lightly disturbed." *Schwarzkopf*, 820 F. Supp. at 151 (citations omitted). Where the plaintiff has selected its "home turf" -- Baldwin is incorporated in Delaware -- as the forum for litigation, the defendant must show that the balance of convenience under § 1404 weighs *"strongly"* in favor of the transfer. *Id.* at 152 (emphasis added).

By Fiberweb's own admission, its "operations are multinational" and "its relevant activity is concentrated in South Carolina and Tennessee," where it performs its most significant research, development, manufacturing, and sales functions relating to the accused products. (D.I. 45 at 2). As such, it is far less inconvenient for the parties to litigate this action in Delaware,

which is a central location, roughly midway between the involved parties, than in the Northern District of Illinois, which is not centrally located between the involved parties.

Balancing the convenience of witnesses and the location of evidence also favors denying transfer. The inventors of the patents-in-suit reside in Connecticut and Baldwin's principal place of business is also in Connecticut. Thus, Baldwin witnesses and documents relevant to this litigation are located in Connecticut. Defendants' principal places of business are South Carolina and Tennessee. The majority of witnesses and documents that defendants will produce originate in these two states. The defendants cannot now argue that it is more convenient to transport these witnesses and materials to the Northern District of Illinois. *See Kollmorgen Corp. v. Gettys Corp.*, 760 F. Supp. 65, 67 (D. Del. 1991) (noting that it can "hardly be argued that Wisconsin is as convenient or more convenient than Delaware for a witness from Pennsylvania").

Thus, the balance of private factors tips in favor of maintaining this action in Delaware, which is a central location between both parties and the witnesses and documents that will be relied on by each.

b.      Public Factors Do Not Favor Transfer

The public factors also weigh in favor of maintaining this action in Delaware. Delaware has an interest in hearing actions between its own citizens. *Datex-Ohmeda, Inc. v. Hill-Rom Servs., Inc.*, 185 F. Supp. 2d 407, 412 (D. Del. 2002). This Court has held that patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. *Stratos Lightwave*, 2002 U.S. Dist. LEXIS 5653, at *8. Similarly, because patent law is federal law, the familiarity of the trial judge with the application of state law is not applicable. As such, these factors do not favor a transfer of the action.

     c.     The "Interests of Justice" Strongly Favor Maintaining This Action in Delaware

Fiberweb ignores the fact that in its Answer to Baldwin's Complaint, defendants admitted that venue in the Delaware Court was proper.   (D.I. 9, Fiberweb's Answer to Complaint). Fiberweb now alleges the contrary.   Fiberweb bases its argument to transfer largely on the "interest of justice," and the fact that Baldwin sued Siebert -- a third party that is unrelated to Fiberweb and that sells different accused products -- in the Northern District of Illinois. Fiberweb supports its argument largely with case law involving some combination of the same parties with the same product in co-pending litigation.  Fiberweb ignores the fact that this action involves different parties and different products and that there is no currently pending litigation in the Northern District of Illinois.

Fiberweb relies on *Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690, 692 (E.D. Va. 2006), to support its overly broad proposition that transfer promotes the interests of justice and judicial economy more than re-litigating the same patents in different courts.  (D.I. 45 at 6-7).   Fiberweb's reliance on *Avaya* is misplaced, because *Avaya* involves the same parties and *simultaneously pending* cases.   Additionally, *In re Medrad, Inc.*, No. 586, 1999 U.S. App. LEXIS 17011, at *3-9 (Fed. Cir. 1999), does not apply, because it involved two *co-pending* cases with a "substantial overlap of issues," "the same parties, [and] some of the same products," and the court's decision was based on the fact that "maintenance of one action would preclude the need for two judges and two juries, 'when one of each would be sufficient,' and would reduce unnecessary expenditure of 'time, effort and money' on behalf of the parties and witnesses." *Id.* at *8-9. Here, because of the differences between the products and likely defenses of Siebert (in Chicago) and Fiberweb here, a transfer would not avoid the need for two juries and two trials.

