IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-077-JJF |
| ) | |
| FIBERWEB SIMPSONVILLE, INC., ) | |
| and FIBERWEB, INC., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION TO TRANSFER OR STAY THIS ACTION**

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ LLP**

Francis DiGiovanni (#3189)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: 302-888-6316
Facsimile: 302-658-5614
fdigiovanni@cblh.com

Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
**KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

-i-

## **TABLE OF CONTENTS**

|    |    | PAGE |
|----|----|------|
| I. | TRANSFER IS WARRANTED | 1 |
|    | A. This Action Could Have Been Brought in Illinois | 1 |
|    | B. This Case Would Be No Less Convenient In Illinois | 3 |
|    | C. The Interest Of Justice Strongly Favor Transfer | 4 |
| II. | IN THE ABSENCE OF A TRANSFER, A STAY IS APPROPRIATE | 8 |
|    | A. Granting A Stay Would Not Cause Baldwin To Suffer Undue Prejudice | 8 |
|    | B. Granting A Stay Will Simplify Issues For Markman And Discovery | 9 |
|    | C. Discovery Has Barely Begun And A Trial Date Is Not Set | 11 |
| III. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

PAGE

## Cases

*Amazon.com, Inc. v. Barnesandnoble.com Inc.*,
   239 F.3d 1343 (Fed. Cir. 2001) ............................................................................... 9

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
   480 U.S. 102 (1987) ................................................................................................. 2

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
   21 F.3d 1558 (Fed. Cir. 1994) .................................................................................. 2

*Data Treasury Corp., v. First Data Corp.*,
   243 F. Supp. 2d 591 (N.D. Tex. 2003) .................................................................... 4

*Guidant Corp. v. Cardiac Pacemakers, Inc.*,
   2004 U.S. Dist. LEXIS 17218 (D. Del. 2004) ......................................................... 6

*Hunter Engineering Co. v. ACCU Industries, Inc.*,
   245 F. Supp. 2d 761 (E.D.Va. 2002) ....................................................................... 4

*Jenkins Brick Co. v. Bremer*,
   321 F.3d 1366 (11th Cir. 2003) ............................................................................... 1

*Lemelson v. General Mills, Inc.*,
   968 F.2d 1202 (Fed. Cir. 1992) ............................................................................... 9

*Logan v. Hormel Foods Corp.*,
   2004 U.S. Dist. LEXIS 30327 (E.D. Tex. 2004) ................................................. 5, 6

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) ................................................................................... 9

*McGee v. International Life Insurance Co.*,
   355 U.S. 220 (1957) ................................................................................................. 3

*N. Am. Philips Corp. v. American Vending Sales, Inc.*,
   35 F.3d 1576 (Fed. Cir. 1994) .................................................................................. 2

*Pacesetter, Inc. v. Cardiac Pacemaker, Inc.*,
   Civ. Action No. 96-232-SLR (D. Del. 1996) ........................................................... 6

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
   119 F.3d 1559 (Fed. Cir. 1997) ............................................................................... 4

*Reiffin v. Microsoft Corp.*,
   104 F. Supp. 2d 48 (D.D.C. 2000) .................................................................................... 5

*Ricoh Co., Ltd v. Honeywell, Inc.*,
   817 F. Supp. 473 (D.N.J. 1993) ........................................................................................ 4

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*,
   2003 U.S. Dist. LEXIS 27397 (D. Del. 2003) ............................................................. 7, 9

*Stewart Organization, Inc. v. Ricoh Corp.*,
   487 U.S. 22, 108 S. Ct. 2239 ............................................................................................ 4

*Van Dusen v. Barrack*,
   376 U.S. 612, 84 S. Ct. 805 (1964) .................................................................................. 4

**Statutes**

28 U.S.C. § 1406(a) ................................................................................................................ 1

**Other Authorities**

Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3844 ................ 1

Defendants, collectively "Fiberweb" hereby submit this reply brief in support of their motion to transfer or stay this action.

## I. TRANSFER IS WARRANTED

Baldwin's opposition brief argues that transferring this case to the United States District Court for the District of Illinois would be improper because (1) this case could not have been brought in Illinois; (2) it would be inconvenient to move it there now; and (3) the interest of justice will not be served because the *Siebert* case is not "co-pending" and involves different parties. These arguments confuse improper venue with transfer; seek to have this Court declare that applying Illinois' long arm statute to Fiberweb's activites in Illinois would be unconstitutional; put undue emphasis on rather weak convenience concerns; and suggest a bright line rule concerning the interest of justice, where none exists and where the Supreme Court says none should.

