## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BALDWIN GRAPHIC SYSTEMS, INC., )
)
               Plaintiff, )
)
        v. )      Civil Action No. 06-077-JJF
)
FIBERWEB SIMPSONVILLE, INC., )
and FIBERWEB, INC., )
)
            Defendants. )

### <u>DECLARATION OF FRANCIS DIGIOVANNI</u>

I, Francis DiGiovanni declare as follows:

1.     I make this declaration in support of Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Transfer or Stay this Action.

2.     I have been retained by the Defendants as counsel in connection with the litigation between Baldwin Graphic Systems, Inc. and Defendants (Fiberweb Simpsonville, Inc., and Fiberweb, Inc.). I have personal knowledge of the facts set forth below.

3.     I am an attorney at the law firm of Connolly Bove Lodge & Hutz LLP.

4.     Exhibit A hereto is a true and correct copy of *Logan v. Hormel Foods Corp.*, 2004 U.S. Dist. LEXIS 30327 (E.D. Tex. 2004).

5.     Exhibit B hereto is a true and correct copy of *Guidant Corp. v. Cardiac Pacemakers, Inc.,* 2004 U.S. Dist. LEXIS 17218 (D. Del. 2004).

6.    Exhibit C is a true and correct copy of Judge Robinson's September 25, 1996 Memorandum Order in *Pacesetter, Inc. v. Cardiac Pacemaker, Inc.,* Civ. No. 96-232-SLR (D. Del. 1996).

7.    Exhibit D hereto is a true and correct copy of *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp.,* 2003 U.S. Dist. LEXIS 27397 (D. Del. 2003).

8.    Exhibit E is a true and correct copy of Plaintiff-Appellant Baldwin Graphic Systems, Inc's Brief filed in the Federal Circuit Court of Appeals on June 15, 2007.

9.    Exhibit F is a true and correct copy of the cease and desist letter sent by Baldwin Jimek AB to BBA Fiberweb Global Headquaters on December 22, 2006.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 6, 2007

Francis DiGiovanni

# EXHIBIT A

2004 U.S. Dist. LEXIS 30327, *

LEXSEE 2004 US DIST LEXIS 30327



Caution
As of: Jul 06, 2007

**JAMES P. LOGAN, JR. and LOGAN FARMS INC., Plaintiffs, vs. HORMEL FOODS CORP. and WAL-MART STORES, INC., Defendants**

**CASE NO. 6:04-CV-211**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TYLER DIVISION**

*2004 U.S. Dist. LEXIS 30327*

**August 25, 2004, Decided**
**August 25, 2004, Filed**

**SUBSEQUENT HISTORY:** Transferred to *Logan v. Hormel Foods, Inc., 2005 U.S. Dist. LEXIS 33861 (S.D. Tex., Sept. 2, 2005)*

**PRIOR HISTORY:** *Logan Farms, Inc. v. Honeybaked, L.P., 2004 U.S. Dist. LEXIS 27253 (S.D. Tex., Apr. 2, 2004)*

**COUNSEL:** [*1] For James P Logan, Jr., For Logans Farms Inc, Plaintiffs: Guy E Matthews, LEAD ATTORNEY, Robert M. Bowick, Jr, The Matthews Firm, Houston, TX.; Carl D Kulhanek, Jr, Scott G. Burdine, William Fred Hagans, Hagans Burdine Montgomery Russtay & Winchester, Houston, TX.; Jennifer Parker Ainsworth, Wilson Sheehy Knowles Robertson & Cornelius PC, Tyler, TX.

For Hormel Foods Inc, Defendant: Jennifer L Elgin, John David Mayberry, Melvin A Todd, LEAD ATTORNEYS, Kilpatrick Stockton - Washington, Washington, DC.; Earl Glenn Thames, Jr, John Frederick Bufe, Potter Minton, Tyler, TX.

For Wal-Mart Inc, Defendant: Earl Glenn Thames, Jr, John Frederick Bufe, Potter Minton, Tyler, TX.

For Hormel Foods Inc, Counter Claimant: John Frederick Bufe, Potter Minton, Tyler, TX.

**JUDGES:** LEONARD DAVIS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** LEONARD DAVIS

**OPINION**

**MEMORANDUM OPINION AND ORDER TRANSFERRING VENUE TO THE SOUTHERN DISTRICT OF TEXAS**

Before the Court is Defendants Hormel Foods Corporation and Wal-Mart Stores, Inc. ("Defendants") Motion to Transfer to the Southern District of Texas (Docket No. 11) under *28 U.S.C. § 1404(a)*. Having considered the parties'. written submissions [*2] and having heard arguments of counsel, the Court finds that said motion should be **GRANTED.**

**BACKGROUND**

Plaintiffs James P. Logan, Jr. and Logan Farms Inc. ("Plaintiffs") sued Defendants to enjoin infringement of James Logan 's patent, United States Patent Re. 35,374. The patent describes a boneless meat product and method for spirally slicing the boneless meat product around a center axis. Plaintiffs also sued for dilution, injury to business reputation, unfair competition, and tortious interference with current and prospective contractual relationships.

Defendants respond that their products and methods do not infringe the patent. Defendants allege the patent is invalid and unenforceable because Plaintiffs failed to provide relevant information in the patent application.

In their motion to transfer, Defendants argue that under *28 U.S.C. § 1404(a)* this case should be transferred to the docket of The Honorable Ewing Werlein, Jr. in the

2004 U.S. Dist. LEXIS 30327, *

Southern District of Texas. Judge Werlein presided over a similar case Plaintiffs brought against Honey Baked Ham alleging infringement of the same patent. In April 2004, that case settled just prior to trial, after [*3] Judge Werlein construed the claim terms. For the reasons set forth below, the Court finds that transfer is warranted.

## VENUE IN THE SOUTHERN DISTRICT OF TEXAS

Proper venue in the proposed district is a threshold requirement for transfer. *28 U.S.C. § 1404(a)*. In a patent case, venue is proper in any judicial district where the defendant resides or in which the defendant committed acts of infringement and has a regular and established place of business. *28 U.S.C. § 1400*. A corporate defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction. *28 U.S.C. § 1391(c)*; *LG Elecs. Inc. v. Advance Creative Computer Corp., 131 F. Supp. 2d 804, 810 (E.D. Va. 2001)* (applying *section 1391(c)* to define "resides" in *section 1400*). Plaintiffs argue venue is not proper in the Southern District because only noninfringing hams are sold there. Given the evidence presented at the hearing that all hams are sliced by the same process, cut in half, then shipped to Texas for sale, the Court finds this argument unpersuasive. Even if this were persuasive, Plaintiffs ignore [*4] that venue in the Southern District is also proper if Defendants are subject to jurisdiction there. No one disputes the Defendants' presence in the Southern District. Under either ground for venue, the Court finds venue is proper in the Southern District of Texas.

## APPLICABLE LAW

For the parties' and witnesses' convenience, in the interest of justice, a district court may transfer any civil action to any other district or division where the case may have been brought. *28 U.S.C. § 1404(a)*. This is a fact intensive and case-by-case determination committed to the district court's discretion. *Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 768-69 (E.D. Tex. 2000)*. In deciding whether to transfer, a court weighs the litigants' convenience and the public interest in the fair and efficient administration of justice. *Id. at 771*. Factors relating to the parties' convenience include: (1) the plaintiff's forum choice, (2) the convenience of the parties and material witnesses, (3) the place of the alleged wrong, (4) the location of counsel, (5) the cost of obtaining witnesses' attendance and the availability of compulsory process, [*5] (6) the accessibility and location of sources of proof, and (7) the possibility of delay and prejudice if transfer is granted. *Id.* The moving party must demonstrate that these considerations substantially favor transfer. *Id. at 768*.

## APPLICATION OF CONVENIENCE AND PUBLIC INTEREST FACTORS

To transfer this case to the Southern District, the Court must find the balance of the parties' convenience and public interest substantially favors transfer. As the public interest considerations are most compelling, the Court will address those first.

Public Interest Considerations

In a patent case, public interest considerations, including the concern for judicial economy, may be determinative, even if the parties' considerations call for a different result. *Regents of the Univ. of Cal. v. Eli Lilly & Co., 119 F.3d 1559, 1565 (Fed. Cir. 1997)*. In a case involving several highly technical factual issues, where overall the other relevant transfer factors are neutral, judicial economy may favor transfer to a court that is already familiar with the issues. *Id.* The prospect of inconsistent claim construction favors resolving related patent cases [*6] in the same forum when possible. *Data Treasury Corp. v. First Data Corp., 243 F. Supp. 2d 591, 596 (N.D. Tex. 2003)* (transferring a case to the district court in Texarkana that was presiding over ongoing litigation involving the same patents and different defendants). Plaintiffs previously pursued similar claims involving the same patent against other defendants in the Southern District of Texas. *See Logan v. HoneyBaked, L.P.,* No. H-01-1611 (S.D. Tex Apr. 5, 2004) (Werlein, J.). In that case, the plaintiffs voluntarily settled their claims after Judge Werlein held a *Markman* hearing and issued a claim construction regarding the patent at issue in this case. However, this Court is not bound by Judge Werlein's claim construction because that case settled prior to final judgment on the merits. *See RF Del., Inc. v. Pac. Keystone Techs., Inc., 326 F.3d 1255, 1261 (Fed. Cir. 2003)* (holding that collateral estoppel does not apply in favor of a claim construction in an earlier case that settled prior to final judgment). If the case were to proceed in this district, this Court would be obligated to perform its own claim construction. *See Markman v. Westview Instruments, Inc., 517 U.S. 370, 390- 91, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)*. [*7] Indeed, at the hearing, Plaintiffs indicated their desire for this Court to issue another claim construction. Besides being a duplicative use of scarce judicial resources, a second claim construction would risk inconsistent claim constructions, create greater uncertainty regarding the patent's scope, and impede the administration of justice. *See Data Treasury, 243 F. Supp. 2d at 596*.

The importance of uniformity in claim construction is best described in *Markman*. Congress created the Court of Appeals for the Federal Circuit to promote uniformity. *Markman, 517 U.S. at 390*. The importance of uniformity in the treatment of a given patent was one

reason for allocating claim construction to the court rather than the jury. *Id.* Uncertainty regarding a patent's limits discourages invention and industrial innovation, whereas certainty fosters technological growth. *Id.*

Another court in this district recently faced a similar situation and decided transfer was appropriate. *See Acco Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.,* No. 2:03-CV-425 (E.D. Tex. July 23, 2004). The transferee court in *Acco Brands* had previously presided over [*8] patent infringement claims between the same parties. *Id.* at 1. *Acco Brands* involved different patents in the later suit and so did not present the risk of inconsistent claim construction. *Id.* Here, while the defendants are different, the patent at issue is the same, and the argument for transfer is even stronger. The Court finds the special need for uniformity in patent cases strongly favors transfer.

