## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-077-JJF |
| | ) | |
| FIBERWEB SIMPSONVILLE, INC., | ) | |
| and FIBERWEB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS' OPENING BRIEF ON CLAIM CONSTRUCTION

Dated:  December 14, 2007

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone:  302-888-6316
Facsimile:  302-658-5614
fdigiovanni@cblh.com

*Attorneys for Defendants Fiberweb Simpsonville, Inc., and Fiberweb, Inc.*

OF COUNSEL:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  NATURE AND STAGE OF THE PROCEEDINGS ....................................... 2

III.  SUMMARY OF ARGUMENT ................................................................ 3

IV.  STATEMENT OF FACTS .................................................................... 4

    A.  The Parties ...........................................................................4

    B.  The Patents-In-Suit ................................................................4

    C.  Judge Moran's Claim Constructions and Summary Judgment Ruling...................7

V.  ARGUMENT ................................................................................. 8

    A.  Legal Principles ....................................................................8

        1.  Claim Construction ..........................................................8

        2.  Issue Preclusion .............................................................9

    B.  Claim Constructions for the Reissue Patent.........................................10

        1.  "a pre-soaked fabric roll"....................................................11

        2.  "sealed sleeve" ............................................................11

        3.  "in contact with" and "disposed thereround"...........................13

        4.  "means for locating said fabric roll adjacent to and operatively
            associated with a    cylinder to be cleaned" ................................14

    C.  Claim Constructions for the '976 Patent...........................................15

        1.  "reducing air content of a strip of cleaning fabric by 1 to 50 percent"......15

        2.  "ambient temperature" ...................................................18

VI.  CONCLUSION................................................................................ 19

## <u>TABLE OF AUTHORITY</u>

**Pages**

**Cases**

*Abbott Labs. v. Dey, L.P.*,
    110 F. Supp.2d 667 (N.D. Ill. 2000), *rev'd on other grounds*,
    287 F.3d 1097 (Fed. Cir. 2002)......................................................................9-10

*Baldwin Graphics Sys., Inc., v. Siebert, Inc.*,
    Case No. 03 C 7713, 2005 WL 1838451 (N.D. Ill. Jul. 28, 2005)    ...............4, 7-8, 11, 16

*Baldwin Graphic Sys., Inc., v. Siebert, Inc.*,
    Case No. 03 C 7713, 2007 WL 1610449 (N.D. Ill. Mar. 21, 2007) .........................7-8, 16

*Burlington Northern Railroad Co. v. Hyundai Merchant Marine*,
    63 F.3d 1227 (3d Cir. 1995)................................................................................9

*Commodities Export Co. v. U.S. Customs Serv.*,
    957 F.2d 223 (6th Cir. 1992) ............................................................................10

*Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*,
    222 F.3d 951 (Fed. Cir. 2000)........................................................................17-18

*Huron Holding Corp. v. Lincoln Mine Operating Co.*,
    312 U.S. 183 (1941)............................................................................................9

*In re Freeman*,
    30 F.3d 1459 (Fed. Cir. 1994)........................................................................9-10

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)........................................................................14

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)..........................................................................................10

*Nat'l Railroad Passenger Corp. v. Pa Pub. Util. Comm'n*,
    288 F.3d 519 (3d Cir. 2002)................................................................................9

*Peloro v. United States*,
    488 F.3d 163 (3d Cir. 2007)................................................................................9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)........................................................................8-9

*TM Patents L.P. v. Int'l Bus. Machines Corp.*,
    72 F. Supp.2d 370 (S.D.N.Y. 1999).................................................................................10

*Vitronics Corp. v. Conceptronics, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)................................................................................ 8, 18

**Statutes**

35 U.S.C. § 112.............................................................................................................3, 14-15

# I.    INTRODUCTION

Pursuant to the Scheduling Order of October 5, 2007, Defendants Fiberweb Simpsonville, Inc. and Fiberweb, Inc. (collectively, "Fiberweb"), hereby submit their opening brief on claim construction.

There are two patents-in-suit:  U.S. Patent No. RE 35,976 ("the Reissue Patent," attached as Ex. A[1]) and U.S. Patent No. 5,974,976 ("the '976 patent," attached as Ex. B), both of which concern systems for cleaning printing press machines.  (Ex. A, Abstract, Ex. B, Abstract.) Plaintiff asserts claims 28, 29, 31, and 32 of the Reissue Patent, and claims 1, 7, 9, 12-16, 18, 21, and 23-25 of the '976 patent.  (Ex. C, at 2-3.)

