IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., | ) | |
| | ) | **REDACTED VERSION** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-077-JJF |
| | ) | |
| FIBERWEB SIMPSONVILLE, INC., | ) | |
| and FIBERWEB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWERING BRIEF TO PLAINTIFF'S MOTION FOR *IN CAMERA*
REVIEW AND TO COMPEL PRODUCTION OF DOCUMENTS**

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: 302-888-6316
Facsimile: 302-658-5614
fdigiovanni@cblh.com

*Attorneys for Defendants Fiberweb Simpsonville,
Inc., and Fiberweb, Inc.*

OF COUNSEL:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

Dated: January 9, 2008

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

NATURE AND STAGE OF THE PROCEEDINGS .................................................................. 1

SUMMARY OF ARGUMENT .................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 1

ARGUMENT ................................................................................................................................ 2

      A.    Attorney-Client Privileged Documents ........................................................................ 2

           1.    Documents numbered 80, 86, 94, 96, 110, and 114 are privileged ........ 6

           2.    Documents 109 and 141 are privileged .............................................. 7

           3.    Document 82 is privileged ................................................................. 8

           4.    Document 113 is privileged ............................................................... 8

      B.    Attorney Work Product Doctrine .................................................................................. 9

           1.    Documents 81 and 98 are protected from discovery by the attorney work product doctrine .......................................................... 10

           2.    Document 133 is protected from discovery by the attorney work product doctrine ........................................................................... 11

           3.    Documents 81, 98, and 133 are attorney-client privileged communications ............................................................................... 11

      C.    No Waiver of Privilege Has Occurred ........................................................................ 12

      D.    *In Camera* Inspection Is Not Necessary ..................................................................... 12

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

CASES

*In re Teleglobe Communications Corp. v. BCE Inc.*,
    493 F.3d 345, 359 (3rd Cir. 2007) ............................................................................. 3

*Santrade, Ltd. V. General Elec. Co.*,
    150 F.R.D. 539 (E.D.N.C. 1993) ................................................................................. 3

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .................................................................................................... 3

OTHER AUTHORITY

RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000) ............................... 3

Fed. R. Civ. P. 26(b)(3) ............................................................................................................ 9-11

## I.   INTRODUCTION

Defendant Fiberweb Simpsonville Inc. and Fiberweb, Inc. (collectively "Fiberweb") hereby submits its brief in opposition to Baldwin Graphic Systems Inc.'s ("Baldwin") motion for *in camera* review and to compel production of documents.

## II.   NATURE AND STAGE OF THE PROCEEDINGS

On December 29, 2007, Baldwin moved to compel production of certain documents that Fiberweb claims are privileged and for *in camera* review of the same. (D.I. 75). Fiberweb hereby submits this brief opposing Baldwin's motion.

## III.   SUMMARY OF ARGUMENT

The documents that Baldwin seeks to compel production of fall into two categories: one, documents that reflect or summarize legal advice given by outside counsel and circulated internally within Fiberweb; and two, documents that reflect or summarize instructions given by trial counsel to Fiberweb employees for the purpose of assisting trial counsel in preparation for trial. The documents within the first category are protected under the attorney-client privilege. The documents within the second category are protected under the work-product doctrine and the attorney-client privilege.

## IV.   STATEMENT OF FACTS

Fiberweb has produced 31,462 pages of documents in this case. A small fraction of those pages, which were inadvertently produced, contained attorney-client privileged material and/or information protected by the work-product doctrine. This was discovered during the depositions

of Mr. Kevin Dill and Mr. Jon Howey when Baldwin sought to introduce some of these documents as exhibits. Fiberweb objected to the use of the documents on the grounds of privilege and pursuant to section 9.1 of the protective order (D.I. 42) sought to have those exhibits returned to Fiberweb. Baldwin objected to the return of those documents. (Ex. A).

