**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-077-JJF |
| | ) | |
| FIBERWEB SIMPSONVILLE, INC., | ) | |
| and FIBERWEB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' REBUTTAL BRIEF ON CLAIM CONSTRUCTION**

Francis DiGiovanni (#3189)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899-2207
Telephone: 302-888-6316
Facsimile: 302-658-5614
fdigiovanni@cblh.com

*Attorneys for Defendants Fiberweb Simpsonville,
Inc., and Fiberweb, Inc.*

OF COUNSEL:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone: (617) 261-3100

Dated: January 22, 2008

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................1

II.   CLAIM CONSTRUCTIONS FOR THE REISSUE PATENT .................................2

    A.    "a pre-soaked fabric roll" ...........................................2

    B.    "sealed sleeve" ......................................................2

    C.    "in contact with" and "disposed thereround" .........................3

    D.    "means for locating said fabric roll adjacent to and operatively
          associated with a cylinder to be cleaned" ..........................7

III.  CLAIM CONSTRUCTIONS FOR THE '976 PATENT ..................................8

    A.    Claim 1 ..............................................................8

          1.    "A device" ....................................................8

          2.    "a reduced air content cleaning fabric" .......................8

          3.    "having an air content by volume reduced by 1 to 50
               percent" .....................................................9

          4.    "ambient temperature" .........................................9

          5.    "means for introducing said solvent" .........................10

    B.    Claim 14 ............................................................10

          1.    "reducing air content of a strip of cleaning fabric by 1 to 50
               percent" .....................................................10

          2.    "ambient temperature" ........................................11

IV.   CONCLUSION ................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                                          **Pages**

*Abbott Labs. v. Dey, L.P.*,
    110 F. Supp.2d 667, 670 (N.D. Ill. 2000), *rev'd on other grounds*,
    287 F.3d 1097 (Fed. Cir. 2002)...........................................................................3

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.*,
    No. 2007-1262, slip op. (Fed. Cir., Jan. 15, 2008) ............................................ Passim

*In re Freeman*,
    30 F.3d 1459, 1465-69 (Fed. Cir. 1994) ......................................................2

*Huron Holding Corp. v. Lincoln Mine Operating Co.*,
    312 U.S. 183, 188-89 (1941) .......................................................................3

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370, 391 (1996).............................................................................2

*Microsoft Corp. v. Multi-Tech Systems, Inc.*,
    357 F.3d 1340, 1349 (Fed. Cir. 2004)..........................................................5

*Phillips v. AWH Corp.*,
    415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc)....................................... 4-5

*Southwall Technologies, Inc. v. Cardinal IG Co.*,
    54 F.3d 1570, 1578 (Fed. Cir. 1995)............................................................5


**STATUTES**

35 U.S.C. § 112, ¶ 6 .........................................................................................10

## I.    INTRODUCTION

Defendants Fiberweb Simpsonville, Inc. and Fiberweb, Inc. (collectively, "Fiberweb"), hereby respond to Plaintiff Baldwin Graphic Systems, Inc.'s ("Baldwin's") Opening Markman Brief.

On January 15, 2008, the Federal Circuit issued its opinion in *Baldwin Graphic Systems, Inc. v. Siebert, Inc.,* construing some of the claim terms at issue in this case.  No. 2007-1262, slip op. (Fed. Cir., Jan. 15, 2008) (copy attached as Ex. 1).  The Federal Circuit affirmed some of Judge Moran's constructions, reversed others, and remanded the case for further proceedings. The Federal Circuit's claim constructions were as follows:

| Claim Term | Federal Circuit's Construction | Ruling |
|---|---|---|
| "a pre-soaked fabric roll" | "not limited to a single roll" (*Siebert*, slip op. at *9.) | Reversing Judge Moran |
| "sealed sleeve" | "limited to 'heat-sealed sleeve'" (*Siebert*, slip op. at *9.) | Affirming Judge Moran |
| "reduced air content cleaning fabric" | "not limited to any particular process or method of making the pre-packaged, pre-soaked cleaning system, or to any sequence of air content reduction relative to winding" (*Siebert*, slip op. at *11.) | Reversing Judge Moran's Reconsideration Ruling, affirming his earlier Ruling |
| "reducing air content of a strip of cleaning fabric" | does not require that "the air content must be reduced prior to winding on the roll" (*Siebert*, slip op. at *12.) | Reversing Judge Moran's Reconsideration Ruling, affirming his earlier Ruling |

Fiberweb embraces the Federal Circuit opinion *in toto*, even for those terms for which the Federal Circuit adopted Baldwin's proposed constructions.[1] The task that remains for this Court, therefore, is to: (a) adopt the Federal Circuit's claim constructions; and (b) resolve the remaining claim construction disputes between the parties.

