**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BALDWIN GRAPHIC SYSTEMS, INC., )
)
Plaintiff, )
)
v. ) Civil Action No. 06-077-JJF
)
FIBERWEB SIMPSONVILLE, INC., )
and FIBERWEB, INC., )
)
Defendants. )

**DECLARATION OF JACKSON HO IN SUPPORT OF**
**DEFENDANTS' REPLY BRIEF ON CLAIM CONSTRUCTION**

I, Jackson Ho, am an attorney at Kirkpatrick & Lockhart, Preston, Gates, Ellis, LLP, counsel for Defendants in this action. I submit this exhibit declaration in connection with Defendants' Reply Brief on Claim Construction. Under penalty of perjury, I declare the following to be true to the best of my knowledge, information and belief.

1. Attached as Exhibit 1 is a true and correct copy of *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, No. 2007-1262, slip op. (Fed. Cir., Jan. 15, 2008).

2. Attached as Exhibit 2 is a true and correct copy of excerpts from the file history of U.S. Patent No. Re. 35,976.

Dated: January 22, 2008

Jackson Ho

# Exhibit 1

# United States Court of Appeals for the Federal Circuit

2007-1262

BALDWIN GRAPHIC SYSTEMS, INC.,

Plaintiff-Appellant,

v.

SIEBERT, INC.,

Defendant-Appellee.

Thomas B. Kenworthy, Morgan, Lewis & Bockius LLP, of Philadelphia, Pennsylvania, argued for plaintiff-appellant. With him on the brief was Kenneth J. Davis.

Keith D. Parr, Lord, Bissell & Brook LLP, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Hugh S. Balsam and James T. Peterka. Of counsel on the brief was Robert P. Conlon, Walker Wilcox Matousek LLP, of Chicago, Illinois.

Appealed from: United States District Court for the Northern District of Illinois

Senior Judge James B. Moran

# United States Court of Appeals for the Federal Circuit

2007-1262

BALDWIN GRAPHIC SYSTEMS, INC.,

Plaintiff-Appellant,

v.

SIEBERT, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Illinois in case no. 03-CV-7713, Senior Judge James B. Moran.

---

DECIDED: January 15, 2008

---

Before MICHEL, Chief Judge, RADER, and MOORE, Circuit Judges.

RADER, Circuit Judge.

Baldwin Graphic Systems, Inc. (Baldwin) sued Siebert, Inc. (Siebert) for infringement of U.S. Patent No. Re. 35,976 (the Reissue patent) and U.S. Patent No. 5,974,976 (the '976 patent). After conducting a Markman hearing, the United States District Court for the Northern District of Illinois ultimately granted Siebert's motions for summary judgment of non-infringement of both patents. Because the district court erred in its construction of some of the disputed claim terms, this court affirms-in-part, reverses-in-part, and remands.

I

Baldwin's patents claim systems for cleaning a cylinder of a printing press using strips of cleaning fabric and methods for making those systems. Baldwin sued Siebert, asserting that Siebert's packaged fabric rolls infringed claim 32 of the Reissue patent and claims 1, 7, 9, 12, 14, 23, and 25 of the '976 patent.[*]

The district court construed two phrases in claim 32 of the Reissue patent, "a pre-soaked fabric roll" and "sealed sleeve." Claim 32 of the Reissue patent states:

> 32. A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:
>
> (1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including
>
> (2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

Reissue patent, col.11 l.9 – col.12 l.8 (emphases added).

The district court construed "a pre-soaked fabric roll" to mean "a single pre-soaked fabric roll." Baldwin Graphic Sys., Inc. v. Siebert, Inc., 1:03-CV-07713, slip op. at 9 (N.D. Ill. July 28, 2005) (Initial Order). In concluding that "a" means "one" in this context, the district court largely relied on the subsequent use of "said fabric roll" as suggesting a singular fabric roll. Initial Order, slip op. at 7. Also, according to the district court, the statement in the Reissue patent's specification that the sleeve is "disposed around and in intimate contact with the fabric roll," Reissue Patent, col.2 ll.22-

[*] Baldwin initially asserted that Siebert infringed another of its patents, U.S. Patent No. 6,035,483, but chose not to pursue this claim. With respect to the '976 patent, Baldwin asserted that Siebert directly infringed claims 1, 7, 9, 14, and 25, induced the infringement of claim 23, and contributorily infringed claim 12.

23, col.3 ll.17-18, evinced an intent to limit "a pre-soaked fabric roll" to "one pre-soaked fabric roll" because this condition "would not be fully possible with more than one roll in the sleeve." Initial Order, slip op. at 8.

As for "sealed sleeve," the district court construed this term to mean "heat-sealed sleeve." Initial Order, slip op. at 13.  Not readily apparent from the language of claim 32 itself, the district court arrived at this conclusion through an examination of the specification and the prosecution history of the Reissue patent.  The Reissue patent originally issued as U.S. Patent No. 5,368,157 (the '157 patent), and as the district court noted, "[a]ll references in the reissue patent specification to a sealed sleeve are to a 'heat-sealed' or a 'heat shrunken and heat-sealed' sleeve, as are all references in the 28 claims that appeared in the original '157 patent." Initial Order, slip op. at 9.  During prosecution of the Reissue patent, the applicants attempted to remove "heat" as a modifier of "sealed" and "sealable" from the specification, but the PTO examiner rejected the proposed changes as impermissibly introducing new matter:

> It is inconceivable that the applicants can find such a teaching in . . . the original specification, which by its own terms refers to the sleeve as a heat sealable plastic sleeve.  Why would one of ordinary skill in the art upon being informed that a sleeve was a heat sealable plastic sleeve, infer that what was really intended was that the sleeve need not be plastic and/or need not be heat sealable?

Initial Order, slip op. at 11 (quoting Reissue Patent Prosecution, PTO Official Action May 15, 1996 at 5) (ellipsis added).

Due to these objections, the applicants withdrew their broadening amendments to the specification.  Because of the withdrawal, the applicants maintained that the examiner's new matter rejection was moot.  Thus, the district court limited the term "sealed sleeve" in Reissue claim 32 to a "heat-sealed sleeve" because "[a] broader

reading would be wholly incongruous with the patent prosecution, the patent examiner's blunt rejection of the contention that the patent specification supports the broader term, and the patentees' own acknowledgment that their revised amendments no longer sought to broaden this terminology." Initial Order, slip op. at 11-12.

Based on its construction of "a pre-soaked fabric roll" and "sealed sleeve," the district court granted Siebert's motion for summary judgment of non-infringement of claim 32 of the Reissue patent. The district court based its summary judgment on the undisputed facts that Siebert sold its accused fabric rolls in sets of three or between six and nine, but not individually. Initial Order, slip op. at 9. Likewise, Siebert did not sell its fabric rolls in heat-sealed sleeves. Id.

With respect to the asserted claims of the '976 patent, claims 1 and 14 are independent claims, and the other asserted claims depend from either claim 1 or claim 14. Claims 1 and 14 contain the disputed limitations, "reduced air content cleaning fabric" (claim 1) and "reducing air content of a strip of cleaning fabric" (claim 14). The district court construed the phrase "reduced air content cleaning fabric" to address these similar claim terms together. Initial Order, slip op. at 14. Claims 1 and 14 of the '976 patent recite:

> 1.    A device for cleaning a cylinder of a printing press comprising:
>
> a reduced air content cleaning fabric having an air content by volume of 1 to 50 percent; and
>
> a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperature, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.

> 14. A method for making a cleaning system comprising:
>
> reducing air content of a strip of cleaning fabric by 1 to 50 percent to form a strip of reduced air cleaning fabric; and
>
> contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

’976 patent, col.11 ll.58-67, col.12 ll.49-57.

In its initial consideration of these terms, the district court concluded that “reduced air content cleaning fabric” was not limited to a particular method for producing reduced air content cleaning fabric. The district court reached this conclusion because the ’976 specification notes that “[t]he preferred, but not exclusive, method of reducing the air content in the fabric is calendaring.” Initial Order, slip op. at 15 (quoting ’976 patent, col.7 ll.27-28). Under the district court’s initial construction, the claims covered reducing air content in the fabric by methods other than calendaring, including winding or rewinding the fabric on a roll. Because this claim construction created issues of fact about Siebert’s method of winding its accused products on a roll to reduce air content, the trial court denied Siebert’s motion for summary judgment of non-infringement of the ’976 patent. Initial Order, slip op. at 16-17.

Some months later, on Siebert’s motion, the district court reconsidered its construction of “reduced air content cleaning fabric.” Baldwin Graphic Sys., Inc. v. Siebert, Inc., 1:03-CV-07713 (N.D. Ill. Mar. 21, 2006) (Reconsideration Order). Siebert then argued for the first time, and the district court agreed, that while the claims may not be limited to calendaring as the method for reducing air content, the claims were in fact limited to a particular timing of that air content reduction step relative to winding. With

this understanding, the district court interpreted “reduced air content cleaning fabric” to mean “a fabric whose air content has been reduced by some method prior to being wound on a roll.” Reconsideration Order, slip op. at 15.

The district court arrived at this new construction with an eye to the terms “fabric,” “cleaning fabric,” “strip of cleaning fabric,” and “strip of cloth” in the various claims of the ’976 patent. With respect to claim 14, the district court explained that the term “strip of cleaning fabric” “refers to a cleaning fabric whose air content has not yet been reduced . . . because that term, a noun, is being modified by the verb ‘reducing.’ Thereafter in the claim the term used is ‘reduced air content cleaning fabric,’ because the reducing of the air content has already occurred.” Reconsideration Order, slip op. 7. According to the district court, “independent . . . claims 1 and 14, standing alone, do not aid much in our claim construction analysis . . . [because] both claims are very broad and vague, neither teaching the winding of the fabric on a core.” Reconsideration Order, slip op. at 5. Thus, the district court turned to the usage of various fabric and cloth-related terms in the dependent claims as a guide for construing “reduced air content cleaning fabric” in the independent claims. Also, the district court relied on the prosecution history, where Baldwin represented that the claimed invention improved fabric moisture content and solvent distribution “[b]y reducing the air content of the cleaning fabric prior to saturation.” Reconsideration Order, slip op. at 8 (emphasis added). Because Siebert's product does not reduce air content before winding of the fabric on the roll, the district court granted Siebert’s motion for summary judgment of non-infringement on the claims of the ’976 patent. Reconsideration Order, slip op. at 15-16.

II

This court reviews claim construction without deference to the district court's interpretation.  Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc).  Likewise, a district court's grant of a motion for summary judgment receives review without deference.  Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1353 (Fed. Cir. 1998).

First, as to the Reissue patent, "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"  KJC Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000).  That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention.  The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one."  Id.  The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning.  An exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule.  See, e.g., Abtox Inc. v. Exitron Corp., 122 F.3d 1019 (Fed. Cir. 1997); Insituform Techs., Inc. v. Cat Contracting, Inc., 99 F.3d 1098 (Fed. Cir. 1996).

This record does not contain a clear indication that the applicant departed from the general rule for the article "a."  Nothing in the claim language, specification, or prosecution history compels an exceptional reading of "a" in this case.  The district court erred by misapplying the term "said fabric roll" later in the claim and the phrase "in

intimate contact with the fabric roll" in the specification. Initial Order, slip op. at 8. As noted above, the use of a definite article ("said" or "the") to refer back to an initial indefinite article does not implicate, let alone mandate the singular. Because the initial indefinite article ("a") carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality. In grammatical terms, the instances of "said fabric roll" in the claim are anaphoric phrases, referring to the initial antecedent phrase. Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest.

Contrary to the district court's analysis, § 2173.05(e) of the Manual of Patent Examining Procedure (MPEP) does not suggest otherwise. Section 2173.05(e) describes the need, in most cases, for claim terms to have proper antecedent bases:

> The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference. Similarly, if two different levers are recited earlier in the claim, the recitation of "said lever" in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended.

MPEP § 2173.05(e). According to the district court, § 2173.05(e) "only strengthens" the exclusively singular nature of "a pre-soaked fabric roll," because "the use of 'said fabric roll' implies that the prior reference to 'a fabric roll' should be read as a single roll, not one or more rolls, in order to avoid confusion." Initial Order, slip op. 7. To the contrary, MPEP § 2173.05(e) is inapposite because the limitations in claim 32 all relate to proper antecedent bases. Thus, the confusion or indefiniteness problem addressed by § 2173.05(e) does not arise in this claim.

The district court's reliance on language in the specification to limit "a pre-soaked fabric roll" to a single roll is similarly unavailing. The phrase "disposed around and in

intimate contact with the fabric roll" appears twice in the specification of the Reissue patent, and describes the relationship between the plastic sleeve and the fabric roll. Reissue patent, col.2 ll.22-23, col.3 ll.17-18.  This description does not require a single pre-soaked fabric roll.  Under the terms of this description, the plastic sleeve could be in intimate contact with multiple fabric rolls, like the plastic wrapping on a package of several hot dogs is in intimate contact with each of the hot dogs, despite the fact that the hot dogs themselves contact each other as well as the packaging.  Appellant's Br. at 13.  This description contains no requirement, implicit or explicit, that the plastic sleeve must be in intimate contact with the entire fabric roll.  For these reasons, "a pre-soaked fabric roll" as used in claim 32 of the Reissue patent is not limited to a single roll.

This court agrees, however, with the district court's careful and accurate analysis in its construction of "sealed sleeve" as limited to "heat-sealed sleeve" in the Reissue patent.  This court has consistently recognized that the Patent Act prevents an applicant from adding new subject matter during the patent prosecution process.  See Pandrol USA, LP v. Airboss Ry. Prods., Inc., 424 F.3d 1161, 1165 (Fed. Cir. 2005) (citing In re Ruschig, 379 F.2d 990 (CCPA 1967)).  In this case, during prosecution of the Reissue application, the examiner rightly refused to allow the applicants to amend the specification to remove references to "heat" as the way of sealing the sleeve.  This change would have broadened the patent and introduced impermissible new matter not included in the initial disclosure.  Thus the claims would have been invalid for lack of support in the initial disclosure for the new subject matter encompassed by the change because the claims could not show any support if construed to encompass more than heat-sealed sleeves.

In sum, with respect to the Reissue patent, this court finds that the district court erred in its construction of "a pre-soaked fabric roll." Nonetheless, the trial court correctly construed "sealed sleeve," rendering Siebert's fabric rolls non-infringing. Thus this court affirms the district court's summary judgment of non-infringement with respect to the Reissue patent.

Turning to the asserted claims of the '976 patent, this court finds that the district court erred in limiting "reduced air content cleaning fabric" to "a fabric whose air content has been reduced by some method prior to being wound on a roll." Upon review of the claims, specification, and prosecution history, this court discerns no way to uphold the trial court's construction of "reduced air content cleaning fabric."

As a preliminary matter, the parties agreed that the terms "reduced air content cleaning fabric" in claim 1 and "reducing air content of a strip of cleaning fabric" in claim 14 were substantially similar. Seizing on this point, the district court agreed, and construed only "reduced air content cleaning fabric" in an attempt to construe similar terms in both independent claims at once. Unfortunately this approach blurred an important difference between the two independent claims, namely that claim 1 is an apparatus claim and claim 14 is a method claim. Despite their similarities, these claims are directed toward different classes of patentable subject material under 35 U.S.C. § 101. Courts must generally take care to avoid reading process limitations into an apparatus claim, see AFG Industries, Inc. v. Cardinal IG Co., 375 F.3d 1367, 1372-1373 (Fed. Cir. 2004), because the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim, see Vanguard Products Corp. v. Parker Hannifin Corp., 234 F.3d 1370, 1372 (Fed. Cir. 2001) ("A novel

product that meets the criteria of patentability is not limited to the process by which is was made.").

Claim 1 and its dependent claims (asserted claims 7, 9, and 12) are pure apparatus claims. They have no process limitations. Claims 1, 7, 9, and 12 are therefore not limited to any particular process or method of making the claimed pre-packaged, pre-soaked cleaning system, or to any particular sequence of air content reduction relative to winding.

Unlike claim 1 and its dependent claims, claim 14 and its dependent claims (asserted claims 23 and 25) are method claims and each recites a series of steps. Therefore, and again unlike claim 1, the scope of claim 14 specifies the limits on the performance of those steps. As with any other type of claim, courts must carefully avoid importing limitations from the specification into method claims. See CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1231 (Fed. Cir. 2005) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). Nonetheless the specification informs the meaning of the claims. In Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc), this court acknowledged the difficult distinction between "using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." This court explained, however, that the distinction is manageable "if the . . . focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." Id. Also, although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim

explicitly or implicitly requires a specific order.    See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1342-43 (Fed. Cir. 2001).   The specification or prosecution history may also require a narrower, order-specific construction of a method claim in some cases.  Id.

In this case, the claims themselves contain no basis to require air content reduction before winding.  Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll.  Also, in relying on the dependent claims to inform the meaning of "reduced air content cleaning fabric" in claims 1 and 14, the district court effectively imported limitations it saw in dependent claims into the independent claims, contrary to basic claim construction principles.   The effect of this process was to bootstrap a temporal restraint on the occurrence of a winding step relative to air content reduction, even though winding is not even explicitly recited in either claim 1 or claim 14.  As independent claims, claims 1 and 14 are naturally broader than their dependent counterparts, making the district court's use of the dependent claims to constrict claims 1 and 14 all the more suspect. For example, claim 18 recites:

> 18.    The method as defined in claim 14 including providing an elongated core wherein said strip of cleaning fabric is wrapped about said elongated core prior to contacting said strip of cleaning fabric with said solvent.

'976 patent, col.13 ll.3-6.  The district court held that the second instance "said strip of cleaning fabric" had to refer to reduced air cleaning fabric because air content must be reduced prior to contacting with solvent, and that the term should be interpreted consistently within the same claim.  When read consistently, the strip of cleaning fabric

that is "wrapped about an elongated core" already has its air content reduced.  But even if the district court correctly determined that the method of claim 18 requires air content reduction prior to winding, this is an additional limitation of that particular dependent claim, and not a requirement of independent claim 14.   In short, the dependent claims simply do not support the district court's determination that the fabric in all instances must have its air content reduced prior to being wound on a roll.

Furthermore, the '976 patent's specification, in simple terms, does not warrant such a narrow reading.  With an eye to the understanding of an ordinarily skilled artisan, this court cannot find support for widely varying interpretations of the term "fabric" and related terms throughout the claims.   An ordinarily skilled artisan would simply not construe similar terminology so differently from one usage to another.   The passages from the specification cited by the district court in support of its temporally restricted construction are not dispositive.   For example, the district court quoted from the summary of the invention, which states that "[a] cleaning fabric with a reduced air content is wrapped around the core to form a fabric roll."   Reconsideration Order, slip op. at 12 (quoting '976 patent, col.3 ll.65-66).  For the district court, this use of "with" suggested that air content reduction must occur prior to winding.  But this language, like the other passages cited by the district court, does not unequivocally preclude a different order of steps, and this court sees no justification in the specification for imposing a temporal constraint on claim 14 that is not required by or implicit in the language of the claim itself.

Finally, the district court's reliance on the prosecution history, namely the singular comment by the applicants during prosecution that the air content reduction occurs prior

to saturation, provides no support whatsoever for the district court's construction requiring air content reduction before winding.   By no means does this statement constitute something akin to a disavowal of claim scope.   See Purdue Pharma L.P. v. Endo Pharm., Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006) (disavowal of claim scope must be "clear and unmistakable").    Moreover, even if this statement constituted a disavowal of scope with respect to the method claims, it would not justify the district court's construction, because the statement would, at best, require reduction before saturation, not necessarily before winding.   After all, winding could occur before saturation.   For these reasons, the district court's final construction of "reduced air content cleaning fabric" was erroneous.   But the district court's initial construction of this term as not limited to a particular method (calendaring) for producing reduced air content cleaning fabric was correct.   As the district court astutely observed, the specification merely prefers, not requires, calendaring.   This court therefore remands for further proceedings consistent with this opinion.

III

        In this case, the claim construction issues entirely drive the summary judgment analysis.   With respect to claim 32 of the Reissue patent, even though the district court erred in limiting "a pre-soaked fabric roll" to a single roll, there is no dispute that Siebert's accused products are not heat-sealed, so this court affirms the district court's summary judgment of non-infringement as to this patent.   But the district court's error in construing "reduced air content cleaning fabric" requires this court to reverse and remand for further proceedings because under the district court's initial construction of

this claim term, with which this court agrees, the district court declined to grant Siebert's motion for summary judgment of non-infringement of the '976 patent.

AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED

COSTS

Each party shall bear its own costs.

# Exhibit 2

BAR CODE LABEL

# U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/419,752 REISSUE | 04/10/95 | 206 | 3208 |

APPLICANT

CHARLES R. GASPARRINI, PORT CHESTER, NY; WALTER H. CANO, BRIDGEPORT, CT.

**CONTINUING DATA*********************
VERIFIED THIS APPLN IS A RE OF 08/145,881 10/29/93 PAT 5,368,157

**FOREIGN/PCT APPLICATIONS************
VERIFIED

FOREIGN FILING LICENSE GRANTED 05/23/95

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| NY | 1 | 56 | 6 | $1,596.00 | 0140-4124 |

ADDRESS

THOMAS M HAMMOND
MORGAN AND FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

TITLE

PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date Certifying Officer

PATENT

Docket No. 0140-4124

MAIL ROOM
APR 10 1995
PAT. & TRADEMARK OFF.

**REISSUE PATENT APPLICATION**
**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Reissue of:

U.S. Patent No. 5,368,157
Serial No.: 145,881
Filing Date: October 29, 1993
Issue Date: November 29, 1994

Serial No.: To be assigned

Filing Date: To be assigned

Inventor: Charles R. Gasparrini et al.

For: **PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME**

**REISSUE APPLICATION DECLARATION AND POWER OF ATTORNEY BY INVENTORS**

HON. COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sir:

As a below named inventor, I hereby declare that:

1. My residence, post office address and citizenship are as stated below next to my name and I believe I am an original and joint inventor of the subject matter which is described and claimed in letters patent number 5,368,157 granted on November 29, 1994, and in the foregoing specification and for which invention I solicit a reissue patent.

2. I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims.

3. I acknowledge the duty to disclose information which is material to the examination of this application

namely, information where there is a substantial likelihood
that a reasonable examiner would consider it important in
deciding whether to allow the application to issue as a
patent.

4. In compliance with this duty there is attached an
Information Disclosure Statement in accordance with 37 CFR
1.98.

5. I hereby claim no foreign priority benefits under
Title 35, United States Code, § 119 of any foreign
application(s) for patent or inventor's certificate.