Additionally, *Paxonet Communications Inc. v. Transwitch Corp.*, 303 F. Supp. 2d 1027, 1028-29 (N.D. Ca. 2003) is inapplicable because the two *co-pending* actions involving the same parties were before the *same court on a motion to consolidate*, and if allowed to proceed separately the court would have been required to construe the same terms and address the validity of the same patents for each case simultaneously. Here there is no co-pending action and Fiberweb's Motion does not seek consolidation. *Carolina Archery Prods., Inc. v. Alpine Archery, Inc.*, No. 1:03CV00176, 2004 U.S. Dist. LEXIS 11069, at *32 (4th Cir. June 15, 2004), is also inapplicable because it involved transferring the plaintiff's state law claims from the district court where both the patent law claims and state law claims were initially filed together to the same district court that the plaintiff's patent law claims were transferred to. Again, the same parties were involved in the two cases. *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960) is also inapplicable because it similarly involved cases that were *"simultaneously pending* in different District Courts."

Under the present circumstances, there is no co-pending litigation involving the same parties and products, and no similar saving of resources and time as there were in the cases cited by Fiberweb. Even though a case involving the same patents was already heard in the Northern District of Illinois, transferring this case there would require the same expenditure of judicial resources in Illinois as in Delaware.

At least one court has held that transferring a case to a venue where the court recently heard a similar patent infringement case can be detrimental to the interest of justice. *Furmanite America, Inc. v. Durango Assocs., Inc.*, 662 F. Supp. 348 (E.D. Va. 1986). In *Furmanite*, the Eastern District of Virginia denied transfer, noting that "[s]ince these parties are entitled to a de novo, impartial consideration, such prior judicial experience may actually be more a negative

than a positive reason for transfer." *Id*. The products involved in the present action are different from the products in the Siebert case and the District of Delaware is more than capable of making the necessary factual and legal determinations for this case.

This Court has held that "[i]n the absence of any particular or unusual circumstances, the concern for judicial economy does not warrant a transfer of the case." *Guidant Corp. v. St. Jude Med., Inc.*, No. 04-067-SLR, 2004 U.S. Dist. LEXIS 17218, at * 10-11 (D. Del. Aug. 27, 2004). The District of Delaware has repeatedly denied motions to transfer venue even where there was co-pending litigation on the same or similar patents in another venue. *See Nice Sys.*, 2006 U.S. Dist. LEXIS 74642, at *8; *Apple Computer, Inc. v. Unova, Inc.*, No. 03-101-JJF, 2003 U.S. Dist. LEXIS 23843, at *13-14 (Nov. 25, 2003) (denying motion to transfer despite the fact that the parties were already involved in a dispute in another district); *C.R. Bard Inc. v. Guidant Corp.*, 997 F. Supp. 556 (D. Del. 1998) (denying motion to transfer to a district where the same parties have been involved in other litigation); *Optical Recording Corp. v. Capitol-Emi Music, Inc.*, 803 F. Supp. 971, 973 (D. Del. 1992) (departing from the "first-filed" rule and denying transfer, noting that commencement of discovery and entry of a scheduling order were "special or exceptional circumstances" that justified the Court retaining jurisdiction); *Erbamont Inc. v. Cetus Corp.*, 720 F. Supp. 387 (D. Del. 1989) (denying a motion to transfer even though "[s]ome degree of coordinated discovery in this district on the issues of validity and enforceability of the…patent would serve judicial economy"); *Ziegler v. Dart Indus., Inc.*, 383 F. Supp. 362 (D. Del. 1973) (denying transfer to a circuit that had recently upheld the validity of the patent and noting that the plaintiff waited over four years to file the transfer motion). As there are no particular or unusual circumstances in this case, Fiberweb cannot show that the balance of factors weighs strongly in favor of transfer.

2.    This Action Could Not Have Been Brought In The Northern District Of Illinois

Under 28 U.S.C. § 1404(a) (2007), the Court must determine if the action might have been brought in the transferee district. *Schwarzkopf Techs. Corp. v. Ingersoll Cutting Tool Co.*, 820 F. Supp. 150, 151 (D. Del. 1992).   Here, there is a substantial question if Fiberweb's *de minimus* activity in Illinois is sufficient.  Fiberweb fails to show that this action could have been brought in the Northern District of Illinois because although the Illinois Long-arm Statute reaches Fiberweb's activity, it does not do so within the meanings of "minimum contacts" and "fair play and substantial justice" that are required by due process of law.

Due Process limits the power of a court to exert personal jurisdiction over a nonresident defendant.  *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 108 (1987). The "constitutional touchstone" of determining whether a court can exercise personal jurisdiction is whether the defendant "purposely established 'minimum contacts' in the forum State."  *Id.* at 108-09 (citation omitted).   Personal jurisdiction is proper "where the contacts proximately result from actions by the defendant himself that create a '*substantial connection*' with the forum State."  *Id.* (emphasis added) (citations omitted).