### A. This Action Could Have Been Brought in Illinois

Baldwin points out that Fiberweb admits venue is proper in this jurisdiction – and it is. However, Baldwin argues that "for this reason alone, Fiberweb's motion should be denied." Opposition, at 4. The law actually provides the opposite. Proper venue in the transferor court is a actually a prerequisite for a transfer motion under § 1404(a). If venue were improper the correct procedural mechanism would be § 1406(a). Wright, Miller & Cooper Federal Practice and Procedure: Jurisdiction 3d § 3844 ("Transfer under Section 1404(a) is possible only if venue is proper in the original forum, which also must have federal jurisdiction over the action."); *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1368, fn. 1 (11th Cir. 2003) ("It is implicit in the Alabama court's citation to section 1404(a) that, in the court's view, venue was properly laid in Alabama. Otherwise, the court would have transferred the case pursuant to 28 U.S.C. §

1406(a)..."). It is therefore both undisputed and necessarily true that venue is proper in this Court. It is likewise true that this admission has no impact on Fiberweb's motion.

Next, Baldwin contends that "Fiberweb did not argue that this action could have been brought" in Illinois. Opposition, at 1. Please note that section II.A.i of Fiberweb's opening brief is entitled, "This Action Could Have Been Brought in the Northern District of Illinois." Beginning on page 4 of the brief, the section explained in detail that Fiberweb's activities in Illinois give rise to specific personal jurisdiction in Illinois. Although Baldwin concedes that Fiberweb's activity in Illinois satisfies the Illinois long-arm statute, it nonetheless argues that applying the Illinois long-arm statute to Fiberweb's activity in Illinois would be unconstitutional. Numerous precedential decisions disagree.

Constitutional due process considerations require that a defendant "purposefully established 'minimum contacts' in the forum state" to be subject to personal jurisdiction. *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 108 (1987). Fiberweb has purposefully shipped the accused product, Elixir®, to Illinois. *See* Opening brief, at 4 and Kevin Dill's declaration. These uncontested facts are dispositive, because nothing more is required to establish minimum contacts. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir. 1994) ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction"); *N. Am. Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1577-81 (Fed. Cir. 1994) (holding that the assertion of personal jurisdiction over defendants was constitutional when defendants had made sales of the accused products shipped to customers in Illinois which the defendants characterized as 'modest' and 'negligible.'")

Once minimum contacts are established, due process considerations require a court to further analyze whether asserting jurisdiction would be reasonable under all the facts and circumstances. *Beverly Hills*, 21 F.3d at 1568. But, as the Federal Circuit states, "these cases are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Id.* This is not one of those rare cases. Indeed, in this sense, the case is not rare it all. It simply involves a company selling an allegedly infringing product into a forum state. Under these circumstances, asserting jurisdiction over Fiberweb in Illinois is reasonable.

Baldwin however, seems to argue in its opposition brief that Fiberweb's activities in Illinois are *de minimus* and therefore insufficient to establish personal jurisdiction. However, Baldwin cited no authority for a *de minimus* exception to the due process analysis. Nor could it. The Supreme Court long ago established that a single purposefully directed act at a forum state is enough to establish specific personal jurisdiction. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 222 (1957) (selling a single insurance policy is sufficient to establish personal jurisdiction in a suit involving that policy). Accordingly, Baldwin could have brought this action Illinois.

### B. This Case Would Be No Less Convenient In Illinois

This case has weak ties to Delaware. Baldwin and Fiberweb Simpsonville, Inc. are incorporated in Delaware. Baldwin chose to file in this jurisdiction. These are the only connections between the dispute and this jurisdiction. All of the parties run their businesses elsewhere. There were no allegedly infringing sales here. There are no witnesses here. Indeed there are no sources of proof here. The allegedly infringing products were developed,

manufactured and sold elsewhere. The purported inventions were also developed elsewhere. Baldwin's other arguments, such as Delaware is more convenient because it is closer to South Carolina, Tennessee and Connecticut, than is Illinois (Opposition, at 5-6) are less than compelling. Even Baldwin's choice to litigate here is suspect. When it filed this action, the closely related *Siebert* case was ongoing in Illinois. This leaves the distinct impression that Baldwin's choice to litigate here was simply an attempt to distance itself from a forum in which it was losing. Nonetheless, Fiberweb concedes that convenience considerations alone counsel against transfer. But these are not the only considerations. Judge Moran spent several years presiding over the same patents, the same prior art defenses, common claim construction issues any many of the same sources of proof. He also authored multiple claim construction and dispositive orders. These facts fundamentally change the equation.