Parties' Convenience Factors

*(1) The Plaintiffs's' Forum Choice.* Generally, this Court is extremely reluctant to disturb a plaintiff's venue choice. Although a plaintiff's forum choice usually carries substantial weight in a transfer analysis, courts are less deferential when the plaintiff does not reside in the chosen forum and operative facts have not occurred there. *Barton v. Young, 144 F. Supp. 2d 685, 688 (E.D. Tex. 2001).* In this case, Plaintiffs reside in the Southern District. Defendants sell infringing hams in both districts, and there are no operative facts that occur exclusively in the Eastern District. Given the unreasonableness of Plaintiffs' argument against venue in the Southern District and that there is a court in the Southern [*9] District already intricately familiar with the Plaintiffs' patent, this Court is forced to wonder if Plaintiffs are seeking a different venue with the hope of a more favorable claim construction. Plaintiffs' forum choice is not entitled to proportionately greater weight than the other factors.

*(2) The Convenience of the Parties and Material Witnesses.* The convenience of the parties and witnesses favors transfer. Plaintiffs reside in the Southern District. The majority of identified non-party witnesses residing in Texas reside within 100 miles of Houston. By requesting transfer, Defendants imply that venue in the Southern District is more convenient for them. Thus, the second convenience factor favors transfer.

*(3) The Place of the Alleged Wrong.* Although Plaintiffs argue the alleged wrong occurred only in the Eastern District, the Court finds the allegedly infringing hams are sold in both the Eastern and Southern Districts. The third convenience factor, where the harm occurred, is neutral regarding transfer.

*(4) The Location of Counsel.* The location of counsel also supports transfer. Although Plaintiffs retained coun-

sel in the Eastern District, Plaintiffs' lead [*10] attorney is located in the Southern District. Defendants' lead attorneys reside in Washington, D.C., and local attorneys reside in the Eastern District. By requesting transfer, Defendants presumably do not believe the Southern District is detrimentally inconvenient. This factor also supports transfer, although courts give it relatively little weight. *See Robertson v. Kiamichi R.R. Co., 42 F. Supp. 2d 651, 658 (E.D. Tex. 1999).*

*(5) The Cost of Obtaining Witnesses' Attendance and the Availability of the Compulsory Process.* The cost of obtaining witnesses' attendance slightly favors transfer. Whether the case is tried in the Eastern or Southern District, out-of-state witnesses would require overnight accommodations. The majority of identified potential witnesses would require overnight accommodations if trial is in Tyler, but not if trial is in Houston. The availability of the compulsory process is neutral regarding transfer. The parties may compel any witness residing in Texas to attend trial in either the Eastern or Southern District. *FED. R. Civ. P. 45; Mohamed, 90 F. Supp. 2d at 778.* Transfer within the state would not aid in compelling attendance [*11] by out-of-state witnesses. To the extent that more witnesses would require overnight accommodations in Tyler than in Houston, this factor slightly favors transfer.

*(6) The Accessability and Location of Sources of Proof.* Accessibility and location of sources of proof also slightly favor transfer. Plaintiffs are located in the Houston area and proof regarding the validity of their patent is likely located there. Defendants challenge the validity of Plaintiffs' patent by arguing that Plaintiffs failed to identify all inventors in the patent application, and the unnamed inventors are located in Beaumont. Thus, proof regarding the patent's validity may also be located in Beaumont, which is within 100 miles of Houston. Proof regarding how Defendants process their hams and whether that process infringes on the Plaintiffs' patent is likely located out- of-state at Defendants' headquarters. Evidence concerning the market effects of infringement is likely to be found where the hams are sold--both in the Eastern and Southern Districts. Weighing these considerations, this factor also slightly favors transfer.

*(7) The Possibility of Delay and Prejudice if Transfer is Granted.* Because Judge [*12] Werlein has already construed this patent, any scheduling delay caused by transfer is likely to be offset by his familiarity with the patent. This final convenience factor also favors transfer.

## CONCLUSION

In this case, all factors balanced together substantially weigh in favor of transfer. Public interest considerations, most notably concerns for judicial economy and

2004 U.S. Dist. LEXIS 30327, *

the prospect of inconsistent claim constructions, power-fully favor transfer. Further, the parties' interest factors are either neutral or support transfer. After careful re-view, no factors overcome the significant public interest considerations to justify retaining this case.

Accordingly, for the aforementioned reasons; the Court **GRANTS** Defendants' Motion to Transfer to the Southern District of Texas and **ORDERS** the case trans-ferred to the docket of The Honorable Ewing Werlein, Jr. in the Southern District of Texas.

So **ORDERED** and **SIGNED** this 25 day of August, 2004.

LEONARD DAVIS

UNITED STATES DISTRICT JUDGE

# EXHIBIT B

LEXSEE 2004 U.S. DIST. LEXIS 17218



Analysis
As of: Jul 06, 2007

**GUIDANT CORPORATION, CARDIAC PACEMAKERS, INC., GUIDANT
SALES CORPORATION and MIROWSKI FAMILY VENTURES, L.L.C., Plain-
tiffs, v. ST. JUDE MEDICAL, INC. and PACESETTER, INC., Defendants.**

**Civ. No. 04-067-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 17218*

**August 27, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion to strike denied by
*Guidant Corp. v. St. Jude Med., Inc., 2004 U.S. Dist.
LEXIS 23470 (D. Del., Oct. 25, 2004)*

**DISPOSITION:**    [*1] Defendants' motion to transfer
denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiffs sued for a de-
claratory judgment of patent infringement. The patent at
issue concerned a new method to treat congestive heart
failure. Plaintiffs later filed a second patent infringement
in the District of Minnesota. The patent at issue was di-
rected to cardiac leads that travel through veins to the
heart. Plaintiffs filed an amended complaint in the instant
action. Defendants moved to transfer venue to the Dis-
trict of Minnesota.

**OVERVIEW:** Weighing the arguments against the Ju-
mara balancing test, he court found that the asserted
public and private advantages of moving the case to the
District of Minnesota were insufficient. Although two of
the parties were headquartered in Minnesota, there was
also evidence that all parties conducted business on a
nationwide basis and were not restricted in any way from
traveling to Delaware. Defendants argued that the public
and private factors favored transfer yet offered nothing
particularly burdensome of fact specific. In the absence
of any particular or unusual circumstances, the concern
for judicial economy did not warrant a transfer of the
case. Moreover, defendants' concern for judicial econ-

omy actually operated against a transfer. Assuming that
the technology at issue in the Minnesota and the instant
actions involved essentially the same parties and patents
and involved the same legal theories, under the "first
filed rule," the instant court, where the first case was
filed, would not be compelled to transfer the case. In-
stead, the second filed Minnesota case would be ripe for
transfer to the instant court.

**OUTCOME:** Defendants' motion to transfer venue was
denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Venue > Federal Venue Transfers >
General Overview*
[HN1] Under *28 U.S.C.S. § 1404 (a)*, a district court may
transfer any civil action to any other district where the
action might have been brought for the convenience of
parties and witnesses and in the interests of justice. Con-
gress intended through *§ 1404* to place discretion in the
district court to adjudicate motions to transfer according
to an individualized, case-by-case consideration of con-
venience and the interests of justice.

*Civil Procedure > Venue > Federal Venue Transfers >
General Overview*
[HN2] The burden of establishing the need to transfer
rests with the movant to establish that the balance of
convenience of the parties and witnesses strongly favors

2004 U.S. Dist. LEXIS 17218, *

the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*

[HN3] The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*

[HN4] The United States Court of Appeals for the Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. Although emphasizing that there is no definitive formula or list of factors to consider, the court has identified potential factors it characterized as either private or public interests. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > Concurrent Jurisdiction*
*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
*Governments > Courts > Judicial Comity*

[HN5] More than fifty years ago, the United States Court of Appeals for the Third Circuit adopted the "first-filed rule" where in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it. Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. The rule encourages sound judicial administration and promotes comity among federal courts of equal rank. The decision to transfer or stay the second action is within the discretion of the trial court.

**COUNSEL:** For GUIDANT CORPORATION, CARDIAC PACEMAKERS, INC., GUIDANT SALES CORPORATION, MIROWSKI FAMILY VENTURES L.L.C., plaintiffs: Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE.

For ST JUDE MEDICAL INC., PACESETTER INC., defendants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For ST JUDE MEDICAL INC., PACESETTER INC., counter-claimants: John W. Shaw, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For GUIDANT CORPORATION, CARDIAC PACEMAKERS, INC., GUIDANT SALES CORPORATION, MIROWSKI FAMILY VENTURES L.L.C., counter-defendants: Frederick L. Cottrell, III, Richards, Layton & Finger, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINION BY:** Sue L. Robinson

**OPINION**

**MEMORANDUM ORDER**

At Wilmington this 27th day of August, 2004, having reviewed defendants' motion to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 27) is denied, for the reasons that follow:

1. **Introduction.** On February 2, 2004, Guidant Corporation, Cardiac Pacemakers, Inc., Guidant Sales Corporation and Mirowski Family Ventures, L.L. [*2] C. (collectively, "plaintiffs"), filed this action for declaratory judgment of patent infringement against St. Jude Medical, Inc. and Pacesetter, Inc. (collectively, "defendants"). (D.I. 1) The patent-in-suit is United States Patent Number RE38, 119 ("the '119 patent"). [1] This patent is "directed to a new way to treat congestive heart failure ("CHF"), which occurs when the heart muscle is too weak to pump blood effectively through the body." (D.I. 34 at p. 3) Plaintiffs allege that defendants infringe the

2004 U.S. Dist. LEXIS 17218, *

'119 patent by making and selling congestive therapy products that provide cardiac resynchronization therapy ("CRT") to treat CHF. [2] (D.I. 28)

> 1  The '119 patent is the subject of litigation presently before the court in *Medtronic v. Guidant,* Civ. No. 03-848-SLR (D. Del.). Although both sides expend much energy arguing the relevance of the *Medtronic* case to the issue of transfer at bar, the court is unimpressed by these considerations.

> 2  The accused devices are St. Jude's EpicTM HF implantable cardioverter defibrillator, AtlasTM HF implantable cardioverter defibrillator, and FrontierTM pacemaker device. (D.I. 28)

[*3] On February 24, 2004, Cardiac Pacemakers, Inc. filed a second patent infringement action in the District of Minnesota against defendants St. Jude Medical, Inc. and Pacesetter, Inc. ("the Minnesota Action"). (D.I. 29, Ex. 5, *Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc.,* C.A. No. 04-1016 JMR/FLN) The patent-in-suit is *United States Patent No. 5,755,766* ("the *'766 patent*"). [3] The *'766 patent* is directed to cardiac leads that travel though veins to the heart. (D.I. 34)

> 3  The accused products are St. Jude's QUICK-SITE TM 1056 K pacing lead used with St. Jude's Epic HF, Atlas HF and Frontier devices. (D.I. 28)

Defendants moved to transfer this case to the United States District Court for the Southern District of Indiana on March 9, 2004. (D.I. 11) Defendants argued that the interests of justice strongly favored having all cases relating to the accused products heard before the United States District Judge David F. Hamilton. Defendants argued that Judge Hamilton was "particularly well-suited to fill that [*4] role because he had recently presided over the lengthy trial of a prior suit brought by plaintiff Guidant involving four other patents issued to Dr. Morton Mower, the alleged inventor of the '119 patent in suit." [4] (D.I. 28 at 8)

> 4  According to defendants:

>> The judgment of invalidity as to one of the four patents is the subject of an appeal currently pending before the Federal Circuit. With respect to the other three patents, one was voluntarily dismissed before trial, Judge Hamilton's finding as to the invalidity of one has been conceded, and Judge Hamilton's summary judgment holding of invalidity of the third was affirmed by the Federal Circuit.