Based on Baldwin's current interrogatory answers,[2] Fiberweb believes there are seven claim terms which require construction:

(a)    "a pre-soaked fabric roll" (Reissue Patent);

(b)    "sealed sleeve" (Reissue Patent);

(c)    "in contact with" (Reissue Patent, claim 28);

(d)    "disposed therearound" (Reissue Patent, claim 32);

(e)    "means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned";

---

[1] Lettered exhibits refer to the exhibits to the Declaration of Michael E. Zeliger, filed herewith.

[2] Baldwin's interrogatory answers provide a list of asserted claims, identification of accused products, and sketchy infringement claim charts.  Baldwin refused to provide claim construction positions for its patents.  (See Ex. C, at 9-10.)  Once Baldwin fully reveals its positions, it is possible that other claim scope disputes will arise, and other terms may require construction.

(f)    "a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent" ('976 patent, claim 1) and "reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric" ('976 patent, claim 14); and

(g)    "ambient temperature" ('976 patent).

Several of these terms (namely, (a), (b), and (f)), have already been construed, in whole or in part, by a Chicago District Court in *Baldwin Graphics Sys., Inc, v. Siebert, Inc.*, Case No. 03 C 7713 (N.D. Ill.)  Fiberweb asks this Court to adopt Judge Moran's claim constructions.  As discussed below, Plaintiff Baldwin is collaterally estopped from challenging Judge Moran's constructions now.

The remaining terms at issue can be readily construed based on intrinsic evidence:  the plain language of the claims, the patents' specifications, and their file histories.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

Baldwin filed its Complaint on February 3, 2006.  (D.I. 1.)  During 2006 and early 2007, the parties engaged in substantive settlement talks, limiting case activities to the exchange of written discovery.

Meanwhile, in Chicago, Baldwin pursued a patent infringement case against another party, Siebert, Inc., asserting the same patents at issue in this case.  In March 2007, Judge Moran in Chicago granted summary judgment of noninfringement in favor of Siebert based on claim constructions that were unfavorable to Baldwin.  Baldwin has appealed those claim constructions to the Federal Circuit.

Settlement talks between Baldwin and Fiberweb broke down in April 2007, and in June, Fiberweb moved to stay this case, pending the Federal Circuit's claim construction rulings in the Siebert case.  (D.I. 55.)  This Court ultimately denied the motion to stay on September 19, 2007.  (D.I. 59.)  The Court then entered a Scheduling Order on October 5, (D.I. 61), and the parties

have been engaged in active fact discovery since then.  Pursuant to the Court's schedule, Fiberweb now submits its opening brief on claim construction.

The Federal Circuit has heard oral argument on Baldwin's appeal in the Siebert case, and a decision is expected in the first half of 2008.

### III.    SUMMARY OF ARGUMENT

1. Baldwin is collaterally estopped from challenging the claim constructions in *Baldwin Graphics Sys., Inc, v. Siebert, Inc.*, Case No. 03 C 7713 (N.D. Ill.)

2. The Court should construe "a pre-soaked fabric roll" to mean "a single pre-soaked fabric roll," as held by Judge Moran in Chicago.

3. The Court should construe "sealed sleeve" to mean "a heat-sealed enclosure surrounding the fabric roll such that solvent does not leak."

4. The claim terms "in contact with" and "disposed therearound" require that the sleeve touches the roll.

5. The claim phrase "means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned" is a means plus function clause, governed by 35 U.S.C. § 112, ¶ 6.  The corresponding structure disclosed in the specification is ball bearings, disposed in the core of the fabric roll, which engage a shaft.

6. The claim phrases "a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent" ('976 patent, claim 1) and "reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric" ('976 patent, claim 14) require that the air content of the fabric is reduced by 1-50 percent, in total, between the start of its manufacture and the time the solvent is added.  Moreover, as held by Judge Moran, the fabric's air content must be reduced prior to its being wound on a core to form a roll.