After the depositions, pursuant to section 9.1 of the protective order, Fiberweb gave written notice identifying documents that were inadvertently produced. (D.I. 76, Plaintiff's Ex. 1). Fiberweb also re-produced the inadvertently produced documents in redacted form and gave Baldwin an updated privileged log. (Ex. B). The privilege log lists 66 documents that were inadvertently produced, Doc. No. 80 through 145. (Ex. B).

During a meet and confer, Baldwin agreed that 11 of those 66 documents were privileged. (D.I. 76, Plaintiff's Ex. 2). Baldwin also agreed to destroy all copies of inadvertently produced documents. (D.I. 76, Plaintiff's opening brief, at 2). Currently, Baldwin seeks to compel 55 documents. (D.I. 76, Plaintiff's opening brief, at 2 fn. 2). As indicated in the privilege log, of those 55 documents Baldwin seeks to compel, 42 documents are exact duplicates of other documents Baldwin is seeking to compel. Therefore, there are only 13 distinct documents at issue in Baldwin's motion. These documents, referenced by the document number given in the privilege log, are Doc. Nos. 80, 81, 82, 86, 94, 96, 98, 109, 110, 113, 114, 133, and 141. (see Ex. B). Except for documents #133 and #141, redacted versions of the other inadvertently produced documents were provided to Baldwin. (Ex. C to M).

## V.   ARGUMENT

### A.   Attorney-Client Privileged Documents.

The attorney-client privilege applies to "any communication that satisfies the following elements: it must be '(1) a communication (2) made between privileged persons (3) in

confidence (4) for the purpose of obtaining or providing legal assistance for the client.'" *In re Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 359 (3rd Cir. 2007) (quoting RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 68 (2000)).

Courts routinely recognize that communications between corporate clients and their attorneys are privileged. *Id.* at 360. Because corporations act through human agents, communications between the corporation's employees and the corporation's attorney are entitled to protection. The Supreme Court has rejected the so-called "control group theory" – that only communications between high-level managers and a corporation's attorney merit protection. *Upjohn Co. v. United States*, 449 U.S. 383, 392 (1981). In the case of a corporate client, privileged communications may be shared by non-attorney employees in order to relay information requested by attorneys. *Santrade, Ltd. V. General Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993) ("Documents subject to the [attorney-client] privilege may be transmitted between non-attorneys (especially individuals involved in corporate decision-making) so that the corporation may be properly informed of legal advice and act appropriately. … A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds."). Also, the "disclosure of legal advice to a parent or affiliated corporation does not work a waiver of the confidentiality of the document, because of the complete community of interest between parent and subsidiary." *In re Teleglobe*, 493 F.3d at 370.

The first category of documents that Baldwin seeks to compel include documents that reflect or summarize legal advice given by outside counsel and circulated internally within Fiberweb. A brief description of each of these documents follows:

- Document 80 is a page from a Research and Technology Report dated November 2006 summarizing progress of the so-called Elixir SF project to management. (Howey Decl. at ¶¶ 2-4; Ex. C). This document was distributed to Kevin Dill, James Briggs, and Dan Cronin, all of whom were managers at Fiberweb's Graphic Arts division. (Howey Decl. at ¶ 5).

- Document 86 is an e-mail from Jon Howey to Bruno Cometa of Tenotex dated January 25, 2006. (Ex. F) Copied on the e-mail were Nicola Maglia, Jim Briggs, Kevin Dill, Roy Howard, Michael Baumgartner, Mimoun Saim, and Marina Nova, all of whom are or were employed by Fiberweb or its affiliate Tenotex. (Howey Decl. at ¶¶ 10-17; Ex. F).

- Document 94 is an e-mail from Jon Howey to Nicola Magila of Tenotex dated September 13, 2006. (Ex. G) Copied on the e-mail were Kevin Dill, James Briggs, Roy Howard, Michael Baumgartner, Mimoun Saim, and Marina Nova, and Bruno Cometa, all of whom are or were employed by Fiberweb or its affiliate Tenotex.. (Howey Decl. at ¶¶ 8, and 12-17; Ex. G).