In this Rebuttal Brief, we address each of the claim construction issues raised by the parties in their Opening Briefs. Where the Federal Circuit's ruling controls—or informs—the result, we so state. Where the Federal Circuit's ruling does not address the issue, we respond to the arguments in Baldwin's Opening Brief.

## II.    CLAIM CONSTRUCTIONS FOR THE REISSUE PATENT

### A.    "a pre-soaked fabric roll"

Fiberweb accepts the Federal Circuit's ruling that "a pre-soaked fabric roll" is not limited to one roll. This was Baldwin's position in the *Siebert* case and in this case. Thus, this dispute is now moot.

### B.    "sealed sleeve"

*Fiberweb's proposed construction: a heat-sealed enclosure surrounding the fabric roll such that solvent does not leak*

The Federal Circuit affirmed Judge Moran's decision that the term "sealed sleeve" is limited to "heat-sealed sleeve" in all claims of the reissue patent. (*Siebert*, slip op. at *9.) Baldwin is collaterally estopped from challenging that ruling in this case, and now, the Federal Circuit opinion is binding precedent. *See In re Freeman*, 30 F.3d 1459, 1465-69 (Fed. Cir.

---

[1] Since Fiberweb was not a party to the *Siebert* case, it is entitled to challenge and reargue any of the Federal Circuit's claim constructions. However, given the importance of *stare decisis* in claim construction, *see Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996), however, Fiberweb will not do so, and will accept all of the Federal Circuit's rulings. Baldwin, by contrast, is estopped from challenging any of these constructions, for the reasons given in our Opening Brief.

1994).  This estoppel applies even if Baldwin takes the unusual step of seeking an *en banc* rehearing of the *Siebert* decision or appealing that decision to the Supreme Court.  *See Abbott Labs. v. Dey, L.P.*, 110 F. Supp.2d 667, 670 (N.D. Ill. 2000), *rev'd on other grounds, Abbott Labs. v. Dey, L.P.*, 287 F.3d 1097 (Fed. Cir. 2002); *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 188-89 (1941).

Beyond the heat-sealing issue resolved by the Federal Circuit, the parties continue to dispute the full meaning of the term "sealed."  Fiberweb has asked this Court to further construe the term "sealed sleeve" as an "enclosure surrounding the fabric roll such that solvent does not leak."  Baldwin counters by arguing that "sealed" means to "prevent leakage, which does not mean leakage could not occur." (D.I. 72, Plaintiff's Opening Brief at 10.)

Baldwin provides no support, in the intrinsic evidence or otherwise, for this nonsensical construction.  Baldwin's construction is also inconsistent with the Federal Circuit's holding that the seal must be a heat-seal.  There is nothing in the specification or prosecution history which suggests that the heat-sealed sleeves of the invention allow the solvent to leak.

Accordingly, Fiberweb asks the Court to adopt the plain meaning of "sealed," and fully construe "sealed sleeve" to require "a heat-sealed enclosure surrounding the fabric roll such that solvent does not leak."

C.     "in contact with" and "disposed therearound"

*Proposed construction:  the sleeve directly touches the roll*

These terms were not directly addressed in Judge Moran's or the Federal Circuit's decision, but as explained below, the Federal Circuit's reasoning does apply.

Fiberweb submits that "in contact with" and "disposed therearound" require that the sleeve directly touch the roll.  Baldwin counters that "in contact with" does not mean "direct

- 3 -

contact" and therefore doesn't require any touching. (D.I. 72, Plaintiff's Opening Brief at 11.) To support this argument, Baldwin quotes the meaning of "contact" in the American Heritage Dictionary of the English Language as "[t]he state or condition of … immediate proximity." *Id.* The language omitted by the ellipse, however, is critical, and directly contrary to Baldwin's argument. The American Heritage Dictionary actually says that "contact" means "[t]he state or condition **of touching** or of immediate proximity" (D.I. 73, Plaintiff's Opening Brief Ex. F) (emphasis added). This definition is consistent with Fiberweb's proposed construction. In contact with" means the sleeve directly touches the fabric roll.