6. As an original and joint inventor, I, Charles R.
Gasparrini believe the original patent 3,568,157 to be
partly inoperative and invalid, and thus defective, because
of error which occurred without any deceptive intent on my
part and which first came to my attention on or about
January 4, 1995, when considering the original patent and
its relationship to other technical programs of Baldwin
Graphic Systems, Inc., the assignor. The reasons for this
belief are that I claimed less than I had a right to claim
in the patent and that as claimed, the claims fail to cover
the inventive subject matter of my pre-packaged, pre-soaked
cleaning system in the broadest scope to which I am entitled
in that (1) they fail to recite the sleeve which is disposed
around and in contact with the pre-soaked fabric roll as
simply a sealed or sealable sleeve in contact with the
fabric rather than a heat-sealed and/or heat-sealed and heat

shrunk plastic sleeve which is in intimate contact with the pre-soaked fabric roll as recited in the patent; (2) they fail to recite the core around which the pre-soaked fabric roll is disposed as simply a core rather than as an elongated cylindrical core having open ends as recited in the claims of the patent; (3) they fail to recite simply removing of excess solvent from the pre-soaked, saturated fabric roll in language of broad scope rather than draining excess solvent from the fabric roll as recited in the claims of the patent; and (4) they fail to recite the combination of (a) the claimed cleaning system with means for positioning the system adjacent a cylinder to be cleaned, (b) means locating the fabric roll adjacent to and operatively associated with a cylinder to be cleaned and (c) mounting means for disposing the fabric roll in a position to clean a cylinder while the fabric is in contact with and being fed past such cylinder. Moreover, I further determined on or about the same date mentioned above that the specification and claims of the patent are defective in that they contain a number of obvious errors in disclosing and reciting the caliper thickness of a suitable fabric which can be employed in the pre-packaged, pre-soaked cleaning system in accordance with my inventive concept - namely, that I disclosed at Column 4, lines 60-62 and Column 5, lines 9 and 10 and recited in Claims 8 and 10 the caliper thickness in terms of mils rather than in terms of inches

and further in the specification I disclosed the top of such thickness range as 0.10 at Column 5, line 10 rather than as 0.01, as recited in original claim 10, when paper is disclosed as a cleaning fabric, and further recited in Claim 8 the upper limit of such range as 0.30 rather than 0.03, as disclosed at Column 4, line 60 of the specification when referring to a fabric generally, which can be employed in the practice of my invention. In addition, on or about the same date mentioned above, I further determined that the patent discloses at Column 7, lines 58 through 68, that the fabric generally retains therein, after draining to remove excess solvent in accordance with a preferred form of the method for making the system of this inventions, an amount sufficient to wet the fabric to the extent that it imparts efficient cleaning ability thereto to clean the cylinders of apparatus, such as printing machinery, from about 0.05 to about 0.5 cc of solvent per $in^2$ of fabric, but which more properly should read --from about 0.03 to about 0.05 up to about 0.3 to about 0.5 cc of solvent per $in^2$ of fabric--, which phraseology is more realistic though somewhat broader in scope. My co-inventor, Walter H. Cano, and I discussed my belief in detail concerning the above-mentioned errors in the specification and claims on or about January 10, 1995.

7. As an original and joint inventor, I, Walter H. Cano, believe the original patent 5,368,157 to be partly inoperative and invalid, and thus defective, because of

errors in the specification and claims as set forth above
and which occurred without any deceptive intent on my part
and which first came to my attention on or about January 10,
1995, when my co-inventor, Charles R. Gasparrini, brought
these matters to my attention and discussed with me in
detail his belief and reasons for the same that the patent
is partly inoperative and invalid, and thus defective, and
that I concur with his belief and the reasons therefor
without any reservations.

9.    I hereby appoint the following attorney(s) and/or
agent(s) to prosecute the application and transact all
business in the Patent and Trademark Office connected
therewith: John D. Foley (Reg. No. 16,836), John A. Diaz
(Reg. No. 19,550), Thomas P. Dowling (Reg. No. 19,221), John
C. Vassil (Reg. No. 19,098), Warren H. Rotert (Reg. No.
19,659), Alfred P. Ewert (Reg. No. 19,887), David H.
Pfeffer, P.C. (Reg. No. 19,825), Harry C. Marcus (Reg. No.
22,390), Robert E. Paulson (Reg. No. 21,046), Stephen R.
Smith (Reg. No. 22,615), Kurt E. Richter (Reg. No. 24,052),
J. Robert Dailey (Reg. No. 27,434), Eugene Moroz (Reg. No.
25,237), John F. Sweeney (Reg. No. 27,471), Arnold I. Rady
(Reg. No. 26,601), Christopher A. Hughes (Reg. No. 26,914),
William S. Feiler (Reg. No. 26,728), Joseph A. Calvaruso
(Reg. No. 28,287), James W. Gould (Reg. No. 28,859), Richard
C. Komson (Reg. No. 27,913), Israel Blum (Reg. No. 26,710),
Bartholomew Verdirame (Reg. No. 28,483), Maria C. H. Lin

(Reg. No. 29,323), Joseph A. DeGirolamo (Reg. No. 28,595), Christopher E. Chalsen (Reg. No. 30,936), Michael A. Nicodema (Reg. No. 33,199) and Michael P. Dougherty (Reg. No. 32,730) of Morgan & Finnegan, L.L.P. whose address is: 345 Park Avenue, New York, New York 10154.

8. I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or Imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby specify the following as the correspondence address to which all communications about this application are to be directed:

**SEND CORRESPONDENCE TO:**
Thomas M. Hammond
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, N.Y. 10154

**DIRECT TELEPHONE CALLS TO**
(212)415-8728

Full name of first joint inventor Charles R. Gasparrini

Inventor's signature [signature] Date: 4/4/95

Residence: 55 Quintard Drive, Port Chester, New York 10573

Citizenship United States of America

Post Office Address Same

Full name of second joint inventor Walter H. Cano 2-00

Inventor's signature [signature] Date: 4/5/95

Residence: 65 Asylum Street, Bridgeport, Connecticut CT 06610

Citizenship United States of America

Post Office Address Same

08/419752

#4/Prel a
6/8/95

MAIL ROOM
APR 10 1995
PAT. & TRADEMARK OFF.

**PATENT**
Docket No. 0140-4124

V/S Hart

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s) | : | Charles R. Gasparrini et al. | Group Art Unit: |
| Serial No. | : | To Be Assigned | Examiner: |
| Filed | : | Herewith | |
| For | : | PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME | |

**PRELIMINARY AMENDMENT**

Honorable Commissioner of Patents and Trademarks
Washington, DC 20231

Sir:

Please amend the above-identified Application as follows:

**IN THE SPECIFICATION:**

Column 2, before line 10, insert as a new paragraph

--In accordance with the invention there is provided a pre-packaged, pre-soaked cleaning system for use with printing machines to clean the cylinders thereof comprising:

(1) a pre-soaked fabric roll saturated to equilibrium with low volatility organic compound solvent disposed around a core, and

(2) a sealed sleeve disposed around and in contact with the fabric roll, whereby the pre-soaked, saturated fabric roll can be transported and stored vertically and horizontally until use without substantially disturbing the distribution of the solvent in the fabric roll and detrimentally affecting the cleaning ability of the fabric.



Column 2, line 10, after "with" insert --a more specific aspect of--;

Column 2, lines 27 and 28, after "system" insert --Broadly, the method comprises contacting a strip of cleaning fabric with low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating the fabric with the solvent, removing excess solvent from the saturated fabric and obtaining a fabric saturated to equilibrium with the solvent, wrapping the saturated fabric around a core and forming a roll; disposing a sealable sleeve around the saturated, wrapped fabric roll and sealing the sealable sleeve around the saturated, wrapped fabric roll in contact with the fabric roll, whereby the pre-soaked, saturated fabric roll can be transported and stored vertically and horizontally until use without substantially disturbing the distribution of the solvent in the fabric roll and detrimentally affecting the cleaning ability of the fabric roll.

Column 2, line 28, [Broadly,] and before "the method" insert --More specifically,--;

Column 2, line 48, [a more] and before "specific" insert --another--;

Column 2, lines 49 and 50, [elongated cylindrical];

Column 2, line 52, [more];

Column 2, line 53, [heat-sealable plastic] and before "sleeve" insert --sealable--;

Column 2, line 56, [heat-sealable];

Column 2, line 57, [more];

Column 2, line 60, [cylindrical].

Column 3, line 4, [more];

Column 3, line 6, [the sleeve];

Column 3, line 9, [more];

Column 3, lines 11 through 13, [and which extend over the peripheral edges of the fabric roll before the role is inserted in the plastic sleeve];

Column 3, line 27, [drained,];

Column 3, line 30, [drained];

Column 3, line 31, [plastic];

Column 3, line 57, after "comprises" insert --a core such as--;

Column 3, line 68, before "sleeve 15" insert --sealable--; after "sleeve 15" insert --which may be--.

Column 4, line 24, [also preferably];

Column 4, line 27, before "extend" insert --which may--;

Column 4, line 60, [mils to about 0.030 mils,] and before "and" insert --inch to about 0.030 inch--;

Column 4, line 61, [mils] and before "to" insert --inch--;

Column 4, line 62 [mils] and before ", and" insert --inch--.

Column 5, line 10, [mils] and before "to" insert --inch--; [0.10 mils] and before "a", second occurrence, insert --0.01 inch--;

a3 Column 5, line 29, before "vegetable" insert --organic oils, such as palm oils, coconut oils,--; [oil] and before "and the like insert --oils--;

Column 5, between lines 41 and 42, insert as a new paragraph

x4 --A wide variety of sealable materials may be used to form the sealable or sealed sleeves employed in the practice of this invention. Exemplative of such materials are sealable papers or plastic materials which have cohesive and/or adhesive properties, as manufactured, or which may be provided with adhesives in appropriate areas thereof.--;

x5 Column 5, line 42, [A] and before "wide" insert --On the other hand, where plastics materials are used for the sealable or sealed sleeves, a--;

Column 5, line 62, [draining of] and insert before "excess" insert --removing--;

Column 5, line 65, [an elongated cylindrical] and before "core" insert --a--;

Column 5, line 66, [heat-sealable plastic] and before "sleeve" insert --sealable--;

Column 5, line 67, [drained,];

Column 5, line 68, [subjecting] and before "the" insert --sealing--; [to a temperature sufficient to heat].

Column 6, line 1, [seal the plastic sleeve] and [drained,];

Column 6, line 2, [intimate];

Column 6, lines 10 and 11, [cylindrical];

Column 6, line 17, after "in" insert --a sealable sleeve

or--;

    Column 6, line 18, after "is" insert --sealed,--;

    Column 6, line 20, after "roll" insert --and--; [intimate];

    Column 6, line 21, before "temperatures" insert --in cases where a heat-sealable and/or heat-sealable and heat-shrinkable plastic sleeve is used,--.

    Column 7, line 3, [elongated cylindrical];

    Column 7, line 7, before "heat-sealable" insert --sealable sleeve or--;

    Column 7, line 8, after "is" insert --sealed,--;

    Column 7, line 10, before "heat-seal" insert --sealed--;

    Column 7, line 11, [drained,];

    Column 7, line 12, [intimate];

    Column 7, line 13, after "particular" insert --sealing,--;

    Column 7, line 14, after "of" insert --sealable--;

    Column 7, line 16, after "about" insert --ambient temperature, and/or--;

    Column 7, line 21, [plastic];

    Column 7, line 22, after "general," insert --where--; after "heat-sealing" insert --are employed, they--;

    Column 7, line 28, [plastic];

    Column 7, line 33, [intimate];

    Column 7, line 56, [cylindrical].

    Column 7, line 67, after "about", first occurrence, insert --0.03 to about--; after "0.05" insert --up--; after "about", second occurrence, insert --0.3 to about--.

Column 8, before line 15, insert as a new paragraph --Thus, the pre-packaged, pre-soaked cleaning system of this invention can be employed in combination with means such as mounting means, for positioning the system adjacent a cylinder or a plurality of cylinders to be cleaned in a simple manner. That is, for example, the system can be disposed on means provided to locate the fabric roll adjacent to and operatively associated with a cylinder or cylinders to be cleaned and the sealed sleeve can simply be removed from the fabric roll either before or after disposition of the roll on such mounting means. Moreover, the mounting means may also be arranged to allow disposition of the fabric roll in a position to clean a cylinder or cylinders while the fabric is in contact with and being fed past the same.--

JJ

**IN THE CLAIMS:**

8.    A pre-packaged, pre-soaked cleaning system as defined in claim 2 wherein the fabric has a basis weight in a range of from about 1.5 ounces per square yard to about 6.0 ounces per square yard to about 6.0 ounces per square yard, a caliper thickness in a range of from abut 0.003 [mils] inch to about [0.30 mils,] 0.03 inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 200 lbs. per inch and in a width direction in a range of from about 15 lbs. per inch to about 125 lbs. per inch.

10.    A pre-packaged, pre-soaked cleaning system as defined in claim 9 wherein the paper fabric has a basis weight in a range of from about 40 lbs. to about 90 lbs., a caliper thickness in a range of from about 0.003 [mils] inch to about [0.010 mils,] 0.01 inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 80 lbs. per inch and in a width direction in a range of from about 15 lbs. per inch to about 50 lbs. per inch, a porosity in a range of from about 1.0 second to about 10 seconds, and a stretchability in a range of from about 1.0 percent to about 6.0 seconds.

**IN THE ABSTRACT:**

In body of the Abstract:

Lines 5 and 6, [cylindrical];

Line 6, [having open ends];

Line 7, before "heat-sealable" insert --sealable sleeve or a--;

Line 8, [plastic];

Line 9, [to intimate]; before "contact" insert --in--;

Line 10, [in]; before "heat-sealing" insert --to sealing,--;

Line 18, [plastic]; before "sleeve" insert --sealable--; before "heat-sealed" insert --sealed,--;

Line 19, after "caps" insert --are--.

**REMARKS**

The Specification and the Body of the Abstract of the subject Reissue Application have been amended herewith in order to bring the same into more precise alignment with the inventive concept as set forth not only in the Claims of the original Patent but, as well, with the Reissue Claims as filed in this matter.

In addition, the Specification has been amended along with original claims 8 and 10, as presented in the Reissue Application to correct obvious errors occurring therein with respect to erroneously disclosing in the Specification, at Column 4, lines 60 through 62 and Column 5, lines 9 and 10 and reciting in claims 8 and 10 that the caliper thickness of a fabric which can be employed in the practice of the invention has a thickness in mils. This is obviously incorrect since a fabric in the numerical ranges set forth in this case based on mils thickness would not be thick enough to retain sufficient solvent to achieve efficient cleaning, if any cleaning at all; nor would it be thick enough to maintain its form without falling apart, that is, disintegrating, either immediately, or at least very soon after one attempted to use it to clean a surface, such as, for example, the surface of a cylinder like those employed in printing machinery. Thus, it would be totally impractical for use in the practice of the inventive concept in this case. On the other hand, a fabric having a thickness measured in terms of inch thickness would be functional and it is believed to be obvious

that an inch thickness basis is what Applicants meant. Thus, it is submitted that the correction from mils to inches is an obvious and correctable error where made in the specification and claims.

Further it is to be noted that the specification has been amended at Column 5, line 10, to correct the obviously erroneous top thickness range disclosed as 0.10 to read 0.01 when paper is employed as a cleaning fabric, and as recited in original claim 10 in the patent. In addition, original claim 8 has been amended to properly recite the correct upper limit of the range of caliper thickness as 0.03, as disclosed in the specification at Column 4, line 60.

Finally, attention is directed to the amendment made to the specification at Column 7, lines 58 through 68, where the recitation of the range of solvent retained in the fabric has been amended to clarify that "from about 0.03 to about 0.05 up to about 0.3 to about 0.5 cc of solvent per $in^2$ of fabric" is retained in the fabric after draining. Such phraseology is more realistic though somewhat broader in scope than as originally disclosed. It is to be noted, however, that it is clearly stated at Column 7, lines 61 through 66 that after draining the fabric retains therein sufficient solvent in an amount to wet the fabric to the extent that it imparts efficient cleaning ability to the fabric to clean cylinders of apparatus, such as printing machinery. Thus, it is submitted that the amendment under

discussion clarifies Applicants' disclosure making it more exact than as originally set forth.

It is respectfully submitted that the above amendments to the specification, as well as those made in claims 8 and 10, as granted in the original patent, clarify and make the application more exact and precise and further bring the specification and claims into more proper alignment with each other while still defining over the art of record in this matter taken alone or in any combination thereof for the reasons set forth in greater detail hereinafter.

It is respectfully submitted that the new claims added as Claims 28 through 56 in this Reissue Application are clearly patentable over the art of record in this case for the reasons set forth below.

None of the references of record, taken alone or in any combination thereof, disclose, or even remotely suggest, a pre-packaged, pre-soaked cleaning system for use in cleaning the cylinders of printing machines and which comprises (1) a pre-soaked fabric roll saturated to equilibrium with low volatility organic compound solvent disposed around a core, and (2) a sealed sleeve disposed around and in contact with the fabric roll so that the pre-soaked, saturated roll can be transported and stored vertically and horizontally until use without substantially disturbing the distribution of the solvent in the roll and detrimentally affecting the cleaning ability of the fabric.

Consequently, it is submitted that in the absence of any positive teaching of such an inventive concept, or at least a suggestion of such a concept, in the references of record, the new claims drawn to the inventive system of this case, that is, Claims 28 through 44, are clearly patentable over the references of record and should be allowed.

Moreover, for the same reasons, it is submitted that the new claims drawn to the combination of the claimed system with means for positioning the system adjacent a cylinder to be cleaned, removal of the sealed sleeve from the roll and provision of means locating the roll adjacent to and operatively associated with a cylinder to be cleaned, as well as the provision of mounting means to mount the roll in a position to clean a cylinder while the fabric is in contact with and being fed past such cylinder - Claims 44, 45 and 46, respectively, - are also clearly patentable over the art of record, taken alone or in any combination thereof.

Still further, the same is also true in respect to new Claims 47 through 56, which are drawn to the method for making the new cleaning system of this case and wherein the excess solvent is removed from the saturated fabric to obtain a fabric saturated to equilibrium with solvent before or after wrapping the fabric around a core and, as well, wherein the core may be provided with open ends in which end caps may be disposed and/or wherein the system may include insertion of the saturated fabric roll in a slotted canister before it is inserted in a sealable

sleeve. No such method is disclosed, or remotely suggested, in any of the references of record in this case, taken alone or in any combination of such references.

It is stressed that the inventive concept of the pre-packaged, pre-soaked cleaning system of this case, the combination of the same with means to dispose the same on such means to locate the system adjacent a cylinder to be cleaned on, for example, printing machinery, as well as the method for making the system is not disclosed, or even remotely suggested, in any of the references of record in this matter, taken alone, or in any combination with the others.

Therefore, in view of the above amendments and remarks, an early action on the merits of this Application and allowance of all the Claims are respectfully solicited.

Respectfully submitted,

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan
345 Park Avenue
New York, New York 10154
(212) 758-4800



**UNITED STAT_S DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/419,752 | 04/10/95 | GASPARRINI | C 0140-4124 |

EXAMINER
ACKUN, J

C2M1/1205

THOMAS M HAMMOND
MORGAN AND FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

| ART UNIT | PAPER NUMBER |
|---|---|
| 3208 | 5 |

DATE MAILED: 12/05/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined ☐ Responsive to communication filed on ________ ☐ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☑ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ ________.

**Part II SUMMARY OF ACTION**

1. ☑ Claims 1-56 are pending in the application.

   Of the above, claims ________ are withdrawn from consideration.

2. ☐ Claims ________ have been cancelled.
3. ☐ Claims ________ are allowed.
4. ☑ Claims 1-56 are rejected.
5. ☐ Claims ________ are objected to.
6. ☐ Claims ________ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ________. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on ________, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ________, has been ☐ approved; ☐ disapproved (see explanation).
12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ________; filed on ________.
13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

EXAMINER'S ACTION

1.The reissue oath or declaration filed with this application is defective because it fails to particularly specify the errors and/or how the errors relied upon arose or occurred as required under 37 CFR 1.175(a)(5). Included are inadvertent errors in conduct, i.e., actions taken by the applicant, the attorney or others, before the original patent issued, which are alleged to be the cause of the actual errors in the patent. This includes how and when the errors in conduct arose or occurred, as well as how and when these errors were discovered. Applicant's attention is directed to *Hewlett-Packard v. Bausch & Lomb*, 11 USPQ2d 1750, 1758 (Fed. Cir. 1989). The reissue declaration is defective as stated above, because it fails to particularly point out how and why the applicant concluded that each change to the specification was necessary. For example only, it is not clear from the reissue declaration how and why the applicant now believes that inches (and no other unit of measurement) should be substituted for the mils previously disclosed, and how and why the applicant now believes that the specific numerals which denote the top of the thickness ranges for both the paper and cloth should also be changed. it is noted in this regard that in one instance, the applicant appears to refer to a specific claim as support for the contention that a recitation in the specification is an obvious

error, while in another instance, the applicant refers to the specification as support for the contention that a recitation in another claim is an obvious error (see the top of page 4 of the reissue declaration). Accordingly, it is not clear precisely how or why the applicant concludes that each of the changes are required. In another example only, it is not clear how applicant concludes that the range of solvent per square inch of fabric originally disclosed is an error, beyond the statement that the changes sought are "more realistic".

2. Claims 1-56 are rejected as being based upon a defective reissue declaration under 35 U.S.C. § 251. See 37 C.F.R. § 1.175.

3. The following is a quotation of the first paragraph of 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112, first paragraph, as the specification as originally filed does not provide support for the invention as is now claimed. The changes sought to be made to the specification in this reissue

application are unsupported in the disclosure of the original application. While the Rules permit the applicant to recite claims broadly, the applicant is not permitted to introduce new matter into an application. In this case, the changes sought to be made to the disclosure constitute new matter, because they add to the invention originally disclosed, as opposed to merely broadening the scope of the claims. For example only, the amendments to the specification in the reissue application now indicate that the invention encompasses other means of sealing the sleeve, when in the original disclosure, the sleeve was described as being a heat sealed or a heat-shrunken and heat sealed sleeve, whenever the method of sealing was referred to. The applicant has not shown where in the original disclosure, other than a heat-sealed or a heat-shrunken and heat sealed sleeve was contemplated, and if so, what those other kinds of sealing and/or sleeve might be.

The other changes sought are defective for the same reasons, ie, the specification has been amended in such a way that it encompasses more than what was originally disclosed. In another example only, note that the amendments to the disclosure to incorporate therein "means plus function" terminology, and the precise wording of the amendments, appear to indicate that the

invention now encompasses more than the specific structural elements originally disclosed as being the means for accomplishing the functions.

4. Claims 1-56 are rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

5. Any inquiry concerning this communication should be directed to Jacob Ackun at telephone number (703) 308-3867.

JA/NC
November 30, 1995

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

PATENT

MAIL ROOM MAR 6 1996 PAT. & TRADE MARK OFF.

Docket No. 0140-4124

**REISSUE PATENT APPLICATION**
**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Reissue of:

U.S. Patent No. 5,368,157
Serial No.: 145,881
Filing Date: October 29, 1993
Issue Date: November 29, 1994

Serial No.: 08/419,752 Group Art Unit: 3208

Filing Date: April 10, 1995 Examiner: Ackun, J.