Fiberweb, a self-proclaimed "world leader in nonwovens" that reported revenues of £584.7 million for 2006, can only cite two shipments of ELIXIR™ to printers in Illinois.  (D.I. 47, Declaration of K. Dill).   These shipments accounted for only 15 cases of the ELIXIR™ product.  (D.I. 45 at 4).   Selling such a *de minimus* quantity of infringing goods in Illinois does not support Fiberweb's claim that contacts with the state were "substantial" enough to amount to minimum contacts.  *See World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (noting that more than a sale that is "an isolated occurrence" is required to obtain personal jurisdiction).

For all of these reasons, bringing this action in Illinois in the first instance would have offended traditional notions of fair play and substantial justice.

C.    Defendants' Motion to Stay Pending Resolution of the Siebert Appeal Should Be Denied Because Baldwin Would Be Severely Prejudiced

In exercising its broad discretion to stay proceedings, the Court must weigh the competing interests of the parties and attempt to maintain an even balance. *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990).  In maintaining that balance, "the Court must consider whether there is 'even a fair possibility' that the stay would work damage on another party." *Id.* (citations omitted).

Overall, courts typically cite three factors that should guide the exercise of a court's discretion when deciding whether a stay is appropriate: 1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; 2) whether a stay will simplify the issues for trial; and 3) whether discovery is complete and a trial date set. *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, No. 01-557-JJF, 2003 U.S. Dist. LEXIS 27397, at *3 (D. Del. Jan. 30, 2003).  As shown below, under these tests, this case should not be stayed.

Here, Fiberweb Plc, which is affiliated with the Fiberweb defendants here, has filed the equivalent of a declaratory judgment action in the United Kingdom.  (Exhibit 1, Fiberweb Plc's U.K. Particulars of Claim).  This action alleges invalidity and non-infringement of Baldwin's foreign counterparts to the patents in suit.  It appears that Fiberweb is manufacturing the accused products in the United States for export and sale in the United Kingdom (leading to the U.K. lawsuit) and elsewhere.  Thus, staying this action would severely injure Baldwin not only in the United States but also abroad.  Further, as shown below, the admissions of Fiberweb Plc in the U.K. action show infringement of key claim elements under both the existing Northern District

of Illinois interpretation and the interpretations proposed by Baldwin in the Northern District of Illinois and the Federal Circuit.

Discovery has been underway for some time now and depositions are being noticed. There is no reason to stay discovery that would actually promote judicial economy, especially since such discovery is expected to corroborate Fiberweb's U.K. admissions. Further, the Federal Circuit decision is due approximately around the same time as the *Markman* hearing in this matter. At least fact discovery should proceed, since the ultimate Federal Circuit decision will not change the scope of fact discovery.

    1.    Granting A Stay Pending The Appeal Of The Siebert Case Would Cause Baldwin To Suffer Undue Prejudice And Allow Fiberweb To Gain A Business Advantage Over The Non-Moving Party

To maintain an even balance in this case and prevent prejudice to Baldwin, the Court should deny defendants' motion to stay this litigation.

The granting of a stay in the instant action would harm Baldwin and allow Fiberweb to gain an unfair business advantage. Defendants manufacture infringing products in the United States in direct competition with products that Baldwin sells worldwide. Regardless of where these products are eventually sold, manufacture of such products in the United States constitutes infringement.

Less than one week before filing its motion to stay, Fiberweb filed an action in the United Kingdom seeking a declaration of non-infringement and invalidity of the patents. (Exhibit 1, Fiberweb Plc's U.K. Particulars of Claim). The products in question in the U.K. lawsuit appear to be the same ELIXIR™ products accused of infringement in the present action before this Court. Granting defendants' motion to stay would allow Fiberweb to continue to expand its U.S. manufacture of infringing products for worldwide sale, while at the same time challenging Baldwin's foreign counterpart patents in the U.K. Allowing Fiberweb to continue manufacturing

infringing products during the pendency of a stay would cause undue harm to Baldwin from lost profits and irreparable loss of good will, leaving Baldwin powerless to protect its intellectual property rights in the United States. The proper balance between the parties in the instant litigation can only be accomplished by denial of the defendants' motion to stay.