### C. The Interest Of Justice Strongly Favor Transfer

Baldwin scoured the cases cited in Fiberweb's opening brief, including *Avaya, In re Medrad, Paxonet, Carolina Archery Products* and *Continental Grain* in search of distinguishing facts. It found that unlike here, each case had "co-pending" matters or the same parties litigating elsewhere. On that basis, Baldwin proposes a bright line rule such that the interest of justice can only justify a transfer when one or both of these conditions are present. In so doing, it loses sight of both the relevant law and policy.

The law, according to the Supreme Court is that "section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an '*individualized case-by-case consideration of convenience and fairness.*'" *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S. Ct. 2239, 2244, quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84

S. Ct. 805, 812 (1964) (emphasis added). This is not a formulaic exercise. Instead, it requires case-specific analysis of the salient facts, circumstances and policy considerations.

Two considerations often given great weight in patent cases are judicial economy and risks of inconsistent outcomes. *See* Opening Brief, at 6-7; *also see Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial economy 'may be determinative to a particular transfer motion, even if the convenience of the parties and the witnesses may call for a different result."); *Hunter Engineering Co. v. ACCU Industries, Inc.*, 245 F.Supp. 2d 761 (E.D.Va. 2002) (judicial economy served by transfer to court more familiar with the patent issues presented); *Ricoh Co., Ltd v. Honeywell, Inc.*, 817 F.Supp. 473, 487-88 (D.N.J. 1993) (judicial economy and risk of inconsistent rulings are cause for transfer); *Data Treasury Corp., v, First Data Corp.*, 243 F.Supp. 2d 591, 596 (N.D. Tex. 2003) (second claim construction in another forum would risk inconsistent claim constructions and thereby create uncertainty about claim scope and impede the administration of justice). These principals are well stated in a *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 55 (D.D.C. 2000):

> No matter what the Federal Circuit decides [concerning a related pending appeal], litigating this matter here would squander judicial resources and run the risk of inconsistent judgments on the validity and the infringement of [the plaintiff's patents]. The Honorable Vaughn R. Walker of the Northern District has already expended substantial time and effort to become familiar with the technology underlying the disputed patents, the prosecution of the patents, the record considered by the Patent Office in issuing the patents, and the legal issues related to the patents' alleged validity and infringement.

Despite Baldwin's argument to the contrary, judicial economy and potential conflicting outcomes do not depend on cases being "co-pending" or on cases being between the same parties. Indeed these considerations are important when neither is present.

In *Logan v. Hormel Foods Corp.*, the Honorable Leonard Davis transferred a patent case to a court where the other case was not co-pending and involved different parties. 2004 U.S.

Dist. LEXIS 30327 (E.D. Tex. 2004) (attached as Ex. A to the Declaration of Francis DiGiovanni) ("DiGiovanni Decl."). In *Logan*, the plaintiff had previously sued a different party for infringing the same patent in a different jurisdiction. The prior suit settled shortly after Judge Davis issued his claim construction. Based on this prior history, the defendant in *Logan* moved to transfer the case to the court that presided over the earlier litigated action. The court granted the motion reasoning that "concerns for judicial economy and the prospect of inconsistent claim constructions, powerfully favor[ed] transfer." *Id.* at *12. Indeed, because these considerations were "most compelling" the Court analyzed them before considering the parties' convenience. *Id.* at *5. The *Logan* decision also stated that the policy considerations behind the seminal *Markman* decision favored keeping related cases in the same court:

> The importance of uniformity in claim construction is best described in *Markman*. Congress created the Court of Appeals for the Federal Circuit to promote uniformity. *Markman*, 517 U.S. at 390. The importance of uniformity in the treatment of a given patent was one reason for allocating claim construction to the court rather than the jury. *Id.* Uncertainty regarding a patent's limits discourages invention and industrial innovation, whereas certainty fosters technological growth. *Id.*
>
> * * * * * *
>
> Here, while the defendants are different, the patent at issue is the same, and the argument for transfer is even stronger. The Court finds the special need for uniformity in patent cases strongly favors transfer.