> (D.I. 28, fn. 2)

On April 7, 2004, plaintiffs filed their first amended complaint. (D.I. 22) Defendants' withdrew their motion to transfer to the Southern District of Indiana on April 13, 2004. [5] (D.I. 23) Defendants filed their answer to the amended complaint along with counterclaims on April 21, 2004. (D.I. 25) Defendants filed a second motion to transfer [*5] this case to the District of Minnesota on May 6, 2004. (D.I. 27, 28, 29) The matter is fully briefed. (D.I. 34, 35, 36, 38, 39)

> 5  Apparently, under the Southern District of Indiana local rules, defendants' case was not considered a related case, thereby assignment to Judge Hamilton was not possible.

**2. Background.** Plaintiff Guidant Corporation ("GC") is an Indiana corporation having its principal place of business in Indianapolis, Indiana. GC has an exclusive license to the '119 patent. Plaintiff Cardiac Pacemakers, Inc. ("CPI") is organized under the laws of Minnesota and has a principal place of business in St. Paul, Minnesota. Guidant Sales Corporation ("GSC") is an Indiana corporation with its principal place of business in Indianapolis, Indiana. GS and its subsidiaries CPI and GSC make and sell cardiac rhythm management devices. (D.I. 22) Mirowski Family Ventures, L.L.C. is a Maryland limited liability corporation that has been assigned title to the '119 patent. (*Id.*)

**3.** Defendant St. Jude Medical, [*6] Inc. ("SJM") is a Minnesota corporation with its principal place of business in St. Paul, Minnesota. Defendant Pacesetter, Inc. ("Pacesetter") is a Delaware corporation with its principal place of business in Sylmar, California. (*Id.*) Pacesetter is a subsidiary of SJM.

**4. Standard of Review.** [HN1] Under *28 U.S.C. § 1404 (a),* a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988)*; *Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp.2d 192, 208 (D. Del. 1998).*

[HN2] The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors

the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing [*7] *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*. "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25.*

[HN3] The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del 1998); Cypress Semiconductor Corp. v. Integrated Circuit Sys.,2001 U.S Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001); Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp.2d 128, 131 (D. Del. 1999)*. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).* [*8]

[HN4] The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) [*9] the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

5. **Discussion.** Defendants assert that this case and the Minnesota Action belong together. Both actions involve cardiac rhythm management (CRM) products used

to provide cardiac resynchronization therapy (CRT). According to defendants, judicial resources would be conserved by adjudicating the cases in the same forum. Since both sides have corporate headquarters in Minnesota, it would be convenient to litigate there. Defendants, also, advise that the District of Minnesota is considered to have special expertise in the technology at issue. [6]

> 6   In support, defendants reference this court's 1996 memorandum order in *Pacesetter, Inc. v. Cardiac Pacemakers,* Civ. No. 96-232-SLR (D. Del. 1996). In addressing a motion to transfer in the case between some of the same litigants at bar, the court granted the motion:

>> The court, however is persuaded that transfer of this case to the District of Minnesota is warranted because of Minnesota's familiarity with the technology at issue through past and pending litigation. It is the court's understanding that the District of Minnesota is in a posture to accept such a complex case without prejudice to plaintiffs' interest in a prompt resolution of the matter. **Under these unusual circumstances,** the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.

> (*Id.,* emphasis added)

[*10] 6. Plaintiffs argue that defendants are forum shopping and clearly do not wish to be before this court. (D.I. 34) Its first motion was to move this case before a particular judge and, when that was not possible, they withdrew the motion. Plaintiffs assert that defendants have failed to present legitimate reasons to transfer from its choice of forum. Plaintiffs also request that fees and costs associated with the preparation of its response to the motions be awarded.

7. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted public and public advantages of moving the case to the District of Minnesota are insufficient. Although two of the parties are headquartered in Minnesota, there is also evidence that all parties conduct business on a nationwide basis and are not restricted in any way from traveling to Delaware. Defendants argue that the public and private factors favor transfer yet offer nothing particularly burden-

2004 U.S. Dist. LEXIS 17218, *

some or fact specific. Instead, they contend that their concern for conserving judicial resources is the most compelling factor. In the absence of any particular or unusual circumstances, the concern for judicial economy does not [*11] warrant a transfer of the case.

Moreover, defendants' concern for judicial economy actually operates against a transfer. Assuming, *arguendo*, that the technology at issue in the Minnesota and the Delaware actions involve essentially the same parties and patents and involve the same legal theories, under the "first filed rule", this court, where the first case was filed, would not be compelled to transfer the case. Instead, the second filed Minnesota Action would be ripe for transfer to this court.

[HN5] More than fifty years ago, the Third Circuit adopted the "first-filed rule" where "in all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp., 122 F.2d 925, 929 (3d Cir. 1941)* (quoting *Smith v. M'Iver, 22 U.S. (9 Wheat.) 532, 6 L. Ed. 152 (1824))*. Consequently, the second filed action should be stayed or transferred to the court where the first filed action is pending. *Peregrine Corp. Peregrine Indus., Inc., 769 F. Supp. 169, 171 (E.D. Pa 1991)*; *Genfoot, Inc. v. Payless Shoesource, Inc., 2003 U.S. Dist. LEXIS 22437, Civ. No. 03-398-SLR, 2003 WL 22953183 (D. Del. 2003)*. [*12] The rule "encourages sound judicial administration and promotes comity among federal courts of equal rank." *E.E.O.C. v. University of Pennsylvania, 850 F.2d 969, 971 (3d Cir. 1988)*. The decision to transfer or stay the second action is within the discretion of the trial court. *Id. at 972, 977*. While the issue of transfer of the Minnesota Action is obviously not before the court, the caselaw reflects the overwhelming preference toward the first-filed case.

Plaintiffs, however, have not succeeded on all issues. Specifically, plaintiffs have failed to demonstrate to the court's satisfaction that an award of attorney's fees and costs is warranted at this time. Although defendants' strategic filing of motions is suspect, it does not rise to the conduct necessitating a fee award, especially when plaintiffs' own conduct, wherein the Minnesota Action was filed within weeks of this filing, suggests similar posturing.

8. **Conclusion.** For the reasons stated, defendants' motion to transfer (D.I. 27) is denied.

Sue L. Robinson

United States District Judge

# EXHIBIT C

RECEIVED ℞

SEP 27 1996

ALLEN M. TERRELL, JR.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

PACESETTER, INC.,                )
ANGEION CORPORATION,             )
                                 )
        Plaintiff,               )
                                 )
        v.                       )    Civil Action No. 96-232-SLR
                                 )
CARDIAC PACEMAKERS, INC.,        )
                                 )
        Defendant.               )

MEMORANDUM ORDER

I.  INTRODUCTION

        Plaintiff Pacesetter, Inc. ("Pacesetter") commenced
this patent infringement action on May 3, 1996, against Cardiac
Pacemakers, Inc. ("CPI").  Pacesetter alleged infringement by CPI
of three Pacesetter patents relating to implantable cardiac
pacemakers and defibrillators.  On June 20, 1996, Pacesetter and
co-plaintiff Angeion Corporation ("Angeion") filed an amended
complaint, further asserting infringement of three separate
patents relating to implantable cardiac defibrillators.  It is
alleged that CPI is making, using, offering to sell, and selling
the patented inventions as embodied in CPI's VIGOR and VENTAK
MINI series of products.  CPI is selling and/or offering to sell
these products in Delaware.

        On July 19, 1996, defendant CPI filed a motion to
transfer this suit to the District of Minnesota.  (D.I. 14)  For
the reasons that follow, the motion will be granted.

## II.  BACKGROUND

Pacesetter is a Delaware corporation having its principal place of business in Sylmar, California.  Pacesetter is a subsidiary of St. Jude, a Minnesota corporation headquartered in St. Paul, Minnesota.  Plaintiff Angeion is a Minnesota corporation with its principal place of business in Plymouth, Minnesota.

CPI is a Minnesota corporation having its principal place of business in St. Paul, Minnesota.  CPI is a wholly-owned subsidiary of Guidant Corporation which is headquartered in Indianapolis, Indiana.

It would appear that all of the parties conduct business on a nationwide basis.

## III.  ANALYSIS

Title 28 of the United States Code, section 1404(a) provides:

> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interest of justice.  Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988).  "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of

2

justice, and whether the action could have been brought in the
suggested transferee court."  SportsMEDIA Technology Corp. v.
Upchurch, 839 F. Supp. 8, 10 (D. Del. 1993).  The parties do not
dispute that both Delaware and Minnesota are proper venues.

As this court has recognized on numerous occasions,
"[a] plaintiff's choice of forum is a paramount consideration in
any determination of a transfer request, and the court should not
disturb the plaintiff's choice lightly."  The Joint Stock Society
v. Heublein, Inc., 1996 WL 471198 (D. Del. 1996) at 6.
Therefore, "the burden is on the defendants to establish that the
balance of convenience of the parties and witnesses strongly
favors the defendants."  Bergman v. Brainin, 512 F. Supp. 972,
973 (D. Del. 1981) (citing Shutte v. Armco Steel Corp., 431 F.2d
22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971)
(emphasis added)).

Defendant in this case has alleged in support of its
transfer motion that "[m]ost of the key witnesses wh[o] can be
expected to testify live more than one hundred miles from
Wilmington, Delaware;" "[m]any are subject[, however,] to the
subpoena power of the District of Minnesota. . . ."  (D.I. 16 at
7-8)  Defendant concedes that most of these witnesses are
employees or ex-employees of the parties at suit (or related
parties) and does not identify any specific witness who will not
appear voluntarily.  Instead, defendant argues generally that
'[t]here is every reason to believe that no current or former
employee of Angeion or St. Jude voluntarily will consent to

3

testify at trial in Delaware (or Minnesota) unless it suits the interest of Angeion or St. Jude." (D.I. 27 at 8) The court finds such general allegations singularly unpersuasive, given the experience of this court in such matters.

Defendant also proffers the familiar argument that, because of the location of witnesses and tangible evidence, Delaware is not the most convenient trial forum. As this court has observed on previous occasions, the discovery process will take place where the witnesses and evidence are located regardless of where the trial is held. Given the advent of technological advances which have substantially reduced the burden of having to litigate a case in a distant forum, see, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc., 157 F.R.D. 215, 218 (D. Del. 1993), the convenience argument is compelling only in circumstances where the moving party truly is a local (versus a nationwide) concern. The court does not understand any of the parties to fit the former description. Therefore, this factor, when weighed against the economies related to the instant trial forum (a date certain within 21 months of filing a complex case), does not strongly favor defendant's request to transfer.