## IV.    STATEMENT OF FACTS

### A.    The Parties

The Plaintiff, Baldwin Graphic Systems, Inc. ("Baldwin"), manufactures and sells printing press accessories, including fabric rolls for cleaning press components. *Baldwin Graphics Sys., Inc, v. Siebert, Inc.*, Case No. 03 C 7713, 2005 WL 1838451, at *1 (N.D. Ill. Jul. 28, 2005) (Ex. D). Fiberweb manufactures and sells various nonwoven fabrics, including printing press cleaning fabrics which compete with Baldwin. The accused products in this case are Fiberweb's ELIXIR® Presoak Cleaning Cloth and ELIXIR® Sheetfed Presoak Cleaning Cloth. (Ex. C, at 4.)

### B.    The Patents-In-Suit

The two patents-in-suit both concern pre-packaged, pre-soaked cleaning systems for wiping the cylinders of printing press machines. (Ex. A, Abstract, Ex. B, Abstract.)

The Reissue Patent is the earlier of the two patents. A preferred embodiment is shown in Figures 1 and 2 of the patent, reproduced below:



The system includes a fabric roll (13) wrapped around an elongated cylindrical core (11). The roll is made from paper or cloth, and is "pre-soaked and saturated to equilibrium with low volatility organic compound solvent." After soaking, the wrapped roll is "inserted in a sleeve 15 made of heat-sealable or heat-sealable and heat-shrinkable plastic material which is heat sealed

- 4 -

along its edge 17 or heat-shrunken and heat-sealed along its edge 17, so that the sleeve 15 is in intimate contact with the fabric roll 13." (Ex. A, col. 3, line 54 to col. 4, line 2.)

To allow the fabric 13 to engage a printing press cylinder, the "core 11 is also preferably provided with engagement means 19, such as ball bearings or the like, or with other suitable means, for reception of a shaft 21 (Fig. 2) located on an appropriate machine, such a printing machine or the like (not shown) provided with a take-up roll to take-up cleaning fabric after it has achieved its cleaning function." (Ex. A, col. 4, lines 2-8.)

The Reissue Patent emphasizes the stability of the pre-packaged, pre-soaked roll as a key discovery. In particular, the roll can be turned on end and the solvent will not migrate or pool. Such pooling degrades the roll's cleaning ability:

> It has been found that the pre-packaged, pre-soaked cleaning system described is a very stable system which can be transported and stored in a horizontal and/or vertical disposition until use without substantially disturbing the distribution of the solvent in the fabric roll and detrimentally affecting the cleaning ability of the fabric.

(Ex. A, col. 4, lines 9-14.) In this Action, Baldwin asserts only claims 28, 29, 31, and 32, all of which were added during reissue. (Ex. C, at 4.) The two independent claims, claims 28 and 32, are reproduced below:

> 28.    A pre-packaged, pre-soaked cleaning system for use to clean the cylinders of printing machines comprising:
> (1) a pre-soaked fabric roll saturated to equilibrium with low volatility organic compound solvent disposed around a core, and
> (2) a sealed sleeve disposed around and in contact with said fabric roll, whereby the pre-soaked, saturated fabric roll can be transported and stored vertically and horizontally until use without substantially disturbing the distribution of said solvent in said fabric roll and detrimentally affecting the cleaning ability of the fabric.

> 32.    A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:
> (1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be

opened or removed from said fabric roll for use of said fabric roll, disposed
therearound, and said system including
      (2) means for locating said fabric roll adjacent to and operatively
associated with a cylinder to be cleaned.

The second patent-in-suit, the '976 patent, is similar.  It also describes a sealed, pre-

soaked fabric role, but purports to improve upon the Reissue Patent by reducing the amount of

air in the fabric.  As explained in the specification this purported improvement would better

address the problems of solvent migration and pooling:

> While the invention disclosed in U.S. Pat. No. 5,368,157 works for its intended
> purpose, improvements have been discovered. When the patented product is
> placed in the vertical position, the solvent would shift downward in the evacuated
> package. When the package is restored to the horizontal position, the solvent
> migrates back towards equilibrium in the roll. This migration is caused by air
> pockets in the fabric of the roll that have not been completely evacuated.  (Ex. B,
> col. 3, lines 41-50.)