- Document 96 is an e-mail from Jon Howey to Jean-Claude Abed, a Fiberweb employee, dated November 16, 2006. (Howey Decl. at ¶¶ 22-24; Ex. H).

- Document 110 is an e-mail from James Briggs to Derek Anderson and Ed Thomas. (Ex. K). Jon Howey, Kevin Dill, Jean-Claude Abed, and Michael Baumgartner were copied on the e-mail, all Fiberweb employees. (Howey Decl. at ¶¶ 1, 13, 15, and 24; Ex. K).

- Document 114 is an e-mail from Kevin Dill to Michael Baumgartner and Jean-Claude Abed dated November 28, 2006. (Ex. M). James Briggs, Roy Howard, and Jon Howey were copied on the e-mail, all Fiberweb employees. (Howey Decl. at ¶¶ 1, 12, and 14; Ex. M).

- Document 109 is an e-mail from James Briggs to Ed Thomas dated January 9, 2007. (Ex. J). Derek Anderson, Darrell Dean, Jim O'Connor, Jerry McCarty, Kevin Dill, Jon Howey, Mark Berman and Tom Taylor were copied on this e-mail. (Ex. J)

- Document 141 is an e-mail dated January 11, 2007 from Mr. Taylor in response to Mr. Brigg's e-mail of January 9, discussed above. (Briggs Decl. at ¶¶ 17-19). All the recipients of the document 109 e-mail were copied on this e-mail. (Briggs Decl. at ¶ 20).

- Document 82 is an e-mail from Kevin Dill to Joann Salek, Scott Anderson, James Briggs, Steve Goodpaster, and Julian Gudgeon dated November 10, 2003. (Ex. E). All of these people are or at the time were Fiberweb employees. (Dill Decl. at ¶¶ 4, and 6-9).

- Document 113 is an e-mail from Kevin Dill to Gerd Lindemann and Roy Howard of Fiberweb Europe. (Ex. L; Dill Decl. at ¶¶ 16-17). Steve Major, Philippe Quertain, James Briggs and Jon Howey were copied on this e-mail. (Ex. L).

1. **Documents numbered 80, 86, 94, 96, 110, and 114 are privileged.**

Documents numbered 80, 86, 94, 96, 110, and 114 reflect communications between Jon Howey, a principal scientist and a Fiberweb employee, and Ron Linker, Fiberweb's outside patent counsel. (Howey Decl. at ¶¶ 33-35).

**REDACTED**

Documents numbered 80, 86, 94, 96, 110, and 114 are attorney-client privileged communications. These documents reflect legal advice given by outside patent counsel, Mr. Linker, to Fiberweb. This legal advice was transmitted between Fiberweb employees involved in corporate decision-making so that the corporation would be properly informed of legal advice and to enable the corporation to act accordingly.

### 2. Documents 109 and 141 are privileged.

Document 109 is an e-mail from James Briggs to Ed Thomas dated January 9, 2007. (Ex. J). This document reflects communications between Mr. Briggs and Mr. Howey, both Fiberweb employees, and Michael Zeliger and Jackson Ho, Fiberweb's outside trial counsel. (Briggs Decl. at ¶¶ 14-16).

**REDACTED**

Document 141 is an e-mail from Mr. Taylor in response to Mr. Brigg's e-mail of January 9, discussed above. (Briggs Decl. at ¶¶ 17-19). Mr. Taylor is a Process Engineering Leader at the manufacturing plant that makes fabric for the ELIXIR® product. (Briggs Decl. at ¶ 13).

**REDACTED**

Documents numbered 109 and 141 are attorney-client privileged communications. These documents reflect legal advice given by outside trial counsel, Mr. Zeliger and Mr. Ho, to Fiberweb. This legal advice was transmitted between Fiberweb employees involved in corporate

decision-making so that the corporation may be properly informed of legal advice and act appropriately.