Baldwin also argues that "disposed therearound" does not require that the sleeve touch the fabric roll. (D.I. 72, Plaintiff's Opening Brief at 13.) For support, Baldwin relies heavily on extrinsic dictionary definitions and all but ignores the specification and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (en banc) ("the specification is the single best guide to the meaning of a disputed term") (internal quotes omitted); *Id.* at 1318 ("We have viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms").

As Fiberweb explained in its opening brief, in each embodiment disclosed in the specification, the sleeve touches the fabric, and that touching is necessary to accomplish the "key discovery" of the invention.

In addition to the specification, the patent prosecution history should also be consulted. *Id.* at 1319 ("undue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents.") During reissue prosecution, one of the inventors submitted a Declaration to the patent

office.  In that declaration, he declared that "in the broadest scope" to which he was entitled, the

claims should recite that the sleeve is disposed around and in contact with the fabric roll:

> I claimed less than I had a right to claim in the patent and that as claimed, the
> claims fail to cover the inventive subject matter of my pre-packaged, pre-soaked
> cleaning system in the broadest scope to which I am entitled in that (1) they fail to
> recite the sleeve which is disposed around and in contact with the pre-soaked
> fabric roll as simply a sealed or sealable sleeve in contact with the fabric rather
> than a heat-sealed and/or heat-sealed and heat shrunk plastic sleeve which is in
> intimate contact with the pre-soaked fabric roll as recited in the patent."

(D.I. 72, Plaintiff's Opening Brief Ex. C at 2-3.)  This characterization constitutes a disavowal of

claim scope. *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1349 (Fed. Cir. 2004)

(limiting claims to communications over a telephone line and declining to "construe the claims to

cover subject matter broader than that which the patentee itself regarded as comprising its

inventions").  The patentee is not entitled to declare to the patent office that the "broadest scope"

to which he is entitled requires contact, and then seek claim constructions in litigation which do

not require contact. *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.

Cir. 1995) (patentee not entitled to treat claims as a "nose of wax" and change the meaning of the

claims made clear by the public record).

   Disavowal issues aside, at the least, the inventor's declaration provides evidence of how

the PTO and the inventor understood the claims and provides the public notice thereof. *Phillips*,

415 F.3d at 1317 ("Like the specification, the prosecution history provides evidence of how the

PTO and the inventor understood patent").

   During the prosecution of the reissue patent, the applicants tried to get the examiner to

accept an amendment to the specification, among others, to broaden the term "intimate contact"

by deleting the word "intimate."  (Ex. 2, preliminary amendment of 4/10/95 at 4-5; amendment

of 3/6/96 at 9.)  The examiner persistently rejected such attempts at broadening the specification

as introducing impermissible new matter not included in the initial disclosure. (Ex. 2, office action of 12/5/95 at 3-5; office action of 5/16/96 at 4-5.) Finally, applicants relented and cancelled their attempts at broadening the specification. (D.I. 73, Plaintiff's Opening Brief Ex. E at 6-7.)

At the time applicants abandoned their attempt at broadening the specification, applicants added claim 32 (originally claim 57) to the patent. (D.I. 73, Plaintiff's Opening Brief Ex. E at 9.) In connection with introducing this new claim, applicants stated that claim 32 combined the substance of claim 28 and claim 44 (now claim 29), "although broader in scope in some respects." (Plaintiff's Opening Brief Ex. E at 14.) Claim 28 required that the sleeve be in contact with the fabric roll. (D.I. 71, Defendant's Opening Brief Ex. A, Reissue patent at col 10, line 53.) Applicants further stated that "in view of the fact that added claim [32] combines the substance of original Reissue Claims 28 and [29], it is respectfully submitted that Claim [32], although broader in some respects, raises no new issues which would require further search and consideration." (D.I. 73, Plaintiff's Opening Brief Ex. E at 14.) If the applicants understood at the time that newly introduced claim 32 required absolutely no contact whatsoever between the sleeve and the fabric roll, the above statement was misleading at best since (1) every embodiment in the specification required contact, (2) every claim at issue up to that point required contact or intimate contact; (3) claim 28 which applicant draws support from required contact, (4) the inventor's declaration that in the "broadest scope" of his invention contact existed, and (5) the examiner's persistent rejection as impermissible new matter the attempt by applicants to broaden the specification from "intimate contact" to "contact." Certainly, the Examiner would have believed that applicants' attempt to broaden a claim to include no contact

whatsoever was a "new issue[] which would require further search and consideration." (D.I. 73,

Plaintiff's Opening Brief Ex. E at 14.)