Inventor: Charles R. Gasparrini et al.

For: **PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME**

**AMENDMENT**

ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:

In response to the Official Action dated December 5, 1995, please amend the above-identified Application as follows:

**IN THE SPECIFICATION:**

Column 4, line 60, [inch to about 0.030 inch] and insert therefor --inch to about 0.30 inch--;

Column 5, line 10, [0.01 inch] and insert therefor --0.10 inch--.

**IN THE CLAIMS:**

Amend Claims 8 and 10 as follows:

8. (Amended twice) A pre-packaged, pre-soaked cleaning system as defined in claim 2 wherein the fabric has a basis weight in a range of from about 1.5 ounces per

square yard to about 6.0 ounces per square yard [to about 6.0 ounces per square yard], a caliper thickness in a range of from about 0.003 inch to about [0.03 inch] 0.30 inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 200 lbs. per inch and in a width direction in a range of from about 15 lbs. per inch to abut 125 lbs. per inch.

B1

10. (Amended twice) A pre-packaged, pre-soaked cleaning system as defined in claim 9 wherein the paper fabric has a basis weight in a range of from about 40 lbs. to about 90 lbs., a caliper thickness in a range of from about 0.003 inch to about [0.01 inch] 0.10 inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 80 lbs. per inch and in a width direction in a range of from about 15 lbs. per inch to about 50 lbs. per inch, a porosity in a range of from about 1.0 second to about 10 seconds, and a stretchability in a range of from about 1.0 percent to about 6.0 [seconds] percent.

B8

Cancel Claims 35 and 37 without prejudice.

**REMARKS**

Reconsideration of the Application, as amended, is respectfully requested. The primary rejections involve the alleged insufficiency of the Declaration and the Specification. A new Declaration is submitted herewith. No prior art rejection has been made.

The Specification and Claims 8 and 10 of this Reissue Application have been amended in order to bring them into agreement with each other and to disclose and recite Applicants' inventive concept with greater precision. In this regard, the attention of the Examiner is respectfully directed to the fact that in the Preliminary Amendment filed with the Reissue Application, Applicants amended the Specification at Column 4, line 60 to change "mils" to "inches" while retaining the numerical figure "0.030" for the top of the range disclosed and which describes the caliper thickness of a cleaning fabric employed in the practice of the subject invention. Still further in that Preliminary Amendment, Applicants also amended Claim 8 to insert therein the numerical figure "0.030" for the figure "0.30", thus bringing the Specification and Claim 8 into line with each other. Since the correct figure "0.30" was recited in original Claim 8 of the issued patent, as granted, which Applicants have now done is to amend Claim 8 to restore this originally correct recitation to that claim, while continuing to assert "inches" rather than "mils" as

the correct measurement basis. Moreover, in order to eliminate any double claiming aspects, Reissue Claim 35 has been cancelled without prejudice.

As the Examiner knows, the original Claims are also part of the original disclosure and thus can properly provide adequate support for such a change in regard to the numerical figure.

On the other hand, insofar as Claim 10 is concerned, Applicants disclosed in the original Specification of the original patent at Column 5, line 10, the correct upper numerical figure "0.10" and by this Amendment has restored this figure to the Specification while amending Claim 10 to delete the previously incorrect figure "0.010" to bring the Specification and Claim 10 into agreement with each other in this respect while again continuing to assert that "inches" rather than "mils" is the correct measurement basis. It is respectfully submitted that the support for the change of the upper figure limit in Claim 10 is adequate from the Specification to which the original numerical figure has now been restored. Furthermore, in order to eliminate any double claiming aspects in this regard Reissue Claim 37 has been cancelled without prejudice.

The reason that Applicants have had to rely on the Specification in one instance and the appropriate Claim in the other instance as the basis of support is simply that

the obvious errors occurred, without deceptive intent, once in the Specification and once in the appropriate Claim.

It is also respectfully submitted that the amendatory change in **both** the Specification and Claims from "mils" to "inches" as a proper measurement basis has already been adequately set forth in the Remarks in the Preliminary Amendment filed in the subject Reissue Application. As there noted, it is believed that one of ordinary skill in the art would recognize that mils is the incorrect measurement indicia since it would be far too small and fragile for the purpose intended. In addition, this change is further substantiated by the attached New Reissue Declaration, as called for by the Examiner in the above-identified Office Action, the Declaration is discussed more fully hereinbelow.

Now, turning once again to the above-identified Office Action, in paragraphs 1 and 2, the Examiner has stated that the Reissue Oath or Declaration filed with this Application is defective because it fails to particularly specify the errors and/or how the errors relied upon arose or occurred as required under 37 C.F.R. 1.175(a) (5). In this respect, it is further noted that the Examiner has stated that included are inadvertent errors in conduct, that is, actions taken by the Applicants, their attorneys, or others, before the original patent issued which are alleged to be the cause of the actual errors in the patent and this

includes how and when the errors in conduct arose or
occurred as well as how or when these errors were discovered
while directing Applicants' attention to **Hewlett-Packard v.
Bausch & Lomb**, 11 USPQ 2nd 1750, 1758 (Fed Cir 1989).  The
Examiner further continues by stating that the Reissue
Declaration is defective for the reasons stated above
because it fails to particularly point out how and why the
Applicants concluded that each change to the Specification
was necessary.  For example only, the Examiner points out
that it is not clear from the Reissue Declaration how and
why the Applicants now believe that inches (and no other
unit of measurement) should be substituted for the mils
previously disclosed and how and why Applicants now believe
the specific numerals which denotes the top of the thickness
ranges for both the paper and the cloth should also be
changed, while pointing out that in one instance, Applicants
appear to refer to a specific claim as support for the
contention that a recitation in the Specification is an
obvious error, while in another instance, Applicants refer
to the Specification as support for the contention that a
recitation in another claim is an obvious error as stated at
the top of page 4 of the original Reissue Declaration.

     The Examiner further states also that it is not
clear precisely how or why Applicants conclude that each of
the changes were required.  In another example, the Examiner
states that it is not clear how Applicants conclude that the

range of solvent per square inch of fabric originally
disclosed is in error beyond the statement that the changes
sought are "more realistic".

Consequently, in paragraph 2, on page 3 of the
Action, the Examiner has rejected Claims 1 through 56, as
being based upon a defective Reissue Declaration under 35
U.S.C., Section 251, and 37 C.F.R., Section 1.175.
Reconsideration of this Application based on a new
Declaration is respectfully requested.

The attention of the Examiner is respectfully
directed to the new Reissue Declaration submitted herewith
which it is believed clearly remedies each of the alleged
defects in the originally filed Reissue Declaration of
record in this case, as set forth by the Examiner in
paragraph 1.

Therefore, it is respectfully requested that the
attached Declaration be made of record in this case and the
rejection of Claims 1 through 56, as being based on a
defective Reissue Declaration under 35 U.S.C., Section 251
and 37 C.F.R., Section 1.175 no longer applies and should be
removed.

Turning next to paragraph 3, it is noted that the
Examiner has objected to the Specification under 35 U.S.C.,
Section 112, first paragraph, on the ground that as
originally filed, it does not provide support for the
invention now being claimed. In this regard, the Examiner

states that the changes sought to be made to the Specification in this Reissue Application are unsupported in the disclosure of the original Application and while the Rules permit an Applicant to recite Claims broadly, he is not permitted to introduce new matter into an Application. The Examiner further states that in this case, the changes sought to be made to the disclosure constitute new matter because they add to the invention originally disclosed, as opposed to merely broadening the scope of the Claims. The Examiner points out in this regard, for example, the amendments to the Specification in the Reissue Application now indicate that the invention encompasses other means of sealing the sleeve, when in the original disclosure, the sleeve was described as being a heat-sealed or a heat-shrunken and heat-sealed sleeve whenever the method of sealing was referred to and Applicants, according to the Examiner's Action, have not shown where in the original disclosure, other than a heat-sealed or a heat-shrunken and heat-sealed sleeve was contemplated, and if so, what those other kinds of sealing and/or sleeve might be.

Continuing further, the Examiner states that the other changes sought to be made are defective for the same reasons, that is, the Specification has been amended in such a way that it encompasses more than what was originally disclosed, while pointing out, for example, the amendments made to the disclosure to incorporate therein "means plus

function" terminology and the precise wording of the
amendments appear to indicate that the invention now
encompasses more than the specific structural elements
originally disclosed as being the means for accomplishing
the functions.

Consequently, in paragraph 4, on page 5 of the
Action, the Examiner rejects Claims 1 through 56, under 35
U.S.C., Section 112, first paragraph, for the reasons set
forth in the objection of the Specification.

The rejection is respectfully traversed.

Initially, it is respectfully submitted that the
Specification, as originally filed, does provide support for
the invention, as now claimed, and the changes sought to be
made to the Specification in this Reissue Application are
nothing more than clarifying explanatory statements which
are all supported in the disclosure of the original
Application as it would be understood by one with ordinary
skill in the art.

It is urged that these statements do not introduce
"new matter" into the Specification but merely explain in
more detailed language subject matter which is already
disclosed therein.  Thus, such statements do not add "new
matter" to the invention, as originally disclosed but deal
simply with matters of scope.  The law does not require
Applicants to limit their Claims to the preferred
embodiments and are allowed to pursue Claims of varying

scope consistent with the prior art.  This is what
Applicants have done here.

In short, as pointed out in the Declaration,
Applicants have learned that the Patent Claims contained
unnecessary limitations and were not as broad as they had a
right to claim and thus submitted broader Claims.

For example, it is respectfully submitted that the
amendment to the Specification in the subject case dealing
with broader means of sealing the sleeve is clearly
supported in the Specification, as originally filed.  In
this regard, the attention of the Examiner is drawn to the
fact that at Column 2, lines 52 through 56, it is stated
that another **more specific** (emphasis added) aspect of the
method includes subjecting the heat sealable plastic sleeve
to a vacuum and drawing the **sleeve** (emphasis added) into
intimate contact with the wrapped fabric roll after it has
been disposed in the heat sealable plastic sleeve.  It is
respectfully submitted that this **more specific aspect**
(emphasis added) clearly teaches that **broadly** the sleeve
could be a sleeve which need **not** be plastic and/or which is
**not** heat sealable by actually requiring application of heat
**from an external source.  Moreover, this rationale is still**
further supported by the statement at Column 3, line 6, in
another **more specific aspect of the method** (emphasis added)
the plastic sleeve employed is not only heat-sealable but
also heat-shrinkable and the **sleeve** (emphasis added) is

subject to a temperature sufficient to heat-seal and heat-shrink it around the fabric roll. It is respectfully submitted that this more specific aspect clearly teaches **broadly** that the sleeve **could be** a sleeve which need **not** be plastic and/or which **need not** be heat-sealable or heat-shrinkable by actual application of heat. As a matter of fact, such sleeve might simply be paper, for example, in both instances. Moreover, this conclusion is further reinforced by the use of the terms "sleeve" and/or "plastic sleeve" employed in the Specification in Column 3, lines 8, 13, 16 and 31 and 32.

With regard to the heat-sealed limitation, the attention of the Examiner is directed to pages 559 and 560 (copies attached) of Webster Ninth New Collegiate Dictionary, published by Merriam-Webster, Inc., Springfield, MA, USA (1991), dealing with the definition of the term "heat" at subparagraph (2) on page 560 where heat is defined as the energy associated with the random motions of the molecules, atoms, or smaller structural units of which **matter** (emphasis added) is composed. Clearly, such definition would **include any materials**, such as an appropriate paper, for example. Thus, it would **not require** that it be a plastics material, such as the **preferred** plastics materials disclosed in the instant case. Moreover, such material, whether it be paper or plastic, might or might not require application of heat from an external

source to utilize its heat-sealing and/or heat-sealing and heat-shrinking properties.

What Applicants have done is broaden the Claims based on the original Specification. Applicants have not narrowed the Claims to include limitations not in the original disclosure.

In addition, it is respectfully submitted that the above conclusion is even further reinforced when one considers the "DESCRIPTION OF THE PREFERRED EMBODIMENTS" commencing at Column 3, line 55 through Column 7, line 68 and where it is clearly indicated at Column 3, line 68 that a **sleeve 15** (emphasis added) made of heat sealable or heat sealable and heat shrinkable plastic material is disposed around a pre-soaked fabric roll 13 in describing a **preferred embodiment** (emphasis added) of Applicants invention.

**The above rationale likewise applies to the** utilization of the word "core" in the Specification of the Patent. It is employed without **any** qualifying phraseology, such as "elongated" and "cylindrical" at Column 3, lines 61 and 66. Still further, such non-qualifying use of the word "core" occurs at Column 4, lines 4 and 26 and Column 6, lines 9, 11 and 67, as well as at Column 7, lines 44 and 45.

More particularly, the Examiner's attention is directed to the broad language of Column 7, lines 29 through 35:

> "The plastic sleeve will be sized so that the wrapped roll can be inserted therein with facility

> and the open edges of the sleeve then brought together in contact with each other in order to seal the same, while at the same time, being sized also so that when shrinking takes place, it will [sic, be] brought into intimate contact with the fabric roll around which it is disposed."

The broad description in the original Specification clearly shows that the invention in its broader aspects does not require the application of external heat which is described in the preferred embodiments.

Insofar as the changes involving the amendments to the disclosure to incorporate therein "means plus function" terminology and the precise wording of the amendments dealt with by the Examiner in the paragraph bridging pages 4 and 5 of the Official Action, the attention of the Examiner is directed to the following comments.

It is to be noted that at Column 8, lines 1 through 15 of the Patent, clear support is provided for Reissue Claims 44, 45 and 46 (dependent on Claim 28) involving the recitation of a cleaning system according to the invention associated with a cylinder to be cleaned. These Claims reflect the failure of the original Claims to cover the combination of the package cleaning cylinder with a press and are allowable because the base Claim 28 defines a potential invention in broader terms than the original Patent. Column 8, lines 1 through 7 state:

> "The so-made pre-packaged, pre-soaked blanket cleaning system of this invention can be employed on any printing apparatus, simply by modifying the apparatus to provide it with a shaft which can be

inserted through the core and also a take-up roll which is employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function."

As established in the portion of the Specification referred to, the cleaning system of this invention can be employed on **any** printing apparatus simply by modifying the apparatus to provide it with a shaft to support the core and a take-up roll employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function. This portion of the Specification provides clear support for the combination Claims, such as 28, 44, and 46.

Obviously, to perform its cleaning function, it must be in contact with the roll to be cleaned. Thus, it is respectfully submitted that support for such Claims was clearly present in the original Application, as filed. Moreover, it is believed that the amendments made in the disclosure to incorporate therein "means plus function" terminology is nothing more than the provision of clarifying language in the Specification to further make more precise something already stated there. Thus, it does not add anything which should be considered as "new matter". On the contrary, it merely makes what has already been disclosed in the original Application as filed somewhat more precise and clear. It is submitted that the amendment to the disclosure in this respect does not result in encompassing more than the specific structural elements originally disclosed. Thus, such amendments do nothing more than add, in detail,

explanatory material which does not enlarge upon the specific structural elements originally disclosed, all of which are elements of printing apparatus already known in the field. However, it is submitted the combination of the cleaning system of this invention with the elements of printing apparatus already known in the field, as recited in the Claims, presents a novel and patentable recitation not heretofore taught or suggested by any previous patents or publications known to Applicants and furthermore no art has been applied against the same by the Examiner in the instant case.

Now, as to the remaining changes called for by Amendment, it is respectfully submitted that these changes involve nothing more than the correction of obvious errors which occurred simply through oversight, without deceptive intention, as is clear from the attached new Declaration. Beyond the statement that the changes sought in this connection are "more realistic", Applicants respectfully point out to the Examiner that as indicated in the Preliminary Amendment in this case, it is clearly stated in the original granted Patent at Column 7, lines 61 through 66 that:

> ". . . after draining the fabric retains therein sufficient solvent in an amount to wet the fabric to the extent that it imparts sufficient cleaning ability to the fabric to clean cylinders of apparatus such as printing machinery".

Moreover, Applicants have disclosed "from about 0.05 to about 0.5 cc of solvent per $in^2$ of fabric" in this respect at Column 7, lines 67 and 68. Thus, such amendment does nothing more than make this case more exact in scope and should be permitted.

Consequently, it is believed that the rejection of Claims 1 through 56, under 35 U.S.C., Section 112, first paragraph, for the reasons set forth in the objection to the Specification in all of the above respects is not well taken and should be withdrawn.

Once again, it is emphasized, and it is respectfully submitted, that the amendments to the Specification do nothing more than further clarify subject matter which was disclosed in the original Application. The subject matter of the Reissue Claims in this case all deal with nothing more than matters of **scope**. It is further reiterated that neither the amendments being sought in the **Specification, nor the substance of the Claims now being** sought in this Application, including both the original Claims of the Patent and the Reissue Claims, involve anything more than matters of scope and the basis for the same was originally disclosed in the Specification and original Claims.

In view of the above amendments and remarks, it is believed that all of the Claims now in this Reissue Application are adequately supported in the original Patent

and the Claims all define subject matter which is supported
by the original Specification.  Insofar as the other changes
to the Specification and/or Claims are concerned, which
involve obvious errors, it is believed that there is clearly
an adequate basis for correction of the same in the
Application which resulted in grant of the original Patent.

Furthermore, since no prior art has been applied
against the Claims in this Reissue Application, this is an
adequate basis for the amendments sought to be made in the
Specification, as well as in the Claims, in view of the
discussion hereinabove. It is respectfully submitted that
this Reissue Application is based upon a sufficient and
adequate Specification which provides support for all of the
Claims and such Claims should be allowable.  The amendatory
subject matter sought to be entered in the Specification
does nothing more than clarify that Specification in detail
rather than involve the addition of any new matter thereto.

Consequently, it is respectfully requested that
all of the Claims in this Reissue Application be allowed.

In view of the above amendments and remarks and
the attached new Reissue Declaration, it is believed that
this Application is now in condition for allowance.
Accordingly, early allowance of all of the Claims is
respectfully solicited.

It is respectfully requested that prior to taking up the case, the Examiner call the undersigned for purposes of an Interview.

Respectfully submitted,

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800





841) : to turn back or turn aside : BLOCK [illegible]
te past) ⟨attempts to *head off* the imminent [illegible]
d-ˈȯn, -ˈän\ *adv* (1840) 1 : with the head or [illegible]
ntact ⟨the cars collided ~⟩ 2 : in direct [illegible]
r contradiction ⟨met the problem ~⟩
(1903) 1 : having the front facing in the [illegible]
r line of sight ⟨a ~ collision⟩ 2 : FRONTAL
ls *adv* (1770) 1 a : in or as if in a somersault [illegible]
UPSIDE DOWN 2 : very much : DEEPLY [illegible]

hed-ˌfōn\ *n* (1914) : an earphone held over the [illegible]
n the head
pēs\ *n* (1535) 1 : a protective or defensive [illegible]
: BRAINS, INTELLIGENCE 3 : an ornament esp. [illegible]
pier
n\ *n* (ca. 1934) : a bowling pin that stands [illegible]
of pins
\ˈhed-ˌkwȯ(r)t-ərz, (ˈ)hed-ˈ\ *vi* (1903) : to place [illegible]
*vi* : to make one's headquarters
s \-ərz\ *n pl but sing or pl in constr* (1647) 1 : [illegible]
umander performs the functions of command [illegible]
center of an enterprise
est\ *n* (1853) 1 : a support for the head 2 : [illegible]
op of the back of an automobile seat esp [illegible]
ury
(ca. 1943) : ALLITERATION
hed-ˌrüm, -ˌrum\ *n* (1851) : vertical space [illegible]
move
l, -səl\ *n* (1627) : a sail set forward of the foremast
t\ *n* (1921) 1 : an attachment for holding [illegible]
ier at one's head 2 : a pair of headphones
hip\ *n* (1582) : the position, office, or dignity of a [illegible]
1968) : a shop specializing in articles (as hashish [illegible]
of interest to drug users
r \-ˌshrin-kər, *esp Southern* -ˌsrin-\ *n* (1926) 1 : [illegible]
shrinks the heads of his victims 2 : a physician [illegible]
ychiatry and esp. psychoanalysis
edz-mən\ *n* (1601) : one that beheads : EXECUTIONER
hed-ˌspās\ *n* (1936) : the volume above a liquid [illegible]
tainer
ˈhed-ˌspriŋ\ *n* (14c) : FOUNTAINHEAD, SOURCE
tôl\ *n* (14c) : a part of a bridle or halter that [illegible]

-ˌstand\ *n* (ca. 1934) : the gymnastic feat of [illegible]
su. with support from the hands
1886) 1 : an advantage granted or achieved at the [illegible]
e, a chase, or a competition ⟨a 10-minute head start⟩ [illegible]
promising beginning
hed-ˌstäk\ *n* (1731) : a bearing or pedestal for a [illegible]
art; *specif* : a part of a lathe that holds the revolving [illegible]
ttachments
-ˌstōn\ *n* (1775) : a memorial stone placed at the head [illegible]

-ˌstrēm\ *n* (14c) : a stream that is the source of a [illegible]
-ˌstrȯŋ\ *adj* (14c) 1 : not easily restrained : [illegible]
ice, or suggestions 2 : directed by ungovernable [illegible]
ns⟩ *syn* see UNRULY
ed-ˌzap\ *adj* (1947) : ALERT, RESOURCEFUL [illegible]

hed-ˈzap\ *interj* (ca. 1941) — used as a warning to [illegible]
sp. overhead or to clear a passageway
1 *adv or adj* (ca. 1728) : in a direct confrontation [illegible]
between individuals
\ˈhed-ˈwāt-ər\ *n* (1805) : the head of the dining [illegible]
unt or hotel
-ˌwȯt-ər, -ˌwät-\ *n* (1802) : the source of a stream [illegible]

wā\ *n* (1748) 1 a : motion or rate of motion in a [illegible]
: ADVANCE, PROGRESS 2 : headroom (as under a [illegible]
allow passage 3 : the time interval between two [illegible]
the same direction on the same route
(1790) : a wind blowing in a direction opposite to a [illegible]
p or aircraft
hed-ˌwərd\ *n* (1823) 1 : a word or term placed at the [illegible]
of a chapter or an entry in an encyclopedia 2 : [illegible]
ˌwərk\ *n* (1792) : mental labor; *esp* : clever thinking
ē\ *adj* head-i-er; -est (14c) 1 a : WILLFUL, RASH [illegible]
VIOLENT, IMPETUOUS 2 a : tending to intoxicate [illegible]
ine⟩ ⟨being in such distinguished company was [illegible]
GIDDY, EXHILARATED ⟨~ with his success⟩ c : [illegible]
variety⟩ d : IMPRESSIVE ⟨a man of ~ accomplishments⟩
y or showing good judgment : SHREWD; *also* : [illegible]
\ˈhed-ᵊl-ē\ *adv* — head-i-ness \ˈhed-ē-nəs\ *n*
vb [ME *helen*, fr. OE *hǣlan*; akin to OHG [illegible]
le — more at WHOLE] *vt* (bef. 12c) 1 a : to [illegible]
wound⟩ b : to restore to health 2 a : to [illegible]
dition) to be overcome : MEND ⟨the troubles … [illegible]
ten, but they had been ~ed — William [illegible]
breach or division) ⟨~ a breach between friends⟩ [illegible]
riginal purity or integrity ⟨~ed of sin⟩ ~ *vi* : to [illegible]
*syn* see CURE
ər\ *n* (bef. 12c) 1 : one that heals 2 : a Christian [illegible]

b *also* ˈhelth\ *n*, *often attrib* [ME *helthe*, fr. OE [illegible]
2c) 1 a : the condition of being sound in body [illegible]
freedom from physical disease or pain b : the [illegible]
f the body ⟨in poor ~⟩ ⟨enjoys good ~⟩ 2 : [illegible]
WELL-BEING ⟨the economic ~ of a country⟩ 3 : [illegible]
health or prosperity
r (1882) : a food promoted as highly conducive to [illegible]
elth-fəl *also* ˈhelth-\ *adj* (14c) 1 : beneficial to [illegible]
ed 2 : HEALTHY ⟨he felt incapable of looking [illegible]
ce —Saul Bellow⟩ — health-ful-ness *n* [illegible]