2.    Granting A Stay Until Decision In The Appeal Will Not Simplify The Issues For Trial

The pendency of an appeal in a parallel case does not serve as automatic grounds for a stay simply because the other case might impact the instant litigation. *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-cv-447, 2005 U.S. Dist. LEXIS 25358, at *7-8 (S.D. Ohio Oct. 24, 2005). In fact, courts have discretion to refuse stays under such circumstances. *Id.* at *8. Further, Fiberweb misstates the significance of the Federal Circuit's ruling on the appeal of the prior claim construction in the Northern District of Illinois. In fact, the pending appeal of the Siebert litigation will not simplify the issues undercutting the primary basis for defendants' motion to stay.

The discovery in this case and the issues at trial will be unaffected by the appeal because admissions made in the U.K. action demonstrate that however the appeal is decided, Fiberweb's ELIXIR™ product infringes Baldwin's patents. Thus, staying the Delaware action pending the appeal's outcome would not simplify the issues for trial.

Specifically, with regard to the sealed sleeve patent (Re35,976), Fiberweb admits that their process puts a single presoaked roll in a sleeve, which is then heat sealed. (Exhibit. 1, Annex A at 2-3, "Packaging"). That process literally infringes Baldwin's Re35,976 patent under the Northern District of Illinois's prior claim construction. If affirmed by the Federal Circuit, that claim construction will be binding precedent. *See, e.g., Bio-Technology Gen. Corp. v. Genentech, Inc.*, 267 F.3d 1325, 1329 (Fed. Cir. 2001) (concluding that it was required to follow

the Federal Circuit's previous claim construction).    If the Federal Circuit amends this interpretation in favor of Baldwin's proposed construction, defendants would still literally infringe.    Specifically, if "sealed" does not require "heat sealing," and "a" roll means one or more rolls can be in one sleeve, the admissions in Fiberweb's' U.K. filings show that Fiberweb's ELIXIR™ product still infringes even under this new claim construction because they still have one roll in a sealed sleeve.

Similarly, the Northern District of Illinois's construction of Baldwin's U.S. Patent 5,974,976, held that fabric, in which air has been reduced by calendaring or other mechanical means prior to winding or rewinding the fabric on a roll, was covered by the patent claims.    In its U.K. filings, Fiberweb admits that its fabric is calendared.    (Exhibit 1, Annex A at 2).    If the Federal Circuit amends this claim construction to include winding or rewinding as a method of air reduction, defendants would still literally infringe because Fiberweb's process involves winding or rewinding in addition to calendaring.    As stated in the attached U.K. action, the ELIXIR™ product undergoes a rewinding process that is undertaken under tension.    (*Id.*).

Thus, staying this action pending the Federal Circuit decision would not simplify the issues for trial, nor would it likely change the outcome of this infringement determination.    If the Court, however, wishes to delay the *Markman* hearing until the Federal Circuit decision issues, that is not a reason to stay fact discovery in such areas as defendants' manufacturing process, product specifications, and damages, all of which are independent of the claim construction issue and will remain viable subjects of discovery regardless of whether the Federal Circuit affirms or modifies the claim construction in the pending appeal.    *See Micron Tech., Inc. v. Rambus Inc.,* 189 F. Supp. 2d 201, 213 (D. Del. 2002) (delaying claim construction and trial pending an appeal to the Federal Circuit, but allowing "further discovery that needs to be taken" to proceed).

It should be noted that Fiberweb has not offered to be bound by either the Northern District of Illinois or Federal Circuit claim interpretations. Therefore, a stay pending appeal of the Siebert case would not necessarily prevent an eventual *Markman* proceeding here.

   3.   Discovery Has Significantly Progressed Since The Commencement Of This Action

Since Baldwin filed its Complaint on February 3, 2006, more than sixteen (16) months ago, this case has progressed into the discovery stage. The parties have each produced approximately 40,000 pages of documents. Additionally, a scheduling order is in place, and fact depositions will soon be noticed. Denying Fiberweb's Motion will not significantly affect the costs each party will ultimately spend on litigation.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to transfer or stay this action should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Leslie A. Polizoti*

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
Leslie A. Polizoti (#4299)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
lpolizoti@mnat.com
   *Attorneys for Plaintiff,*
   *Baldwin Graphic Systems, Inc.*

16.