*Logan*, 2004 U.S. Dist. LEXIS 30327 at *7-8. Thus judicial economy and mitigating the risk of inconsistent outcomes are important and exist independent of whether cases are co-pending or between the same parties.

Baldwin also emphasizes the *Guidant* decision from this Court which stated that transfer should be reserved for "particular or unusual circumstances." *Guidant Corp. v. Cardiac Pacemakers, Inc.*, 2004 U.S. Dist. LEXIS 17218, *9 (D. Del. 2004) (DiGiovanni Decl. Ex. B). However, that quoted language from *Guidant* case comes from an earlier, unpublished opinion of this Court. In a Memorandum Order from *Pacesetter, Inc. v. Cardiac Pacemaker, Inc.*, Civ.

Action No. 96-232-SLR (D. Del. 1996) (DiGiovanni Decl. Ex. C), the Court found that circumstances remarkably similar to those in this case to be particular and unusual enough to warrant transfer. As Judge Robinson found:

> The court, however, is persuaded that transfer of this case to the District of Minnesota is warranted because of ***Minnesota's familiarity with the technology at issue through past and pending litigation***. It is the court's understanding that the district of Minnesota is in a posture to accept such a complex case without prejudice to plaintiffs' interest in a prompt resolution of the matter.

*Id.* at 4-5. The common thread among all of these cases is that once a court has invested considerable time and energy on a patent infringement case with complex subject matter, it can be wasteful and risky to relitigate common issues again, in a different court. This recognizes that there is often a substantial learning curve associated with presiding over such cases. It also acknowledges that complexity can give rise to different and inconsistent results. These cases stand in stark contrast to Baldwin's contention that "Even though a case involving the same patents was already heard in Northern District of Illinois, transferring [this] case there would require the same expenditure of judicial resources in Illinois as in Delaware." Opposition, at 8). Such a statement grossly underestimates Judge Moran's efforts. Even a cursory review of Judge Moran's claim construction and summary judgment orders illustrate that he has spent a lot of time and energy on the *Siebert* case – much of which would necessarily be repeated by this Court in this case. Moreover, if this Court were required to do so, it may well reach a different and inconsistent conclusion. This would be particularly problematic for claim construction. The better approach, which takes advantage of Judge Moran's prior work and eliminates the risk of inconsistent judgments, is to transfer this case to Illinois.

## II.     IN THE ABSENCE OF A TRANSFER, A STAY IS APPROPRIATE

Baldwin also opposes a stay as an alternative form of relief. However, staying this case pending the *Siebert* appeal would simplify issues for discovery and *Markman*, and would conserve judicial and party resources. These benefits outweigh any prejudice that Baldwin may incur.

This Court has articulated the factors to be considered when entertaining a request for a stay:

> Courts typically cite three factors that should guide the exercise of a court's discretion when deciding whether a stay is appropriate: 1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; 2) whether a stay will simplify the issues for trial; and 3) whether discovery is complete and a trial date set."

*St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.*, 2003 U.S. Dist. LEXIS 27397, at *3 (D. Del. 2003) (DiGiovanni Decl. Ex. D). Contrary to Baldwin's arguments, these factors support staying this case.

### A. Granting A Stay Would Not Cause Baldwin To Suffer Undue Prejudice

Notwithstanding its protests, Baldwin will not suffer *undue* prejudice if the Court stays this case. Baldwin contends that a stay would unfairly allow Fiberweb to continue selling abroad accused products that it manufactures domestically. Opposition, at 12-13. Baldwin argues that this would cause undue harm and irreparable damage. Baldwin's arguments contradict its own prior conduct.

First, if Baldwin believed it were suffering immediate irreparable injury it could have moved for a preliminary injunction. By contrast, Baldwin has stipulated to extend or stay discovery proceedings in this litigation on three separate occasions during the past year, totalling

-8-

several months of delays. At no time during this period did Baldwin express any of the urgency it now professes.

Next, Baldwin has foreign patents that purportedly cover Fiberweb's international sales. In fact, it is currently seeking to enforce certain of these rights in the United Kingdom. *See* cease and desist letter that Baldwin sent to Fiberweb in London on Dec. 22, 2006 (DiGiovanni Decl. Ex. F). A stay of these proceedings would not impact those enforcement efforts, dubious though they may be, in any way.