The court, however, is persuaded that transfer of this case to the District of Minnesota is warranted because of Minnesota's familiarity with the technology at issue through past and pending litigation. It is the court's understanding that the District of Minnesota is in a posture to accept such a complex

4

case without prejudice to plaintiffs' interest in a prompt resolution of the matter.  Under these unusual circumstances, the court finds that transfer will conserve judicial resources and, therefore, further the interest of justice.

## IV.  CONCLUSION

For the reasons stated, at Wilmington this 25th of September, 1996,

IT IS ORDERED that defendant's motion to transfer (D.I. 14) is granted.

_____
United States District Judge

5

# EXHIBIT D

LEXSEE 2003 U.S. DIST. LEXIS 27397



Analysis
As of: Jul 06, 2007

**ST. CLAIR INTELLECTUAL PROPERTY CONSULTANTS, INC., Plaintiff, v.
SONY CORPORATION, et al, Defendants.**

**Civil Action No. 01-557-JJF**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2003 U.S. Dist. LEXIS 27397*

**January 30, 2003, Decided**

**SUBSEQUENT HISTORY:** Partial summary judgment denied by *St. Clair Intellectual Prop. Consultants, Inc. v. Sony Corp., 2003 U.S. Dist. LEXIS 3540 (D. Del., Feb. 21, 2003)*

**PRIOR HISTORY:** *St. Clair Intellectual Prop. Consultants v. Sony Corp., 2002 U.S. Dist. LEXIS 17871 (D. Del., Sept. 3, 2002)*

**COUNSEL:** [*1] For St. Clair Intellectual Property Consultants Inc., Plaintiff: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE.

For Sony Corporation, Sony Electronics Inc, Sony Corporation of America, Defendants: Josy W. Ingersoll, LEAD ATTORNEY, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For Sony Corporation, Sony Electronics Inc, Sony Corporation of America, Counter Claimants: Josy W. Ingersoll, LEAD ATTORNEY, Young, Conaway, Stargatt & Taylor, Wilmington, DE.

For St. Clair Intellectual Property Consultants Inc., Counter Defendant: Frederick L. Cottrell, III, LEAD ATTORNEY, Richards, Layton & Finger, Wilmington, DE.

**JUDGES:** Joseph J Farnan, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Joseph J Farnan

**OPINION**

*MEMORANDUM ORDER*

Pending before me is a Motion To Stay Pending The Outcome Of Reexamination Proceedings (D.I. 202) filed by the Defendants ("Sony"). The Plaintiff ("St. Clair") opposes the stay.

In considering Sony's motion, I have read the papers submitted by the parties, The Patent Act of 1980, Robert L. Harmon's discussion of the Reexamination Procedure in his treatise, *Patents and The Federal Circuit*, (5th ed. 2001), and the four [*2] (4) District of Delaware cases cited by the parties, *Freeman v. Minnesota Mining & Mftr. Comp., 661 F. Supp. 886 (D. Del. 1987)*; *United Sweetener USA, Inc. v. Nutrasweet Co., 766 F. Supp. 212 (D.Del. 1991)*; *Rohm & Haas Co. v. Brotech Corp., C.A. No. 90-109 (JJF), 1992 U.S. Dist. LEXIS 21721 (D.Del. July 16, 1992)*; and *Gioello Enterprises, Ltd. v. Mattel, C.A. No. 99-375 (GMS), 2001 U.S. Dist. LEXIS 26158, 2001 WL 125340 (D.Del. Jan. 29, 2001)*

In support of its motion, Sony contends that "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination proceedings." *ASCII Corp. v. STD Entm't USA, Inc., 844 F. Supp. 1378, 1381 (N.D.Cal. 1994)*

Sony argues that a stay in this case is appropriate because: 1) St. Clair produces no products under the patents-in-suit, and therefore, money damages will be an adequate remedy for any delay a stay might cause; 2) a stay permitting reexamination has the potential to moot the entire action, or at least simplify it dramatically.

2003 U.S. Dist. LEXIS 27397, *

St. Clair responds that a stay is not warranted because: 1) Sony's request is made only to delay the case; 2) [*3] discovery is complete and the trial date weeks away and therefore, the delay that will result while the reexamination proceedings go forward will unduly prejudice St. Clair in the presentation of its case; 3) St. Clair argues a stay will not simplify the issues that the trial must resolve due to the "non-overlapping issues" between the reexamination and this litigation; and 4) St. Clair contends that cancellation of the patent claims is unlikely.

Courts typically cite three factors that should guide the exercise of a court's discretion when deciding whether a stay is appropriate: 1) whether the granting of a stay would cause the non-moving party to suffer undue prejudice from any delay or allow the moving party to gain a clear tactical advantage over the non-moving party; 2) whether a stay will simplify the issues for trial; and 3) whether discovery is complete and a trial date set.

Applying these factors in the context of the parties' arguments, I find that a delay in the commencement of the February 2003 trial will unduly prejudice St. Clair for the reasons it cites. I also find, as St. Clair contends, that it is unlikely the pending reexamination proceedings will do much to simplify [*4] the issues that need to be tried in this case. And finally, the fact that the instant motion was filed after the close of discovery and weeks before the commencement of the scheduled trial date is persuasive.

In addition to the three traditional factors, I have also considered whether a stay would substantially contribute to or result in a final disposition of this case or substantially contribute to a more efficient and less costly trial.

In this regard, I find that a stay will do neither because: 1) This case, like many, is about "the injunction." If successful at trial, St. Clair will aggressively seek an injunction against Sony. Sony will aggressively oppose St. Clair's efforts. In my view, the pending reexamination proceeding will not do much to contribute to this end game strategy. 2) The reexaminations requested by Sony, are more about the claim interpretation provided by me than any prior art contentions. 3) Lastly, I am persuaded that neither St. Clair nor Sony will be unduly prejudiced by proceeding to trial now, because I am convinced that a trial and appeal is what will finally resolve the parties' dispute.

NOW THEREFORE, FOR THE REASONS DISCUSSED, IT IS HEREBY ORDERED [*5] that Sony's Motion To Stay Pending The Outcome Of Reexamination Proceedings (D.I. 202) is **DENIED.**

January 30, 2003

DATE

Joseph J Farnan

UNITED STATES DISTRICT JUDGE

# EXHIBIT E

**PUBLIC COPY**

CASE NO. 2007-1262

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

**BALDWIN GRAPHIC SYSTEMS, INC.,**

**FILED**
**U.S. COURT OF APPEALS FOR**
**THE FEDERAL CIRCUIT**

JUN 1 9 2007

**JAN HORBALY**
**CLERK**

Plaintiff-Appellant,

v.

**SIEBERT, INC.,**

Defendant-Appellee.

---

Appeal from the United States District Court for the
Northern District of Illinois in 03 C 7713, Senior Judge James B. Moran

---

**BRIEF OF PLAINTIFF-APPELLANT**

---

Thomas B. Kenworthy
Kenneth J. Davis
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
(215) 963-5000

Attorneys for Plaintiff-Appellant
Baldwin Graphic Systems, Inc.

---

## CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellant Baldwin Graphic Systems, Inc. certifies the following:

1.      The full name of every party represented by me is:

   Baldwin Graphic Systems, Inc.

2.      The name of the real parties in interest represented by me are:

   Baldwin Graphic Systems, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

   Baldwin Americas Corporation

   Baldwin Technology Company, Inc.

4.      The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or are expected to appear in this Court are:

   MORGAN, LEWIS & BOCKIUS LLP
   Thomas B. Kenworthy
   Kenneth J. Davis

   MORGAN & FINNEGAN, L.L.P.
   James W. Gould
   Keith J. McWha
   Kimber L. Blackburn

   JOHNSON & BELL, LTD.
   Joseph R. Marconi
   Christopher W. Loweth
   Jack T. Riley, Jr.

**C-1**

June 15, 2007

Thomas B. Kenworthy
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103-2921
Telephone: (215) 963-5702
Facsimile: (215) 963-5001

C-2

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ........................................................... C-1

TABLE OF AUTHORITIES.................................................................. iii

STATEMENT OF RELATED CASES .................................................. vi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE .............................................................. 1

STATEMENT OF PERTINENT FACTS ................................................ 3

SUMMARY OF THE ARGUMENT...................................................... 6

ARGUMENT ....................................................................................... 7

    A.    Standards Of Review ............................................................. 7

    B.    General Claim Construction Principles ................................. 8

    C.    The District Court Erred In Its Construction
        Of The Phrase "A Pre-Soaked Fabric Roll" ....................... 11

    D.    The Term "Sealed Sleeve" Is Not Properly
        Construed To Mean "Heat-Sealed Sleeve" ........................ 16

    E.    After Twice Declining To Do So, The District
        Court Erroneously Construed The Asserted Claims
        Of The '976 Patent To Include Unclaimed Process
        Limitations ........................................................................ 18

**Page**

    (1)   The Phrase "A Reduced Air Content Cleaning
Fabric" In Asserted Claims 1, 7, 9 And 12 Does
Not Address The Method By Which The Air
Content Of The Fabric Is Reduced...........................................18

    (2)   Although Asserted Claims 14, 23 And 25 Are
Method Claims Which Do Involve The Step
Of "Reducing Air Content Of A Strip Of
Cleaning Fabric," None Of Those Claims
Requires The Air Content To Be Reduced
Before The Cloth Is Wound Onto A Core.................................23

F.    Under Proper Claim Constructions The Grants Of Summary
Judgment Can Not Stand .................................................................29

CONCLUSION ...........................................................................................31

ADDENDA

    Addendum A   -   Judgment entered April 22, 2007

    Addendum B   -   Memorandum Opinion and Order dated
                                        July 28, 2005

    Addendum C   -   Memorandum Opinion and Order dated
                                          March 21, 2007

    Addendum D   -   U.S. Patent No. Re. 35,976

    Addendum E   -   U.S. Patent No. 5,974,976

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, *modified on reh'g*, 131 F.3d 1019 (Fed. Cir. 1997) ............................... 9, 14, 15

*Altiris v. Symantec Corp.*, 318 F.3d 1363 (Fed. Cir. 2003) ............................... 14, 30

*Bell & Howell Document Management Prods. Co. v. Altek Systems*, 132 F.3d 701 (Fed. Cir. 1997) ............................... 11

*Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371 (Fed. Cir. 2004) ............................... 9, 24

*CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225 (Fed. Cir. 2003) ............................... 12

*Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ............................... 7

*E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364 (Fed. Cir. 2003) ............................... 27

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343 (Fed. Cir. 2005) ............................... 12

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ) ............................... 25, 26

*Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996) ............................... 14

*Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363 (Fed. Cir. 2004) ............................... 9

**Page(s)**

*Internet America, Inc. v. Kee-Vet Laboratories, Inc.,*
887 F.2d 1050 (Fed. Cir. 1989) ................................................... 10

*Johnson Worldwide Associates, Inc. v. Zebco Corp.,*
175 F.3d 985 (Fed. Cir. 1999) ............................................... 9, 24

*KCJ Corp. v. Kinetic Concepts, Inc.,* 223 F.3d 1351
(Fed. Cir. 2000) ............................................................... 12, 14