> In a preferred embodiment, the air content of the cleaning fabric is reduced by
> between 1% to about 50%.  This acts to reduce the thickness of the fabric.  It also
> acts to increase the length of the fabric while not increasing the diameter of the
> fabric roll.  (Ex. B, col. 4, lines 11-15.)

The patent includes two independent claims:  claim 1 (a device claim) and claim 14 (a method

claim).  Both are limited to the preferred embodiment of reducing air content by 1-50 percent:

> 1.     A device for cleaning a cylinder of a printing press comprising:
>      a reduced air content cleaning fabric having an air content by volume
> reduced by 1 to 50 percent;[3] and
>      a solvent comprising a low volatility cleaning compound which does not
> readily evaporate at ambient temperature, and means for introducing said solvent
> being into said reduced air content cleaning fabric in an amount sufficient for
> cleaning said cylinder of a printing press.

> 14.     A method for making a cleaning system comprising:
>      reducing air content of a strip of cleaning fabric by 1 to 50 percent to form
> a strip of reduced air cleaning fabric; and
>      contacting said strip of reduced air content cleaning fabric with a low
> volatility, organic compound solvent which does not evaporate readily at ambient

---

[3] The printed patent states "air content by volume of 1-50 percent."  This was changed in a
certificate of correction to read "air content by volume reduced by 1-50 percent."  (Ex. B.)

temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

## C.    Judge Moran's Claim Constructions and Summary Judgment Ruling

As noted above, Baldwin first asserted these patents against a company called Siebert, Inc., in the Northern District of Illinois.  Siebert moved for summary judgment of noninfringement.  Judge Moran initially granted the motion for the Reissue Patent, but denied it as to the '976 patent.  *Baldwin*, 2005 WL 1838451, at *12.  Later, on Reconsideration, he changed one of his claim constructions and granted summary judgment on the '976 patent as well.  *Baldwin Graphics Sys., Inc, v. Siebert, Inc.*, Case No. 03 C 7713, 2007 WL 1610449 (N.D. Ill. Mar. 21, 2007) (Ex. E).

In reaching his summary judgment rulings, Judge Moran construed two claim terms in the Reissue Patent: "a pre-soaked fabric roll" and "sealed sleeve," and two claim terms in the '976 patent: "reduced air content cleaning fabric" and "reducing air content of a strip of cleaning fabric."  His constructions were as follows:

| Claim Term | Claims | Judge Moran's Construction |
|---|---|---|
| "a pre-soaked fabric roll" | Reissue Patent, all asserted claims | "a single pre-soaked fabric roll"<br><br>*Baldwin*, 2005 WL 1838451, at *5 (Ex. D) |
| "sealed sleeve" | Reissue Patent, all asserted claims | a heat sealed sleeve<br><br>*Baldwin*, 2005 WL 1838451, at *6 (Ex. D) |
| "reduced air content cleaning fabric"<br><br>"reducing air content of a strip of cleaning fabric" | '976 patent, asserted claims 1, 7, 9, 12, 13<br><br>'976 patent, asserted claims 14-16, 18, 21, 23-25 | "a fabric whose air content has been reduced by some method prior to being wound on a roll"<br><br>*Baldwin*, 2007 WL 1610449, at *8 (Ex. E); *Baldwin*, 2005 WL 1838451, at *8 (Ex. D) (holding that these two terms have the same meaning) |

- 7 -

Based on these constructions, Judge Moran granted Siebert summary judgment of non-infringement on both patents. *Baldwin*, 2005 WL 1838451, at \*12; *Baldwin*, 2007 WL 1610449, at \*9.

## V.    ARGUMENT

### A.    Legal Principles

#### 1.    Claim Construction

The Federal Circuit's *en banc* opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) specifies the materials that district courts should consider in construing claims. According to *Phillips*, courts should first examine the words of the claim from the perspective of one of ordinary skill in the art. *Id.* at 1312-13. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted).