3. **Document 82 is privileged.**

Document 82 is an e-mail from Kevin Dill to Joann Salek dated November 10, 2003. (Ex. E). The redacted portion reflects advice given to Fiberweb by

**REDACTED**

Document 82 is an attorney-client privileged communication. This document reflects legal advice given by outside counsel, Ron Linker, to Fiberweb. This legal advice was transmitted between Fiberweb employees involved in corporate decision-making so that the corporation could be properly informed of legal advice and to enable the corporation to act accordingly.

4. **Document 113 is privileged.**

Document 113 is an e-mail from Kevin Dill to Gerd Lindemann and Roy Howard of Fiberweb Europe. (Ex. L). In the redacted portion, Mr. Dill transmits legal advice he obtained from

**REDACTED**

All individuals copied on the e-mail were Fiberweb employees or employees of Fiberweb's affiliate, Fiberweb Europe. (Dill Decl. at ¶¶ 20-22).

Document 113 is an attorney-client privileged communication. This document reflects legal advice given by outside counsel, Ron Linker, to Fiberweb. This legal advice was

transmitted between Fiberweb employees involved in corporate decision-making so that the corporation could be properly informed of legal advice and to enable the corporation to act accordingly.

### B. Attorney Work Product Doctrine

Under the attorney work product doctrine, ordinarily, a party may not discover documents that are prepared for trial for another party's attorney. Fed. R. Civ. P. 26(b)(3). Documents protected under the attorney work product doctrine may be discoverable only if the party seeking discovery shows a "substantial need" and "undue hardship." *Id.* Even if disclosure of attorney work product is ordered, disclosure of attorney's mental impressions, conclusions, opinions, and legal theories must be protected against disclosure. *Id.*

The second category of documents that Baldwin seeks to compel are documents that reflect or summarize instructions given by outside trial counsel to Fiberweb employees for the purpose of assisting trial counsel in the preparation of trial. A brief description of each of these documents follows:

- Document 81 is a budget list for projects scheduled to be performed. (Howey Decl. at ¶ 43; Ex. D).

- Document 98 is an e-mail from Jon Howey to Jim O'Connor dated October 27, 2006. (Ex. I) Copied on the e-mail were Kevin Dill, James Briggs, Ed Thomas, Tom Taylor, and Jimmy Nicholson, all of whom are or were employed by Fiberweb (Howey Decl. at ¶¶ 12-13, 28, and 49-51; Ex. I).

- Document 133 is an email from Jon Howey to himself dated July 26, 2006 with an attachment. (Howey Decl. at ¶ 55).

### 1. Documents 81 and 98 are protected from discovery by the attorney work product doctrine.

Outside trial counsel, Michael Zeliger and Jackson Ho, instructed Jon Howey to obtain certain measurements of the accused ELIXIR® product. (Howey Decl. at ¶ 45). Mr. Howey understood that these measurements were requested by outside counsel to help them prepare for trial in this case. (Howey Decl. at ¶ 46). Document 81 is a budget list for projects scheduled to be performed. (Howey Decl. at ¶ 81). The redacted portion states the work that outside counsel had requested Mr. Howey perform. (Howey Decl. at ¶ 47). Document 98, likewise, is a request by Mr. Howey in the form of an e-mail to Jim O'Connor to carry out outside counsels' instructions. (Howey Decl. at ¶¶ 54-55; Ex. I). Kevin Dill, James Briggs, Ed Thomas, Tom Taylor, and Jimmy Nicholson were copied on the e-mail. (Ex. I). The people copied on the e-mail were people at Fiberweb Mr. Howey believed could assist him in carrying out outside counsels' instructions. (Howey Decl. at ¶ 55).

Baldwin does not argue that it has a substantial need for these documents to prepare its case because it cannot. The redacted portions are not the results of the measurements, but only the instructions on where to perform the measurements. (Howey Decl. at ¶¶ 47 and 54). Indeed, these instructions on where to obtain certain specific measurements of the accused product reflect outside counsels' mental impressions and legal theories of the case, which should be afforded absolute immunity from discovery. *See* Fed. R. Civ. P. 26(b)(3).