Finally, the Federal Circuit's reasoning on the "heat-sealed" issue in *Siebert* is applicable

here.  In *Siebert*, the Federal Circuit found that:

> during prosecution of the Reissue Application, the examiner rightly refused to
> allow the applicants to amend the specification to remove references to "heat" as
> the way of sealing the sleeve.  This change would have broadened the patent and
> introduced impermissible new matter not included in the initial disclosure.  Thus
> the claims would have been invalid for lack of support in the initial disclosure for
> the new subject matter encompassed by the change because the claims could not
> show any support if construed to encompass more than heat-sealed sleeves.

Slip op. at *9.  Similarly, the examiner refused to allow the applicants to remove references to

"intimate" from "intimate contact" during the reissue proceedings.  Newly added claim 32,

therefore, cannot be interpreted as covering no direct contact at all.  If it were, claim 32 "would

have been invalid for lack of support in the initial disclosure." *Id.*[2]

For all the foregoing reasons, Fiberweb requests the Court adopt its construction of "in

contact with" in claim 28 and "disposed therearound" in claim 32 as requiring that, at a

minimum, the sleeve directly touch the fabric roll.

D.     "means for locating said fabric roll adjacent to and operatively associated with a cylinder
       to be cleaned"

       *Fiberweb's proposed construction: ball bearings, disposed in the core of the fabric roll,
       which engages a shaft, and equivalents thereof*

Baldwin has not yet proposed a construction for this means-plus-function clause.

Fiberweb stands by the construction and arguments outlined in its Opening Brief.

---

[2] Arguably, the initial disclosure cannot show support for any construction short of "intimate"
contact.

### III.    CLAIM CONSTRUCTIONS FOR THE '976 PATENT

A.    Claim 1

1.    "A device"

*Proposed construction*: *Claim 1 is a pure apparatus claim.*

With respect to independent claim 1 and dependent claims 7, 9, and 12 of the '976 patent, the Federal Circuit held that these claims were "pure apparatus claims" and that "[t]hey have no process limitations." *Siebert*, slip op. at *11. Fiberweb agrees and requests that this Court follow the Federal Circuit opinion in holding that independent claim 1 and all its dependent claims are pure apparatus claims.

The Federal Circuit also held that claims 1, 7, 9, and 12 were "not limited to any particular process or method of making the claimed pre-packaged, pre-soaked cleaning system, or to any particular sequence of air content reduction relative to winding." *Id.* Again, Fiberweb agrees and withdraws its contention that the fabric's air content must be reduced prior to its being wound on a core to form a roll.

Finally, the Federal Circuit faulted the parties' agreement that claim 1 and claim 14 of the '976 patent were substantially similar. *Id.* at *10. Fiberweb had also argued that that these two claims were "substantively identical." (D.I. 70, Defendant's Opening Brief at 16.) Fiberweb withdraws that contention and asks that claim 1 and claim 14 be construed separately.

2.    "a reduced air content cleaning fabric"

*Proposed construction*: *a reduced air content cleaning fabric must be obtained prior to solvent introduction.*

With respect to the claim term "a reduced air content cleaning fabric," the Federal Circuit held that the claims of the '976 patent require "that the air content of the cleaning fabric be

reduced prior to saturation." *Siebert*, slip op. at *12. Accordingly, Fiberweb requests that claim 1 be limited to obtaining a reduced air content cleaning fabric prior to solvent introduction.

        3.    <u>"having an air content by volume reduced by 1 to 50 percent"</u>[3]

      *Proposed construction*: *air content of the fabric is reduced by 1 to 50 percent, in total, between the start of its manufacture and the time the solvent is added.*

      Baldwin has not yet proposed a construction for this claim limitation. Fiberweb stands by the construction and arguments outlined in its Opening Brief.