[illegible] WHOLESOME, SALUBRIOUS, SALUTARY mean favorable to [illegible] mind or body. HEALTHFUL implies a positive contribution [illegible] condition ⟨a *healthful* diet⟩ WHOLESOME applies to what [illegible] builds up, or sustains physically, mentally, or spiritually [illegible] foods⟩ ⟨the movie is *wholesome* family entertainment⟩ [illegible] applies chiefly to the helpful *effects of* climate or air; SALUTARY [illegible] something corrective or beneficially effective, even [illegible] itself be unpleasant ⟨a *salutary* warning that resulted [illegible] production⟩

[illegible] *n* (1901) : insurance against loss through illness of the [illegible] insurance providing compensation for medical expenses

[illegible] organization *n* (ca. 1971) : an organization that [illegible] care to voluntarily enrolled individuals and families in [illegible] geographic area by member physicians with limited refer[illegible] specialists and that is financed by fixed periodic pay[illegible] in advance — called also *HMO*

[illegible] *also* ˈhelt-\ *adj* health-i-er; -est (1552) 1 : enjoying [illegible] of body, mind, or spirit : WELL 2 : evincing health ⟨a [illegible]⟩ 3 : conducive to health ⟨walk three miles every [illegible] a hardy bore, but ~ — G. S. Patton⟩ 4 a : PROSPEROUS [illegible] b : not small or feeble : CONSIDERABLE — health-i-ly [illegible] — health-i-ness \-thē-nəs\ *n*

[illegible] SOUND, WHOLESOME, ROBUST, HALE, WELL mean enjoying or [illegible] of good health. HEALTHY implies full strength and vigor as [illegible] freedom from signs of disease; SOUND emphasizes the absence [illegible] weakness, or malfunction; WHOLESOME implies appearance [illegible] indicating soundness and balance; ROBUST implies the [illegible] of all that is delicate or sickly; HALE applies particularly to [illegible] in old age; WELL implies merely freedom from disease or [illegible]

[illegible] *n* [ME *heep*, fr. OE *hēap*; akin to OE *hēah* high] (bef. 12c) [illegible] of things thrown one on another : PILE 2 : a great [illegible] a large quantity : LOT

[illegible] (bef. 12c) 1 a : to throw or lay in a heap : pile or collect in [illegible] ⟨his sole object was to ~ up riches⟩ b : to form or [illegible] a heap ⟨~ed the dirt into a mound⟩ 2 : to accord or be[illegible] in large quantities ⟨~ed the plates with food⟩ ⟨~ed [illegible]⟩

[illegible] heard \ˈhərd\; hear-ing \ˈhi(ə)r-iŋ\ [ME *heren*, fr. OE [illegible] to OHG *hōren* to hear, L *cavēre* to be on guard, Gk [illegible]] *vt* (bef. 12c) 1 : to perceive or apprehend by the ear [illegible] knowledge of by hearing 3 a : to listen to with attention [illegible] b : ATTEND ⟨~ mass⟩ 4 a : to give a *legal hearing* to b : to [illegible] from ⟨~ witnesses⟩ ~ *vi* 1 : to have the capacity of [illegible] sound 2 a : to gain information : LEARN b : to re[illegible] communication ⟨haven't *heard* from her lately⟩ 3 : to entertain [illegible] — used in the negative ⟨wouldn't ~ of it⟩ 4 — often used in [illegible] *Hear! Hear!* to express approval (as during a speech) — [illegible] *n*

[illegible] (13c) 1 a : the process, function, or power of perceiving [illegible] the special sense by which noises and tones are received [illegible] b : EARSHOT 2 a : opportunity to be heard, to present [illegible] a case, or to be generally known or appreciated b (1) : a [illegible] arguments (2) : a preliminary examination in criminal [illegible] c : a session (as of a legislative committee) in which wit[illegible] heard and testimony is taken 3 *chiefly dial* : a piece of news

[illegible] *n* (1922) : an electronic device usu. worn by a person for [illegible] sound before it reaches the receptor organs

[illegible] \-kən\ *vb* hear-kened; hear-ken-ing \ˈhärk-(ə-)niŋ\ [ME [illegible] OE *heorcnian*; akin to OHG *hōrechen* to listen — more at [illegible] (bef. 12c) 1 : LISTEN 2 : to give respectful attention ~ *vt*, [illegible] to give heed to : HEAR

[illegible] \-ˌsā\ *n* (1532) : RUMOR

[illegible] evidence *n* (1753) : evidence based not on a witness's personal [illegible] but on matters told him by another

[illegible] *n* [ME *herse*, fr. MF *herce* harrow, frame for holding [illegible] L *hirpex* harrow] (15c) 1 a : a triangular candela[illegible] candles used esp. at Tenebrae b : an elaborate framework [illegible] a coffin or tomb to which memorial verses or epitaphs are [illegible] 2 a *archaic* : COFFIN b *obs* : BIER 2 3 : a vehicle for con[illegible] dead to the grave

[illegible] hears-ing (1592) 1 a *archaic* : to place on or in a [illegible] b : to convey in a hearse 2 : BURY

[illegible] *n* [ME *hert*, fr. OE [illegible] to OHG *herza* heart, L [illegible] Gk *kardia*] (bef. 12c) 1 [illegible] hollow muscular organ of [illegible] animals that by its rhyth[illegible] contraction acts as a force [illegible] maintaining the circulation of [illegible] b : a structure in an [illegible] animal functionally [illegible] to the vertebrate heart c [illegible] d : something [illegible] a heart in shape; *specif* [illegible] conventionalized representation [illegible] 2 a : a playing card [illegible] with a conventionalized [illegible] of a heart b *pl* : the suit [illegible] cards so marked c *pl* [illegible] : a game in which [illegible] is to avoid taking tricks [illegible] hearts 3 a : PERSONAL [illegible] ⟨a cold ~⟩ b *obs* [illegible] 4 : the emotional or [illegible] distinguished from the [illegible] such as a : generous [illegible] : COMPASSION ⟨a leader [illegible]⟩ b : LOVE, AFFECTIONS [illegible] ~⟩ c : COURAGE, ARDOR [illegible] ~⟩ 5 : one's innermost character, feelings, or inclinations [illegible] ~⟩ ⟨a man after my own ~⟩ 6 a : the central or in[illegible] part : CENTER b : the essential or most vital part of some-

heart 1a: 1 aorta, 2 pulmonary artery, 3 left atrium, 4 left ventricle, 5 right ventricle, 6 right atrium

thing c : the younger central compact part of a leafy rosette (as a head of lettuce) — at heart : in essence : BASICALLY, ESSENTIALLY — by heart : by rote or from memory — to heart : with deep concern

²heart *vt* (bef. 12c) 1 *archaic* : HEARTEN 2 *archaic* : to fix in the heart

heart-ache \ˈhärt-ˌāk\ *n* (1602) : anguish of mind : SORROW

heart attack *n* (1928) : an acute episode of heart disease (as myocardial infarction) due to insufficient blood supply to the heart muscle itself esp. when caused by a coronary thrombosis or a coronary occlusion

heart-beat \ˈhärt-ˌbēt\ *n* (1850) 1 : one complete pulsation of the heart 2 : the vital center or driving impulse

heart block *n* (1903) : incoordination of the heartbeat in which the atria and ventricles beat independently and which is marked by decreased cardiac output

heart-break \ˈhärt-ˌbrāk\ *n* (14c) : crushing grief

heart-break-er \-ˌbrā-kər\ *n* (1863) : one that causes heartbreak

heart-break-ing \-ˌbrā-kiŋ\ *adj* (1599) 1 a : causing intense sorrow or distress b : extremely trying or difficult 2 : producing an intense emotional reaction or response ⟨~ beauty⟩ — heart-break-ing-ly \-kiŋ-lē\ *adv*

heart-bro-ken \-ˌbrō-kən\ *adj* (1586) : overcome by sorrow

heart-burn \-ˌbərn\ *n* (1597) : a burning discomfort behind the lower part of the sternum usu. related to spasm of the lower end of the esophagus or of the upper part of the stomach

heart-burn-ing \-ˌbər-niŋ\ *n* (1513) : intense or rancorous jealousy or resentment

heart disease *n* (1864) : an abnormal organic condition of the heart or of the heart and circulation

heart-ed \ˈhärt-əd\ *adj* (13c) 1 : having a heart esp. of a specified kind — usu. used in combination ⟨a faint-*hearted* leader⟩ ⟨a light*hearted* wanderer⟩ 2 : seated in the heart

heart-en \ˈhärt-ᵊn\ *vt* heart-ened; heart-en-ing \ˈhärt-niŋ, -ᵊn-iŋ\ (13c) : to give heart to : ENCOURAGE — heart-en-ing-ly \-niŋ-lē, -ᵊn-iŋ-\ *adv*

heart failure *n* (1894) 1 : a condition in which the heart is unable to pump blood at an adequate rate or in adequate volume 2 : cessation of heartbeat : DEATH

heart-felt \ˈhärt-ˌfelt\ *adj* (1734) : deeply felt : EARNEST *syn* see SINCERE

heart-free \ˈhärt-ˌfrē\ *adj* (1748) : not in love

hearth \ˈhärth\ *n* [ME *herth*, fr. OE *heorth*; akin to OHG *herd* hearth, Skt *kūḍayati* he singes] (bef. 12c) 1 a : a brick, stone, or cement area in front of a fireplace b : the floor of a fireplace c (1) : the lowest section of a blast furnace (2) : the bottom of a refinery, reverberatory, or open-hearth furnace on which the ore or metal is exposed to the flame (3) : the inside bottom of a foundry cupola 2 : HOME 3 : a vital or creative center ⟨the central ~ of occidental civilization —A. L. Kroeber⟩

hearth-stone \-ˌstōn\ *n* (14c) 1 a : stone forming a hearth b : HOME 2 : a soft stone or composition of powdered stone and pipe clay used to whiten or scour hearths and doorsteps

heart-i-ly \ˈhärt-ᵊl-ē\ *adv* (13c) 1 : in a hearty manner 2 a : with all sincerity : WHOLEHEARTEDLY b : with zest or gusto 3 : WHOLLY, THOROUGHLY ⟨~ sick of all this talk⟩

heart-land \ˈhärt-ˌland\ *n* (1904) : a central and vital area; *esp* : a central land area (as northern Eurasia) held by geopoliticians to have strategic advantages for mastery of the world

heart-less \-ləs\ *adj* (14c) 1 *archaic* : SPIRITLESS 2 : lacking feeling : CRUEL — heart-less-ly *adv* — heart-less-ness *n*

heart–lung machine *n* (1953) : a mechanical pump that maintains circulation during heart surgery by shunting blood away from the heart, oxygenating it, and returning it to the body

heart-rend-ing \ˈhärt-ˌren-diŋ\ *adj* (1687) : HEARTBREAKING 1a — heart-rend-ing-ly \-diŋ-lē\ *adv*

hearts-ease \ˈhärt-ˌsēz\ *n* (15c) 1 : peace of mind : TRANQUILLITY 2 : any of various violas; *esp* : JOHNNY-JUMP-UP

heart-sick \ˈhärt-ˌsik\ *adj* (1526) : very despondent : DEPRESSED — heart-sick-ness *n*

heart-some \ˈhärt-səm\ *adj*, *chiefly Scot* (1596) : giving spirit or vigor : ANIMATING, ENLIVENING — heart-some-ly *adv*, *chiefly Scot*

heart-sore \ˈhärt-ˌsō(ə)r, -ˌsȯ(ə)r\ *adj* (1591) : HEARTSICK

heart-string \-ˌstriŋ\ *n* (15c) 1 *obs* : a nerve once believed to sustain the heart 2 : the deepest emotions or affections ⟨pulled at his ~s⟩

heart-throb \-ˌthräb\ *n* (1839) 1 : the throb of a heart 2 a : sentimental emotion : PASSION b : SWEETHEART

heart–to–heart \ˌhärt-tə-ˌhärt\ *adj* (1867) : SINCERE, FRANK ⟨a ~ talk⟩

heart-warm-ing \ˈhärt-ˌwȯr-miŋ\ *adj* (1899) : inspiring sympathetic feeling : CHEERING — heart-warm-er *n*

heart–whole \-ˌhōl\ *adj* (1600) 1 : HEART-FREE 2 : SINCERE, GENUINE

heart-wood \-ˌwu̇d\ *n* (15c) : the older harder nonliving central portion of wood that is usu. darker, denser, less permeable, and more durable than the surrounding sapwood

heart-worm \-ˌwərm\ *n* (1888) : a filarial worm (*Dirofilaria immitis*) that is a parasite esp. in the right heart of dogs and is transmitted by mosquitoes; *also* : infestation or disease caused by the heartworm

¹hearty \ˈhärt-ē\ *adj* heart-i-er; -est (14c) 1 a : giving unqualified support : THOROUGHGOING b : enthusiastically or exuberantly cordial : JOVIAL c : expressed unrestrainedly 2 a : exhibiting vigorous good health b : ABUNDANT ⟨a ~ meal⟩ c : NOURISHING ⟨a ~ beef stew⟩ 3 : VIGOROUS, VEHEMENT *syn* see SINCERE — heart-i-ness *n*

²hearty *n*, *pl* heart-ies (1803) : a bold brave fellow : COMRADE; *also* : SAILOR

¹heat \ˈhēt\ *vb* [ME *heten*, fr. OE *hǣtan*; akin to OE *hāt* hot] *vi* (bef. 12c) 1 : to become warm or hot 2 : to become hot and start to spoil ~ *vt* 1 : to make warm or hot 2 : EXCITE — heat-able \-ə-bəl\ *adj*

²heat *n* [ME *hete*, fr. OE *hǣte*, *hǣtu*; akin to OE *hāt* hot] (bef. 12c) 1 a (1) : a condition of being hot : WARMTH (2) : a marked or notable degree of hotness b : pathological excessive bodily temperature c : a hot place or situation d (1) : a period of heat (2) : a single com-

\ə\ abut \ᵊ\ kitten, F table \ər\ further \a\ ash \ā\ ace \ä\ cot, cart \au̇\ out \ch\ chin \e\ bet \ē\ easy \g\ go \i\ hit \ī\ ice \j\ job \ŋ\ sing \ō\ go \ȯ\ law \ȯi\ boy \th\ thin \t͟h\ the \ü\ loot \u̇\ foot \y\ yet \zh\ vision \å, k, ⁿ, œ, ǣ, ue, ue, ʸ\ see Guide to Pronunciation



560 heat cramps • Hebraism

plete operation of heating; *also* : the quantity of material so heated (1) : added energy that causes substances to rise in temperature, fuse, evaporate, expand, or undergo any of various other related changes, that flows to a body by contact with or radiation from bodies at higher temperatures, and that can be produced in a body (as by compression) (2) : the energy associated with the random motions of the molecules, atoms, or smaller structural units of which matter is composed : appearance, condition, or color of a body as indicating its temperature **6 a** : one of a series of intensities of heating **2 a** : intensity of feeling or reaction : PASSION **b** : the height or stress of an action or condition ‹in the ~ of battle› **c** : sexual excitement esp. in a female mammal; *specif* : ESTRUS **3** : pungency of flavor **4** : a single continuous effort; as **a** : a single round of a contest (as a race) having two or more rounds for each contestant **b** : one of several preliminary contests held to eliminate less competent contenders **5 a** *slang* (1) : the intensification of law-enforcement activity or investigation (2) : POLICE **b** : PRESSURE, COERCION **c** : ABUSE, CRITICISM ‹took a lot of ~ for his beliefs› — **heat·less** \ˈhēt-ləs\ *adj* — **heat·proof** \-ˈprüf\ *adj*

**heat cramps** *n pl* (1938) : a condition that is marked by sudden development of cramps in skeletal muscles and that results from prolonged work in high temperatures accompanied by profuse perspiration with loss of sodium chloride from the body

**heat·ed** \ˈhēt-əd\ *adj* (1593) : marked by anger ‹a ~ argument› — **heat·ed·ly** *adv*

**heat engine** *n* (ca. 1895) : a mechanism (as an internal-combustion engine) for converting heat energy into mechanical energy

**heat·er** \ˈhēt-ər\ *n* (1500) : one that heats; *esp* : a device that imparts heat or holds something to be heated

**heat exchanger** *n* (1902) : a device (as an automobile radiator) for transferring heat from one fluid to another without allowing them to mix

**heat exhaustion** *n* (1939) : a condition marked by weakness, nausea, dizziness, and profuse sweating that results from physical exertion in a hot environment — called also *heat prostration*; compare HEATSTROKE

**heath** \ˈhēth\ *n* [ME *heth*, fr. OE *hǣth*; akin to OHG *heida* heather, OW *coit* forest] (bef. 12c) **1 a** : any of a family (Ericaceae, the heath family) of shrubby dicotyledonous and often evergreen plants that thrive on open barren usu. acid and ill-drained soil; *esp* : an evergreen subshrub of either of two genera (*Erica* and *Calluna*) with whorls of needlelike leaves and clusters of small flowers **b** : any of various plants that resemble true heaths **2 a** : a tract of wasteland **b** : an extensive area of rather level open uncultivated land usu. with poor coarse soil, inferior drainage, and a surface rich in peat or peaty humus — **heath·less** \-ləs\ *adj* — **heath·like** \-ˌlīk\ *adj* — **heathy** \ˈhē-thē\ *adj*

**¹hea·then** \ˈhē-thən\ *adj* [ME *hethen*, fr. OE *hǣthen*; akin to OHG *heidan* heathen] (bef. 12c) **1** : of or relating to heathens, their religions, or their customs **2** : STRANGE, UNCIVILIZED

**²heathen** *n, pl* **heathens** *or* **heathen** (bef. 12c) **1** : an unconverted member of a people or nation that does not acknowledge the God of the Bible **2** : an uncivilized or irreligious person — **hea·then·dom** \-dəm\ *n* — **hea·then·ism** \-thə-ˌniz-əm\ *n* — **hea·then·ize** \-thə-ˌnīz\ *vt*

**hea·then·ish** \ˈhē-thə-nish\ *adj* (bef. 12c) : resembling or characteristic of heathens : BARBAROUS — **hea·then·ish·ly** *adv*

**¹heath·er** \ˈheth-ər\ *n* [ME (northern) *hather*] (14c) : HEATH 1a; *esp* : a common heath (*Calluna vulgaris*) of northern and alpine regions that has small crowded sessile leaves and racemes of tiny usu. purplish pink flowers

**²heather** *adj* (1615) : HEATHERY

**heath·ery** \ˈheth-(ə-)rē\ *adj* (1535) **1** : of, relating to, or resembling heather **2** : having flecks of various colors ‹a soft ~ tweed›

**heath hen** *n* (1644) : a now extinct grouse (*Tympanuchus cupido cupido*) of the northeastern U.S. — compare PRAIRIE CHICKEN

**heat lightning** *n* (1834) : vivid and extensive flashes of electric light without thunder seen near the horizon esp. at the close of a hot day and ascribed to far-off lightning reflected by high clouds

**heat prostration** *n* (1938) : HEAT EXHAUSTION

**heat pump** *n* (1894) : an apparatus for heating or cooling a building by transferring heat by mechanical means from or to a reservoir (as the ground, water, or air) outside the building

**heat rash** *n* (1887) : PRICKLY HEAT

**heat shield** *n* (1962) : a barrier of ablative material to protect a space capsule from heat on its reentry into the atmosphere

**heat sink** *n* (1936) : a substance or device for the absorption or dissipation of unwanted heat (as from a process or an electronic device)

**heat·stroke** \ˈhēt-ˌstrōk\ *n* (1888) : a condition marked esp. by cessation of sweating, extremely high body temperature, and collapse that results from prolonged exposure to high temperature — compare HEAT EXHAUSTION

**heat-treat** \ˈhēt-ˌtrēt\ *vt* (1907) : to subject to heat; *esp* : to treat (as metals) by heating and cooling in a way that will produce desired properties — **heat treater** *n* — **heat treatment** *n*

**heat wave** *n* (1878) : a period of unusually hot weather

**¹heave** \ˈhēv\ *vb* **heaved** *or* **hove** \ˈhōv\; **heav·ing** [ME *heven*, fr. OE *hebban*; akin to OHG *heffen* to lift, L *capere* to take] *vt* (bef. 12c) **1** *obs* : ELEVATE **2** : to cause to be lifted upward or onward **3** : THROW, CAST **4** : to utter with obvious effort **5 a** : to cause to swell or rise **b** : to displace (as a rock stratum) esp. by a fault **6** : HAUL, DRAW ~ *vi* **1** : to rise or become thrown or raised up **2** : to strain to do something : LABOR **3 a** : to rise and fall rhythmically **b** : PANT **4** : RETCH **5 a** : PULL, PUSH **b** : to move a ship in a specified direction or manner **c** *of a ship* : to move in an indicated way *syn* see LIFT — **heav·er** *n* — **heave to** : to bring a ship to a stop

**²heave** *n* (1571) **1 a** : an effort to heave or raise **b** : HURL, CAST **2** : an upward motion : RISING; *esp* : a rhythmical rising **3** : the horizontal displacement by the faulting of a rock **4** *pl but sing or pl in constr* : chronic pulmonary emphysema of the horse resulting in difficult expiration, heaving of the flanks, and a persistent cough

**heave-ho** \ˈhēv-ˈhō\ *n* [fr. *heave ho!*, interjection used when heaving on a rope] (1944) : DISMISSAL ‹gave him the old ~›

**heav·en** \ˈhev-ən\ *n* [ME *heven*, fr. OE *heofon*; perh. akin to OHG *himil* heaven] (bef. 12c) **1** : the expanse of space that seems to be over the earth like a dome : FIRMAMENT — usu. used in pl. **2 a** *often cap* : the dwelling place of the Deity and the joyful abode of the blessed dead **b** : a spiritual state of everlasting communion with God **3** *cap* : GOD **4** : a place or condition of utmost happiness **5** *Christian Science* : a



UNITED STA...S DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/419,752 | 04/10/95 | GASPARRINI | C 0140-4124 |

EXAMINER
ACKUN, J

C2M1/0516

| ART UNIT | PAPER NUMBER |
|---|---|
| 3208 | 9 |

THOMAS M HAMMOND
MORGAN AND FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

DATE MAILED: 05/16/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined ☑ Responsive to communication filed on 3/6/96 ☑ This action is made final.