OF COUNSEL:

James W. Gould
Keith J. McWha
MORGAN & FINNEGAN, L.L.P.
3 World Financial Center
New York, New York 10281-2101
(212) 415-8700

July 2, 2007
911473

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 2, 2007 she electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, which will send notification of

such filing(s) to the following:

> Francis DiGiovanni
> CONNOLLY BOVE LODGE & HUTZ, LLP

I also certify that copies were caused to be served on July 2, 2007, upon the

following in the manner indicated:

### BY HAND & BY E-MAIL

> Francis DiGiovanni
> CONNOLLY BOVE LODGE & HUTZ, LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, DE  19899-2207

### BY FEDERAL EXPRESS

> Michael E. Zeliger
> Christopher Centurelli
> KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP
> State Street Financial Center
> One Lincoln Street
> Boston, MA  02111-2950

> */s/ Leslie A. Polizoti*
> Leslie A. Polizoti (#4299)
> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Wilmington, DE  19801
> (302) 658-9200
> lpolizoti@mnat.com

# EXHIBIT 1

IN THE HIGH COURT OF JUSTICE                    HC-07-C
CHANCERY DIVISION
PATENTS COURT

BETWEEN:

FIBERWEB PLC

                                                Claimant

-and-

BALDWIN GRAPHIC SYSTEMS, INC.
(a company incorporated in Connecticut USA)

                                                Defendant

_____

PARTICULARS OF CLAIM

_____

1.    The Claimant is, through its subsidiaries, an importer and distributor, *inter
      alia*, of non-woven, synthetic fibre cloth.

2.    The Defendant is a US company and is the registered proprietor of three
      European patents UK; namely, EP(UK) 0 676 997, EP(UK) 0 741 034 and
      EP(UK) 0 747 218, collectively termed "the Patents".

3.    The registered address for service in the UK for each of the Patents is Venner
      Shipley & Co, 20 Little Britain, London EC1A 7DH, UK.

4.    The Patents are currently in force.

5.    By a letter dated 22 December 06 Gulliksson Advocates ("Gulliksson") wrote
      a letter addressed to "*BBA Fiberweb Global Headquarters*" to an address in
      the UK alleging that the "*marketing and selling*" of the Claimant's product
      ELIXIR infringed the Patents.  This letter was said to be written on behalf of a
      Swedish Company, Baldwin Jimek AB, said to be the proprietor of the
      Patents.  Baldwin Jimek AB is a Swedish subsidiary of the Defendant.  In a

fax dated 11 January 07, Gulliksson confirmed that the letter was intended for the Claimant.

6.    By a letter dated 15 February 07, Gulliksson again repeated the allegations of patent infringement in respect of the Patents. In the course of that letter, Gullikson referred to a product called PREPAC which they described as "*our client's product*". PREPAC is a cleaning product of the Defendant. The Defendant is the registered proprietor of Community Trade Mark No. E1172634 for PREPAC for pre-moistened cleaning cartridges registered in class 7.

7.    It is inferred that the letters of the 22 December 06 and 15 February 07 referred to above were written for or on behalf of the Defendant. In the premises, the Defendant has made a claim of right against the Claimant in the UK under each of the Patents in respect of the Claimant's ELIXIR cleaning product.

8.    The Claimant says that the importation, disposal, offer to dispose of or use of the ELIXIR product in the UK does not constitute an infringement of any of the claims of the Patents or each of them. The Defendant is well aware of the ELIXIR product. Nonetheless, a description of its material features (including photographs) is attached to these Particulars of Claim as Annex A.

9.    Further or in the alternative, the Patents, and each of them, are (and always have been) invalid for the reasons set out in the Grounds of Invalidity.

**AND THE CLAIMANT CLAIMS:**

1.    A declaration pursuant to s.71(1) Patents Act 1977 and/or the inherent jurisdiction of the Court that the importation, disposing of, offering to dispose of, using and keeping (whether for disposal or otherwise) in the United Kingdom of the ELIXIR product does not constitute an infringement of any of the claims of EP(UK) 0 676 997, EP(UK) 0 741 034 and/or EP(UK) 0 747 218.

2.    A declaration that EP(UK) 0 676 997, EP(UK) 0 741 034 and EP(UK) 0 747 218 and each of them are and always have been invalid.

3.    An Order that EP(UK) 0 676 997, EP(UK) 0 741 034 and EP(UK) 0 747 218 and each of them be revoked.

4.    Costs together with interest.

5.    Further or other relief.

**ANDREW LYKIARDOPOULOS**

**Statement of truth**

The Claimant believes that the facts stated in these Particulars of Claim are true. I am duly authorised to sign this statement.

Signed.................................