Finally, Baldwin predicts that a decision from the *Siebert* appeal will issue in approximately two and one half months (i.e. roughly the same time as the *Markman* hearing in this matter). Opposition, at 12. This means that the a stay would only delay proceedings by about ten weeks, in exchange for preserving significant judicial and party resources. If this is prejudicial to Baldwin, it is certainly not unduly so.

**B. Granting A Stay Will Simplify Issues For Markman And Discovery**

A stay would simply issues *Markman* issues and Baldwin has not argued otherwise. If this Court renders a *Markman* opinion before the *Siebert* appeal is decided, any inconsistency with the Federal Circuit decision would cause confusion and additional, repetitive work. Depending on how far this case has proceeded, such work could include additional *Markman* proceedings, additional expert disclosures and additional dispositive motions. This could be easily avoided by simply staying the case pending the *Siebert* appeal.

A stay would likewise streamline discovery. Baldwin argues that the *Siebert* appeal will have no impact on discovery issues because, in its view, the infringement issues in this case are unrelated to the *Siebert* appeal.[1] Baldwin's assumptions are unfounded, but more importantly,

---

[1] In Baldwin's opposition brief, it also argued in favor of proceeding with discovery, even if *Markman* issues are stayed. If this Court agrees, then Fiberweb requests that Baldwin be

-9-

entirely ignore invalidity. Claim construction applies equally for infringement and invalidity. *Amazon.com, Inc. v. Barnesandnoble.com Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("It is elementary in patent law that, in determining whether a patent is valid and, if valid, infringed, the first step is to determine the meaning and scope of each claim in suit") (quoting *Lemelson v. General Mills, Inc.*, 968 F.2d 1202, 1206 (Fed. Cir. 1992)); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996, n.7 (Fed. Cir. 1995) (Mayer, J., concurring), *aff'd* 517 U.S. 370 (1996) ("A claim must be construed before determining its validity just as it is first construed before deciding infringement"). It is indisputable that Fiberweb's invalidity defenses will be shaped by the *Siebert* appeal.

In addition, Baldwin's view that the *Siebert* appeal is irrelevant to this case directly contradicts statements Baldwin made in its opening brief to the Federal Circuit. In a section entitled, "Statement of Related Cases" Baldwin admitted that "[l]itigation involving U.S. Patent No. Re. 35,976 and U.S. Patent No. 5,974,976 [the patents in this case] is pending in the United States District Court for the District of Delaware, entitled *Baldwin Graphic System, Inc. v. Fiberweb Simpsonville, Inc. and Fiberweb, Inc.*, Civil Action No. 1:06-CV-77-JJF, **which might be directly affected by the Court's decision on the issues of claim construction presented by this appeal**." (Ex. E to DiGiovanni Decl. at vi. (emphasis added)). This direct relevance underscores the logic behind a stay.

---

prohibited from repeating discovery – both fact and expert – after the *Seibert* appeal has been decided. Baldwin should not be allowed to argue that a stay is unnecessary and later put Fiberweb to the expense of defending discovery for a second time. Fiberweb would also request that the Court allow it time take its discovery after this Court's *Markman* decision – as it would prefer not to waste resources and take such discovery twice.

### C. Discovery Has Barely Begun And A Trial Date Is Not Set

Baldwin's opposition gives the misimpression that this case is half over. However, there have been no depositions and Baldwin has not even noticed any. Thus, unlike in the *St. Clair* case, discovery is not complete and trial will not occur until, at least, mid 2008. In short, the parties are in the early stages of discovery and nowhere near ready for trial. A predicted two or three month stay will have no material impact.

Accordingly, if the Court is not inclined to transfer this case, Fiberweb requests that it stay all or some of the proceedings pending the *Siebert* appeal.

### III. CONCLUSION

For the foregoing reasons, Fiberweb respectfully requests that this Court transfer or stay this action.

Date: July 6, 2007

Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
**KIRKPATRICK & LOCKHART
 PRESTON GATES ELLIS LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ LLP**

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: 302-888-6316
Facsimile: 302-658-5614
fdigiovanni@cblh.com

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, Esq., hereby certify that on July 6, 2007, copies of the foregoing **DEFENDANT'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO TRANSFER OR STAY THIS ACTION** were caused to be served upon the following:

### BY HAND DELIVERY

Jack Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

### BY E-MAIL AND FEDERAL EXPRESS

Keith J. McWha, Esquire
Morgan & Finnegan
3 World Financial Center
New York, New York 10281-2101


/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)