*Loral Fairchild Corp. v. Sony Corp.,* 181 F.3d 1313
(Fed. Cir. 1999) ...................................................................... 27

*Markman v. Westview Instruments, Inc.,* 517 U.S.
370 (1996) ................................................................................ 8

*Minnesota Mining & Mfg. Co. v. Johnson & Johnson
Orthopaedics, Inc.,* 976 F.2d 1559 (Fed. Cir. 1992) .................... 10

*Nazomi Communications, Inc. v. ARM Holdings PLC,*
403 F.3d 1364 (Fed. Cir. 2005) ........................................ 7, 8, 28

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005) ......... 8, 9, 10, 28

*Scanner Technologies Corp. v. ICOS Vision Systems Corp.,
N.V.,* 365 F.3d 1299 (Fed. Cir. 2004) ........................................ 12

*SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.,*
242 F.3d 1337 (Fed. Cir. 2001) ............................................... 25

*Scripps Clinic & Research Foundation v. Genentech, Inc.,*
927 F.2d 1565 (Fed. Cir. 1991) ........................................... 8, 23

*Semitool, Inc. v. Dynamic Micro Systems Semiconductor
Equipment GmbH,* 444 F.3d 1337 (Fed. Cir. 2006) ....................... 8

*Smith v. Snow,* 294 U.S. 1, 11 (1935) ...................................... 25

**Page(s)**

*SRI Int'l, Inc.  v. Matsushita Elec. Corp. of America,*
   775 F.2d 1107 (Fed. Cir. 1985) ..................................................... 27

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,*
   279 F.3d 1357 (Fed. Cir. 2002) ................................................. 12, 14

*Texas Instruments, Inc. v. ITC,* 805 F.2d 1558
   (Fed. Cir. 1986) ....................................................................... 10, 28

*Vanguard Products Corp. v. Parker Hannifin Corp.,*
   234 F.3d 1370 (Fed. Cir. 2001) ...................................................... 23

*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576
   (Fed. Cir. 1996) ....................................................................... 10, 11

*Watts v. XL Sys., Inc.,* 232 F.3d 877 (Fed. Cir. 2000) ........................... 25

*White v. Dunbar,* 119 U.S. 47 (1886) ............................................... 9

## STATUTES

28 U.S.C. § 1295(a)(1) ................................................................ 1

28 U.S.C. § 1331 ...................................................................... 1

28 U.S.C. § 1338(a) ................................................................... 1

## RULES OF COURT

Fed. R. Civ. P. 56(c) ................................................................. 8

## MISCELLANEOUS

MPEP § 2173.05(e) .................................................................. 13

- v -

## STATEMENT OF RELATED CASES

No appeal in or from the civil action in the lower courts was previously before this or any other appellate court.

There are no known cases pending in the United States Supreme Court, this Court or any other Circuit Court of Appeals that will directly affect or will be directly affected by this Court's decision in this case.  Litigation involving U.S. Patent No. Re. 35,976 and U.S. Patent No. 5,974,976 is pending in the United States District Court for the District of Delaware, entitled *Baldwin Graphic Systems, Inc. v. Fiberweb Simsonville, Inc. and Fiberweb, Inc.*, Civil Action No. 1:06-CV-77-JJF, which might be directly affected by the Court's decision on the issues of claim construction presented by this appeal.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 & 1338(a) and entered a final judgment on March 22, 2007. This timely appeal by plaintiff-appellant Baldwin Graphic Systems, Inc. ("Baldwin") was filed on April 6, 2007. This Court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

(1)    Whether the district court erred in its constructions of the terms "a pre-soaked fabric roll," "sealed sleeve," "reduced air content cleaning fabric," and "reducing air content of a strip of cleaning fabric."

(2)    Whether the district court erred in granting summary judgment that Siebert, Inc. ("Siebert") did not infringe U.S. Patent No. Re. 35,976.

(3)    Whether the district court erred in granting summary judgment that Siebert did not infringe U.S. Patent No. 5,974,976.

## STATEMENT OF THE CASE

Baldwin filed this action on October 30, 2003, alleging that Siebert had willfully infringed U.S. Patent No. Re. 35,976 ("the Reissue patent"), U.S. Patent No. 5,974,976 ("the '976 patent") and U.S. Patent No. 6,035,483 ("the '483 patent"), all of which relate to systems for cleaning a cylinder of a printing press

- 1 -

using a strip of cleaning fabric. [JA78-JA88]. Ultimately, Baldwin determined not to pursue the claims with respect to the '483 patent.

On January 21, 2005, Siebert moved for summary judgment of non-infringement of the Reissue patent and the '976 patent. [JA62, item 32]. The district court conducted a *Markman* hearing to construe disputed claim terms on June 16, 2005. [JA65, item 73]. In a Memorandum Opinion and Order dated July 28, 2005, the district court construed two terms of claim 32 of the Reissue patent: "a pre-soaked fabric roll," and "sealed sleeve." The term "a pre-soaked fabric roll" was construed to mean a single pre-soaked fabric roll. [JA10]. The term "sealed sleeve" was construed to mean "heat-sealed" sleeve. [JA14]. Based on these constructions, the district court granted Siebert's motion for summary judgment of noninfringement with respect to the Reissue patent. [JA21]. The district court also construed the term "reduced air content fabric roll" found in all asserted claims of the '976 patent and held that "[t]he term 'reduced air content cleaning fabric' does not exclude fabric whose air content has been reduced by a method of winding or rewinding the fabric on a roll." [JA17]. In light of this ruling, the district court denied Siebert's motion for summary judgment with respect to the '976 patent. [JA18]. Siebert moved for reconsideration of the construction of the term "reduced air content cleaning fabric," and that motion was denied. [JA2804-JA2810].

- 2 -

The Final Pretrial Order was signed on August 25, 2006. [JA69, item 122]. Subsequent thereto, on December 18, 2006, Siebert filed a motion for summary judgment of invalidity of the '976 patent and/or alternatively to revisit the Court's claim construction. [JA70, item 134]. In a Memorandum Opinion and Order dated March 21, 2007, the district court did revisit its claim construction of the term "reduced air content cleaning fabric" and held that the term "reduced air content cleaning fabric" means a fabric whose air content has been reduced by some method **prior to being wound on a roll**. [JA36]. Based on its new construction, the district court granted summary judgment of noninfringement of the '976 patent. [JA37]. Final judgment was entered on March 22, 2007 [JA1] and this timely appeal was filed on April 6, 2007. [JA108].

## STATEMENT OF PERTINENT FACTS

Baldwin is the owner by assignment of the Reissue patent and the '976 patent.[1/] The Reissue patent originally issued as U.S. Patent No. 5,368,157 ("the '157 patent"). [JA111-JA117]. All of the claims of the '157 patent, which issued on November 29, 1994, included a limitation in which a heat-sealed plastic sleeve was disposed around a fabric roll. [JA116-JA117]. On April 10, 1995, the

---

[1/]   Copies of the Reissue patent and the '976 patent can be found, respectively, at Addendum D and Addendum E hereto.

inventors filed a reissue application believing that the claims of the '157 patent

failed to cover the inventive subject matter of their pre-packaged, pre-soaked

cleaning system in the broadest scope to which they were entitled. [JA399,

JA421]. New claims were added, all of which included a limitation in which the

plastic sleeve around the fabric rolls was required to be sealed, but not necessarily

heat-sealed. [JA412-JA418]. One of those new claims eventually issued as claim

32 of the Reissue patent. That is the sole claim of the Reissue patent that is being

asserted against Siebert, and it reads as follows:

> 32.    A pre-packaged, pre-soaked cleaning system for
> use to clean the cylinder of printing machines comprising
> in combination:
>
> (1)    a pre-soaked fabric roll saturated to equilibrium
> with cleaning solvent disposed around a core, said fabric
> roll having a sealed sleeve which can be opened or
> removed from said fabric roll for use of said fabric roll,
> disposed therearound, and said system including
>
> (2) means for locating said fabric roll adjacent to and
> operatively associated with a cylinder to be cleaned.

[JA45].

The '976 patent issued on November 2, 1999. [JA46]. A Certificate

of Correction with respect thereto issued on October 22, 2002, correcting language

in claim 1. [JA56]. The '976 patent has 26 claims. Independent claim 1 and

claims 2 through 13 that directly or indirectly depend from claim 1 are apparatus

claims. [JA54]. Independent claim 14 and claims 15 through 26 that directly or

indirectly depend from claim 14 are method claims. [JA54-JA55]. Claims 1, 7,

9, 12, 14, 23 and 25 are being asserted against Siebert. The independent claims,

as corrected, read as follows:

> 1.  A device for cleaning a cylinder of a printing press comprising:
>     a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent; and
>     a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperature, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.
>
> 14. A method for making a cleaning system comprising:
>     reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric; and
>     contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

[JA54].

Baldwin launched its new patented technology for cleaning cylin-

ders of printing presses – PREPAC® pre-packaged, pre-soaked cleaning rolls

and IMPACT® blanket washing units – in late 1995 and early 1996, respectively.

[JA1215]. Baldwin's PREPAC® product had no discernible competition in the

marketplace until the last half of 2002 when Siebert began to sell pre-packaged,

- 5 -

pre-soaked cleaning rolls as direct replacements and substitutes for Baldwin's patented products, to be used in already installed Baldwin IMPACT® machinery for the same printer cleaning use as Baldwin's products. [JA1215, JA1219, JA1220].

Siebert's pre-soaked fabric rolls are packaged such that more than one roll is contained in the plastic bags that surround the rolls. Although none of Siebert's bags are heat-sealed, some of the bags containing three pre-soaked fabric rolls that are accused of infringing the Reissue patent were zip-locked. [JA1318]. In Siebert's products accused of infringing the Reissue patent and the '976 patent, the cleaning fabric is wound onto a roll under sufficient tension to reduce the air content of the fabric and is then contacted with cleaning solvent. [JA1326].

## SUMMARY OF THE ARGUMENT

The district court erroneously construed the term "a pre-soaked fabric roll" to mean a single pre-soaked fabric roll. The article "a" receives a singular interpretation only in rare circumstances when the patentee evinces a clear intent that it be so limited, and this is not such a rare circumstance.

The district court erroneously construed the term "sealed sleeve" to mean "heat-sealed sleeve." This construction is inconsistent with the plain language of the claim and the entire purpose of the reissue proceedings, which was

- 6 -

to broaden the scope of the original claims that had been limited to a "heat-sealed" sleeve.

The district court erroneously construed the term "reduced air content cleaning fabric," as used in both apparatus and method claims, to mean a fabric whose air content has been reduced by some method prior to being wound on a roll. This construction has no textual support in the language of the claims and was not even purportedly based on prosecution disclaimer. Neither in the specification nor the prosecution history did the inventors evince a clear intent to limit the manner in which the air content of the cleaning fabric is reduced, so long as it is reduced before the fabric is saturated with solvent.

The district court's grants of summary judgment were grounded on the court's erroneous claim constructions. With proper claim constructions, those grants of summary judgment must be vacated.