The Court should next review the intrinsic evidence, including the specification, the file history, and the prior art cited in the file history. *Id.* at 1313-17. Of these sources, the specification is the most important. *Id.* at 1315 (the specification "is the single best guide to the meaning of a disputed term")(citing *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Where the specification gives a "special definition" to a claim term, that special definition controls, even where it "differs from the meaning [the claim term] would otherwise possess." *Phillips*, 415 F.3d at 1316. Similarly, where the specification includes "an intentional disclaimer, or disavowal, of claim scope by the inventor," that disavowed scope is excluded from the claim. *Id.*

In addition to intrinsic evidence, the court may also "rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including expert and

inventor testimony, dictionaries, and learned treatises." *Id.* at 1317 (citations and internal quotations omitted). Extrinsic evidence, however, is "less significant than the intrinsic record in determining the legally operative meaning of claim language." *Id.* (citations and internal quotations omitted). While the Court may consult dictionaries, it should not elevate dictionaries above the specification. *Id.* at 1319-21.

2.     Issue Preclusion

Issue preclusion—sometimes called "collateral estoppel"—prevents a party from re-litigating an issue that has already been litigated. *Peloro v. United States*, 488 F.3d 163, 174 (3d Cir. 2007). The "prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action, (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.'" *Nat'l Railroad Passenger Corp. v. Pa Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002) (quoting *Burlington Northern Railroad Co. v. Hyundai Merchant Marine*, 63 F.3d 1227 (3d Cir. 1995)).

The Federal Circuit has made clear that issue preclusion applies to claim construction rulings, provided the above elements are satisfied. *See In re Freeman*, 30 F.3d 1459, 1465-69 (Fed. Cir. 1994).[4] An ongoing appeal of a claim construction order does not bar its preclusive effect. *Abbott Labs. v. Dey, L.P.*, 110 F. Supp.2d 667, 670 (N.D. Ill. 2000), *rev'd on other grounds, Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097 (Fed. Cir. 2002). *See also Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188-89 (1941) ("In the federal courts the general rule has long been recognized that while appeal with proper supersedeas stays execution

---

[4] Under certain exceptional circumstances, a Court may decline to apply collateral estoppel, despite the elements being satisfied. *See Abbott Labs.*, 110 F. Supp.2d at 670-72. None of these exceptional circumstances are present here.

of the judgment, it does not - until and unless reversed - detract from its decisiveness and

finality."); *Commodities Export Co. v. U.S. Customs Serv.*, 957 F.2d 223, 228 (6th Cir. 1992) ("it

is well-established that a final trial court judgment operates as *res judicata* while an appeal is

pending").

Here, it is clear that Judge Moran's claim constructions rulings have preclusive effect

against Baldwin.  All four elements of collateral estoppel are satisfied:  First, the issue being

litigated is the same—construction of specific terms in the same patents; second, those claim

construction issues were actually litigated in the Siebert case, as evidenced by Judge Moran's

Memoranda, which cited both parties' arguments; third, Judge Moran's claim constructions were

part of a final judgment of noninfringement; and fourth, the claim constructions were essential to

Judge Moran's summary judgment rulings—indeed, they were the basis for the rulings.

Accordingly, unless and until Judge Moran's rulings are overturned by the Federal

Circuit, Baldwin is precluded from challenging them in this Action.  *See In re Freeman*, 30 F.3d

at 1465-69.  *See also Abbott Labs.*, 110 F. Supp.2d at 669-71; *TM Patents, L.P.  v. Int'l Bus.

Machines Corp.*, 72 F. Supp.2d 370, 375-79 (S.D.N.Y. 1999).

Moreover, even if issue preclusion did not apply, Judge Moran's claim constructions

would still be entitled to *stare decisis* effect.  As the Supreme Court stated in *Markman v.

Westview Instruments, Inc.*, 517 U.S. 370 (1996), a primary rationale for treating claim

construction as a matter of law is to "promote…intrajurisdictional certainty through the

application of *stare decisis* on those questions not yet subject to interjurisdictional uniformity

under the authority of the single appeals court."  *Id.* at 391.

**B.     Claim Constructions for the Reissue Patent**

We ask the Court to construe five terms from the Reissue Patent: (a) "a pre-soaked fabric

roll" (all asserted claims); (b) "sealed sleeve" (all asserted claims); (c) "in contact with" (claim

28); (d) "disposed therearound" (claim 32); and (e) "means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned" (claim 32).