      **2.    Document 133 is protected from discovery by the attorney work product doctrine.**

Outside trial counsel, Jackson Ho, asked Jon Howey to perform certain calculations with regards to the accused product. (Howey Decl. at ¶ 60). Mr. Howey understood that these measurements were requested by outside counsel to help them prepare for trial in this case. (Howey Decl. at ¶ 61). Document 133 is an e-mail sent by Mr. Howey to himself showing some preliminary calculations, a final version of which was sent to outside counsel, Mr. Ho. (Howey Decl. at ¶¶ 57-63).

Baldwin does not argue that it cannot perform these calculations itself without undue hardship and therefore does not have a substantial need for this document to prepare its case. Also, these calculations reflect outside counsels' mental impressions and legal theories of the case, which should be afforded absolute immunity from discovery. *See* Fed. R. Civ. P. 26(b)(3).

      **3.    Documents 81, 98, and 133 are attorney-client privileged communications.**

As well as protected under the work product doctrine, documents 81, 98, and 133 are attorney client privileged communications. These documents reflect communications by outside counsel to the client, Fiberweb, in confidence, for the purpose of providing legal assistance for Fiberweb. Trial counsel should be able to freely communicate with its client to prepare for trial without the fear that such communication would be discoverable. Otherwise, attorney-client communications would be inhibited, contrary to the goals of having such a privilege.

### C. No Waiver of Privilege Has Occurred.

The protective order entered in the case on March 1, 2007, states that "[i]f information subject to a claim of attorney-client privilege, attorney work product immunity or any other legal privilege, protecting information from discovery is inadvertently produced, such production shall in no way prejudice or otherwise constitute a waiver." (D.I. 42, at § 9.1). To the extent Baldwin may later argue[1] that inadvertent disclosure in this case constitutes a waiver, Baldwin argument is contrary to the Court's protective order, which states that inadvertent disclosure shall in no way constitute a waiver.

Beyond the inadvertent disclosure to Baldwin during discovery, the substance of the documents that Fiberweb asserts is privileged has not been disclosed outside of Fiberweb or its affiliates. (*See* Howey Decl. at ¶¶ 41, 56, and 64; Dill Decl. at ¶¶ 13 and 25; and Briggs Decl. at ¶ 22).

### D. *In Camera* Inspection Is Not Necessary.

Fiberweb respectfully submits that the updated privilege log provided to Baldwin is sufficient to describe the contents of the privileged documents. (*See* Ex. B). And to the extent that any additional information is needed, it is set forth in the declarations of Jon Howey, James Briggs and Kevin Dill. Given the privilege log, the declarations, and arguments submitted in connection with this opposition, *in camera* inspection of the unredacted documents is unnecessary. Contrary to Baldwin's contention, the protective order entered in this case, does not state that *in camera* inspection is appropriate or necessary in this situation. Indeed, the protective order does not even mention *in camera* inspection. Nevertheless, if the Court

---

[1] Baldwin has not, to date, made such an argument.

determines that *in camera* inspection would be helpful in resolving this motion, Fiberweb has no objection.

## VI. CONCLUSION

For the above reasons, plaintiff's motion to compel production of documents should be denied and plaintiff's motion for *in camera* review should be denied as moot.

Date: January 9, 2008

Respectfully submitted,

**CONNOLLY BOVE LODGE & HUTZ, LLP**

*/s/ Francis DiGiovanni*
Francis DiGiovanni (#3189)
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: 302-888-6316
Facsimile: 302-658-5614
fdigiovanni@cblh.com

Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
**KIRKPATRICK & LOCKHART
 PRESTON GATES ELLIS LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on January 9, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I further certify that on this same date I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by Federal Express and e-mail on the following counsel of record:

> Keith J. McWha, Esquire
> James W. Gould, Esquire
> Morgan & Finnegan
> 3 World Financial Center
> New York, NY 10281-2101

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)