      Although the Federal Circuit opinion does not directly address this claim limitation, there is support for Fiberweb's claim construction position in the opinion. Specifically, Fiberweb has argued that the plaintiff should not be allowed to pick an arbitrary start and end point of its measurement of the 1 to 50 percent reduction. (D.I. 70, Defendant's Opening Brief at 17.) The Federal Circuit opinion concurs, holding that claims 1, 7, 9, and 12 "are therefore **not limited** to any particular process or method of making the claimed pre-packaged, pre-soaked cleaning system, or **to any particular sequence of air content reduction** relative to winding." *Siebert*, slip op. at *11 (emphasis added). Following the Federal Circuit's lead, Fiberweb requests that this Court construe the "having an air content by volume reduced by 1 to 50 percent" limitation as encompassing any and all air reduction processes that occur from the start of manufacture until the solvent is added.

      Accordingly, "reduced by 1 to 50 percent" means the total air reduction from the start of manufacture until the solvent is added is between 1 and 50 percent.

        4.    <u>"ambient temperature"</u>

      <u>*Proposed construction:*</u> *room temperature*

      Fiberweb stands by the construction and arguments outlined in its Opening Brief.

---

[3] A certification of correction replaced "of" with "reduced by."

5.    "means for introducing said solvent"

*Proposed construction: spray nozzles, pouring containers, or immersing tanks and equivalents thereof*

Fiberweb finds it necessary to construe this limitation given that the Federal Circuit admonished the parties and the district court not to treat the apparatus claim 1 and equivalent to the method claim 14. *Siebert*, slip op. at *10.

The "means for introducing said solvent" is in means-plus-function format. The limitation, therefore, "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

The specification was specifically amended at column 9, line 56-57 to include "spray nozzles, pouring containers, and immersing tanks" for the express purpose of clarifying "the antecedent basis for the term means for introducing." (D.I. 71, Defendant's Opening Brief Ex. G, Amendment Under 37 CFR §1.312 of 10/2/98 at 2.)

Therefore, pursuant to 35 U.S.C. § 112, ¶ 6, claim 1 is limited to devices which include spray nozzles, pouring containers, immersing tanks, and equivalents thereof.

B.    Claim 14

1.    "reducing air content of a strip of cleaning fabric by 1 to 50 percent"

*Proposed construction: reducing the air content of a strip of cleaning fabric by 1 to 50 percent, in total, between the start of its manufacture and the time the solvent is added.*

The Federal Circuit correctly points out that claim 14 is a method claim, and therefore should not be construed together with claim 1.

Substantively, however, the "reducing … by 1 to 50 percent" language has the same import here as in claim 1:  it requires that, in performing the method, the air content be reduced by 1 to 50 percent, in total, between the start of manufacture and the time the solvent is added.

Thus, for the reasons stated above in Section III.A.3 and in Fiberweb's Opening Brief, Fiberweb requests that the Court adopts its construction.

> 2.    "ambient temperature"

> *Proposed construction:* room temperature

Fiberweb stands by the construction and arguments outlined in its Opening Brief.

## IV.    CONCLUSION

For the foregoing reasons and the reasons stated in our Opening Brief, Fiberweb requests that the Court adopt its proposed claim constructions.


Date: January 22, 2008                    Respectfully submitted,

                                          **CONNOLLY BOVE LODGE & HUTZ, LLP**


                                          */s/ Francis DiGiovanni*
                                          Francis DiGiovanni (#3189)
                                          The Nemours Building
                                          1007 North Orange Street
                                          P.O. Box 2207
                                          Wilmington, Delaware 19899-2207
                                          Telephone:  302-888-6316
                                          Facsimile:  302-658-5614
                                          fdigiovanni@cblh.com


Of Counsel:

Michael E. Zeliger
Christopher Centurelli
Jackson Ho
**KIRKPATRICK & LOCKHART
  PRESTON GATES ELLIS LLP**
State Street Financial Center
One Lincoln Street
Boston, MA 02111-2950
Telephone:  (617) 261-3100

587758v1

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on January 22, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Jack Blumenfeld, Esquire
> Morris, Nichols, Arsht & Tunnell
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE  19899

I further certify that on this same date I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by Federal Express and e-mail on the following counsel of record:

> Keith J. McWha, Esquire
> James W. Gould, Esquire
> Morgan & Finnegan
> 3 World Financial Center
> New York, NY  10281-2101

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)