A shortened statutory period for response to this action is set to expire 3 month(s), — days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ ______.

**Part II SUMMARY OF ACTION**

1. ☑ Claims 1-56 are pending in the application.

   Of the above, claims ______ are withdrawn from consideration.

2. ☐ Claims ______ have been cancelled.
3. ☐ Claims ______ are allowed.
4. ☑ Claims 1-56 are rejected.
5. ☐ Claims ______ are objected to.
6. ☐ Claims ______ are subject to restriction or election requirement.
7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.
8. ☐ Formal drawings are required in response to this Office action.
9. ☐ The corrected or substitute drawings have been received on ______. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).
10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on ______, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).
11. ☐ The proposed drawing correction, filed ______, has been ☐ approved; ☐ disapproved (see explanation).
12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. ______; filed on ______.
13. ☐ Since this application apppears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.
14. ☐ Other

EXAMINER'S ACTION

1. The reissue oath or declaration filed with this application is defective because it fails to particularly specify all of the errors and how the errors relied upon arose or occurred as required under 37 CFR 1.175(a)(5). Included are inadvertent errors in conduct, i.e., actions taken by the applicant, the attorney or others, before the original patent issued, which are alleged to be the cause of the actual errors in the patent. This includes how and when the errors in conduct arose or occurred, as well as how and when these errors were discovered. The applicant's attention is directed to Hewlett-Packard v. Bausch & Lomb, 11 USPQ2d 1750, 1758 (Fed. Cir. 1989).

The applicants are advised that ANY change or departure from the original specification or claims represents an "error" in the original patent under 35 U.S.C. 251 and MUST be addressed in the original, or supplemental reissue oath or declaration. See MPEP 1414.03. Each and every change to U.S. Patent No. 3,568,157 has yet to be addressed in either of the Declarations filed in the instant application. More specifically, while the new Declaration sheds some light on the facts giving rise to the changes in the scope of the claims, it remains silent regarding the circumstances surrounding the changes in the Specification, including changes to the specification similar to those made in the claims. As the applicants may appreciate, it is one thing to elaborate on the contention that claims recite less than the

applicant is entitled to claim (as the applicants have done thus far), and another to address the apparent conclusion by the applicants that the specification does not teach all that it is supposed to teach (the fact that changes of the kind made in the claims, were also made in the specification of the Reissue Application, indicates that the applicants find the invention as originally disclosed to be incomplete).

Accordingly, the applicants are required under 35 U.S.C. 251 to address in the Reissue Declaration how and why the errors in the specification arose. For example only, the applicants must address the changes to the specification set forth on pages 1 and 2 of the Preliminary Amendment filed on 04/10/95, which have the effect of changing the original specification to indicate that the inventions as described in the original Brief Statement Of The Invention, are in fact only embodiments of broader inventions. In another example only, the additions to the specification at page 4 paragraph 2 of the Preliminary Amendment must also be addressed, including the facts as to how, why and when the applicants discovered that a "wide variety of sealable materials" could be used to form the sleeves of the invention, and why this teaching was left out of the original specification. In yet another example, the errors on page 6 of the Preliminary Amendment must also be addressed in similar fashion by the applicant.

2. Claims 1-56 are finally rejected as being based upon a defective reissue Declaration under 35 U.S.C. § 251. See 37 C.F.R. § 1.175.

3. The following is a quotation of the first paragraph of 35 U.S.C. § 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification is objected to under 35 U.S.C. § 112, first paragraph, as the specification as originally filed does not provide support for the invention as is now claimed. The changes sought to be made to the specification and to the claims in the instant application, are unsupported by the disclosure of U.S. Patent No. 3,568,157, and therefore constitute new matter.

With respect to the changes which the applicants characterise as being necessary to enable them to claim what they are entitled to, the applicants traverse the finding of new matter made in the last Office Action on the grounds that the changes to the specification merely explain in more detailed language subject matter which is already disclosed in U.S. Patent No. 3,568,157. The applicants arguments are unconvincing.

For example only, with respect to the applicants specific arguments, which begin at page 10 of the amendment filed on

03/06/96, the applicants contend that the amendments to the specification in the instant case dealing with broader means of sealing the sleeve, are supported by the recitation in column 2, lines 52-56, to the effect that another more specific aspect of the method includes subjecting the heat sealable plastic sleeve to a vacuum and drawing the sleeve into intimate contact with the fabric roll. According to the applicants, it is this more specific aspect which clearly teaches that broadly, the sleeve could be a sleeve which need not be plastic and/or which need not heat sealable.

It is inconceivable that the applicants can find such a teaching in the above quoted language of the original specification, which by it's own terms refers to the sleeve as a heat sealable plastic sleeve. Why would one of ordinary skill in the art upon being informed that a sleeve was a heat sealable plastic sleeve, infer that what was really intended was that the sleeve need not be plastic and/or need not be heat sealable? The applicants argument that additional support for the contention that the sleeve need not be plastic, and need not be heat sealable, is provided by the teaching in the the original specification that in another more specific aspect of the invention the plastic sleeve is not only heat sealable, but is also heat shrinkable, is similarly far fetched.

Moreover, it is observed that those portions of the specification pointed to by the applicants to support their above arguments, are part of a description of the method of making the invention which begins at line 26 of column 2. In this section of the specification, which comprises the very first description of the method, the specification clearly teaches that broadly, the method comprises inter alia, draining off excess solvent, wrapping the saturated fabric around an elongated cylindrical core having open ends and forming a roll, disposing a heat sealable plastic sleeve around the roll, and heat sealing the sleeve around the roll. As is evident, this is the broad teaching of the method, nothing more, nothing less.

All of the separate grounds on which the applicants traverse the findings of new matter and the resulting rejections of all of the claims, are also without merit. In particular, the applicants citation of the definition of the word "heat" from a dictionary, to support the proposition that the phrase "heat-sealed", as applied to the sleeve, should teach that it could be constructed from any materials, including paper, is especially unconvincing. The phrase "heat-sealed" is clearly understood by one of ordinary skill in the packaging arts without reference to the dictionary, and clearly does not by itself, without more, bring to mind all materials including paper.

As to the changes characterised by the applicants as being corrections of typographical dimensional errors, these too are considered to constitute New Matter. The applicants argue that the corrections do not add New Matter because the particular dimensions disclosed and claimed are obviously incorrect, and because the changes in the specification are supported by the claims as originally filed and the changes in the claims are supported by the specification as originally filed.

Contrary to the applicants arguments the alleged errors are not considered to be obvious. It is observed for example, that the Amendment filed on 03/06/96 makes corrections to those made in the Preliminary Amendment of 04/10/95 (for the purpose of correcting the original patent), the applicants having averred in the Reissue Declaration filed with the Preliminary Amendment that they had reviewed and understood the changes therein. Additionally, in the last Office Action, the applicants were advised of the apparent inconsistency resulting from their reliance on the original specification to support a change in the claims, while in another instance, finding support for a change to the specification by relying on the claims. The applicants responded stating that the reason they have had to rely on the specification in some instances, and on the claims in others, is because the errors occurred in the specification and in the claims. However, in the absence of any other support for the

contention that the original dimensions are in fact erroneous, the applicants response is clearly insufficient. Why, for example, in a particular instance, is the specification considered to provide definitive support for the correct figure? Why not the claims in that particular instance?

4. Claims 1-56 are finally rejected under 35 U.S.C. § 112, first paragraph, for the reasons set forth in the objection to the specification.

5. Applicant's arguments filed on 03/06/96 have been fully considered but they are not deemed to be persuasive.

6. **THIS ACTION IS MADE FINAL.** Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

7. Any inquiry concerning this communication should be directed to Jacob Ackun at telephone number (703) 308-3867.

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKETT NO. |
| --- | --- | --- | --- |
| | | | |

| EXAMINER |
| --- |
| |

| ART UNIT | PAPER NUMBER |
| --- | --- |
| | 10 |

DATE MAILED:

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) CHARLES GASPARRINI (3) ____

(2) THOMAS HAMMOND (4) ____

Date of Interview 7/23/96

Type: ☐ Telephonic ☑ Personal (copy is given to ☐ applicant ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☑ Yes ☐ No. If yes, brief description: Sample of the fabric roll.

Agreement ☐ was reached with respect to some or all of the claims in question. ☑ was not reached.

Claims discussed: Claims remaining in the application.

Identification of prior art discussed: None

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Proposals were made for amendments to the specification and claims. These were taken under advisement. While it appeared that the proposed amendments did not add any new matter to the application, a final determination as to patentability of the claims would depend on the content of any amendment filed hereafter.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☐ 1. It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ 2. Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

Examiner's Signature [signature]

PTOL-413 (REV. 2-93)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

PATENT

RECEIVED
AUG 06 1996

Docket No. 0140-4124

**REISSUE PATENT APPLICATION**
**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Reissue of:

U.S. Patent No. 5,368,157
Serial No.: 145,881
Filing Date: October 29, 1993
Issue Date: November 29, 1994

Serial No.: 08/419,752 Group Art Unit: 3208

Filing Date: April 10, 1995 Examiner: Ackun, J.

Inventor: Charles R. Gasparrini et al.

For: **PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME**

**AMENDMENT AFTER FINAL REJECTION**

ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:

In response to the Official Action dated March 16, 1996, please amend the above-identified Application as follows:

**IN THE SPECIFICATION:**

Column 2, before line 10, cancel the insertion made in the Preliminary Amendment filed with this Application as a new paragraph which reads: "In accordance with invention . . . . cleaning ability of the fabric.";

Column 2, line 10, cancel the insertion after "with" made in the Preliminary Amendment filed with this Application which reads "a more specific aspect of";

Column 2, lines 27 and 28, cancel the insertion after "system" made in the Preliminary Amendment filed with

this Application and which reads "Broadly, the method
comprises . . . . the cleaning ability of the fabric roll.";

Column 2, line 28, before "the method", cancel the
insertion which was made in the Preliminary Amendment filed
in this Application and which reads "More specifically," and
insert therefore --Broadly--;

Column 2, lines 49 and 50, cancel the elimination
of the phraseology reading "elongated cylindrical" as made
in the Preliminary Amendment filed with this Application;

Column 2, line 53, cancel the insertion made in
the Preliminary Amendment filed with this Application before
"sleeve" and which reads "sealable" and insert therefor
--heat-sealable plastic--;

Column 2, line 56, cancel the elimination of the
term "heat-sealable" which was made in the Preliminary
Amendment filed with this Application and reinsert therefor
the term --heat-sealable--;

Column 2, line 60, cancel the elimination of the
term "cylindrical" which was made in the Preliminary
Amendment filed with this Application and reinsert therefor
the term --cylindrical--.

Column 3, lines 11 through 13, cancel the
insertion of the phraseology made in the Preliminary
Amendment filed with this Application and which reads "and
which extend over the peripheral . . . before the role is
inserted in the plastic sleeve" and reinsert therefor the

phraseology --and which extend over the peripheral edges of the fabric roll before the roll is inserted in the plastic sleeve--;

Column 3, line 27, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application and reinsert therefore --drained--;

Column 3, line 30, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application and reinsert therefor --drained--;

Column 3, line 31, cancel the elimination of the term "plastic" as made in the Preliminary Amendment filed with this Application and reinsert therefor --plastic--;

Column 3, line 57, after "comprises" cancel the insertion of the phraseology "a core such as" as made in the Preliminary Amendment filed with this Application;

Column 3, line 68, cancel the insertion of the term "sealable" before "sleeve 15" and the insertion of the phraseology "which may be" as made in the Preliminary Amendment filed with this Application.

Column 4, line 24, cancel the elimination of the phraseology "also preferably" made in the Preliminary Amendment filed with this Application;

Column 4, line 27, before "extend" cancel the insertion which reads "which may" made in the Preliminary Amendment filed with this Application;

Column 4, line 60, cancel "0.30 inch" and insert therefor --0.030 inch--.

Column 5, between lines 41 and 42, cancel the insertion which reads "A wide variety of sealable materials may . . . . of the invention.  Exemplative of such materials . . . . appropriate areas thereof." as made in the Preliminary Amendment filed with this Application;

Column 5, line 42, cancel the elimination of "A" and reinsert therefor --A--; and before "wide" cancel the insertion which reads "On the other hand, where plastics . . . . sealed sleeves, a" as made in the Preliminary Amendment filed with this Application;

Column 5, line 62, before "excess" cancel "removing" as inserted in the Preliminary Amendment filed with this Application and insert therefor --draining off--;

Column 5, line 65, cancel the elimination of the phraseology "an elongated cylindrical" and the insert therefor of "a" as made in the Preliminary Amendment filed with this Application;

Column 5, line 66, before "sleeve" cancel the elimination of the phraseology reading "heat-sealable plastic" and the insertion therefor of "sealable" as made in the Preliminary Amendment filed with this Application;

Column 5, line 67, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application;

Column 5, line 68, before "the" cancel the elimination of the term "subjecting" and the elimination of the phraseology "to a temperature sufficient to heat" as made in the Preliminary Amendment filed with this Application.

Column 6, line 1, cancel the elimination of the phraseology "seal the plastic sleeve" and drained" as made in the Preliminary Amendment filed with this Application;

Column 6, line 2, cancel the elimination of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 6, lines 10 and 11, cancel the elimination of the term "cylindrical" as made in the Preliminary Amendment filed with this Application;

Column 6, line 17, after "in" cancel the insertion of the phraseology reading "a sealable sleeve or" as made in the Preliminary Amendment filed with this Application;

Column 6, line 18, after "is" cancel the insertion "sealed" as made in the Preliminary Amendment filed with this Application;

Column 6, line 20, after "roll" cancel the insertion of the term "and" and eliminate the cancellation of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 6, line 21, before "temperatures" cancel the insertion which reads "in cases where a heat-sealable

and/or heat-sealable and heat-shrinkable plastic sleeve is used,-- as made in the Preliminary Amendment filed with this Application.

Column 7, line 3, cancel the elimination of the phraseology "elongated cylindrical" made in the Preliminary Amendment filed with this Application;

Column 7, line 7, before "heat-sealable" cancel the insertion of the phraseology "sealable sleeve or" as made in the Preliminary Amendment filed with this Application;

Column 7, line 8, after "is" cancel the insertion "sealed" as made in the Preliminary Amendment filed with this Application;

Column 7, line 10, before "heat-seal" cancel the insertion of the term "sealed" as made in the Preliminary Amendment filed with this Application;

Column 7, line 11, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application;

Column 7, line 12, cancel the elimination of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 7, line 13, after "particular" cancel the insertion of "sealing" as made in the Preliminary Amendment filed with this Application;

Column 7, line 14, after "of" cancel the insertion of the term "sealable" as made in the Preliminary Amendment filed with this Application;

Column 7, line 16, after "about" cancel the insert of the phraseology "ambient temperature, and/or" as made in the Preliminary Amendment filed with this Application;

Column 7, line 21, cancel the elimination of term "plastic" as made in the Preliminary Amendment filed with this Application;

Column 7, line 22, after "general," cancel the insertion of "where" and after "heat-sealing" the insertion of "are employed, they" as made in the Preliminary Amendment filed with this Application;

Column 7, line 28, cancel the elimination of the term "plastic" as made in the Preliminary Amendment filed with this Application;

Column 7, line 33, cancel the elimination of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 7, line 56, cancel the elimination of the term "cylindrical" as made in the Preliminary Amendment filed with this Application;

Column 7, line 67, after "about", first occurrence, cancel the insertion which reads "0.03 to about"; after "0.5" the insertion of "up" and after "about", second occurrence, the insertion which reads "0.3 to about"

as made in the Preliminary Amendment filed with this Application.

Column 8, before line 15, cancel the insertion of the new paragraph which reads "Thus, the pre-packaged, pre-soaked cleaning system . . . . in a simple manner. That is, for example, the system can be disposed . . .. on such mounting means. Moreover, the mounting means . . . . and being fed past the same." as made in the Preliminary Amendment filed with this Application.

**IN THE CLAIMS**:

Cancel Claims 29 through 34, 36, 38 through 43 and 47 through 56 without prejudice.

Amend Claims 44, 45 and 46 as follows:

44. (Amended once) A pre-packaged, pre-soaked cleaning system as defined in Claim 28 wherein the sealed sleeve can be opened or removed from the fabric roll for use of said fabric roll and including in combination [with a] therewith means for positioning [the] said pre-packaged, pre-soaked cleaning system adjacent a cylinder to be cleaned.

45. (Amended once) A pre-packaged, pre-soaked cleaning system as defined in Claim [28] 1 wherein the sealed sleeve [is] can be opened or removed from the fabric roll for use of said fabric roll and including means [is

provided] locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

46. (Amended once) In combination with a pre-packaged, pre-soaked cleaning system as defined in Claim [28] 45, a system wherein the means for locating the fabric roll is a mounting means for [mounting the pre-soaked] locating said fabric roll in a position to clean a cylinder while the fabric is in contact with and being fed past said cylinder.

Add the following Claim:

57. A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:

(1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including

(2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

**IN THE ABSTRACT:**

In the body of the Abstract:

Lines 5 and 6, cancel the elimination of the term "cylindrical" as made in the Preliminary Amendment filed with this Application;

Line 6, cancel the elimination of the phraseology reading "having open ends" as made in the Preliminary Amendment filed with this Application;

Line 7, before "heat-sealable" cancel the insertion reading "sealable sleeve or a" as made in the Preliminary Amendment filed with this Application;

Line 8, cancel the elimination of "plastics" as made in the Preliminary Amendment filed with this Application;

Line 10, cancel "to sealing" as inserted in the Preliminary Amendment filed with this Application and insert therefor --to--.

In the Preliminary Amendment, as filed with this Application, cancel the amendatory matter which appears on page 8 of the Amendment and which involves the changes called for at Lines 18 and 19.

**REMARKS**

Initially, Applicants and their attorneys take this opportunity to thank the Examiner for his kind courtesy in granting them a Personal Interview in this case on July 23, 1996.  Mr. Gasparrini, one of the inventors, and the undersigned attorney both of whom attended the Interview, found the Examiner's views and suggestions to be most helpful in moving the prosecution of this case towards a possible positive conclusion.

The Specification, Claims and Abstract in this Application have been amended as above indicated.

Claims 1 through 27, 28, 44, 45, 46 and 57 are now in this case.

In an effort to substantially reduce the issues in this matter and simplify the Examiner's consideration thereof, Applicants have done the following:

1.    Drastically reduced the number of changes to the Specification as they are deemed unnecessary to support the claimed invention in the original or new Claims.  While the changes previously suggested were deemed by Applicants to be by way of explanation recognizable by those skilled in the art, rather than new matter, Applicants are simplifying the issues.

2.    Significantly reduced the number of Claims in an effort to simplify the issues presented to the Examiner.

More specifically, the Specification and Abstract have been amended to restore the same to the original language as set out in U.S. Patent 5,368,157 which is the subject of this Reissue Application.  The only exception is the retention of minor amendments to the Specification at Column 2, line 48, where the term "another" has been inserted before "specific"; Column 2, line 52, where the term "more" has been deleted; Column 2, line 57, where the term "more" has been deleted; Column 3, line 4, where the term "more" has been deleted; Column 3, line 6, where the phraseology "the sleeve" has been deleted; and, Column 3, line 9, wherein the term "more" has also been deleted.

In addition, at Column 4, line 60, the insertion "0.30 inch" and replaced by --0.030 inch--; thus returning the Specification in this respect by **re-inserting the original numerical value** and at Column 5, line 29, the insertion relating to the utilization of organic oils, such as palm oils, coconut oils and the like, has also been retained in the Specification.

It is respectfully pointed out to the Examiner that the amendatory matters referred to above deal only with minor language changes in the Specification and do not involve, in any way, an enlargement of the scope of Applicants' inventive concept.

Indeed, none of the amendments have any effect on original Claims 1 through 7, 9, or 11 through 27. Therefore, these Claims should be allowable.

The Abstract has now been restored to its original language, except for two minor amendments which were called for at lines 18 and 19 and both of which amendments are incorrect because they do not refer to proper lines in the body of the Abstract.

Next, referring to the Claims, the attention of the Examiner is respectfully directed to the fact that Claims 1 through 27 of the originally granted Claims remain in this case. Claim 28 is an independent Claim, drawn to the pre-packaged, pre-soaked cleaning system of the invention. Claim 44 is dependent on Claim 28 and drawn to a combination of the system recited in Claim 28 with a cylinder to be cleaned. Claims 28, 44, 45 and 46 are Reissue Claims. On the other hand, a substantial number of Claims have been cancelled, namely 29 through 34, 36, 38 through 43, and 47 through 56. Claims 35 and 37 were previously cancelled. Claim 45 has been amended to make it dependent on original Claim 1 and Claim 46 has been amended to make it dependent on Claim 45. Claims 44, 45 and 46 have also been amended, as above indicated, to make them more properly recite product language rather than process or method language in view of the discussion of this aspect of the matter at the Interview.

Finally, added Claim 57 is submitted herewith. This added Claim is an independent Claim combining the substance of Claims 28 and 44, although broader in scope in some respects. The support therefor, as pointed out at the Interview, occurs in the originally granted Patent at Column 1, lines 6 through 15 of the Specification, as well as at Column 8, lines 1 through 7 which also provides support for Claims 28 and 44.

Column 1, lines 6 through 15 states:

> This invention relates to a cleaning system for use to clean the cylinders of printing machines. More particularly, the invention relates to a pre-packaged, pre-soaked blanket cleaning system to clean the cylinders of printing machines. While the invention is disclosed as it applies to the cleaning of the cylinders of printing machines for the sake of simplicity, it is to be understood that it can also be utilized to clean the cylinders of other types of machinery.

The pertinent portions of the Specification at Column 8, lines 1 through 7 is quoted hereinbelow in connection with the discussion involving the support for Claims 45 and 46, as well.

In view of the fact that added Claim 57 combines the substance of original Reissue Claims 28 and 44, it is respectfully submitted that Claim 57, although broader in some respects, raises no new issues which would require further search and consideration. This is especially so, since Claims 28 and 44 were previously considered by the Examiner and they were subject of a prior art search.