Title........ CEO ..............

Dated.... 8/1/07 ............

Served this          day of June 2007 by Kirkpatrick & Lockhart Preston Gates Ellis LLP of 110 Cannon Street London EC4N 6AR, Solicitors for the Claimant.

**IN THE HIGH COURT OF JUSTICE**                    **HC-07-C**
**CHANCERY DIVISION**
**PATENTS COURT**

**BETWEEN:**

**FIBERWEB PLC**

**Claimant**

-and-

**BALDWIN GRAPHIC SYSTEMS, INC.**
**(a company incorporated in Connecticut USA)**

**Defendant**

---

**ANNEX A TO THE**
**PARTICULARS OF CLAIM**

**ELIXIR Product Description**

---

The Claimant's ELIXIR product is a pre-moistened automatic blanket cleaning roll intended for use in cleaning web-fed printing-press cylinders.

The fabric of the roll is known as P1285 which is a Fiberweb proprietary, polyester, point-bonded, spunbond, non-woven material.

*Formation of P1285*

P1285 is made from polyester resin.  It is manufactured for a number of applications which include use in the ELIXIR product as follows:

  (i)    Molten plastic is forced through apertures under pressure to form plastic fibres;

  (ii)   The formed fibres are introduced to a moving screen in a series of two layers;

(iii)    The two layers are then calendered under high heat and pressure in order to bond the fibres together;

(iv)    The resulting fabric is then wound into a master roll;

(v)    For use in the ELIXIR product, the roll is cut or slit to form smaller rolls (or mini-rolls).  The rewinding process is undertaken under tension.

*Formation of master rolls*

P1285 is formed first as a master roll.  Master rolls are typically about 124" (3.15m) in width and contain approximately 4000 metres in length.

The master rolls are often slit to ⅓ or ½ of the full width (resulting in a roll which is 41.3" or 62" wide (1.05 or 1.57m) and approximately 1200 to 1800 metres in length.  The finished fabric for use in the ELIXIR product has a basis weight of approx. 2.5 oz per square yard (approx. 85g per m$^2$) and has a thickness of about 0.016" to 0.020" (0.406 to 0.508 mm)

*Formation and moisturising of mini-rolls*

The master rolls of the P1285 fabric are re-wound onto small cores of about 1.0" to 1.25" (25.4 to 31.8mm) inside diameter and about 1.25" to 1.5" (31.8 to 38.1 mm) outside diameter.  The material is tightly rolled under tension.

The mini-rolls are then moistened with an organic solvent, details of which are confidential.  Details of the solvent are included in a Confidential portion of this Annex, below.

*Packaging*

The mini-rolls of moistened P1285 mini-rolls are each wrapped in bubble-wrap.  The bubble wrap is not sealed.  The bubble-wrapped roll is then inserted into a heat-

sealable plastic sleeve which is then thermally sealed.   The plastic sleeve is not tightly applied or vacuum packaged.

The ELIXIR product is transported and stored horizontally with instructions to shippers and printers not to tilt the rolls.  A copy of the instructions is attached to this description as **Attachment A**.

If the rolls are tilted or stood in the vertical position the solvent within the rolls will readily drain to one side and can leak through holes in the packaging.  The solvent does not re-equilibrate once drained.

IN THE HIGH COURT OF JUSTICE                          HC-07-C
CHANCERY DIVISION
PATENTS COURT

BETWEEN:

**FIBERWEB PLC**
                                                                    Claimant

-and-

**BALDWIN GRAPHIC SYSTEMS, INC.**
**(a company incorporated in Connecticut USA)**
                                                                    Defendant

---

**ANNEX A TO THE**
**PARTICULARS OF CLAIM**

**ELIXIR Product Description**

**Attachment A**

---



HC-07-C

**IN THE HIGH COURT OF JUSTICE**
**CHANCERY DIVISION**
**PATENTS COURT**

**BETWEEN:**

**FIBERWEB PLC**

**Claimant**

-and-

**BALDWIN GRAPHIC SYSTEMS, INC.**
**(a company incorporated in Connecticut USA)**

**Defendant**

---

**PARTICULARS OF CLAIM**

---

Kirkpatrick & Lockhart
Preston Gates Ellis LLP
110 Cannon Street  London  EC4N 6AR
Tel: +44 (0)20 7648 9000
Fax: +44 (0)20 7648 9001
Ref: NAD/RMH/6011615.0001

**Solicitors for the Claimant**