## ARGUMENT

### A.    Standards Of Review

Claim construction is a question of law which this Court reviews *de novo*. *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). No deference is given to the decision of the district court. *Nazomi Communications, Inc. v. ARM Holdings PLC*, 403 F.3d 1364, 1367 (Fed. Cir. 2005). This Court also reviews grants of summary judgment *de novo*, with-

out deference. *Id.* Summary judgment is properly granted if, when viewing the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment in its favor as a matter of law. *Id.*; Fed. R. Civ. P. 56(c).

**B.    General Claim Construction Principles**

The construction of the claims of a patent is a question of law to be determined by the Court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996). Claim construction is "a way of elaborating the normally terse claim language: in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991).

When construing claims, the Court must first "look to the words of the claims themselves . . . to define the scope of the patented invention." *Semitool, Inc. v. Dynamic Micro Systems Semiconductor Equipment GmbH*, 444 F.3d 1337, 1346 (Fed. Cir. 2006). The words of a patent claim are to be given the ordinary and customary meaning they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-14 (Fed. Cir. 2005) (en banc). Sometimes "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges." *Id.* at 1314.

- 8 -

Although the meaning of claim terms must be considered from the perspective of one of ordinary skill in the art, that does not mean that the inventor's choice of words may be ignored. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1371 (Fed. Cir. 2004). Indeed, "the language of the claim frames and ultimately resolves all issues of claim interpretation." *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023, *modified on reh'g.*, 131 F.3d 1019 (Fed. Cir. 1997). "Because the patentee is required to 'define precisely what his invention is,' . . . it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.' " *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)). Accordingly, proper claim construction must find some textual support within the claim language itself. *Johnson Worldwide Associates, Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999). The Court may not, in the name of claim construction, rewrite patent claims to either eliminate language the patentee chose to include or to add language that the patentee did not choose to include. *See Chef America, Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("This court . . . repeatedly and consistently has recognized that courts may not rewrite patent claims . . . . ").

The specification should always be consulted in ascertaining the meaning and scope of claims. *Phillips*, 415 F.2d at 1315. Although the specification is properly consulted to ascertain the meaning of the claim terms, "[t]his

is not, however, to be confused with reading into a claim a limitation appearing in the specification but not in the claim." *Minnesota Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1566 (Fed. Cir. 1992). This Court "has consistently adhered to the proposition that courts cannot alter what the patentee has chosen to claim as his invention, that limitations appearing in the specification will not be read into the claim." *Internet America, Inc. v. Kee-Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989). This Court has also "cautioned against limiting the claimed invention to preferred embodiments or specific examples of the specification." *Texas Instruments, Inc. v. ITC*, 805 F.2d 1558, 1563 (Fed. Cir. 1986) (citations omitted); *see also Phillips*, 415 F.3d at 1323.

In addition to the specification, consideration should also be given to the patent's prosecution history when construing claims. *Phillips*, 415 F.3d at 1317. The prosecution history provides evidence of how the PTO and the inventor understand the patent. *Id.* Another purpose in consulting the prosecution history is to exclude any interpretation that was disclaimed during prosecution. *Id.* Dictionaries may also be considered if the Court deems it helpful in determining the true meaning of language used in the patent claims. *Id.* at 1318.

Ordinarily, intrinsic evidence is sufficient to resolve any ambiguities and determine the meaning of disputed claim terms. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). When, however, claim lan-

- 10 -

guage remains genuinely ambiguous after consideration of the intrinsic evidence, the Court in its discretion may consider extrinsic evidence such as expert opinion testimony. *Bell & Howell Document Management Prods. Co. v. Altek Systems*, 132 F.3d 701, 706 (Fed. Cir. 1997). Extrinsic evidence in general, and expert testimony in particular, may not be used to vary or contradict the claim language. *Vitronics*, 90 F.3d at 1584. Moreover, opinion testimony of experts should be treated with the utmost caution and "may only be relied upon if the patent documents, taken as a whole are insufficient to enable the court to construe disputed claim terms. Such instances will rarely, if ever, occur." *Id.* at 1585. Under no circumstances, however, are "conclusory, unsupported assertions by experts as to the definition of a claim term . . . useful to a court." *Id.*

## C.     The District Court Erred In Its Construction Of The Phrase "A Pre-Soaked Fabric Roll"

One limitation of asserted claim 32 of the Reissue patent is the phrase "comprising . . . a pre-soaked fabric roll." The district court "construe[d] the term 'a pre-soaked fabric roll' in claim 32 of the Reissue patent to mean a single pre-soaked fabric roll." [JA10]. Baldwin respectfully submits that this construction is erroneous and inconsistent with the precedents of this Court, including a recent decision which had not been handed down at the time of the district court decision.

- 11 -

"It is well settled that the term 'a' or 'an' ordinarily means 'one or more.' " *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1232 (Fed. Cir. 2003) quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002). "Unless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in **rare circumstances** when the patentee evinces a **clear intent** to so limit the article." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (emphasis added); *see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350 (Fed. Cir. 2005).

Claim 32 of the Reissue patent is **not** specific as to the number of fabric rolls of which the pre-packaged cleaning system is comprised. There is nothing in the claim language that contravenes the meaning of "one or more" fabric rolls. "Indeed, the very use of the article 'a[]' indicates, at least presumptively, that the patentees intended the claim language [a pre-soaked fabric roll] to mean one or more [fabric rolls] . . . . " *Scanner Technologies Corp. v. ICOS Vision Systems Corp., N.V.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004).

Siebert argued in the district court that the claim term "a pre-soaked fabric roll" should be restricted to a single pre-soaked roll because of the further claim language "said fabric roll having a sealed sleeve . . . disposed therearound." Siebert contended that it would be impossible to have a sleeve disposed around

- 12 -

more than one roll in the sleeve. The district court seemed to accept this argument [JA9], but gave no explanation as to why it would be impossible for the sleeve to be disposed around more than one roll. Clearly, a sleeve could indeed be disposed around any number of rolls.

Since the meaning of "a pre-soaked fabric roll" should have the same meaning in claim 32 as it does in claim 1, the question arises as to whether the plastic sleeve could also be "in intimate contact with" more than one roll. Again, without explaining why, the district court seemed to believe that this would also be impossible. [JA9]. However, it clearly is not impossible for the plastic sleeve to be in intimate contact with a number of fabric rolls. Consider, for example, a package of five hot dogs in which the sealed plastic packaging is in intimate contact with each of the hot dogs. There is nothing in the language of claim 1 or in the specification of the Reissue patent that would require that the sleeve be in intimate contact with the entire surface of the fabric rolls.

The district court also believed that the later use of the phrase " 'said fabric roll' implies that the prior reference to 'a fabric roll' should be read as a single roll, not one or more rolls, in order to avoid confusion." [JA8]. The term "said," however, is an accepted term used to refer back to a previously cited object. *See, e.g.,* MPEP § 2173.05(e). [JA2423]. Thus, "said fabric roll" simply means "said one or more fabric rolls." By no means does the use of the phrase "said

- 13 -

fabric roll" imply that the prior reference to "a fabric roll" should be read as a single roll. *See Tate Access*, 279 F.3d at 1370 (a reference in claim 8 of the patent-in-issue to "said inner layer" referred to the phrase "an inner layer" which appeared earlier in the claim, and the phrase "an inner layer" was construed to mean "one or more layers."); *see also Altiris v. Symantec Corp.*, 318 F.3d 1363, 1373-74 (Fed. Cir. 2003) (claim 1 of patent-in-suit called for a test that included "reading a boot selection flag and comparing said boot selection flag with a known flag setting" – held that "a boot selection flag" encompasses the use of multiple flags).

Although the specification of the Reissue patent only specifically describes embodiments with one fabric roll in the sleeve, that is not a proper basis to eschew the general rule and construe the phrase "a pre-soaked fabric roll" as meaning only a single pre-soaked fabric roll. *See Altiris*, 318 F.3d at 73.  There is nothing in the specification of the Reissue patent indicating that having only one fabric roll in the sealed sleeve was important to the invention.

This case is distinguishable from the decisions in *Insituform Technologies, Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996) and *AbTox*, relied upon by the district court.  In *Insituform*, the Court "restricted the claim to a singular interpretation because 'the claim is specific as to the number of elements (one cup) and adding elements eliminates an inherent feature (discontinuous vacuum) of the claim.' " *KCJ Corp.*, 223 F.3d at 1357 (quoting *Insituform*).

- 14 -

The claims at issue in *AbTox* specified "a metallic gas-confining chamber." The issue in the case was whether the various regions and functions of "said chamber" as specified in the claims had to be within a single gas-confining chamber. The Court found that the specification's description of various "zones denote regions and functions within the **same** chamber, rather than multiple gas-confining chambers." *AbTox*, 122 F.3d at 1024 (emphasis added). The Court thus affirmed the grant of summary judgment of noninfringement by a competitor's product in which the plasma was generated in a chamber that was separate from the chamber in which the sterilization takes place. *Id.* at 1022-27. The *AbTox* Court did not suggest that a device used in sterilizing medical instruments in plasma having more than one gas-confining chamber, each having all of the requisite zones, would fall outside the claims.

In contrast to *AbTox*, Baldwin does not suggest that in the context of claim 32 of the Reissue patent certain of the claim requirements could be met by one fabric roll and other requirements satisfied by a separate fabric roll. **Each** covered fabric roll would have to have **all** of the claimed elements – each would have to be (1) pre-soaked; (2) saturated to equilibrium with cleaning solvent; (3) disposed around a core; and (4) have a sealed sleeve disposed around it which could be opened or removed to permit use of the fabric roll.

- 15 -

There is nothing in the specification or the prosecution history of the Reissue patent that restricts the claimed "cleaning system for use to clean the cylinder of printing machines" to only one fabric roll. Baldwin did not evince a clear intent to limit the scope of claim 32 of the Reissue patent to only one fabric roll within the sealed sleeve. This is not one of the "rare circumstances" where the article "a" receives a singular interpretation. Accordingly, the phrase "a pre-soaked fabric roll" should properly be construed to mean "one or more pre-soaked fabric rolls."

D.    **The Term "Sealed Sleeve" Is Not Properly Construed To Mean "Heat-Sealed Sleeve"**

The district court held that the term " 'sealed sleeve' in claim 32 must be construed to mean 'heat-sealed sleeve.' " [JA14]. This construction is completely at odds with the precepts of claim construction established by this Court. First, the plain meaning of "sealed" is not limited to "heat-sealed." Second, there is nothing in the specification indicating that the term "sealed" was intended to mean "heat-sealed." The district court's construction is a classic case of importing a limitation from the specification into a claim and limiting the claim to the preferred embodiment. Finally, the reissue prosecution history contains no disavowal of the plain and ordinary meaning of the term "sealed." To the contrary, that prosecution history makes absolutely clear that the inventors chose the language in claims 28-32 of the Reissue patent, where "sealed" is used as opposed to "heat

- 16 -

sealed," for the precise purpose of **broadening** what had been claimed in the original claims, all of which used the term "heat-sealed" or "heat seal." [JA421, JA595; JA43-JA44].