    1.    <u>"a pre-soaked fabric roll"</u>

        *Proposed construction:  "a single pre-soaked fabric roll"*

Judge Moran has already construed this term to mean "a single pre-soaked fabric roll," as opposed to one or more fabric rolls.  *Baldwin*, 2005 WL 1838451, at *5 (Ex. D).  In his opinion, Judge Moran explained at length why the claim language, the context, the specification, and the file history evince a "clear intent" that the patentee meant to limit the claimed design to a single roll, rather than "one or more" rolls.  *Id.*, at *4-*5.  For at least the reasons given in Judge Moran's decision, his claim construction is correct, and should be adopted by this Court.  In any event, Baldwin is estopped from challenging the construction now.

    2.    <u>"sealed sleeve"</u>

        *Proposed construction:  a heat-sealed enclosure surrounding the fabric roll such that solvent does not leak*

Judge Moran has already held that "sealed sleeve…is properly limited to heat-sealed sleeves."  *Baldwin*, 2005 WL 1838451, at *6 (Ex. D).  We agree, for at least the reasons given in Judge Moran's decision, (*see id.*, at *6-*7, for Judge Moran's explanation), and ask the Court to adopt that finding here.  Again, Baldwin is estopped from challenging this holding.

To resolve other potential scope disputes between the parties, we ask this Court to also specifically construe the term "sealed."  In view of the term's plain meaning and the specification, we submit that "sealed" means the sleeve fully encloses the fabric roll such that solvent does not leak.

Webster's Dictionary defines the verb "seal" to mean "to close or make secure against access, leakage, or passage by a fastening or coating."  *Webster's Collegiate Dictionary* 1052

(10th ed. 1996) (Ex. F).  The specification supports this plain meaning definition.  The purpose of the heat-sealed sleeve is to keep the solvent in place:

> The method…comprises…subjecting the sleeve to a temperature sufficient to heat seal the plastic sleeve around the drained, saturated, wrapped fabric roll in intimate contact with the fabric roll, whereby the pre-soaked, saturated fabric roll [to] be transported and stored vertically and/or horizontally until use without disturbing the distribution of the solvent in the fabric roll and detrimentally affecting the cleaning ability of the fabric roll.  (Ex. A, col. 5, lines 58-67.)

If the sleeve were to leak, then of course, the distribution of the solvent in the fabric roll would be "disturbed."  At the least, therefore, the sealed sleeve must prevent leakage.

The importance of preventing leaks is confirmed by two other passages in the specification, both of which emphasize the importance of sealing any openings or open ends of the sleeve.  The first discloses closing vent holes in the sleeve during heat-shrinking:

> where a sleeve employed in carrying out the method [is] both heat-sealable and heat-shrinkable, then one or more small openings or vent holes (not shown) in the sleeve, preferably located near the open edges of the sleeve, are provided to permit exhaustion of air from the sleeve as heat-sealing and heat-shrinking is accomplished, the location of such opening or openings assuring that any such opening or openings will be closed during the heat-sealing and heat-shrinking of the sleeve.  (Ex. A, col. 6, lines 32-41.)

The second makes clear that all open ends of the sleeve must be sealed by the heat sealing:

> The plastic sleeve will be sized so that the wrapped roll can be inserted therein with facility and the open edges of the sleeve then brought together in contact with each other to seal the same….  (Ex. A, col. 7, lines 16-19.)

These passages again confirm that the final sleeve, to be "sealed," must not have any holes or openings through which solvent can leak.  It must fully enclose fabric roll on all sides to prevent leakage of the solvent.

Accordingly, we ask the Court to construe the claim term "sealed sleeve" to mean "a heat-sealed enclosure surrounding the fabric roll such that solvent does not leak."

3.    <u>"in contact with" and "disposed therearound"</u>

<em>Proposed construction</em>:  the sleeve directly touches the roll

Claim 28 of the Reissue Patent recites that the sleeve is "disposed around and in contact with said fabric roll," and method claim 32 recites that the sealed sleeve is "disposed therearound" the fabric roll.  Fiberweb submits that these phrases both require that the sleeve directly touch the roll.  The sleeve cannot simply be a box or a bag surrounding the wrapped fabric roll.

In the specification, each disclosed embodiment includes a sleeve that directly touches the fabric roll to keep the solvent in place.  Fig. 1 illustrates this:



FIG.I

The sleeve (15) is shown directly touching the pre-soaked fabric roll (13).