Still further in this regard, it is respectfully pointed out to the Examiner that the only issue raised against Claims 28 and 44 was the question of support, and thus the addition of "new matter". However, the Examiner concluded at the Interview that it appeared that the proposed amendments did **not** add any new matter to the Application, although a final determination as to the patentability of the Claims would depend on the content of any amendment filed hereafter.

Thus, it is respectfully submitted that the Examiner's statements, as set forth on pages 1 and 3 of the Official Action of May 16, 1996, are no longer issues in this matter and are no longer applicable. However, in order to be completely responsive, a new Supplemental Reissue Declaration By Inventors is attached hereto which deals with the issues remaining in this case.

Therefore, it is respectfully submitted that the rejection of Claims 1 through 56, as being based upon a defective Reissue Declaration Under 35 U.S.C., Section 251, as set forth in paragraph 2 on page 4 of the Official Action is no longer applicable.

The support for Claims 1 through 27, as allowed was found in the originally granted Patent.

On the other hand, with respect to Claims 28 and 44 through 46 which still remain in this Application and

Claim 57 which has been added, the attention of the Examiner is respectfully directed to the following comments.

The support for added Claim 57 in the Specification at Column 1, lines 6-14, as well as at Column 8, lines 1 through 7, has been pointed out above.

It is to be noted that at Column 8, lines 1 through 7 of the Patent, there is also clear support for Reissue Claims 45 and 46 (now dependent on Claim 1) involving the recitation of a cleaning system according to the invention associated with a cylinder to be cleaned. These Claims reflect the failure of the original Claims to cover the combination of the package cleaning system with a press and are allowable because the Specification of the original Patent discloses a potential invention in broader terms.

Column 1, lines 6 through 14 of the Patent is set forth above and Column 8, lines 1 through 7 states:

> "The so-made pre-packaged, pre-soaked blanket cleaning system of this invention can be employed on any printing apparatus, simply by modifying the apparatus to provide it with a shaft which can be inserted through the core and also a take-up roll which is employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function."

Still further, in the Specification, at Column 7, lines 36 through 45, it is stated:

> "In those cases where the saturated wrapped fabric roll is to be employed with a slotted canister, the roll is simply inserted in the canister with a portion thereof protruding through the slot and the canister is provided with knock-out end

> portions which may be inserted therein after insertion of the roll, such end portions simply being removed when the roll is to be disposed on an appropriate shaft of a printing apparatus or the like in order to permit insertion of the shaft through the core of the roll, as well as removal of the shaft from the core."

Obviously, in actual use, the sleeve of the package cleaning system must be opened or removed whether it be heat-sealed, heat-shrunken and heat-sealed, or simply sealed, as needed, in any other convenient fashion, in order for the cleaning fabric to be brought into contact with a cylinder to be cleaned and then to be taken up by an appropriate take-up roll after it has carried out its cleaning function and which elements are clearly disclosed in the Specification.

Thus, dependent Claims 45 and 46 which are dependent on Claim 1 are fully supported by the disclosure and define a patentable invention especially since no prior art has been applied against the same.

As established in these portions of the Specification, the cleaning system of this invention can be employed on **any** printing apparatus simply by modifying the apparatus to provide it with a shaft to support the core and a take-up roll employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function by contacting the cylinder or cylinders to be cleaned. Thus, it is respectfully submitted that support for such Claims was clearly present in the original

Application, as filed.  It is submitted with emphasis that

the combination of the cleaning system of this invention

with the elements of printing apparatus already known in the

field, as recited in Claims 45 and 46, presents a novel and

patentable recitation not heretofore taught or suggested by

any previous patents or publications known to Applicants and

furthermore no art has been applied against the same by the

Examiner in the instant case.

     As mentioned above, support for Claims 1 through

27 was found in the originally granted Patent.  However, the

Specification and Claims 8 and 10 of the Reissue Application

were amended in order to bring them into agreement with each

other to be internally consistent and to disclose and recite

Applicants' inventive concept more precisely.  For example,

by Preliminary Amendment, the Specification was amended at

Column 4, line 60, to change the caliper thickness from

"mils" to "inches" while retaining the figure "0.030" for

the top of the range disclosed in describing the caliper

thickness of a cleaning fabric employed in the invention,

thus reading "0.030 inch".  The only changes in the

Specification and Claims is to change mils to inches for the

reason, as explained below, that a caliper thickness in mils

cannot be accurately measured with a caliper of any kind.

     Therefore, the Specification was returned to its

original state with respect to the numerical figures.  Claim

10 was amended to make it consistent with the Specification

of the original Patent insofar as the figure 0.10 is
concerned. On the other hand, Applicants continue to assert
that a thickness of "inches" rather than "mils" is the
correct reference basis because those with ordinary skill in
the art would recognize that mils is incorrect. One reason
why a person skilled in the art would recognize the error is
that a caliper such as a micrometer can measure only to
0.0001 inches and would not measure such a small distance as
0.000003 inches which is the distance of 0.003 mils. In
other words, the instrument of measurement precludes the mil
measurement from being correct.

In this connection, the Examiner's attention is
respectfully directed to:

(1)  Hackh's Chemical Dictionary, Fourth Edition,
copyright 1969, published by McGraw-Hill, Inc., New York,
N.Y., p. 430 (copy attached) where "mil" is defined as: (2)
a measure of thickness, especially of wire. 1 mil =
1/1,000 in. = 25.4001 microns; and

(2)  McGraw-Hill Encyclopedia of Engineering,
Second Edition, copyright 1993, published by McGraw-Hill
Inc., New York, N.Y., p. 136 (copy attached) where "caliper"
is defined as an instrument with two legs used for measuring
linear dimensions. The legs may pivot about a rivet or
screw in a firm-joint pair of calipers. The legs may pivot
about a pin being held against the pin by a spring and set
in position by a knurled nut on a threaded rod; or the legs

may slide either directly (caliper rule) or along a screw (micrometer caliper) relative to each other, that is a micrometer.

On p. 743 (copy attached) of the same publication, a micrometer is defined as a precision instrument used to measure small distances and angles. A common use is on a machinist's caliper in which the spindle is an accurately machined screw which is rotated by the thimble or ratchet knob until the object to be measured is in contact with both the spindle and anvil. The ratchet slips after pressure is applied, ensuring consistent, accurate gaging. The number 1 on the sleeve represents **0.1 inch** (emphasis added). The smallest divisions are 0.025 in. The thimble makes one complete turn for each 0.025 inc. on the sleeve, and the 25 divisions on the thimble allow reaching to the nearest 0.001 in. A vernier scale allows accurate reading to 0.0001 in.

**Considering the numbers set forth in the granted** Patent at Columns 4 and 5 and Claims 8 and 10, it is clear that in terms of "mils", as disclosed and claimed, these values call for a caliper thickness of a fabric which is **so thin** that it would be practically useless in the practice of the invention. On the other hand, the numbers set forth in terms of "inch" values provide fabrics of a thickness which are practical for use in the invention.

In addition, it would be obvious to anyone skilled in the art -- and it is to such individuals that an

application for patent is directed -- that the caliper thickness in mils of a fabric to be employed in the instant invention would be so **thin** that it would **disintegrate**, thus being impractical and **useless.** On the other hand, if the thickness of the fabric had been erroneously expressed in feet or yards, it would be clearly obvious to any skilled person also that it would be **impractical** for use in Applicants' invention. Thus, it is urged that correction of this **obvious** error does not result in the introduction of new matter to this Application -- neither in the Specification nor the Claims.

Furthermore, it will be noted by the Examiner that Claims 8 and 10 both refer to mils and inches in a dimensional context and it is desired that the Claims be internally consistent. However, in view of the fact that mils would be known to be too thin for any practical purpose, Applicants seek to correct this unintentional error. In this regard, it is emphasized that the error of **using "mils" rather than "inches" is clearly** unintentional in view of the foregoing discussion **coupled** with the fact that Claims 8 and 10 have recited "inches" from the date of filing of the original Application and of which this instant case is a Reissue. It is simply not consistent, for example, to disclose and claim the caliper thickness in terms of "mils" and to disclose and claim the tensile strength in terms of "lbs. per-inch", especially in view of

the fact that a fabric having the "mils" thickness as disclosed and stated in Claims 8 and 10 would **disintegrate**, thus being useless, and while, **at the same time**, disclosing and reciting, as in Claims 8 and 10, that the fabric **also** has a "basis weight" in terms of "ounces per square yard" and when the fabric is paper, a "basis" weight in terms of "lbs.".

Consequently, it is respectfully submitted that the rejection of all the Claims in this case under 35 U.S.C., Section 112, first paragraph, for the reasons set forth in the objection to the Specification, as set out in paragraph 4 on page 7 of the Action, is not well taken and should be removed.

In view of the above amendments and remarks and the attached Supplemental Reissue Declaration, it is believed that this Application is now in condition for allowance. Accordingly, early allowance of all of the Claims now in this case is respectfully solicited.

Should the Examiner still find, however, the Claims are unallowable because of minor matters, it is respectfully requested that he call the undersigned in order to resolve the same.

In the event the Examiner should still find the Claims in this case unallowable after resolution of such minor matters, it is respectfully requested that this

Amendment be entered on the ground that it places this case in better condition for Appeal.

Respectfully submitted,

Thomas M. Hammond

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/419,752 | 04/10/95 | GASPARRINI | C | 0140-4124 |

| EXAMINER | |
|---|---|
| ACKUN, J | |
| ART UNIT | PAPER NUMBER |
| 3208 | 13 |

C2M1/0816

THOMAS M HAMMOND
MORGAN AND FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

DATE MAILED: 08/16/96

*Below is a communication from the EXAMINER in charge of this application*

*COMMISSIONER OF PATENTS AND TRADEMARKS*

## ADVISORY ACTION

☑ THE PERIOD FOR RESPONSE:

a) ☑ ~~is extended to~~ continues to run 3 months from the date of the final rejection

b) ☐ expires three months from the date of the final rejection or as of the mailing date of this Advisory Action, whichever is later. In no event however, will the statutory period for the response expire later than six months from the date of the final rejection.

Any extension of time must be obtained by filing a petition under 37 CFR 1.136(a), the proposed response and the appropriate fee. The date on which the response, the petition , and the fee have been filed is the date of the response and also the date for the purposes of determining the period of extension and the corresponding amount of the fee. Any extension fee pursuant to 37 CFR 1.17 will be calculated from the date of the originally set shortened statutory period for response or as set forth in b) above.

☐ Appellant's Brief is due in accordance with 37 CFR 1.192(a).

☑ Applicant's response to the final rejection, filed 8/6/96 has been considered with the following effect, but it is not deemed to place the application in condition for allowance:

1. ☑ The proposed amendments to the claim and /or specification will not be entered and the final rejection stands because:

   a. ☑ There is no convincing showing under 37 CFR 1.116(b) why the proposed amendment is necessary and was not earlier presented.

   b. ☑ They raise new issues that would require further consideration and/or search. (See Note).

   c. ☐ They raise the issue of new matter. (See Note).

   d. ☑ They are not deemed to place the application in better form for appeal by materially reducing or simplifying the issues for appeal.

   e. ☐ They present additional claims without cancelling a corresponding number of finally rejected claims.

   NOTE: New issues are raised by the amendments to the claims, and by the presentation of a new claim, which would require further consideration and/or search. Additionally, all of the amendments to the specification and the Supplemental Declaration would at a minimum require substantial further consideration.

2. ☐ Newly proposed or amended claims ________ would be allowed if submitted in a separately filed amendment cancelling the non-allowable claims.

3. ☑ Upon the filing an appeal, the proposed amendment ☐ will be entered ☑ will not be entered and the status of the claims will be as ~~follows~~ stated in the Final Rejection.

   Claims allowed: ________
   Claims objected to: ________
   Claims rejected: ________

   However;

   ☐ Applicant's response has overcome the following rejection(s): ________

4. ☐ The affidavit, exhibit or request for reconsideration has been considered but does not overcome the rejection because ________

5. ☐ The affidavit or exhibit will not be considered because applicant has not shown good and sufficent reasons why it was not earlier presented.

☐ The proposed drawing correction ☐ has ☐ has not been approved by the examiner.

☐ Other

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

PATENT

Docket No. 0140-4124

**REISSUE PATENT APPLICATION**
**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In re Reissue of:

U.S. Patent No. 5,368,157
Serial No.: 145,881
Filing Date: October 29, 1993
Issue Date: November 29, 1994

Serial No.: 08/419,752 Group Art Unit: 3208

Filing Date: April 10, 1995 Examiner: Ackun, J.

Inventor: Charles R. Gasparrini et al.

For: **PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME**

**AMENDMENT AFTER FINAL REJECTION**

ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:

In response to the Official Action dated March 16, 1996, please amend the above-identified Application as follows:

**IN THE SPECIFICATION:**

Column 2, before line 10, cancel the insertion made in the Preliminary Amendment filed with this Application as a new paragraph which reads: "In accordance with invention . . . . cleaning ability of the fabric.";

Column 2, line 10, cancel the insertion after "with" made in the Preliminary Amendment filed with this Application which reads "a more specific aspect of";

Column 2, lines 27 and 28, cancel the insertion after "system" made in the Preliminary Amendment filed with

this Application and which reads "Broadly, the method

comprises . . . . the cleaning ability of the fabric roll.";

Column 2, line 28, before "the method", cancel the

insertion which was made in the Preliminary Amendment filed

in this Application and which reads "More specifically," and

insert therefore --Broadly--;

Column 2, lines 49 and 50, cancel the elimination

of the phraseology reading "elongated cylindrical" as made

in the Preliminary Amendment filed with this Application;

Column 2, line 53, cancel the insertion made in

the Preliminary Amendment filed with this Application before

"sleeve" and which reads "sealable" and insert therefor

--heat-sealable plastic--;

Column 2, line 56, cancel the elimination of the

term "heat-sealable" which was made in the Preliminary

Amendment filed with this Application and reinsert therefor

the term --heat-sealable--;

Column 2, line 60, cancel the elimination of the

term "cylindrical" which was made in the Preliminary

Amendment filed with this Application and reinsert therefor

the term --cylindrical--.

Column 3, lines 11 through 13, cancel the

insertion of the phraseology made in the Preliminary

Amendment filed with this Application and which reads "and

which extend over the peripheral . . . before the role is

inserted in the plastic sleeve" and reinsert therefor the

phraseology --and which extend over the peripheral edges of the fabric roll before the roll is inserted in the plastic sleeve--;

Column 3, line 27, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application and reinsert therefore --drained--;

Column 3, line 30, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application and reinsert therefor --drained--;

Column 3, line 31, cancel the elimination of the term "plastic" as made in the Preliminary Amendment filed with this Application and reinsert therefor --plastic--;

Column 3, line 57, after "comprises" cancel the insertion of the phraseology "a core such as" as made in the Preliminary Amendment filed with this Application;

Column 3, line 68, cancel the insertion of the term "sealable" before "sleeve 15" and the insertion of the phraseology "which may be" as made in the Preliminary Amendment filed with this Application.

Column 4, line 24, cancel the elimination of the phraseology "also preferably" made in the Preliminary Amendment filed with this Application;

Column 4, line 27, before "extend" cancel the insertion which reads "which may" made in the Preliminary Amendment filed with this Application;

Column 4, line 60, cancel "0.30 inch" and insert therefor --0.030 inch--.

Column 5, between lines 41 and 42, cancel the insertion which reads "A wide variety of sealable materials may . . . . of the invention.  Exemplative of such materials . . . . appropriate areas thereof." as made in the Preliminary Amendment filed with this Application;

Column 5, line 42, cancel the elimination of "A" and reinsert therefor --A--; and before "wide" cancel the insertion which reads "On the other hand, where plastics . . . . sealed sleeves, a" as made in the Preliminary Amendment filed with this Application;

Column 5, line 62, before "excess" cancel "removing" as inserted in the Preliminary Amendment filed with this Application and insert therefor --draining off--;

Column 5, line 65, cancel the elimination of the phraseology "an elongated cylindrical" and the insert therefor of "a" as made in the Preliminary Amendment filed with this Application;

Column 5, line 66, before "sleeve" cancel the elimination of the phraseology reading "heat-sealable plastic" and the insertion therefor of "sealable" as made in the Preliminary Amendment filed with this Application;

Column 5, line 67, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application;

Column 5, line 68, before "the" cancel the elimination of the term "subjecting" and the elimination of the phraseology "to a temperature sufficient to heat" as made in the Preliminary Amendment filed with this Application.

Column 6, line 1, cancel the elimination of the phraseology "seal the plastic sleeve" and drained" as made in the Preliminary Amendment filed with this Application;

Column 6, line 2, cancel the elimination of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 6, lines 10 and 11, cancel the elimination of the term "cylindrical" as made in the Preliminary Amendment filed with this Application;

Column 6, line 17, after "in" cancel the insertion of the phraseology reading "a sealable sleeve or" as made in the Preliminary Amendment filed with this Application;

Column 6, line 18, after "is" cancel the insertion "sealed" as made in the Preliminary Amendment filed with this Application;

Column 6, line 20, after "roll" cancel the insertion of the term "and" and eliminate the cancellation of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 6, line 21, before "temperatures" cancel the insertion which reads "in cases where a heat-sealable

and/or heat-sealable and heat-shrinkable plastic sleeve is used,-- as made in the Preliminary Amendment filed with this Application.

Column 7, line 3, cancel the elimination of the phraseology "elongated cylindrical" made in the Preliminary Amendment filed with this Application;

Column 7, line 7, before "heat-sealable" cancel the insertion of the phraseology "sealable sleeve or" as made in the Preliminary Amendment filed with this Application;

Column 7, line 8, after "is" cancel the insertion "sealed" as made in the Preliminary Amendment filed with this Application;

Column 7, line 10, before "heat-seal" cancel the insertion of the term "sealed" as made in the Preliminary Amendment filed with this Application;

Column 7, line 11, cancel the elimination of the term "drained" as made in the Preliminary Amendment filed with this Application;

Column 7, line 12, cancel the elimination of the term "intimate" as made in the Preliminary Amendment filed with this Application;

Column 7, line 13, after "particular" cancel the insertion of "sealing" as made in the Preliminary Amendment filed with this Application;

Column 7, line 14, after "of" cancel the insertion
of the term "sealable" as made in the Preliminary Amendment
filed with this Application;

Column 7, line 16, after "about" cancel the insert
of the phraseology "ambient temperature, and/or" as made in
the Preliminary Amendment filed with this Application;

Column 7, line 21, cancel the elimination of term
"plastic" as made in the Preliminary Amendment filed with
this Application;

Column 7, line 22, after "general," cancel the
insertion of "where" and after "heat-sealing" the insertion
of "are employed, they" as made in the Preliminary Amendment
filed with this Application;

Column 7, line 28, cancel the elimination of the
term "plastic" as made in the Preliminary Amendment filed
with this Application;

Column 7, line 33, cancel the elimination of the
term "intimate" as made in the Preliminary Amendment filed
with this Application;

Column 7, line 56, cancel the elimination of the
term "cylindrical" as made in the Preliminary Amendment
filed with this Application;

Column 7, line 67, after "about", first
occurrence, cancel the insertion which reads "0.03 to
about"; after "0.5" the insertion of "up" and after "about",
second occurrence, the insertion which reads "0.3 to about"

as made in the Preliminary Amendment filed with this Application.

Column 8, before line 15, cancel the insertion of the new paragraph which reads "Thus, the pre-packaged, pre-soaked cleaning system . . . . in a simple manner. That is, for example, the system can be disposed . . .. on such mounting means. Moreover, the mounting means . . . . and being fed past the same." as made in the Preliminary Amendment filed with this Application.

**IN THE CLAIMS:**

Cancel Claims 29 through 34, 36, 38 through 43 and 47 through 56 without prejudice.

Amend Claims 44, 45 and 46 as follows:

29 44. (Amended once) A pre-packaged, pre-soaked cleaning system as defined in Claim 28 wherein the sealed sleeve can be opened or removed from the fabric roll for use of said fabric roll and including in combination [with a] therewith means for positioning [the] said pre-packaged, pre-soaked cleaning system adjacent a cylinder to be cleaned.

30 45. (Amended once) A pre-packaged, pre-soaked cleaning system as defined in Claim [28] 1 wherein the sealed sleeve [is] can be opened or removed from the fabric roll for use of said fabric roll and including means [is

C1

J.A. 8/4/98

J.A. 8/4/98

~~provided}~~ locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

J.A. 8/4/98

46. (Amended once) In combination with a pre-packaged, pre-soaked cleaning system as defined in Claim [28] 45, a system wherein the means for locating the fabric roll is a mounting means for [mounting the pre-soaked] locating said fabric roll in a position to clean a cylinder while the fabric is in contact with and being fed past said cylinder.

Sub E1 C1

Add the following Claim:

32 52. A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:

J.A. 8/4/98

C2

(1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including

(2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

24

**IN THE ABSTRACT:**

In the body of the Abstract:

Lines 5 and 6, cancel the elimination of the term "cylindrical" as made in the Preliminary Amendment filed with this Application;

Line 6, cancel the elimination of the phraseology reading "having open ends" as made in the Preliminary Amendment filed with this Application;

Line 7, before "heat-sealable" cancel the insertion reading "sealable sleeve or a" as made in the Preliminary Amendment filed with this Application;

Line 8, cancel the elimination of "plastics" as made in the Preliminary Amendment filed with this Application;

Line 10, cancel "to sealing" as inserted in the Preliminary Amendment filed with this Application and insert therefor --to--.

In the Preliminary Amendment, as filed with this Application, cancel the amendatory matter which appears on page 8 of the Amendment and which involves the changes called for at Lines 18 and 19.

**REMARKS**

Initially, Applicants and their attorneys take this opportunity to thank the Examiner for his kind courtesy in granting them a Personal Interview in this case on July 23, 1996. Mr. Gasparrini, one of the inventors, and the undersigned attorney both of whom attended the Interview, found the Examiner's views and suggestions to be most helpful in moving the prosecution of this case towards a possible positive conclusion.

The Specification, Claims and Abstract in this Application have been amended as above indicated.

Claims 1 through 27, 28, 44, 45, 46 and 57 are now in this case.

In an effort to substantially reduce the issues in this matter and simplify the Examiner's consideration thereof, Applicants have done the following:

1. Drastically reduced the number of changes to the Specification as they are deemed unnecessary to support the claimed invention in the original or new Claims. While the changes previously suggested were deemed by Applicants to be by way of explanation recognizable by those skilled in the art, rather than new matter, Applicants are simplifying the issues.

2. Significantly reduced the number of Claims in an effort to simplify the issues presented to the Examiner.

More specifically, the Specification and Abstract have been amended to restore the same to the original language as set out in U.S. Patent 5,368,157 which is the subject of this Reissue Application.  The only exception is the retention of minor amendments to the Specification at Column 2, line 48, where the term "another" has been inserted before "specific"; Column 2, line 52, where the term "more" has been deleted; Column 2, line 57, where the term "more" has been deleted; Column 3, line 4, where the term "more" has been deleted; Column 3, line 6, where the phraseology "the sleeve" has been deleted; and, Column 3, line 9, wherein the term "more" has also been deleted.