The district court's ruling was based on its misreading of the reissue prosecution history. During reissue, Baldwin sought to both amend the specification (to change certain references from "heat-sealed" and "heat-sealable" to "sealed" and "sealable") and also add broader claims directed to a "sealed sleeve" rather than a "heat-sealed sleeve." The district court quoted Baldwin's statement in the Amendment After Final Rejection filed September 18, 1997:

> "Moreover, with the cancellation of the material submitted in the Preliminary Amendment of April 10, 1995, also renders moot the objection to the **Specification** on grounds of new matter, under 35 U.S.C., Section 132, with the cancellation of such Amendment."

[JA12; JA643 (emphasis added)]. This statement relates to the proposed amendments to the specification, **not** the pursuit of new broader claims which were not cancelled. At no time did Baldwin state that it was no longer seeking to add broader claims that covered a "sealed" but not necessarily "heat-sealed" sleeve. Indeed, to have done so would have been entirely inconsistent with the stated objective of the reissue proceedings.

The term "sealed sleeve" has a commonly understood meaning and should not be limited to a "heat-sealed sleeve."

- 17 -

E.    **After Twice Declining To Do So, The District Court
Erroneously Construed The Asserted Claims Of The
'976 Patent To Include Unclaimed Process Limitations**

(1)    **The Phrase "A Reduced Air Content Cleaning
Fabric" In Asserted Claims 1, 7, 9 And 12 Does
Not Address The Method By Which The Air
Content Of The Fabric Is Reduced**

Independent claim 1 of the '976 patent and claims 7, 9 and 12 depending therefrom are apparatus claims asserted against Siebert that include the limitation "a reduced air content cleaning fabric." These claims read as follows:

> 1.   A device for cleaning a cylinder of a printing press comprising:
>    a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent; and
>    a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperature, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.
>
> 7.   The device for cleaning the cylinders of a printing press as defined in claim 1 wherein the thickness of said fabric has been reduced by between about 10% to about 50%.
>
> 9.   The device for cleaning a cylinder of a printing press as defined in claim 1 wherein said fabric retains from about 0.02 to about 0.5 cc of said solvent per square inch of said fabric.
>
> 12.  The device for cleaning a cylinder of a printing press as defined in claim 1 further comprising a means for positioning said fabric adjacent to said cylinder to be cleaned.

In connection with the initial claim construction proceedings in the district court, Siebert argued that "the proper interpretation of a 'reduced air content cleaning fabric' is a cleaning fabric that has undergone calendering or some other process that reduces the air content of the fabric, and does not include fabric that is merely wound around a roll." [JA65, item 69 at 10]. Siebert's position was principally based on the arguments that (1) "had the inventors intended the language 'reduced air content cleaning fabric' to include cloth merely wound on a roll, they could have easily mentioned it in the '976 patent specification" [id.], and (2) the inventors disclaimed any interpretation of this term that would encompass fabric that is merely wound on a roll. [Id. at 11-13].

In its original claim construction ruling the district court rejected both arguments and rejected Siebert's proposed construction. The district court first noted that Siebert did not find its proposed limitation on the meaning of "reduced air content cleaning fabric" in the claim language since the claims do not discuss methods for reducing the air content in the fabric. [JA15]. The district court rejected Siebert's reliance on the absence of language in the specification as follows:

> The patentees' failure to mention winding, or any other air content reduction method, does not preclude fabric whose air content has been reduced by those methods from falling under the definition of a "reduced air content fabric." Furthermore, the patent specification is clear that calendering is not the only method of creating

> reduced air content fabric. It states, "The preferred, *but not exclusive*, method of reducing the air content in the fabric is calendering." (emphasis added). This language provides no basis on which to exclude some methods of air content reduction.

[JA16].

The district court then addressed Siebert's disclaimer argument which was predicated on statements made during the prosecution of the '976 patent to overcome a rejection based on Baldwin's earlier '157 patent which disclosed cleaning fabric wound on a roll. Siebert pointed to Baldwin's statement that "[the '157 patent] is directed to removing air from the plastic sleeve, not the fabric itself." [JA65, item 69 at 11]. Siebert further noted Baldwin's argument, made in reference to the disclosure of the '157 patent, that "[b]ecause no air is removed from within the <u>fabric</u>, the air content of the fabric remains unchanged." [*Id.*]. Finally, Siebert relied on Baldwin's statement during prosecution that "[b]ecause [the '157 patent] is not directed to a reduced air content cleaning fabric, Applicants respectfully submit that the claimed invention is novel over the art cited." [*Id.* at 11-12].

The district court found Siebert's arguments unavailing:

> The patentees' statement in the prosecution history does not serve as a manifest exclusion or clear disavowal modifying the plain language of the unqualified claim term "reduced air content fabric." A plain reading of the statement reveals only the uncontroversial assertion that

> the '157 patent does not claim, disclose, or teach a
> cleaning system involving reduced air content fabric.
> The fact that the '157 patent involves fabric wound on a
> roll does not preclude the '976 patent from claiming
> fabric that has reduced air content due to a method of
> winding it on a roll. Claims 1 and 14 of the '976 patent
> do not limit the methods for producing reduced air
> content fabric, and nothing in the '157 patent, nor in the
> patentees' arguments during the patent prosecution,
> mandates a limitation on the term.

[JA17].

The district court's original claim construction ruling in this regard

was thus that "[t]he term 'reduced air content cleaning fabric' **does not** exclude

fabric whose air content has been reduced by a method of winding or rewinding

the fabric on a roll." [JA17 (emphasis added)]. Siebert filed a timely motion for

reconsideration of this construction ruling and that motion was denied. [JA2804-

JA2810].

Over a year later, and only months before the scheduled trial, Siebert

for a second time asked the district court to reconsider its construction of the term

"reduced air content cleaning fabric" so as to exclude fabric wherein the air content

had been reduced by means of winding the cloth onto a roll under appropriate ten-

sion. This time the district court did so by construing the term "reduced air content

cleaning fabric" to mean "a fabric whose air content has been reduced by some

method prior to being wound on a roll." [JA36].

- 21 -

This construction is **not** based on the plain meaning of the words of the phrase and it is not based on prosecution disclaimer. Rather, it is based on a tortured analysis whereby the district court felt the need to look at all of the claims that use the word "fabric" or its equivalent, ascertain whether such "fabric" was reduced air content fabric, and then apply a uniform definition of this unnecessary and inappropriate construction of the term "fabric." None of this claim language, however, is found in claims 1, 7, 9 or 12 or claims that depend therefrom.[2/]

Looking to the specification of the '976 patent, the inventors identified calendering as the best mode to reduce the air content of the cleaning fabric, but made clear that calendering is the "preferred, but not exclusive, method of reducing the air content in the fabric." [JA52, col. 7, lines 26-27]. Although the specification does not give examples of other methods, it does teach that "the present invention . . . is not limited to the particular embodiments shown and described herein, and that variations may be made which are within the scope of the accompanying claims without departing from the principles of the invention and without sacrificing its chief advantages." [JA54, col. 11, lines 51-54].

Nowhere in the specification or in the prosecution history did the inventors disclaim the process of winding the cleaning fabric onto a roll under

---

[2/]  The flaws in the district court's analysis will be addressed in connection with the discussion of asserted method claims 14, 23 and 25, *infra*.

appropriate tension as a mode of reducing the air content of the cleaning fabric.
More importantly, asserted claims 1, 7, 9 and 12 are apparatus claims that merely
require the use of "reduced air content cleaning cloth" and do not purport to limit
the manner in which the air content of the fabric is reduced.  There are no process
limitations in these claims.  "A novel product that meets the criteria of patentability
is not limited to the process by which it was made." *Vanguard Products Corp. v.
Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2001).  Even had claims 1,
7, 9 and 12 been product-by-process claims, "the correct reading of product-by-
process claims is that they are not limited to product prepared by the process set
forth in the claims. *Scripps*, 927 F.2d at 1583.

  The district court clearly erred when it construed the term "reduced air
content cleaning fabric" as used in claims 1, 7, 9 and 12 of the '976 patent to mean
"a fabric whose air content is reduced prior to its being wound on a core."

   (2) **Although Asserted Claims 14, 23 And 25 Are Method
     Claims Which Do Involve The Step Of "Reducing Air
     Content Of A Strip Of Cleaning Fabric," None Of Those
     Claims Requires The Air Content To Be Reduced Before
     The Cloth Is Wound Onto A Core**

  In contrast to claims 1, 7, 9 and 12 of the '976 patent which are appa-
ratus claims, claims 14, 23 and 25 are method claims and they include the step of
"reducing air content of a strip of cleaning fabric."  As the district court correctly
observed in its initial claim construction [JA15], there is no textual support with-

in the claim language itself for a limitation that would require the air content of the fabric to be reduced before being wound onto the core. *See Johnson Worldwide,* 175 F.3d at 990 ("there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.").

As with respect to claims 1, 7, 9 and 12 of the '976 patent, there is nothing in the language of claim 14, 23 and 25 or the specification that would support a limitation that the air content of the fabric must be reduced before the fabric is wound onto a core.

In reconsidering its claim construction in response to a second request by Siebert, the district court stated that it had "parsed the term 'fabric,' and its equivalents, in [unasserted] claims 18 and 26, into the more precise terms of 'reduced air content cleaning fabric' and non-reduced air content fabric . . . . " [JA32]. What the district court effectively did, however, was to rewrite the claims in the name of claim construction. This Court has repeatedly made clear that such a practice is improper. *See Chef America,* 358 F.3d at 1374. Properly construed, the term "strip of cleaning fabric," and its equivalents, as used in claims 14, 18 and 26, have their ordinary meanings, and there is no reason to import some concept relating to the reduced air-content status of the fabric. Particularly, is it improper to do so in a way that would result in essentially the same phrase not consistently

having the same meaning everywhere that the phrase is used within claims or within the same claim.

       In addition to a complete lack of support for the district court's construction in the claim language, the specification provides no basis to narrow the asserted claims. "One purpose for examining the specification is to determine if the patentee has limited the scope of the claims." *Watts v. XL Sys., Inc.*, 232 F.3d 877, 882 (Fed. Cir. 2000). "When the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent even though the language of the claims, read without reference to the specification might be considered broad enough to encompass the feature in question." *SciMed Life Systems, Inc. v. Advanced Cardiovascular, Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). In this case, a review of the specification does **not** make clear that a cleaning fabric, in which the air content is reduced by means of rolling the fabric onto a core under appropriate tension, is outside the scope of the claims. The facts of this case are not analogous to those in the *SciMed* and *Watts* cases and similar cases cited therein.

       "[T]he claims of the patent, not its specifications, measure the invention." *Smith v. Snow*, 294 U.S. 1, 11 (1935). "Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys-*

*tems, Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). "[E]ven where a patent only

describes a single embodiment, claims will not be read restrictively unless the

patentee has demonstrated a clear intention to limit the claim scope using words

or expressions of manifest exclusion or restriction." *Id.* (internal quote omitted).

The district court relied on a passage from the Abstract of the '976

patent as well as several passages from the specification to support its construction

of the phrase "reduced air content fabric." The passage from the Abstract reads as

follows:

> The system includes a cleaning fabric treated to reduce
> the amount of air volume the cleaning fabric contains.
> The cleaning fabric is saturated to functional equilibrium
> with a low volatility organic compound solvent. The
> cleaning fabric is wrapped around an elongate core to
> form a fabric roll."