Moreover, a snug sleeve is necessary to accomplish the key "surprising" discovery of the invention:

It has been found that the pre-packaged, pre-soaked cleaning system described is a very stable system which can be transported and stored in a horizontal and/or vertical disposition until use without substantially disturbing the distribution of the solvent in the fabric roll and detrimentally affecting the cleaning ability of the fabric.

(Ex. A, col. 4, lines 9-14.)  Without a snug sleeve, the inventors' system could not accomplish this key function of the invention.  There is no disclosure in the Reissue Patent of any other type of sleeve.

Lastly, if these terms were construed to cover packaging that does not touch the roll, then they would add nothing to the claims. The term "sealed sleeve" discussed above already requires a heat-sealed package that surrounds the roll. The terms "in contact with" and "disposed therearound" further specify the nature of the sleeve's fit. Otherwise, they would be duplicative of "sealed sleeve." This cannot be the case because each claim term is presumed to have meaning. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004).

Accordingly, the sleeve must touch and enclose the fabric roll. A simple loose bag or box does not satisfy the claims.

    4.    <u>"means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned"</u>

    *Proposed construction:  ball bearings, disposed in the core of the fabric roll, which engages a shaft, and equivalents thereof*

The final limitation of claim 32, "means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned," is in means plus function format. The limitation, therefore, "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

The specification only discloses one set of structures for operatively associating the fabric roll with a cylinder to be cleaned. Those structures are shown in Figure 2 and described at the top of column 4:



FIG.2

> The core 11 is also preferably provided with engagement means 19, such as ball bearings or the like, or with other suitable means, for reception of a shaft 21 (Fig. 2) located on an appropriate machine, such a printing machine or the like (not shown) provided with a take-up roll to take-up cleaning fabric after it has achieved its cleaning function.  (Ex. A, col. 4, lines 2-8.)

Thus the "means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned" is the ball bearings 19 and the shaft 21.  The shaft is "located" adjacent the cylinder to be cleaned, and the ball bearings allow the roll to "operatively associate" with the cylinder (i.e., allows the roll to rotate around the shaft so that the pre-soaked fabric wipes the cylinder).  The specification does not disclose any other such means.

Thus, pursuant to 35 U.S.C. § 112, ¶ 6, the claim is limited to systems which include ball bearings, disposed in the core of the fabric roll, which engage a shaft, and equivalents thereof.

## C.     Claim Constructions for the '976 Patent

We ask the Court to construe two sets of terms from the '976 patent:  (a) "reducing air content of a strip of cleaning fabric by 1 to 50 percent"; and (b) "ambient temperature."

1.     "reducing air content of a strip of cleaning fabric by 1 to 50 percent"

> *Proposed construction*:  *air content of the fabric is reduced by 1-50 percent, in total, between the start of its manufacture and the time the solvent is added. Moreover, as held by Judge Moran, the fabric's air content must be reduced prior to its being wound on a core to form a roll.*

Claim 1 of the '976 patent recites "a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50 percent," and claim 14 recites "reducing air content of a

strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric." In the Siebert case, the parties (including Baldwin) agreed that these limitations were substantially similar, and Judge Moran construed them together. *Baldwin*, 2005 WL 1838451, at *8 (Ex. D). We agree with Baldwin and Judge Moran that these limitations are substantively identical, and should be construed consistently.

In the Siebert case, Judge Moran held, on Reconsideration, that "reduced air content cleaning fabric" required "a fabric whose air content has been reduced by some method prior to being wound on a roll," *Baldwin*, 2007 WL 1610449, at *8 (Ex. E), and granted summary judgment of noninfringement. Fiberweb agrees with this holding, and we ask the Court to adopt it here. Baldwin, again, is estopped from challenging it now.

We also ask the Court to construe the quantitative portion of this claim limitation: "reducing…by 1 to 50 percent." Specifically, we ask the Court to define the start and end points for the 1 to 50 percent measurement. Without such definition, the claim requirement is at best indefinite, and at worst, meaningless.

During the patent's prosecution, Baldwin made clear that the "1 to 50 percent" reduction occurs between the start of the fabric's manufacture and the time the solvent is added. First, in a Response dated June 26, 1996, Baldwin amended the claims to add the 1 to 50 percent range and stated that "The air is removed *prior to the fabric being saturated either during its manufacture or after its manufacture* by a process such as calendaring." (Ex. G, '976 patent prosecution history excerpts, June 26, 1996 Response, at 9, emphasis added.)