In addition, at Column 4, line 60, the insertion "0.30 inch" and replaced by --0.030 inch--; thus returning the Specification in this respect by **re-inserting the original numerical value** and at Column 5, line 29, the insertion relating to the utilization of organic oils, such as palm oils, coconut oils and the like, has also been retained in the Specification.

It is respectfully pointed out to the Examiner that the amendatory matters referred to above deal only with minor language changes in the Specification and do not involve, in any way, an enlargement of the scope of Applicants' inventive concept.

Indeed, none of the amendments have any effect on original Claims 1 through 7, 9, or 11 through 27. Therefore, these Claims should be allowable.

The Abstract has now been restored to its original language, except for two minor amendments which were called for at lines 18 and 19 and both of which amendments are incorrect because they do not refer to proper lines in the body of the Abstract.

Next, referring to the Claims, the attention of the Examiner is respectfully directed to the fact that Claims 1 through 27 of the originally granted Claims remain in this case. Claim 28 is an independent Claim, drawn to the pre-packaged, pre-soaked cleaning system of the invention. Claim 44 is dependent on Claim 28 and drawn to a combination of the system recited in Claim 28 with a cylinder to be cleaned. Claims 28, 44, 45 and 46 are Reissue Claims. On the other hand, a substantial number of Claims have been cancelled, namely 29 through 34, 36, 38 through 43, and 47 through 56. Claims 35 and 37 were previously cancelled. Claim 45 has been amended to make it dependent on original Claim 1 and Claim 46 has been amended to make it dependent on Claim 45. Claims 44, 45 and 46 have also been amended, as above indicated, to make them more properly recite product language rather than process or method language in view of the discussion of this aspect of the matter at the Interview.

Finally, added Claim 57 is submitted herewith. This added Claim is an independent Claim combining the substance of Claims 28 and 44, although broader in scope in some respects. The support therefor, as pointed out at the Interview, occurs in the originally granted Patent at Column 1, lines 6 through 15 of the Specification, as well as at Column 8, lines 1 through 7 which also provides support for Claims 28 and 44.

Column 1, lines 6 through 15 states:

> This invention relates to a cleaning system for use to clean the cylinders of printing machines. More particularly, the invention relates to a pre-packaged, pre-soaked blanket cleaning system to clean the cylinders of printing machines. While the invention is disclosed as it applies to the cleaning of the cylinders of printing machines for the sake of simplicity, it is to be understood that it can also be utilized to clean the cylinders of other types of machinery.

The pertinent portions of the Specification at Column 8, lines 1 through 7 is quoted hereinbelow in connection with the discussion involving the support for Claims 45 and 46, as well.

In view of the fact that added Claim 57 combines the substance of original Reissue Claims 28 and 44, it is respectfully submitted that Claim 57, although broader in some respects, raises no new issues which would require further search and consideration. This is especially so, since Claims 28 and 44 were previously considered by the Examiner and they were subject of a prior art search.

Still further in this regard, it is respectfully pointed out to the Examiner that the only issue raised against Claims 28 and 44 was the question of support, and thus the addition of "new matter". However, the Examiner concluded at the Interview that it appeared that the proposed amendments did **not** add any new matter to the Application, although a final determination as to the patentability of the Claims would depend on the content of any amendment filed hereafter.

Thus, it is respectfully submitted that the Examiner's statements, as set forth on pages 1 and 3 of the Official Action of May 16, 1996, are no longer issues in this matter and are no longer applicable. However, in order to be completely responsive, a new Supplemental Reissue Declaration By Inventors is attached hereto which deals with the issues remaining in this case.

Therefore, it is respectfully submitted that the rejection of Claims 1 through 56, as being based upon a defective Reissue Declaration Under 35 U.S.C., Section 251, as set forth in paragraph 2 on page 4 of the Official Action is no longer applicable.

The support for Claims 1 through 27, as allowed was found in the originally granted Patent.

On the other hand, with respect to Claims 28 and 44 through 46 which still remain in this Application and

Claim 57 which has been added, the attention of the Examiner is respectfully directed to the following comments.

The support for added Claim 57 in the Specification at Column 1, lines 6-14, as well as at Column 8, lines 1 through 7, has been pointed out above.

It is to be noted that at Column 8, lines 1 through 7 of the Patent, there is also clear support for Reissue Claims 45 and 46 (now dependent on Claim 1) involving the recitation of a cleaning system according to the invention associated with a cylinder to be cleaned. These Claims reflect the failure of the original Claims to cover the combination of the package cleaning system with a press and are allowable because the Specification of the original Patent discloses a potential invention in broader terms.

Column 1, lines 6 through 14 of the Patent is set forth above and Column 8, lines 1 through 7 states:

> "The so-made pre-packaged, pre-soaked blanket cleaning system of this invention can be employed on any printing apparatus, simply by modifying the apparatus to provide it with a shaft which can be inserted through the core and also a take-up roll which is employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function."

Still further, in the Specification, at Column 7, lines 36 through 45, it is stated:

> "In those cases where the saturated wrapped fabric roll is to be employed with a slotted canister, the roll is simply inserted in the canister with a portion thereof protruding through the slot and the canister is provided with knock-out end

portions which may be inserted therein after insertion of the roll, such end portions simply being removed when the roll is to be disposed on an appropriate shaft of a printing apparatus or the like in order to permit insertion of the shaft through the core of the roll, as well as removal of the shaft from the core."

Obviously, in actual use, the sleeve of the package cleaning system must be opened or removed whether it be heat-sealed, heat-shrunken and heat-sealed, or simply sealed, as needed, in any other convenient fashion, in order for the cleaning fabric to be brought into contact with a cylinder to be cleaned and then to be taken up by an appropriate take-up roll after it has carried out its cleaning function and which elements are clearly disclosed in the Specification.

Thus, dependent Claims 45 and 46 which are dependent on Claim 1 are fully supported by the disclosure and define a patentable invention especially since no prior art has been applied against the same.

As established in these portions of the Specification, the cleaning system of this invention can be employed on **any** printing apparatus simply by modifying the apparatus to provide it with a shaft to support the core and a take-up roll employed to take up the used portion of the cleaning fabric after it has carried out its cleaning function by contacting the cylinder or cylinders to be cleaned. Thus, it is respectfully submitted that support for such Claims was clearly present in the original

Application, as filed.  It is submitted with emphasis that
the combination of the cleaning system of this invention
with the elements of printing apparatus already known in the
field, as recited in Claims 45 and 46, presents a novel and
patentable recitation not heretofore taught or suggested by
any previous patents or publications known to Applicants and
furthermore no art has been applied against the same by the
Examiner in the instant case.

As mentioned above, support for Claims 1 through
27 was found in the originally granted Patent.  However, the
Specification and Claims 8 and 10 of the Reissue Application
were amended in order to bring them into agreement with each
other to be internally consistent and to disclose and recite
Applicants' inventive concept more precisely.  For example,
by Preliminary Amendment, the Specification was amended at
Column 4, line 60, to change the caliper thickness from
"mils" to "inches" while retaining the figure "0.030" for
the top of the range disclosed in describing the caliper
thickness of a cleaning fabric employed in the invention,
thus reading "0.030 inch".  The only changes in the
Specification and Claims is to change mils to inches for the
reason, as explained below, that a caliper thickness in mils
cannot be accurately measured with a caliper of any kind.

Therefore, the Specification was returned to its
original state with respect to the numerical figures.  Claim
10 was amended to make it consistent with the Specification

of the original Patent insofar as the figure 0.10 is
concerned.  On the other hand, Applicants continue to assert
that a thickness of "inches" rather than "mils" is the
correct reference basis because those with ordinary skill in
the art would recognize that mils is incorrect.  One reason
why a person skilled in the art would recognize the error is
that a caliper such as a micrometer can measure only to
0.0001 inches and would not measure such a small distance as
0.000003 inches which is the distance of 0.003 mils.  In
other words, the instrument of measurement precludes the mil
measurement from being correct.

In this connection, the Examiner's attention is
respectfully directed to:

(1)  Hackh's Chemical Dictionary, Fourth Edition,
copyright 1969, published by McGraw-Hill, Inc., New York,
N.Y., p. 430 (copy attached) where "mil" is defined as: (2)
a measure of thickness, especially of wire.  1 mil =
1/1,000 in. = 25.4001 microns; and

(2)  McGraw-Hill Encyclopedia of Engineering,
Second Edition, copyright 1993, published by McGraw-Hill
Inc., New York, N.Y., p. 136 (copy attached) where "caliper"
is defined as an instrument with two legs used for measuring
linear dimensions.  The legs may pivot about a rivet or
screw in a firm-joint pair of calipers.  The legs may pivot
about a pin being held against the pin by a spring and set
in position by a knurled nut on a threaded rod; or the legs

may slide either directly (caliper rule) or along a screw
(micrometer caliper) relative to each other, that is a
micrometer.

On p. 743 (copy attached) of the same publication,
a micrometer is defined as a precision instrument used to
measure small distances and angles.  A common use is on a
machinist's caliper in which the spindle is an accurately
machined screw which is rotated by the thimble or ratchet
knob until the object to be measured is in contact with both
the spindle and anvil.  The ratchet slips after pressure is
applied, ensuring consistent, accurate gaging.  The number 1
on the sleeve represents **0.1 inch** (emphasis added).  The
smallest divisions are 0.025 in.  The thimble makes one
complete turn for each 0.025 inc. on the sleeve, and the 25
divisions on the thimble allow reaching to the nearest 0.001
in.  A vernier scale allows accurate reading to 0.0001 in.

Considering the numbers set forth in the granted
Patent at Columns 4 and 5 and Claims 8 and 10, it is clear
that in terms of "mils", as disclosed and claimed, these
values call for a caliper thickness of a fabric which is **so
thin** that it would be practically useless in the practice of
the invention.  On the other hand, the numbers set forth in
terms of "inch" values provide fabrics of a thickness which
are practical for use in the invention.

In addition, it would be obvious to anyone skilled
in the art -- and it is to such individuals that an

application for patent is directed -- that the caliper
thickness in mils of a fabric to be employed in the instant
invention would be so **thin** that it would **disintegrate**, thus
being impractical and **useless**.  On the other hand, if the
thickness of the fabric had been erroneously expressed in
feet or yards, it would be clearly obvious to any skilled
person also that it would be **impractical** for use in
Applicants' invention.  Thus, it is urged that correction of
this **obvious** error does not result in the introduction of
new matter to this Application -- neither in the
Specification nor the Claims.

Furthermore, it will be noted by the Examiner that
Claims 8 and 10 both refer to mils and inches in a
dimensional context and it is desired that the Claims be
internally consistent.  However, in view of the fact that
mils would be known to be too thin for any practical
purpose, Applicants seek to correct this unintentional
error.  In this regard, it is emphasized that the error of
using "mils" rather than "inches" is clearly unintentional
in view of the foregoing discussion **coupled** with the fact
that Claims 8 and 10 have recited "inches" from the date of
filing of the original Application and of which this instant
case is a Reissue.  It is simply not consistent, for
example, to disclose and claim the caliper thickness in
terms of "mils" and to disclose and claim the tensile
strength in terms of "lbs. per inch", especially in view of

the fact that a fabric having the "mils" thickness as disclosed and stated in Claims 8 and 10 would **disintegrate,** thus being useless, and while, **at the same time**, disclosing and reciting, as in Claims 8 and 10, that the fabric **also** has a "basis weight" in terms of "ounces per square yard" and when the fabric is paper, a "basis" weight in terms of "lbs.".

Consequently, it is respectfully submitted that the rejection of all the Claims in this case under 35 U.S.C., Section 112, first paragraph, for the reasons set forth in the objection to the Specification, as set out in paragraph 4 on page 7 of the Action, is not well taken and should be removed.

In view of the above amendments and remarks and the attached Supplemental Reissue Declaration, it is believed that this Application is now in condition for allowance. Accordingly, early allowance of all of the Claims now in this case is respectfully solicited.

Should the Examiner still find, however, the Claims are unallowable because of minor matters, it is respectfully requested that he call the undersigned in order to resolve the same.

In the event the Examiner should still find the Claims in this case unallowable after resolution of such minor matters, it is respectfully requested that this

Amendment be entered on the ground that it places this case in better condition for Appeal.

Respectfully submitted,

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800



UNITED S[illegible]ES DEPARTMENT OF COMMERCE
Patent and [illegible]ademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTY. DOCKET NO. |
|---|---|---|---|
| 08/697,611 | 08/28/96 | GASPARRINI C | 0140-4124US1 |

C2M1/0620

THOMAS M HAMMOND
MORGAN & FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

| EXAMINER | |
|---|---|
| ACKUN, J | |
| ART UNIT | PAPER NUMBER |
| 3208 | 22 |

DATE MAILED: 06/20/97

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

- [x] Responsive to communication(s) filed on 8/28/96
- [ ] This action is FINAL.
- [ ] Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire 3 month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

- [x] Claim(s) 1-28, 44-46 and 57 is/are pending in the application.
  Of the above, claim(s) ______ is/are withdrawn from consideration.
- [ ] Claim(s) ______ is/are allowed.
- [x] Claim(s) 1-28, 44-46 and 57 is/are rejected.
- [ ] Claim(s) ______ is/are objected to.
- [ ] Claim(s) ______ are subject to restriction or election requirement.

**Application Papers**

- [ ] See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.
- [ ] The drawing(s) filed on ______ is/are objected to by the Examiner.
- [ ] The proposed drawing correction, filed on ______ is [ ] approved [ ] disapproved.
- [ ] The specification is objected to by the Examiner.
- [ ] The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

- [ ] Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).
  - [ ] All [ ] Some* [ ] None of the CERTIFIED copies of the priority documents have been
    - [ ] received.
    - [ ] received in Application No. (Series Code/Serial Number) ______.
    - [ ] received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: ______.

- [ ] Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

- [ ] Notice of Reference Cited, PTO-892
- [ ] Information Disclosure Statement(s), PTO-1449, Paper No(s). ______
- [ ] Interview Summary, PTO-413
- [ ] Notice of Draftperson's Patent Drawing Review, PTO-948
- [ ] Notice of Informal Patent Application, PTO-152

1. In view of the number and nature of the amendments made in case, the amendments to the specification requested by the applicant in the last paper filed with the PTO (the Amendment of 8/28/96) have not been entered. Under 37 CFR 1.125 the applicant is required to file a substitute specification including the amendments which were not entered, in order to facilitate processing of the application.

2. Notwithstanding the status of the latest amendments to the specification as indicated above, this office action in intended to be a complete response to all of the changes desired by the applicant, to the extent these can be determined. In this regard, it would appear that the only remaining substantial changes to the original specification (the patent specification) are these having to do with the thickness of the fabric roll and with the specific types of organic compound solvent which may be employed in carrying out the practice of the invention.

Also, it is brought to the applicant's attention that the latest amendment to column 3 lines 11-13 appears to be an error, since the Preliminary Amendment made a deletion (not an insertion) to this portion of the specification. Additionally, column 5 line 68 of the Patent would not read properly if the latest amendment thereto were made (the word "sealing" remains between "subjecting" and "the"). In both instances above, it is presumed that the applicant's intention is to restore the specification to its original form.

3. The reissue oath or declaration filed with this application is defective because it fails to particularly specify the errors and/or how the errors relied upon arose or occurred as required under 37 CFR 1.175(a)(5). Included are inadvertent errors in conduct, i.e., actions taken by the

applicant, the attorney or others, before the original patent issued, which are alleged to be the cause of the actual errors in the patent. This includes how and when the errors in conduct arose or occurred, as well as how and when these errors were discovered. Applicant's attention is directed to *Hewlett-Packard v. Bausch & Lomb*, 11 USPQ2d 1750, 1758 (Fed. Cir. 1989). As noted in a previous office action in this case, any change or departure from the original specification or claims represents an "error" in the original patent under 35 U.S.C. 251 and must be addressed in an original or supplemental reissue oath of declaration. Note MPEP 1414.03. It would appear that the amendment to column 5 line 29 of the patent as set forth in the Preliminary Amendment of 4/10/95, is the only "error" remaining which has yet to be addressed in the declaration.

4. Claims 1-28, 44-46 and 57 are rejected as being based upon a defective reissue DECLARATION under 35 U.S.C. 251 as set forth above. See 37 CFR 1.175.

5. The amendment filed on 4/10/95 is objected to under 35 U.S.C. 132 because it introduces new matter into the disclosure. 35 U.S.C. 132 states that no amendment shall introduce new matter into the disclosure of the invention. The added material which is not supported by the original disclosure is as follows: the phrase "organic oils such as palm oils, coconut oils" which was added at column 5 line 29 of the original specification.

Applicant is required to cancel the new matter in the response to this Office action.

6. Claim 46 is rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the

invention. The claim is indefinite because it is not clear whether a dependent or independent claim is intended. This office action presumes that the applicant's intent is to recited on lines 1-3 of claim 46. "A pre-packaged, pre-soaked cleaning system as defined in claim 45, in combination with ....". In other words, claim 46 is presumed to be dependent on claim 45. If this interpretation is correct, the applicant should amend claim 46 in accordance therewith. If on the other hand the applicant intents to present for examination an independent claim drawn to other than the pre-packaged, pre-soaked cleaning system of claim 45, then such should be clearly done.

7. In view of the latest amendments to the specification and the applicant's arguments the previous rejections and objections on the grounds of New Matter are hereby withdrawn or have been rendered moot. However, as noted in paragraph 5 above, the insertion at column 5 line 29 of the specification continues to raise the issue of New Matter with respect to that portion of the specification only.

8. Claims 1-28, 44-46 and 57 distinguish over the prior art of record.

9. Any inquiry concerning this communication should be directed to Jacob Ackun at telephone number (703) 308-3867.

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

Ackun/DMM

June 18, 1997



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

| EXAMINER | |
|---|---|
| **ART UNIT** | **PAPER NUMBER** |
| | 23 |

**DATE MAILED:**

## INTERVIEW SUMMARY

All participants (applicant, applicant's representative, PTO personnel):

(1) Charles Gasparrini (3) Jacob Ackun

(2) Thomas Hammond (4)

Date of Interview 9/18/97

Type: ☐ Telephonic ☑ Personal (copy is given to ☐ applicant ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No If yes, brief description:

Agreement ☑ was reached. ☐ was not reached.

Claim(s) discussed: Claims of record.

Identification of prior art discussed: Reference submitted with IDS.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: The proposed amendment appears to obviate all prior objections/rejections of record. Accordingly upon filing of the amendment the examiner would finally review same and make previously agreed upon examiners amendments thereto. The case will be passed to issue if no further requirements need be met.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary. A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has are ready been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐ Since the Examiner's Interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign this form unless it is an attachment to another form.

[signature]
JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

FORM PTOL-413 (REV. 1-96)

PATENT

Docket No. 0140-4124US1

#26/E 9/19/97

RECEIVED
SEP 18 1997
GROUP 3200

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

Applicant: Charles R. Gasparrini et al.

Serial No.: 08/697,611 Group Art Unit: 3208

Filing Date: August 28, 1996 Examiner: Ackun, J.

For: **PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME**

**AMENDMENT AFTER FINAL REJECTION**

ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:

In response to the Official Action dated June 20, 1997, please amend the above-identified Application as follows:



Do Not Enter - J. Ackun

**IN THE SPECIFICATION:**

Please replace the present Specification in this case with the retyped Specification embodying pages 1 through 19, as called for by the Examiner and in accordance with the provision of 37 CFR, Section 1.125.

Column 5, line 29, cancel the insert reading "organic oils, such as palm oils, coconut oils," as made in the Preliminary Amendment filed in this matter on April 10, 1996.

**IN THE CLAIMS:**

3/46. (Amended once) ~~[In combination with a]~~ A pre-packaged, pre-soaked cleaning system as defined in Claim 28, in combination with mounting means for mounting the pre-soaked fabric roll in a position to clean a cylinder while the fabric is in contact with and being fed past said cylinder.

J.A. 8/4/98

Do Not Enter - J. Ackun

**IN THE ABSTRACT:**

In the body of the Abstract, line 9, cancel "to" and insert therefor --in--;

Line 10, cancel "at" and insert therefor --to--.

316945_1

**REMARKS**

The Specification and Claims and Abstract in this Application have been amended, as above-indicated, in order to disclose and claim Applicants inventive concept in more realistic language. More specifically, the Specification in this matter has been retyped as a Substitute Specification, including the Amendments which were not entered, in order to facilitate processing of the Application and as provided for under 37 C.F.R., Section 1.125, and as called for by the Examiner in paragraph 1, on page 2 of the Official Action.

Two minor typographical erros have been corrected in the Abstract.

Next, referring to paragraph 2 on page 2 of the Action, it is respectfully pointed out to the Examiner that as he states in this paragraph, the status of the latest Amendment to the Specification, as indicated, his Office Action is intended to be a complete response to all the changes desired by Applicants. Still further, as the Examiner himself has said, it appears that the only remaining essential changes to the original Specification (the Patent Specification) are those having to do with the thickness of the fabric roll and with the specific types of organic compound solvent which may be employed in carrying out the practice of this invention.

Moreover, as has been brought to Applicants' attention, the latest Amendment to Column 3, lines 11

through 13, is an error, since the Preliminary Amendment made a deletion (not an insertion) to this portion of the Specification and, as well, Column 5, line 68 of the Patent, would not read properly if the amendment thereto were made (the word "sealing" remains between "objecting" and "the").

In both of these instances, it is Applicants' intention to restore the Specification to its original form. This is also true with respect to the Specification, as rewritten.

Consequently, the Examiner will find that in addition to the changes discussed above which return the Specification to the original form, these latter changes thereto also restore the Specification to its original and, in addition, attention is directed to the fact that at Column 5, line 29, the amendment inserting "organic oils, such as palm oils, coconut oils," has now been removed from the Specification, thus restoring it to its original form, as filed..

In this respect, it is to be noted that while such oils do not go to the heart of Applicants' inventive concept, they can be used in carrying out the practice of the inventive concepts in this case and they are organic compound solvents, such as the vegetable oils and citrus oil and the like, as already mentioned in the Specification at Column 5, line 29.

On the other hand, the attention of the Examiner is respectfully directed to the fact that in the Specification, as retyped, this now occurs on page 11, at line 26.

In addition to the various changes discussed hereinabove, for the purpose of bringing the Specification back into its original form, Applicants have also taken this opportunity to correct, as needed, a number of obvious typographical errors. Among such corrections are the removal of a semicolon at line 25 on page 13 of the retyped Specification and the replacement thereof with the word --and-- and changing the term "being" on line 26, to --his-- on the same page. Further, on page 14, at line 10, the term "heating" has been changed to --heat--.

Finally, on line 5 of page 15 of the retyped Specification, the spelling the term "assuring" has been corrected.

Finally, the term --be-- has been inserted between "will" and "brought", at line 8, page 17 of the Specification.