[JA46]. While a statement in the Abstract of a patent may in a particular case

operate as a clear expression of manifest exclusion, *Innova/Pure Water*, 381 F.3d

at 1121, this is not such a case.

First, as this Court observed in *Innova/Pure Water*, the Abstract is

the "section of a patent [that] speaks generally to the invention and, much like the

syllabus of an opinion, sets forth general information about the document's con-

tent, which is described in more detail in the remainder of the document." 381

F.3d at 1121. Secondly, this overview describes features that are covered in vari-

- 26 -

ous claims of the invention and does not purport to suggest that all claims need to have each of these features. They do not. *See E-Pass Techs., Inc. v. 3Com Corp.*, 343 F.3d 1364, 1370 (Fed. Cir. 2003). If the rule were otherwise, there would be no need for claims. *SRI Int'l, Inc. v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc). The only asserted claim of the '976 patent that even has a limitation involving a fabric roll is claim 23.

Even if the above passage from the Abstract were a claim, process steps are not generally required to be performed in the order written. *See Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999). It is clearly improper to construe claims to require a step that is not found in the claims, and to then require an order for performing steps based on the order the steps are written in the Abstract.

Finally, this passage from the Abstract fatally undercuts the district court's entire thesis by showing that when the inventors used the term "cleaning fabric" in the patent, they were **not** intending by that term alone to give any indication as to whether or not the air content of such fabric had already been reduced. Indeed, from the context of the first use of the term "cleaning fabric" in this Abstract passage, it is apparent that this is referring to the fabric **before** it has been "treated to reduce the amount of air volume the cleaning fabric contains." Based on the prosecution history, as discussed earlier, when the cleaning fabric is

- 27 -

saturated with solvent, the air volume will already have been reduced. Thus, in the second sentence of the passage, the inventors were referring to the cleaning fabric at a point **after** the air content thereof had been reduced. The Abstract provides no basis to read into the claims a limitation that the air content of the cleaning fabric must be reduced prior to winding the fabric onto a core.

The portions of the specification that the district court relied upon describe preferred embodiments, not essential features of the invention. The district court first cited the portion of the Summary of the Invention that states that "[a] cleaning fabric with a reduced air content is wrapped around the core to form a fabric roll." [JA33, quoting from JA50, col. 3, lines 65-66]. It is clear from column 3, line 63, however, that this is describing "a preferred embodiment." [JA50]. The district court also cited portions of the specification found at column 5, lines 58-61 and column 9, lines 1-10. [JA34]. Both of these portions of the specification are under the heading "Description Of The Preferred Embodiments." [JA51]. This Court has "cautioned against limiting the claimed invention to preferred embodiments or specific examples of the specification." *Texas Instruments*, 805 F.2d at 1563; *see also Phillips*, 415 F.3d at 1323. Claims may properly embrace "different subject matter than is illustrated in the specific embodiments in the specification." *Nazomi*, 403 F.3d at 1369.

- 28 -

Even in its opinion upon Siebert's second motion for reconsideration, the district court drew only one limitation from the prosecution history – *i.e.*, "that reduction in air content must occur prior to saturation." [JA29]. That premise, however, in no way requires that in those claims such as claim 18, which involve the step of wrapping the strip of cleaning fabric around the core prior to contacting the fabric with solvent, the air content must be reduced prior to the fabric being wound on the roll. Where the act of wrapping the strip of cleaning cloth around the core under appropriate tension itself effects the reduction in the air content of the fabric, the limitation that the cleaning fabric be wrapped around the core prior to being contacted with solvent will be met, as will the requirement that the air content of the fabric be reduced before the fabric is contacted with solvent.

Based on the language of the asserted claims, the specification, and the prosecution history of the '976 patent, it is not proper to read into those claims a limitation that the air content of the cleaning fabric must be reduced prior to winding the fabric onto a core.

F.    **Under Proper Claim Constructions The Grants Of Summary Judgment Can Not Stand**

The district court's grant of summary judgment of noninfringement of claim 32 of the Reissue patent was based on the district court's claim constructions and the undisputed facts that (1) "defendant never sold single pre-soaked fabric

- 29 -

rolls, but only rolls in sets of three or in quantities between six and nine" [JA10];

and (2) "defendant never sold pre-soaked rolls in heat-sealed sleeves." [*Id.*]. Upon

a proper construction of the terms "a pre-soaked fabric roll and "sealed sleeve," the

district court's grant of summary judgment of noninfringement of claim 32 of the

Reissue patent can not stand and the entry of judgment in Siebert's favor must be

vacated. *See Altiris*, 318 F.3d at 1378 (where district court erred in its construction

of the claim limitations that formed the basis for the grant of summary judgment,

the grant of summary judgment was vacated and case remanded for further pro-

ceedings in accordance with the correct constructions.).

  The district court's grant of summary judgment of noninfringement of

the asserted claims of the '976 patent was based on the court's construction of the

phrase "reduced air content cleaning fabric" and the fact that "[t]here is no genuine

issue of material fact that Siebert does not reduce the air content of its fabric prior

to that fabric being wound on a roll." [JA36]. But for the district court's recon-

sidered claim construction, summary judgment of noninfringement would not have

been granted. Since the district court's construction of the phrase "reduced air

content cleaning fabric" was in error, the grant of summary judgment of non-

infringement of claims 1, 7, 9, 12, 14, 23 and 25 of the '976 patent must also

be vacated. *See Altiris*, 318 F.3d at 1378.

## CONCLUSION

For the foregoing reasons, Baldwin respectfully requests this Court to reverse the district court's constructions of the terms "a pre-soaked fabric roll," "sealed sleeve," and "reduced air content cleaning fabric," vacate the grants of summary judgment of noninfringement, and remand the case for trial in accordance with the correct claim constructions.

Respectfully submitted,

DATED:  June 15, 2007

Thomas B. Kenworthy
Kenneth J. Davis
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania  19103-2921
(215) 963-5000

Attorneys for Plaintiff-Appellant
Baldwin Graphic Systems, Inc.

## CERTIFICATE OF SERVICE

I, Thomas B. Kenworthy, do hereby certify that on this date, I caused two copies of the foregoing Brief Of Plaintiff-Appellant to be served by Federal Express upon counsel for defendant-appellee as follows:

> Keith D. Parr, Esquire
> LORD, BISSELL & BROOK LLP
> 111 South Wacker Drive
> Chicago, Illinois 60606

DATED:  June 15, 2007

THOMAS B. KENWORTHY

## CERTIFICATE OF COMPLIANCE

I, Thomas B. Kenworthy, attorney for Plaintiff-Appellant Baldwin Graphic Systems, Inc. and a member of the bar of this Court, hereby certify that the foregoing Brief Of Plaintiff-Appellant complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Circuit Rule 32(b) because the number of words in the brief, as counted by the word processing program used to prepare the brief, Microsoft Office Word 2003, is 7,438, less than the 14,000 word maximum.

DATED:  June 15, 2007

THOMAS B. KENWORTHY

# EXHIBIT F

**VIA REGISTERED POST**

BBA Fiberweb Global Headquarters
1 Victoria Villas
Richmond-on-Thames
London TW9 2GW
UK

-2 JAN 2007

RECEIVED



**GULLIKSSON**
A D V O C A T E S

| | |
|---|---|
| Datum | 2006-12-22 |
| Er ref | |
| Vår ref | R1793/134 PE |

Advokatbyrån Gulliksson AB
Box 4171
203 13 Malmö
Besöksadress Studentgatan 1
Malmö
Tel 040-664 44 00
Fax 040-23 17 65
E-post mail@gulliksson.se
Hemsida www.gulliksson.se
Momsregnr SE556613342601
Postgiro 22 19 28-5
Bankgiro 5291-6855
Klientmedel
Nordea 3095 17 03536

Correspondent law firm of the Arator
Group represented in Denmark,
Norway, Sweden, Germany, and USA.
Artwork by Bjørn Bjørnholt.

Dear Sir,

**Re: Possible patent infringement**

We are writing to you as representatives for the Swedish company
Baldwin Jimek AB, hereinafter referred to as Baldwin.

Baldwin is the proprietor of three European patents EP-B-0 747 218,
EP-B-0 741 034 and EP-B-0 676 997 enclosures 1-3, hereinafter
referred to as the Patents, being patents for a device for cleaning a
cylinder of a printing press and/or a pre-packaged, pre-soaked
cleaning system for use to clean the cylinders of a printing machine.
Great Britain and France are two of the designated contracting states.
The Patents are valid and subsisting

It has come to Baldwins' attention that you are currently marketing
and selling a pre-packaged, pre-saturated cleaning device called Elixir,
hereinafter referred to as the Infringing Product.

According to our opinion the Infringing Product infringes the Patents.

**GULLIKSSON**
ADVOCATES

In the circumstances, our client requests the following undertakings
to be received in our office by **January 5, 2007**:

1.    to immediately cease all acts of manufacture, marketing and
       sale of the Infringing Product;

2.    at our client's option, either to pay damages or an account of
       profits in respect of sold Infringing Product;

3.    to state the extent of your sales with a statement of the
       number of manufactured and sold Infringing Products and the
       price thereof. The statement must be examined and attested
       by a chartered accountant; and

4.    to pay our client's legal costs.

If these undertakings are not received by the time limit we have set,
our client will consider the immediate commencement of legal
proceedings seeking an injunction to restrain any further acts of
marketing and selling of the Infringing Product. You should be aware
that the cost of obtaining an injunction in Great Britain would be in
the order of £30,000 and that our Client would on success in any
action be entitled to claim its costs of action from you.

Our Client will not hesitate to pursue this further and we are ready to issue proceedings in the
event that this matter is not resolved to our Client's satisfaction immediately. You should be
aware that our clients parent company has previously taken action against you company in
the US

Please note that failing confirmation that the Infringing Product have been withdrawn
immediately and **on January 5th 2007** at the latest, we are instructed to commence
proceedings without further reference to you.

GULLIKSSON
ADVOCATES

If you are in any doubt as to the meaning of this letter then we
recommend that you seek legal advice immediately.


Yours faithfully,

GULLIKSSON ADVOCATES LTD

Per Ericsson

Encl.
EP 0 676 997 B1
EP 0 741 034 B1
EP 0 747 218 B1

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, Esq., hereby certify that on July 6, 2007, copies of the

foregoing **DECLARATION OF FRANCIS DIGIOVANNI** were caused to be served

upon the following:

### BY HAND DELIVERY

>       Jack Blumenfeld, Esquire
>       Morris, Nichols, Arsht & Tunnell
>       1201 N. Market Street
>       P.O. Box 1347
>       Wilmington, DE 19899

### BY E-MAIL AND FEDERAL EXPRESS

>       Keith J. McWha, Esquire
>       Morgan & Finnegan
>       3 World Financial Center
>       New York, New York 10281-2101

>                                /s/ Francis DiGiovanni
>                                Francis DiGiovanni (#3189)

551085-1