In a later response, Baldwin repeated the above sentence (Ex. G, February 26, 1997 Response, at 6) and then distinguished a reference which, according to the Examiner, removed air by saturating with fabric:

> Merely soaking the cleaning fabric in solvent, however, fails to produce a reduced air cleaning fabric. As claimed in independent claims 1 and 15 [which became claim 14], from which all other claims depend, the cleaning fabric is obtained <u>prior</u> to saturating it with solvent, not during or by the saturation with solvent. By reducing the air content of the cleaning fabric <u>prior</u> to saturation, the present invention improves the wettability of the fabric and improves the distribution of the solvent in the fabric.

(Ex. G, February 26, 1997 Response, at 7, emphasis in original.)

Finally, in its last formal Response, Baldwin emphasized again that the air reduction occurs prior to addition of solvent:

> As claimed in independent claims 1 and 15 [which became claim 14], from which all other claims depend, the reduced air content cleaning fabric is obtained <u>prior</u> to saturating it with solvent, not during, after, or by the saturation with solvent.

(Ex. G, May 26, 1998 Response, at 3.)

Thus, based on Baldwin's statements in the file history, the 1 to 50 percent reduction of air from the fabric must occur "during its manufacture or after its manufacture" but "prior to saturating it with solvent." The start point for measuring the 1 to 50 percent reduction, therefore, is the beginning of the fabric's manufacture, and the end point is the time the solvent is added.

Without specifying these start and end points, the 1-50 percent limitation is meaningless. For example, assume a competitor removes 90% of the air from a fabric during manufacture. The patentee should not be allowed to pick an arbitrary start and end point for its measurement, and state that, between those two arbitrary points, the air is reduced by 1 to 50 percent. (E.g., pick the mid point of manufacture and the end point, and decree that the air is reduced by 45%.) The upper limit of the claimed range—50%—would be effectively removed from the claim.

In the file history, Baldwin explicitly stated that the air is reduced by 1 to 50% *during or after manufacture*, but *prior to* the solvent being added. These statements put competitors on notice as to what they can and cannot do. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l,*

- 17 -

*Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and the meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct…. Were we to accept [the patentee's] position, we would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies."); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996) ("the claims, specification, and file history…constitute the public record of the patentee's claim, a record on which the public is entitled to rely").  Thus, the "reducing air content…by 1 to 50 percent" limitation should be construed as "reducing air content of the fabric by 1-50 percent, in total, between the start of its manufacture and the time the solvent is added."

      2.    <u>"ambient temperature"</u>

          <u>*Proposed construction*</u>*:  room temperature*

Independent claim 1 recites a "cleaning compound which does not readily evaporate at ambient temperature," and claim 14 recites a "compound solvent which does not evaporate readily at ambient temperature."  Ambient temperature, Fiberweb submits, simply means room temperature, or roughly 22º C (72º F).

The specification supports this plain meaning.  In describing the calendaring process, the specification states:

> The at least a pair of rollers 42 compress the fabric. Preferably, but not necessarily, the temperature of the at least a pair of rollers 42 is hotter than room temperature. Alternatively, the temperature of the at least a pair of rollers 42 is at about ambient temperature or less than ambient temperature.

(Ex. B, at col. 7, lines 30-35.)  Thus, ambient temperature simply means room temperature.

# VI.    CONCLUSION

For the foregoing reasons, Fiberweb requests that the Court adopt its proposed claim

constructions.

Date: December 14, 2007                    Respectfully submitted,

                                           **CONNOLLY BOVE LODGE & HUTZ, LLP**


                                           */s/ Francis DiGiovanni*_____
                                           Francis DiGiovanni (#3189)
                                           The Nemours Building
                                           1007 North Orange Street
                                           P.O. Box 2207
                                           Wilmington, Delaware 19899-2207
                                           Telephone:  302-888-6316
                                           Facsimile:  302-658-5614
                                           fdigiovanni@cblh.com


Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
**KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone:  (617) 261-3100

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on December 14, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899

I further certify that on this same date I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by Federal Express and e-mail on the following counsel of record:

> Keith J. McWha, Esquire
> James W. Gould, Esquire
> Morgan & Finnegan
> 3 World Financial Center
> New York, NY  10281-2101

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)