Applicants regret the occurrence of these typographical errors and trust they have not caused the Examiner any additional undue convenience in the examination of this Application.

In view of the above changes and remarks, it is believed that all of the matters raised in paragraphs 1 and

2 on page 2 of the Official Action have now been cleared away and the Specification, as retyped, should be in the form acceptable to facilitate further processing and allowance of the subject Application.

Turning next to paragraph 3, bridging pages 2 and 3 of the Official Action, it is noted that the Examiner has taken up the question of the Reissue Oath or Declaration and has taken the position that it is defective because it fails to particularly specify the errors and/or how the errors relied upon arose or occurred as required under 37 CFR, Section 1.175(a)(5).

It is noted that while dealing with this aspect of the matter, the Examiner has clearly indicated in the last sentence of paragraph 3, that the amendment to Column 5, line 29 of the Patent, as set forth in the Preliminary Amendment of March 10, 1995, is the only "error" **remaining** which has yet to be addressed in the Declaration. Consequently, the attention of the Examiner is respectfully directed to the fact that with the cancellation of the insertion at Column 5, line 29 of the Patent, as set forth in the Preliminary Amendment of April 10, 1995, the previous Reissue Oath or Declaration filed with the unentered Response of August 28, 1996, is in all other respects sufficient and satisfactory insofar as specifying the errors and/or how the errors relied upon arose or occurred as required. Consequently, it is respectfully requested that

with the cancellation of the above amendment, the Examiner

now simply answers the previously filed Declaration and.

thus, withdraw the rejection of Claims 1 through 28, 44

through 46 and 57, as being based upon a defective Reissue

Declaration Under 35 U.S.C., Section 251, as set forth in

paragraph 4 on page 3 of the Official Action.

Moreover, with the cancellation of the material

submitted in the Preliminary Amendment of April 10, 1995,

also renders moot the objection to the Specification on the

grounds of new matter, under 35 U.S.C., Section 132, with

the cancellation of such Amendment.

Turning next to paragraph 6, bridging pages 3 and

4 of the Official Action, it is noted that Claim 46 stands

rejected under 35 U.S.C., Second Paragraph, as being

indefinite for failing to particularly point out and

distinctly claim the subject matter which Applicants regard

as their invention.

The Examiner indicates that Claim 46 is indefinite

because it is not clear whether a dependent or independent

Claim is intended and it is presumed in this Office Action

that Applicants intent is to recite on lines 1 through 3 of

Claim 46 "a pre-packaged, pre-soaked cleaning system as

defined in Claim 45, in combination with".

Initially, it is believed to be quite clear from

the Claims, as originally filed in this matter, that Claim

46 is meant to be dependent on Claim 28, and **not** Claim 45, as called for by the Examiner in the Official Action.

In any event, as may be seen from consideration of Claim 46, as amended, it is quite clear that it is to be a dependent Claim and depend from Claim 28. Consequently, Applicants have amended that Claim to bring it into line with the Examiner's suggested Claim language, as set forth on page 4 of the Official Action.

With this amendment to Claim 46, it is believed that all of the Claims now in this Application are clearly patentable and based upon a clear and complete Specification.

Accordingly, early allowance of all of the Claims in this case, are now respectfully solicited.

Moreover, in view of this Amendment, including the retyped Specification filed herewith, along with the previously filed Reissue Declaration, it is believed that this Application is now ready to pass to allowance. This is especially so in view of the Examiner's Remarks on page 4, paragraph 7 of the Official Action, where he indicates that in view of the latest amendment to the Specification and Applicants' arguments, the previous rejections and objections on the grounds of new matter are hereby withdrawn or have been rendered moot.

Furthermore, this becomes clearly evident when one considers the fact that the insertion at Column 5, line 29,

of the Patent Specification has also been removed from this Application with this Amendment.

Still further, it is noted that all of the Claims, that is, Claims 1 through 28, 44 through 46 and 56 (57 is believed to be a numbering error) distinguish over any prior art of record.

Consequently, it is respectfully requested that this Application be passed to allowance.

Applicants and their attorneys wish to take this opportunity to kindly thank Mr. Jacob Ackun, the Examiner, who has been handling this Application, for his diligent help in the prosecution of this Application. His advice has been most gratifying and beneficial to Applicants and their attorneys, all of whom express their thanks.

Respectfully submitted,

Thomas M. Hammond

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800

30/7

PATENT

Docket No. 0140-4124US1

3/19/98

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant: Charles R. Gasparrini et al.

Serial No.: 08/697,611 Group Art Unit: 3208

Filing Date: August 28, 1996 Examiner: Ackun, J.

For: PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME

RECEIVED
MAR 11 1998
GROUP 3200

AMENDMENT UNDER RULE 312

ASSISTANT COMMISSIONER FOR PATENTS
Washington, D.C. 20231

Sir:

Please amend the Specification of the original Patent No. 5,368,157 issued in this matter as follows:

IN THE SPECIFICATION:

~~Column~~ Page 10 ~~4~~, lines 8 ~~53~~ through 20 ~~65~~, amend the paragraph reading "On the other hand, no matter whether paper or cloth . . . . by routine testing matters." and insert therefor:

--On the other hand, no matter whether paper or cloth fabric is employed in carrying out the practice of this invention, it is preferred that the materials used therein exhibit high acceptability to being soaked or wetted by the low volatility organic compound solvent used to saturate the same. In this regard, it is preferred that the fabric employed be one which has a caliper thickness in a range of from about 0.003 [mils] inch to about [0.030 mils] 0.30 inch, and preferably in a range of from about 0.008 [mils] inch to about 0.020 [mils] inch, and the ability when

Please enter
J. Ackun 3/18/98

saturated with low volatility organic compound solvent to retain from about 0.05 to about 0.5 cc of solvent per in$^2$ of fabric determined by routine testing methods.--;

~~Column 5~~ Page 11, lines ~~7~~ 3 through ~~19~~ 16, amend the paragraph reading "Where paper is employed as a cleaning fabric . . . . all determined by routine testing methods." and insert therefor:

--Where paper is employed as a cleaning fabric in the system of this invention, it has a basis weight in a range of from about 40 lbs. to about 90 lbs., a caliper thickness in a range of from abut 0.003 [mils] inch to about 0.10 [mils] inch, a tensile strength in the longitudinal (machine) direction in a range of from about 20 lbs. per inch to about 80 lbs. per inch and in the width (cross) direction in a range of from abut 15 lbs. per inch to about 50 lbs. per inch, a porosity in a range of from about 1.0 second to about 10 seconds when subjected to 100 cc of low volatility organic compound solvent or water, and a stretchability in a range of from about 1.0 percent to about 6.0 percent, all determined by routine testing methods.--.

**REMARKS**

As a result of telephone conferences with the Examiner on March 9, 10, and 11, 1998, it was agreed that the Specification of the originally issued U.S. Patent No. 5,368,157, when amended as shown above, would place the subject case in condition for passage to grant, all of the Claims in the case already standing allowed, although the Notice of Allowance and Issue Fee Due Communication are still awaited by Applicants' attorneys. Early receipt of the same is respectfully solicited.

Applicants and their attorneys also take this opportunity to thank the Examiner for his kind assistance in resolving the last of the outstanding issues in this matter.

Respectfully submitted,

Thomas M. Hammond
Registration No. 19,131

Morgan & Finnegan, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800

SENT BY:MORGAN & FINNEGAN : 3-11-98 ; 4:14PM ; MORGAN & FIN[illegible]AN→ 703 305 3579;# 1

# MORGAN & FINNEGAN, L.L.P.

A Registered Limited Liability Partnership

345 PARK AVENUE
NEW YORK, NEW YORK 10154-0053

TEL: (212) 758-4800
TELEX: 421792
FACSIMILE: (212) 751-6849

WASHINGTON OFFICE
1300 PENNSYLVANIA AVENUE, N.W.
SUITE 800
WASHINGTON, D.C. 20004
TEL. (202) 857-7887
FACSIMILE: (202) 857-7929

WRITER'S DIRECT DIAL NUMBER:

JOHN D. FOLEY
JOHN A. DIAZ
THOMAS P. DOWLING
JOHN C. VASSIL
WARREN H. ROTERT
ALFRED P. EWERT
DAVID H. PFEFFER
HARRY C. MARCUS
ROBERT E. PAULSON
STEPHEN R. SMITH
KURT E. RICHTER
J. ROBERT DAILEY
EUGENE MOROZ
JOHN F. SWEENEY
ARNOLD I. RADY
CHRISTOPHER A. HUGHES

WILLIAM S. FEILER
JANET DORE
JOSEPH A. CALVARUSO
JAMES W. GOULD
RICHARD C. KOMSON
ISRAEL BLUM
CHRISTOPHER K. HU
BARTHOLOMEW VERDIRAME
DICKERSON M. DOWNING
MARIA C. H. LIN
JOSEPH A. DEGIROLAMO
CHRISTOPHER E. CHALSEN
MICHAEL A. NICODEMA
MICHAEL P. DOUGHERTY
SETH J. ATLAS
ANDREW M. RIDDLES

GEORGE B. FINNEGAN, JR.
JEROME G. LEE
ROGER S. SMITH
THOMAS J. O'BRIEN
RICHARD C. WITTE*
JOHN P. SINNOTT
NED W. BRANTHOVER
EUGENE C. RZUCIDLO*
COUNSEL

RESIDENT PARTNERS IN WASHINGTON
BARRY F. MANDECK, JR.*
EDWARD A. PENNINGTON*

JOHN D. MORGAN
1893-1958

HOBART N. DURHAM
1930-1966

GRANVILLE M. PINE
1939-1996

THOMAS V. [illegible]
SCOTT D. GREENBERG
MARK LEE HOGGE
BRUCE D. DERENZI
MARK J. ABATE
BARRY J. SCHINDLER
JOHN T. GALLAGHER
STEVEN F. MEYER
GABRIEL P. KATONA
TONY V. PEZZANO
BRUCE D. RADIN
ANDREA L. WAYDA
ELAINE J. [illegible]
DEBORAH E. STACK
MARY J. MORRY
ROBERT E. [illegible]
KENNETH H. [illegible]
JOHN W. OSBORNE
MICHAEL S. MARCUS
RICHARD A. GARTNER
MICHAEL M. MURRAY
CINDY H. [illegible]
LEIF R. SIGMOND, JR.
LAWRENCE J. GREENBERG
JEAN E. SHIMOTAKE

M. CARAGH NOONE
WALTER G. HANCHUK
JEFFREY J. OELKE
OLIVER A. ZITZMANN
SCOTT D. HOWARD
PETER N. FILL
KENNETH S. WEITZMAN
RICHARD STRAUSSMAN
JAMES V. [illegible]
STEPHEN J. MANETTA
GUIDO POLITO
JAMES R. HASTINGS
[illegible]
CHRISTOPHER J. [illegible]
KATHRYN E. [illegible]
ALANA G. [illegible]

SCIENTIFIC ADVISORS
KATHRYN M. BROWN, PH.D
LESLIE A. SERUNIAN, PH.D
DOROTHY R. AUTH, PH.D
DAVID V. ROSSI, PH.D
CAROL GRUPPI, PH.D
RICHARD W. [illegible], PH.D

*NOT ADMITTED IN NEW YORK
†ADMITTED IN WASHINGTON, D.C.

FOREIGN LAW ADVISOR
[illegible]

# FAX

TO: U S Patent Office
Company Name

Examiner Acken - Group 3208
Attention

1-703-305-3579
Telecopy Phone Number

Office Phone Number

FROM: NEW YORK OFFICE Thomas M Hammond
Sender

Number of Pages: 3 (& Cover)

Client/Matter No.: 0140-4124451

Date: 3/11/98 Time: 4 PM

Please confirm receipt: Yes_____ No_____

COMMENTS: Per our conversation of 3 PM today. Look forward to hearing from you on Friday, March 13, 1998

Tom Hammond

THE DOCUMENT(S) ACCOMPANYING THIS FACSIMILE TRANSMISSION CONTAINS INFORMATION FROM THE LAW FIRM OF MORGAN & FINNEGAN WHICH IS CONFIDENTIAL AND/OR LEGALLY PRIVILEGED. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ON THIS TRANSMISSION SHEET. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS FAXED INFORMATION IS STRICTLY PROHIBITED, AND THE DOCUMENT(S) SHOULD BE RETURNED TO THIS FIRM IMMEDIATELY. IF YOU HAVE RECEIVED THIS FACSIMILE IN ERROR, PLEASE NOTIFY US BY TELEPHONE IMMEDIATELY SO THAT WE CAN ARRANGE FOR THE RETURN OF THE ORIGINAL DOCUMENTS AT NO COST TO YOU.

Rev. April 17, 199[illegible]

FAX COPY RECEIVED
MAR 12 1998
GROUP 3200



**UNITED STATE_ _EPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/697,611 | 08/28/96 | GASPARRINI C | 0140-4124US1 |

GM21/0326

THOMAS M HAMMOND
MORGAN & FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

| EXAMINER | |
|---|---|
| ACKUN, J | |
| ART UNIT | PAPER NUMBER |
| 3728 | ~~29~~ 31 |

DATE MAILED: 03/26/98

6 Parker 3/5/98

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

08/697,611

## NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☑ This communication is responsive to the Amendment filed on 9/18/97.

☑ The allowed claim(s) is/are 1-28, 44-46 and 57.

☑ The drawings filed on 4/10/95 are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) ______.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: ______.

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☐ Applicant MUST submit NEW FORMAL DRAWINGS

☐ because the originally filed drawings were declared by applicant to be informal.

☐ including changes required by the Notice of Draftperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. ____.

☐ including changes required by the proposed drawing correction filed on ______, which has been approved by the examiner.

☐ including changes required by the attached Examiner's Amendment/Comment.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). ______

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

☑ Interview Summary, PTO-413

☑ Examiner's Amendment/Comment

☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

☐ Examiner's Statement of Reasons for Allowance

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

1. An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

Authorization for this examiner's amendment was given in a telephone interview with Thomas Hammond on 03/16/98.

2. The application has been amended as follows:

Claim 57 has been underlined in its entirety.

In the latest Amendment filed by the applicants the instructions to amend have been changed so that they refer to the appropriate pages and lines of the substitute specification.

3. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Jacob Ackun whose telephone number is (703) 308-3867.

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

J.A.

March 18, 1998



**UNITED S[TAT]ES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | | | |

| EXAMINER | |
|---|---|
| ART UNIT | PAPER NUMBER |
| | 31 |

DATE MAILED:

## INTERVIEW SUMMARY

All participants (applicant, applicant's representative, PTO personnel):

(1) THOMAS HAMMOND (3) ____

(2) JACOB ACKUN (4) ____

Date of Interview 1/14/98

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☑ No If yes, brief description: ____

Agreement ☑ was reached. ☐ was not reached.

Claim(s) discussed: Claims 8, 10 and 57

Identification of prior art discussed: None.

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: The specification would be amended to provide support for claims 8 and 10. Claim 57 would be underlined. These changes are to be made by Examiner's Amendment. The case would issue upon surrender of the patent.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☐ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary. A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has are ready been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐ Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign this form unless it is an attachment to another form.

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

FORM PTOL-413 (REV.1-96)



UN[illegible] DE[illegible]
Patent an[illegible]emark Office

# NOTICE OF ALLOWANCE AND ISSUE FEE DUE

[illegible]

[illegible]

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] 3728 | 03/26/98 |

First Named Applicant: [illegible]

TITLE OF INVENTION: [illegible] METHOD FOR MAKING THE [illegible]

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| [illegible] | [illegible] | [illegible] | [illegible] | NO | $1320.00 | 06/26/98 |

***THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.***

***THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.***

## *HOW TO RESPOND TO THIS NOTICE:*

I. Review the SMALL ENTITY status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or

B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

A. Pay FEE DUE shown above, or

B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned. If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

***IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.***

PATENT AND TRADEMARK OFFICE COPY

☆U.S.GOVERNMENT PRINTING OFFICE 1997-423-221/62718

PATENT

Docket No. 0140-4124US1

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicants :Gasparrini et al.

Serial No. :08/697,611 Group Art Unit:3208

Filed :August 28, 1996 Examiner: Ackun, J.

For :PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME Batch No. Z97

EXPRESS MAIL CERTIFICATE

Express Mail Label No. EI358970069US

Date of Deposit May 26, 1998

I hereby certify that the following attached paper(s) or fee

Issue Fee Transmittal Form with fee

is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. §1.10 on the date indicated above and is addressed to the Assistant Commissioner For Patents, Washington, D.C. 20231.

Israel Fuentes
(Typed or printed name of person mailing paper(s) or fee)

(Signature of person mailing paper(s) or fee)

Mailing Address:
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800
(212) 751-6849 Telecopier

FORM: EXP-MAIL.NY
Rev. 3/27/95

142-1320
561-12

# PART B—ISSUE FEE TRANSMITTAL

Complete and mail this form, together with applicable fees, to: Box ISSUE FEE, Assistant Commissioner for Patents, Washington, D.C. 20231

93

***MAILING INSTRUCTIONS:*** This form should be used for transmitting the ISSUE FEE. Blocks 1 through 4 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Legibly mark-up with any corrections or use Block 1)

OM2170326

THOMAS M HAMMOND
MORGAN & FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

RECEIVED
Publishing Division
MAY 26 1998

Note: The certificate of mailing below can only be used for domestic mailings of the Issue Fee Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

**Certificate of Mailing**

I hereby certify that this Issue Fee Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above on the date indicated below.

(Depositor's name)

(Signature)

(Date)

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/697,611 | 08/28/96 | 032 | ACKUN, J | 3728 | 03/26/98 |

First Named Applicant: [illegible] CHARLES R.

TITLE OF INVENTION: PRE-PACKAGED, PRE-SOAKED CLEANING SYSTEM AND METHOD FOR MAKING THE SAME

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 2240-4124US1 | 206-204.000 | 797 | UTILITY | NO | $1320.00 | 06/26/98 |

1\. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). Use of PTO form(s) and Customer Number are recommended, but not required.

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47) [illegible]

2\. For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) [illegible] up to 2 registered patent [illegible] name is listed, no [illegible] will be printed.

1 Morgan & Finnegan, L.L.P.
2
3

3\. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE: Baldwin Graphic Systems, Inc.

(B) RESIDENCE: (CITY & STATE OR COUNTRY) Stamford, Connecticut

Please check the appropriate assignee category indicated below (will not be printed on the patent)
☐ individual ☒ corporation or other private group entity ☐ government

4a. The following fees are enclosed (make check payable to Commissioner of Patents and Trademarks):
☒ Issue Fee
☒ Advance Order - # of Copies 4

4b. The following fees or deficiency in these fees should be charged to:
DEPOSIT ACCOUNT NUMBER
(ENCLOSE AN EXTRA COPY OF THIS FORM)
☐ Issue Fee
☐ Advance Order - # of Copies

The COMMISSIONER OF PATENTS AND TRADEMARKS IS requested to apply the Issue Fee to the application identified above.

(Authorized Signature) Thomas M. Hammond
Thomas M. Hammond, Reg.No. 19,131 (Date) 5/26/98

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

***Burden Hour Statement:*** This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND FEES AND THIS FORM TO: Box Issue Fee, Assistant Commissioner for Patents, Washington D.C. 20231

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

05/29/1998 SHARRELL 00000086 08697611
01 FC:142 1320.00 OP
02 FC:561 12.00 OP

**TRANSMIT THIS FORM WITH FEE**



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKETT NO. |
|---|---|---|---|
| | | | |

| EXAMINER | |
|---|---|
| ART UNIT | PAPER NUMBER |
| | 32 |

DATE MAILED:

08/697,611

## EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Thomas Hammond (3) ____

(2) Jacob Ackun (4) ____

Date of Interview 8/4/98

Type: ☑ Telephonic ☐ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes ☐ No. If yes, brief description: ____

Agreement ☑ was reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: 8 and 10

Identification of prior art discussed: ____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: Claims 8 and 10 would be amended by the examiner to show the final amendments thereto (as Reissued) as being made with respect to US 5,368,157. Claims 44-46 would also be amended so that they are underlined in their entirety and show no bracketing (even for deleted portions thereof).

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☐ 1. It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ 2. Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

[signature]
JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

Examiner's Signature

PTOL-413 (REV. 2-93)

ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/697,611 | 08/28/96 | GASPARRINI | C 0140-4124US1 |

QM11/0805

THOMAS H HAMMOND
MORGAN & FINNEGAN
345 PARK AVENUE
NEW YORK NY 10154

| EXAMINER | |
|---|---|
| ACKUN, J | |
| ART UNIT | PAPER NUMBER |
| 3728 | 33 |

DATE MAILED: 08/05/98

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

08/697611

SUPPLEMENTAL
## NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☐ This communication is responsive to ________.

☐ The allowed claim(s) is/are ________.

☐ The drawings filed on ________ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) ________.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: ________.

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☐ Applicant MUST submit NEW FORMAL DRAWINGS

☐ because the originally filed drawings were declared by applicant to be informal.

☐ including changes required by the Notice of Draftperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. ____.

☐ including changes required by the proposed drawing correction filed on ________, which has been approved by the examiner.

☐ including changes required by the attached Examiner's Amendment/Comment.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). ________

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

☑ Interview Summary, PTO-413

☑ Examiner's Amendment/Comment

☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

☐ Examiner's Statement of Reasons for Allowance

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

1. An examiner's amendment to the record appears below. Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

2. The claims have been amended as follows:

8. A pre-packaged, pre-soaked cleaning system as defined in claim 2 wherein the fabric has a basis weight in a range of from about 1.5 ounces per square yard to about 6.0 ounces per square yard, a caliper thickness in a range of from about 0.003 [mils]inch to about 0.30 [mils]inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 200 lbs. per inch and in a width direction in a range of from about 15 lbs. Per inch to about 125 lbs. per inch.

10. A pre-packaged, pre-soaked cleaning system as defined in claim 9 wherein the paper fabric has a basis weight in a range of from about 40 lbs. to about 90 lbs., a caliper thickness in a range of from about 0.003 [mils]inch to about [0.010 mils]0.10 inch, a tensile strength in the longitudinal direction in a range of from about 20 lbs. per inch to about 80 lbs. per inch and in a width direction in a range of from about 15 lbs. per inch to about 50 lbs. per inch, a porosity in a range of from about 1.0

second to about 10 seconds, and a stretchability in a range of from about 1.0 percent to about 6.0 percent.

3. Any inquiry concerning this communication or earlier communications from the examiner should be directed to Jacob Ackun whose telephone number is (703) 308-3867.

JACOB K. ACKUN
PRIMARY EXAMINER
GROUP 3200

J.A.

August 3, 1998

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on January 22, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

Jack Blumenfeld, Esquire
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I further certify that on this same date I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by Federal Express and e-mail on the following counsel of record:

Keith J. McWha, Esquire
James W. Gould, Esquire
Morgan & Finnegan
3 World Financial Center
New York, NY 10281-2101

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)