IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BALDWIN GRAPHIC SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-77 (JJF) |
| | ) | |
| FIBERWEB SIMPSONVILLE, INC., | ) | |
| and FIBERWEB, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF BALDWIN GRAPHIC SYSTEMS, INC.'S REBUTTAL
MARKMAN BRIEF FOR U.S. PATENT NOS. RE 35,976 AND 5,974,976**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com

*Attorney for Plaintiff
Baldwin Graphic Systems, Inc.*

OF COUNSEL:

James W. Gould
Keith J. McWha
Seth J. Silverman
MORGAN &FINNEGAN, L.L.P.
3 World Financial Center
New York, New York 10281-2101
(212) 415-8700

January 22, 2008

<u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ........................................................................................................1

II.     THE LEGAL BASIS FOR FIBERWEB'S PROPOSED
        CONSTRUCTION IS ERRONEOUS .........................................................................1

        A.     Fiberweb Impermissibly Reads Limitations Into The Asserted
               Claims Of Reissue Patent Re 35,976 ..........................................................1

               1.     The Federal Circuit's Construction Is Binding -The Term
                      "A Pre-Soaked Fabric Roll" Is Not Limited To "A Single
                      Pre-Soaked Fabric Roll" ..................................................................... 1

               2.     The Federal Circuit's Construction Is Binding-The Term
                      "Sealed Sleeve" Is Limited To "A Heat-Sealed Sleeve" ............... 6

               3.     The Terms "In Contact With" and "Disposed Therearound"
                      Do Not Require The Sleeve To Directly Touch The Fabric
                      Roll ...................................................................................................... 6

        B.     Fiberweb Impermissibly Reads Limitations Into The Asserted
               Claims Of U.S. 5,974,976 .............................................................................8

               1.     Fiberweb's Proposed Construction Of The Terms "A
                      Reduced Air Content Cleaning Fabric Having An Air
                      Content By Volume Reduced By 1 to 50%" And
                      "Reducing Air Content Of A Strip Of Cleaning Fabric By 1
                      to 50 %" Should Be Rejected As Contrary To The Record
                      Evidence, The Relevant Case Law And The Federal
                      Circuit's Decision ............................................................................... 8

               2.     The Term Does Not Readily Evaporate At "Ambient
                      Temperature" Does Not Mean "Room Temperature or 72°
                      F" ........................................................................................................ 11

IV.     CONCLUSION ..........................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Abtox Inc. v. Exitron Corp.*,
    122 F.3d 1019 (Fed. Cir. 1997)..................................................................................... 2, 5

*AFG Industries, Inc. v. Cardinal IG Co.*,
    375 F.3d 1367 (Fed. Cir. 2004)..................................................................................... 9

*Altiris v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)..................................................................................... 3, 5

*Baldwin v. Siebert*
    (03cv7713 N.D. Ill.)...................................................................................................... 1, 3

*CollegeNet Inc. v. ApplyYourself, Inc.*,
    418 F.3d 1225 (Fed. Cir. 2003)..................................................................................... 1

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
    381 F.3d 1111 (Fed. Cir. 2004)..................................................................................... 8

*Insituform Techs., Inc. v. Cat Contracting, Inc.*,
    99 F.3d 1098 (Fed. Cir. 1996)....................................................................................... 2, 5

*KCJ Corp. v. Kinetic Concepts, Inc.*,
    223 F.3d 1351 (Fed. Cir. 2000)..................................................................................... 2, 5

*Mas-Hamilton Group v. La Gard, Inc.*,
    156 F.3d 1206 (Fed.Cir.1998)....................................................................................... 8

*Scanner Technologies Corp. v. ICOS Vision Systems Corp., N.V.*,
    365 F.3d 1299 (Fed. Cir. 2004)..................................................................................... 3, 5

*Smith v. Snow*,
    294 U.S. 1 (1935).......................................................................................................... 8

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
    279 F.3d 1357 (Fed. Cir. 2002)..................................................................................... 1, 5

*Vanguard Products Corp. v. Parker Hannifin Corp.*,
    234 F.3d 1370 (Fed. Cir. 2001)..................................................................................... 9

Statutes

35 U.S.C. § 101 ................................................................................................................ 9

35 U.S.C. § 251 ................................................................................................................ 7

MPEP § 2713.05(e) ...................................................................................................... 3, 4

# I.    INTRODUCTION

Pursuant to the Court's Fourth Amended Scheduling Order, Baldwin Graphic Systems, Inc. ("Baldwin") submits this rebuttal brief in opposition to Fiberweb's proposed construction of terms from the asserted claims of U.S. Patents Nos. Re 35,976 ("the Reissue patent") and 5,974,976 ("the '976 patent") (collectively, "the asserted patents"). As the Federal Circuit has decided Baldwin's appeal of several terms construed by Judge Moran in *Baldwin v. Siebert* (03cv7713 N.D. Ill.) ("Siebert case"), Fiberweb's issue preclusion arguments are moot. The Federal Circuit decision controls here and this Court should adopt the Federal Circuit's claim construction.

# II.    THE LEGAL BASIS FOR FIBERWEB'S PROPOSED CONSTRUCTION IS ERRONEOUS

## A.    Fiberweb Impermissibly Reads Limitations Into The Asserted Claims Of Reissue Patent Re 35,976

### 1.    The Federal Circuit's Construction Is Binding -The Term "A Pre-Soaked Fabric Roll" Is Not Limited To "A Single Pre-Soaked Fabric Roll"

Fiberweb bases its position that the claim term "a pre-soaked fabric roll" means "a single pre-soaked fabric roll", on Judge Moran's claim construction ruling from the Siebert Case. The Federal Circuit has rejected that ruling and agreed with Baldwin's claim construction. Baldwin's arguments as outlined below are consistent with that decision. [Exhibit A; Fed. Cir. Op. 2007-1262, p. 9]

"It is well settled that the term 'a' or 'an' ordinarily means 'one or more.'" *CollegeNet Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1232 (Fed. Cir. 2003) (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357, 1370 (Fed. Cir. 2002)). "Unless the claim is specific as to the number of elements, the article 'a' receives a singular interpretation only in rare circumstances when the patentee evinces a **clear intent** to so limit the

article." *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) (emphasis added); see also *Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1350 (Fed. Cir. 2005). The Federal Circuit decision on the Re 35,976 patent is fully in accord. First, as to the Reissue patent, "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *KJC Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000). That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clean intent" to limit "a" or "an" to "one." [*Id.*].

As stated by the Federal Circuit, "an exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule. *See, e.g., Abtox Inc. v. Exitron Corp.*, 122 F.3d 1019 (Fed. Cir. 1997); *Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996). This record does not contain a clear indication that the applicant departed from the general rule for the article "a". Nothing in the claim language, specification, or prosecution history compels an exceptional reading of "a" in this case. This construction is, of course, fully supported by the record.

Claims 28 and 32 are not specific as to the number of pre-soaked fabric rolls which comprise the pre-packaged pre-soaked cleaning system; nor is it the rare circumstance that the patent's inventors have evinced a clear intent in, for example, the patent's specification or file history, to limit the number of rolls to a single roll. Although the Reissue patent specification only specifically describes embodiments with one fabric roll in the sealed sleeve, that is not a proper basis to eschew the general rule and construe the phrase "a pre-soaked fabric roll" as

meaning only a single pre-soaked fabric roll.  See *Altiris v. Symantec Corp.*, 318 F.3d 1363, 1373 (Fed. Cir. 2003). There is nothing in the specification of the Reissue patent indicating that there is a clear waiver of the normal meaning of "a" or that having only one fabric roll in the sealed sleeve is important to the invention. "Indeed, the very use of the article 'a' indicates, at least presumptively, that the patentee intended the claim language to mean one or more…" *Scanner Technologies Corp. v. ICOS Vision Systems Corp., N.V.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004).

Judge Moran's ruling cited the patentee's initial use of the term "a pre-soaked fabric roll" and later use of the phrase "said fabric roll" in the same claim, as implying that the prior reference to "a pre-soaked fabric roll" should be construed as a single roll to avoid confusion. [*see* Judge Moran's 7/28/05 Initial Order, Baldwin v. Siebert  03cv07713, p. 7]. Baldwin disagrees with this characterization which was expressly rejected by the Federal Circuit. The term "said" is an accepted term used to refer back to a previously cited object and does not evince any intent by the patentees to limit the normal meaning of "a"  to a single pre-soaked fabric roll. *See, e.g.*, MPEP § 2713.05(e).  Baldwin's position is fully consistent with the Federal Circuit, which expressly held:

> "The District Court erred by misapplying the term "said fabric roll" later in the claim and the phrase "intimate contact with the fabric roll" in the specification.  <u>Initial Order</u>, slip op. at 8.  As noted above, the use of a definite article ("said" or "the") to refer back to an initial indefinite article does not implicate, let alone mandate the singular.  Because the initial indefinite article ("a") carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality.  In grammatical terms, the instances of "said fabric roll" in the claim are anaphoric phrases, referring to the initial antecedent phrase. Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest.

Contrary to the district court's analysis, § 2173.05(e) of the Manual of Patent Examining Procedure (MPEP) does not suggest otherwise. Section 2173.05(e) describes the need, in most cases, for claim terms to have proper antecedent bases:

> The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference. Similarly, if two different levers are recited earlier in the claim, the recitation of "said lever" in the same or subsequent claim would be unclear where it is uncertain which of the levers was intended.'

MPEP § 2173.05(e). According to the district court, § 2173.05(e) "only strengthens" the exclusively singular nature of "a pre-soaked fabric roll," because "the use of 'said fabric roll' implies that the prior reference to 'a fabric roll' should be read as a single roll, not one or more rolls, in order to avoid confusion." To the contrary, MPEP § 2173.05(e) is inapposite because the limitations in claim 32 all relate to proper antecedent bases. Thus, the confusion or indefiniteness problem addressed by § 2173.05(e) does not arise in this claim.

The district court's reliance on language in the specification to limit "a pre-soaked fabric roll" to a single roll is similarly unavailing. The phrase "disposed around and in intimate contact with the fabric roll" appears twice in the specification of the Reissue patent, and describes the relationship between the plastic sleeve and the fabric roll. [Reissue/ 2:22-23; 3:17-18]. This description does not require a single pre-soaked fabric roll. Under the terms of this description, the plastic sleeve could be in intimate contact with multiple fabric rolls, like the plastic wrapping on a package of several hot dogs is in intimate contact with each of the hot dogs, despite the fact that the hot dogs themselves contact each other as well as the packaging. Appellant's Br. at 13. This description contains no requirement, implicit or explicit, that the

plastic sleeve must be in intimate contact with the entire fabric roll. For these reasons, "a pre-soaked fabric roll" as used in claim 32 of the Reissue patent is not limited to a single roll.

All of this holding is of course consistent with other Federal Circuit decisions such as *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.,* 279 F.3d 1357, 1370 (Fed. Cir. 2002) and *Altiris v. Symantec Corp.*, 318 F.3d 1363, 1373 (Fed. Cir. 2003). Both of these cases addressing claim language in which an element was first modified by the indefinite article "a" or "an" and later by the word "said", held that "a" or "an" should be construed as meaning one or more regardless of the patentees use of the term "said". *Id.* There is no evidence to suggest that Baldwin was using the term "said" as a limitation on the generally accepted meaning of the term "a", rather than following generally accepted patent parlance. *See Scanner Technologies Corp. v. ICOS Vision Systems Corp., N.V.*, 365 F.3d 1299, 1304 (Fed. Cir. 2004).

Lastly, the Siebert Case District Court's reliance on the Federal Circuit's decisions in *Insituform Technologies Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098 (Fed. Cir. 1996) and *Abtox, Inc. v. Exitron Corp.*, 122 F.3d 1019, *modified on reh'g,* 131 F.3d 1019 (Fed. Cir. 1997) is misplaced. Both of these decisions are distinguishable from the present case. In *Insituform*, the Court "restricted the claim to a singular interpretation because 'the claim is specific as to the number of elements (one cup) and adding elements eliminates an inherent feature (discontinuous vacuum) of the claim.'" *KCJ Corp.*, 223 F.3d at 1357 (quoting *Insituform*). Additionally, in *Abtox*, the Court found that the term "said chamber" was limited by the specification to denote regions and functions within the same chamber rather than multiple chambers. Our case is distinguishable from these, as the term " a pre-soaked fabric roll" is not specific as to the number of pre-soaked fabric rolls which comprise the pre-packaged pre-soaked cleaning system; nor is it the rare circumstance that the patent's inventors have evinced a clear

intent in, for example, the patent's specification or file history, to limit the number of rolls to a single roll.

In short, the record evidence, the relevant case law and the Federal Circuit's decision all support Baldwin's position that "a" in claims 28 and 32 of the Reissue patent should be interpreted as claiming "one or more pre-soaked fabric rolls."

2.    The <u>Federal Circuit's Construction Is Binding-The Term "Sealed Sleeve" Is Limited To "A Heat-Sealed Sleeve"</u>

The Federal Circuit has agreed with Judge Moran's ruling and limited the meaning of the term "sealed sleeve" to a "heat-sealed sleeve". [Exhibit A; Fed. Cir. Op. 2007-1262, p. 9] Baldwin disagrees with that construction, but accepts that the Federal Circuit ruling is binding on the Delaware District Court as a matter of law.

Fiberweb further proposes that the term "sealed" means that "the sleeve fully encloses the fabric roll such that the solvent does not leak." [Fiberweb Opening Brief  p. 11] Baldwin disagrees with that construction, which was not part of the Federal Circuit decision. The plain meaning of the term "sealed" is to "prevent leaks" not to eliminate the possibility of leakage ever occurring.  [Baldwin Opening Brief p. 10] Fiberweb's proposed meaning of "sealed" speaks in absolute terms and as Fiberweb knows there is no type of sleeve that can insure the solvent does not leak under every circumstance. Any sealed sleeve can be damaged or punctured, causing it to leak, and just because the sleeve can leak during transport or storage does not take it outside the claims of the Reissue patent.

3.    The Terms <u>"In Contact With" and "Disposed Therearound" Do Not Require The Sleeve To Directly Touch The Fabric Roll</u>

Fiberweb proposes that the terms "in contact with" and "disposed therearound" require "the sleeve directly touches the roll". [Fiberweb Opening Brief p. 13] These constructions are inconsistent with the plain meaning of these terms and find no support in the

claim language. [Baldwin Opening Brief p. 11-14] Further, there is nothing in the specification or file history indicating the inventors intended the terms "in contact with" and "disposed thereround" to require direct contact between the sealed sleeve and the fabric roll. [*Id.*]

In regard to the term "in contact with" , the Reissue file history makes absolutely clear that the inventors chose the language in claim 28 where "in contact with" is used as opposed to "in intimate contact with" with the intent of broadening what had been claimed in the original claims, all of which used the term "in intimate contact with". [*Id.* at p. 12-13] The claim term "in contact with" has a commonly understood meaning and should not be limited to require the "sleeve directly touches the roll" as this would be contrary to the inventors' intent in seeking the patent's reissue, in order to permissively broaden its claims under 35 U.S.C. § 251. [*Id.* at p. 11]. Instead, "in contact with" should be construed to mean that at least a portion of the sleeve directly or indirectly touches the roll.

Additionally, Baldwin opposes Fiberweb's position that the terms "in contact with" and "disposed thereround" require a "snug" fit for the sealed sleeve. [Fiberweb Opening Brief p. 13-14] Baldwin proposes that these terms describe the relationship between the plastic sleeve and the fabric roll and that this description contains no requirement that the plastic sleeve directly touches the entire fabric roll. [*see* Exhibit A; Fed. Cir. Op. 2007-1262, p. 9] Fiberweb's proposed construction incorrectly imports a limitation from the specification into claim 28 and limits the claim to a preferred embodiment. [Baldwin Opening Brief p. 12-14] Contrary to Fiberweb's position, having the sleeve directly touching the roll is not important to the invention as is apparent from the inventors' initiation of the Reissue process to broaden claim language to include a sealed sleeve that is close to the fabric roll but not necessarily touching it, within the scope of the claims. "[T]he claims of the patent, not its specification, measure the invention."

*Smith v. Snow*, 294 U.S. 1, 11 (1935). "Accordingly, particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004).

> 4.    The Court Should Not Adopt Fiberweb's Proposed Claim Construction of "means for locating said fabric roll"

The Federal Circuit has explained that traditional means language does not automatically invoke the means-plus-function limitation. *See generally, Mas-Hamilton Group v. La Gard, Inc.,* 156 F.3d 1206, 1214 (Fed.Cir.1998). Fiberweb has proposed that the limitation in claim 32 "means for locating said fabric roll" be limited to ball bearings. The claim and specification is clear that such an added limitation is improper. The specification states in part:

> The core 11 is also preferably provided with engagement means 19, such as ball bearings or the like or with other suitable means, for reception of a shaft 21 (Fig. 2) located on an appropriate machine…[Col. 4, lines 2-8]

There is nothing in the claims, specification or prosecution history that limits the means for locating said fabric to ball bearings. The specification allows for "or the like or with other suitable means." It is well settled that the patent is not limited to its preferred embodiments, and the specification as shown above indicates as such. Therefore, Fiberweb's proposed claim construction is improper.

**B.    Fiberweb Impermissibly Reads Limitations Into The Asserted Claims Of U.S. 5,974,976**

> 1.    Fiberweb's Proposed Construction Of The Terms "A Reduced Air Content Cleaning Fabric Having An Air Content By Volume Reduced By 1 to 50%" And "Reducing Air Content Of A Strip Of Cleaning Fabric By 1 to 50 %" Should Be Rejected As Contrary To The Record Evidence, The Relevant Case Law And The Federal Circuit's Decision

Fiberweb proposes that the terms "a reduced air content cleaning fabric having an air content by volume reduced by 1 to 50%" from claim 1, and "reducing air content of a strip of

cleaning fabric by 1 to 50 %" from claim 14, should be construed consistently. This is contrary to the Federal Circuit decision which warned against confusing apparatus and method claims:

> Unfortunately this approach blurred an important difference between the two independent claims, namely that claim 1 is an apparatus claim and claim 14 is a method claim. Despite their similarities, these claims are directed toward different classes of patentable subject material under 35 U.S.C. § 101. Courts must generally take care to avoid reading process limitations into an apparatus claim, *see, AFG Industries, Inc. v. Cardinal IG Co.*, 375 F.3d 1367, 1372-1373 (Fed. Cir. 2004), because the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim, *see, Vanguard Products Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2001) ("A novel product that meets the criteria of patentability is not limited to the process by which it was made."). [Fed. Cir. Op. 2007-1262 p.10-11].

Fiberweb's proposed construction is as follows: **"air content of the fabric is reduced by 1-50 percent, in total, between the start of manufacture and the time the solvent is added. Moreover, as held by Judge Moran, the fabric's air content must be reduced prior to it being wound on a core to form a roll."** [Fiberweb Opening Brief p. 15] The Federal Circuit, however, agreed with Baldwin's construction of the term "reduced air content cleaning fabric" as including fabric that has been wound on a roll with sufficient tension to reduce its air content. [Exhibit A; Fed. Cir. Op. 2007-1262, p. 10] Baldwin's arguments as outlined below are consistent with that decision.

Baldwin rejects Fiberweb's contention that air reduction of the fabric occurs between the start of the fabric's manufacture and the time the solvent is added. Baldwin's proposed construction is that **the air content of the cleaning fabric is reduced after the fabric is formed but prior to saturation with solvent**. As stated by the Federal Circuit:

> "Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll." Slip Op. 12.

In other words, after the fabric is formed, it is subjected to a mechanical process prior to saturation with solvent, that reduces its air content by 1-50 percent. This mechanical process includes, but is not limited to calendering, as described in the patent specification as a preferred embodiment. The specification of the `976 patent states that: "[t]he preferred, but not exclusive, method of reducing the air content of the fabric is calendering." ['976/ 7:26-27]. Baldwin, in agreement with the Federal Circuit, interprets the claim term "reduced air content cleaning fabric" as covering methods other than calendering, including winding or rewinding the fabric on a roll. [Exhibit A; Fed. Cir. Op. 2007-1262, p. 14]

Baldwin disagrees with Fiberweb's characterization of statements made during the prosecution of the '976 patent as requiring that the air content of the fabric is reduced by 1-50 percent, in total, between the start of manufacture and the time the solvent is added. [Fiberweb Opening Brief p. 16-17]. Statements to the PTO, that air must be removed **prior to saturation** either **during manufacture or after manufacture** by a process such as calendering do not support Fiberweb's contention. [*Id.*] These statements allude to the fact that to practice the invention, one skilled in the art could buy a roll of fabric and reduce its air content by some method (such as calendering) after it already left the factory.  Alternatively, while still at the factory once the fabric was actually formed, it could be subjected to some method of air reduction before the manufacturing process was completed. The only requirement that these prosecution statements support is that air reduction of the fabric must be accomplished prior to saturation with solvent.

In its responses to the PTO, Baldwin used the term "during manufacture" which has a different meaning than "at the start of manufacture".  [see Baldwin Opening Markman Brief Exhibit H; '976 Patent File History, Response to Office Action dated 6/26/96 at p. 9]

"During manufacture" refers to the point in the manufacturing process where the fabric is actually formed from fibers, which is not necessarily the end of its manufacturing process. Starting the measurement of air reduction at that point would not be arbitrary as posited by Fiberweb. [Fiberweb Opening Brief p. 17] Competitors would still be on notice as to what they can and cannot do in order not to infringe the '976 patent. [*see Id.*] Contrary to Fiberweb's position, the claims recite a "reduced air content cleaning fabric" and not "reduced air content fibers".

 2. <u>The Term Does Not Readily Evaporate At "Ambient Temperature" Does Not Mean "Room Temperature or 72° F"</u>

 Fiberweb proposes that the term "ambient temperature" simply means room temperature or roughly 72° F. Baldwin rejects Fiberweb's construction and proposes that "ambient temperature" simply means the "surrounding temperature" of the printing press and pressroom. The Federal Circuit decision is silent on this claim term. Fiberweb asserts this specification section describing the calendering process for supporting its definition:

> A fabric 41 is calenderized by running it through at least a pair of rollers 42. **The at least a pair of rollers 42 compress the fabric. Preferably, but not necessarily, the temperature of the at least a pair of rollers 42 is hotter than room temperature. Alternatively, the temperature of the at least a pair of rollers 42 is at about ambient temperature or less than ambient temperature.** It has been found that the wettability and the distribution of the solvent is very good in the calenderized fabric. ['976/ 7:30-35]

This section in no way lends support to Fiberweb's proposed construction. First, this passage is concerned with the calendering process and not with solvent as in claims 1 and 14. Also, if the inventors had intended ambient temperature to mean room temperature, they would not have used both terms in the same passage of the specification. There would be no logical reason for the patent's drafters to have used different terminology to describe the same thing within the

same passage from the specification. This could only cause confusion. Obviously, these two terms are not synonymous and carry different meanings.

The American Heritage Dictionary of the English Language: Fourth Edition, 2000, defines "ambient" as "surrounding or encircling" and "temperature" as the "degree of hotness or coldness of a body or environment". [*see* Exhibit B; Excerpts from The American Heritage Dictionary of the English Language: Fourth Edition, 2000]  Here, the environment of the saturated roll in use is mounted on a press in a press room.  The claim language is also concerned with having enough solvent on the roll to clean the press cylinder.  Having enough un-evaporated solvent at an arbitrary 72° F will not necessarily accomplish this, since the press environment is likely to be higher.  Thus, Baldwin proposes that ambient temperature refers to the surrounding temperature of the printing press and pressroom and not to 72° F as Fiberweb suggests.

## IV.    CONCLUSION

For the foregoing reasons, Baldwin respectfully requests that the Court adopt its proposed definitions and construe the RE 35, 976 and 5,974,976 patents accordingly.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff,*
  *Baldwin Graphic Systems, Inc.*

OF COUNSEL:

James W. Gould
Keith J. McWha
Seth J. Silverman
MORGAN & FINNEGAN, LLP
3 World Financial Center
New York, NY  10281-2101
(212) 415-8700

January 22, 2008
1414118

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on January 22, 2008 I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ, LLP

I also certify that copies were caused to be served on January 22, 2008 upon the following in the manner indicated:

## BY E-MAIL

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE  19899-2207

Michael E. Zeliger
Christopher Centurelli
KIRKPATRICK & LOCKHART PRESTON GATES ELLIS LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950

*/s/ Julia Heaney*
_____
Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT A

# United States Court of Appeals for the Federal Circuit

2007-1262

BALDWIN GRAPHIC SYSTEMS, INC.,

Plaintiff-Appellant,

v.

SIEBERT, INC.,

Defendant-Appellee.

Thomas B. Kenworthy, Morgan, Lewis & Bockius LLP, of Philadelphia, Pennsylvania, argued for plaintiff-appellant. With him on the brief was Kenneth J. Davis.

Keith D. Parr, Lord, Bissell & Brook LLP, of Chicago, Illinois, argued for defendant-appellee. With him on the brief were Hugh S. Balsam and James T. Peterka. Of counsel on the brief was Robert P. Conlon, Walker Wilcox Matousek LLP, of Chicago, Illinois.

Appealed from: United States District Court for the Northern District of Illinois

Senior Judge James B. Moran

# United States Court of Appeals for the Federal Circuit

2007-1262

BALDWIN GRAPHIC SYSTEMS, INC.,

Plaintiff-Appellant,

v.

SIEBERT, INC.,

Defendant-Appellee.

Appeal from the United States District Court for the Northern District of Illinois in case no. 03-CV-7713, Senior Judge James B. Moran.

_____

DECIDED: January 15, 2008

_____

Before MICHEL, Chief Judge, RADER, and MOORE, Circuit Judges.

RADER, Circuit Judge.

Baldwin Graphic Systems, Inc. (Baldwin) sued Siebert, Inc. (Siebert) for infringement of U.S. Patent No. Re. 35,976 (the Reissue patent) and U.S. Patent No. 5,974,976 (the '976 patent). After conducting a Markman hearing, the United States District Court for the Northern District of Illinois ultimately granted Siebert's motions for summary judgment of non-infringement of both patents. Because the district court erred in its construction of some of the disputed claim terms, this court affirms-in-part, reverses-in-part, and remands.

I

Baldwin's patents claim systems for cleaning a cylinder of a printing press using strips of cleaning fabric and methods for making those systems. Baldwin sued Siebert, asserting that Siebert's packaged fabric rolls infringed claim 32 of the Reissue patent and claims 1, 7, 9, 12, 14, 23, and 25 of the '976 patent.[*]

The district court construed two phrases in claim 32 of the Reissue patent, "a pre-soaked fabric roll" and "sealed sleeve." Claim 32 of the Reissue patent states:

> 32. A pre-packaged, pre-soaked cleaning system for use to clean the cylinder of printing machines comprising in combination:
>
> (1) a pre-soaked fabric roll saturated to equilibrium with cleaning solvent disposed around a core, said fabric roll having a sealed sleeve which can be opened or removed from said fabric roll for use of said fabric roll, disposed therearound, and said system including
>
> (2) means for locating said fabric roll adjacent to and operatively associated with a cylinder to be cleaned.

Reissue patent, col.11 l.9 – col.12 l.8 (emphases added).

The district court construed "a pre-soaked fabric roll" to mean "a single pre-soaked fabric roll." Baldwin Graphic Sys., Inc. v. Siebert, Inc., 1:03-CV-07713, slip op. at 9 (N.D. Ill. July 28, 2005) (Initial Order). In concluding that "a" means "one" in this context, the district court largely relied on the subsequent use of "said fabric roll" as suggesting a singular fabric roll. Initial Order, slip op. at 7. Also, according to the district court, the statement in the Reissue patent's specification that the sleeve is "disposed around and in intimate contact with the fabric roll," Reissue Patent, col.2 ll.22-

---

[*] Baldwin initially asserted that Siebert infringed another of its patents, U.S. Patent No. 6,035,483, but chose not to pursue this claim. With respect to the '976 patent, Baldwin asserted that Siebert directly infringed claims 1, 7, 9, 14, and 25, induced the infringement of claim 23, and contributorily infringed claim 12.

23, col.3 ll.17-18, evinced an intent to limit "a pre-soaked fabric roll" to "one pre-soaked fabric roll" because this condition "would not be fully possible with more than one roll in the sleeve." Initial Order, slip op. at 8.

As for "sealed sleeve," the district court construed this term to mean "heat-sealed sleeve." Initial Order, slip op. at 13.  Not readily apparent from the language of claim 32 itself, the district court arrived at this conclusion through an examination of the specification and the prosecution history of the Reissue patent.  The Reissue patent originally issued as U.S. Patent No. 5,368,157 (the '157 patent), and as the district court noted, "[a]ll references in the reissue patent specification to a sealed sleeve are to a 'heat-sealed' or a 'heat shrunken and heat-sealed' sleeve, as are all references in the 28 claims that appeared in the original '157 patent." Initial Order, slip op. at 9.  During prosecution of the Reissue patent, the applicants attempted to remove "heat" as a modifier of "sealed" and "sealable" from the specification, but the PTO examiner rejected the proposed changes as impermissibly introducing new matter:

> It is inconceivable that the applicants can find such a teaching in . . . the original specification, which by its own terms refers to the sleeve as a heat sealable plastic sleeve.  Why would one of ordinary skill in the art upon being informed that a sleeve was a heat sealable plastic sleeve, infer that what was really intended was that the sleeve need not be plastic and/or need not be heat sealable?

Initial Order, slip op. at 11 (quoting Reissue Patent Prosecution, PTO Official Action May 15, 1996 at 5) (ellipsis added).

Due to these objections, the applicants withdrew their broadening amendments to the specification.  Because of the withdrawal, the applicants maintained that the examiner's new matter rejection was moot.  Thus, the district court limited the term "sealed sleeve" in Reissue claim 32 to a "heat-sealed sleeve" because "[a] broader

reading would be wholly incongruous with the patent prosecution, the patent examiner's blunt rejection of the contention that the patent specification supports the broader term, and the patentees' own acknowledgment that their revised amendments no longer sought to broaden this terminology." Initial Order, slip op. at 11-12.

Based on its construction of "a pre-soaked fabric roll" and "sealed sleeve," the district court granted Siebert's motion for summary judgment of non-infringement of claim 32 of the Reissue patent. The district court based its summary judgment on the undisputed facts that Siebert sold its accused fabric rolls in sets of three or between six and nine, but not individually. Initial Order, slip op. at 9. Likewise, Siebert did not sell its fabric rolls in heat-sealed sleeves. Id.

With respect to the asserted claims of the '976 patent, claims 1 and 14 are independent claims, and the other asserted claims depend from either claim 1 or claim 14. Claims 1 and 14 contain the disputed limitations, "reduced air content cleaning fabric" (claim 1) and "reducing air content of a strip of cleaning fabric" (claim 14). The district court construed the phrase "reduced air content cleaning fabric" to address these similar claim terms together. Initial Order, slip op. at 14. Claims 1 and 14 of the '976 patent recite:

1.    A device for cleaning a cylinder of a printing press comprising:

a reduced air content cleaning fabric having an air content by volume of 1 to 50 percent; and

a solvent comprising a low volatility cleaning compound which does not readily evaporate at ambient temperature, and means for introducing said solvent being into said reduced air content cleaning fabric in an amount sufficient for cleaning said cylinder of a printing press.

14.    A    method    for    making    a    cleaning    system    comprising:

<u>reducing air content of a strip of cleaning fabric</u> by 1 to 50 percent to form a strip of reduced air cleaning fabric; and

contacting said strip of reduced air content cleaning fabric with a low volatility, organic compound solvent which does not evaporate readily at ambient temperature and pressure and pre-soaking and saturating said reduced air content cleaning fabric with said solvent.

'976 patent, col.11 ll.58-67, col.12 ll.49-57.

In its initial consideration of these terms, the district court concluded that "reduced air content cleaning fabric" was not limited to a particular method for producing reduced air content cleaning fabric. The district court reached this conclusion because the '976 specification notes that "[t]he preferred, but not exclusive, method of reducing the air content in the fabric is calendaring." Initial Order, slip op. at 15 (quoting '976 patent, col.7 ll.27-28). Under the district court's initial construction, the claims covered reducing air content in the fabric by methods other than calendaring, including winding or rewinding the fabric on a roll. Because this claim construction created issues of fact about Siebert's method of winding its accused products on a roll to reduce air content, the trial court denied Siebert's motion for summary judgment of non-infringement of the '976 patent. Initial Order, slip op. at 16-17.

Some months later, on Siebert's motion, the district court reconsidered its construction of "reduced air content cleaning fabric." Baldwin Graphic Sys., Inc. v. Siebert, Inc., 1:03-CV-07713 (N.D. Ill. Mar. 21, 2006) (Reconsideration Order). Siebert then argued for the first time, and the district court agreed, that while the claims may not be limited to calendaring as the method for reducing air content, the claims were in fact limited to a particular timing of that air content reduction step relative to winding. With

this understanding, the district court interpreted "reduced air content cleaning fabric" to mean "a fabric whose air content has been reduced by some method prior to being wound on a roll." Reconsideration Order, slip op. at 15.

The district court arrived at this new construction with an eye to the terms "fabric," "cleaning fabric," "strip of cleaning fabric," and "strip of cloth" in the various claims of the '976 patent. With respect to claim 14, the district court explained that the term "strip of cleaning fabric" "refers to a cleaning fabric whose air content has not yet been reduced . . . because that term, a noun, is being modified by the verb 'reducing.' Thereafter in the claim the term used is 'reduced air content cleaning fabric,' because the reducing of the air content has already occurred." Reconsideration Order, slip op. 7. According to the district court, "independent . . . claims 1 and 14, standing alone, do not aid much in our claim construction analysis . . . [because] both claims are very broad and vague, neither teaching the winding of the fabric on a core." Reconsideration Order, slip op. at 5. Thus, the district court turned to the usage of various fabric and cloth-related terms in the dependent claims as a guide for construing "reduced air content cleaning fabric" in the independent claims. Also, the district court relied on the prosecution history, where Baldwin represented that the claimed invention improved fabric moisture content and solvent distribution "[b]y reducing the air content of the cleaning fabric prior to saturation." Reconsideration Order, slip op. at 8 (emphasis added). Because Siebert's product does not reduce air content before winding of the fabric on the roll, the district court granted Siebert's motion for summary judgment of non-infringement on the claims of the '976 patent. Reconsideration Order, slip op. at 15-16.

II

This court reviews claim construction without deference to the district court's interpretation. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Likewise, a district court's grant of a motion for summary judgment receives review without deference. Johns Hopkins Univ. v. Cellpro, Inc., 152 F.3d 1342, 1353 (Fed. Cir. 1998).

First, as to the Reissue patent, "[t]his court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" KJC Corp. v. Kinetic Concepts, Inc., 223 F.3d 1351, 1356 (Fed. Cir. 2000). That "a" or "an" can mean "one or more" is best described as a rule, rather than merely as a presumption or even a convention. The exceptions to this rule are extremely limited: a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one." Id. The subsequent use of definite articles "the" or "said" in a claim to refer back to the same claim term does not change the general plural rule, but simply reinvokes that non-singular meaning. An exception to the general rule that "a" or "an" means more than one only arises where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule. See, e.g., Abtox Inc. v. Exitron Corp., 122 F.3d 1019 (Fed. Cir. 1997); Insituform Techs., Inc. v. Cat Contracting, Inc., 99 F.3d 1098 (Fed. Cir. 1996).

This record does not contain a clear indication that the applicant departed from the general rule for the article "a." Nothing in the claim language, specification, or prosecution history compels an exceptional reading of "a" in this case. The district court erred by misapplying the term "said fabric roll" later in the claim and the phrase "in

intimate contact with the fabric roll" in the specification. Initial Order, slip op. at 8. As noted above, the use of a definite article ("said" or "the") to refer back to an initial indefinite article does not implicate, let alone mandate the singular. Because the initial indefinite article ("a") carries either a singular or plural meaning, any later reference to that same claim element merely reflects the same potential plurality. In grammatical terms, the instances of "said fabric roll" in the claim are anaphoric phrases, referring to the initial antecedent phrase. Because the initial phrase carries no definitive numerosity, the anaphoric phrases do not alter that meaning in the slightest.

Contrary to the district court's analysis, § 2173.05(e) of the Manual of Patent Examining Procedure (MPEP) does not suggest otherwise. Section 2173.05(e) describes the need, in most cases, for claim terms to have proper antecedent bases:

> The lack of clarity could arise where a claim refers to "said lever" or "the lever," where the claim contains no earlier recitation or limitation of a lever and where it would be unclear as to what element the limitation was making reference. Similarly, if two different levers are recited earlier in the claim, the recitation of "said lever" in the same or subsequent claim would be unclear where it is uncertain which of the two levers was intended.

MPEP § 2173.05(e). According to the district court, § 2173.05(e) "only strengthens" the exclusively singular nature of "a pre-soaked fabric roll," because "the use of 'said fabric roll' implies that the prior reference to 'a fabric roll' should be read as a single roll, not one or more rolls, in order to avoid confusion." Initial Order, slip op. 7. To the contrary, MPEP § 2173.05(e) is inapposite because the limitations in claim 32 all relate to proper antecedent bases. Thus, the confusion or indefiniteness problem addressed by § 2173.05(e) does not arise in this claim.

The district court's reliance on language in the specification to limit "a pre-soaked fabric roll" to a single roll is similarly unavailing. The phrase "disposed around and in

intimate contact with the fabric roll" appears twice in the specification of the Reissue patent, and describes the relationship between the plastic sleeve and the fabric roll. Reissue patent, col.2 ll.22-23, col.3 ll.17-18. This description does not require a single pre-soaked fabric roll. Under the terms of this description, the plastic sleeve could be in intimate contact with multiple fabric rolls, like the plastic wrapping on a package of several hot dogs is in intimate contact with each of the hot dogs, despite the fact that the hot dogs themselves contact each other as well as the packaging. Appellant's Br. at 13. This description contains no requirement, implicit or explicit, that the plastic sleeve must be in intimate contact with the entire fabric roll. For these reasons, "a pre-soaked fabric roll" as used in claim 32 of the Reissue patent is not limited to a single roll.

This court agrees, however, with the district court's careful and accurate analysis in its construction of "sealed sleeve" as limited to "heat-sealed sleeve" in the Reissue patent. This court has consistently recognized that the Patent Act prevents an applicant from adding new subject matter during the patent prosecution process. See Pandrol USA, LP v. Airboss Ry. Prods., Inc., 424 F.3d 1161, 1165 (Fed. Cir. 2005) (citing In re Ruschig, 379 F.2d 990 (CCPA 1967)). In this case, during prosecution of the Reissue application, the examiner rightly refused to allow the applicants to amend the specification to remove references to "heat" as the way of sealing the sleeve. This change would have broadened the patent and introduced impermissible new matter not included in the initial disclosure. Thus the claims would have been invalid for lack of support in the initial disclosure for the new subject matter encompassed by the change because the claims could not show any support if construed to encompass more than heat-sealed sleeves.

In sum, with respect to the Reissue patent, this court finds that the district court erred in its construction of "a pre-soaked fabric roll." Nonetheless, the trial court correctly construed "sealed sleeve," rendering Siebert's fabric rolls non-infringing. Thus this court affirms the district court's summary judgment of non-infringement with respect to the Reissue patent.

Turning to the asserted claims of the '976 patent, this court finds that the district court erred in limiting "reduced air content cleaning fabric" to "a fabric whose air content has been reduced by some method prior to being wound on a roll." Upon review of the claims, specification, and prosecution history, this court discerns no way to uphold the trial court's construction of "reduced air content cleaning fabric."

As a preliminary matter, the parties agreed that the terms "reduced air content cleaning fabric" in claim 1 and "reducing air content of a strip of cleaning fabric" in claim 14 were substantially similar. Seizing on this point, the district court agreed, and construed only "reduced air content cleaning fabric" in an attempt to construe similar terms in both independent claims at once. Unfortunately this approach blurred an important difference between the two independent claims, namely that claim 1 is an apparatus claim and claim 14 is a method claim. Despite their similarities, these claims are directed toward different classes of patentable subject material under 35 U.S.C. § 101. Courts must generally take care to avoid reading process limitations into an apparatus claim, see AFG Industries, Inc. v. Cardinal IG Co., 375 F.3d 1367, 1372-1373 (Fed. Cir. 2004), because the process by which a product is made is irrelevant to the question of whether that product infringes a pure apparatus claim, see Vanguard Products Corp. v. Parker Hannifin Corp., 234 F.3d 1370, 1372 (Fed. Cir. 2001) ("A novel

product that meets the criteria of patentability is not limited to the process by which is was made.").

Claim 1 and its dependent claims (asserted claims 7, 9, and 12) are pure apparatus claims. They have no process limitations. Claims 1, 7, 9, and 12 are therefore not limited to any particular process or method of making the claimed pre-packaged, pre-soaked cleaning system, or to any particular sequence of air content reduction relative to winding.

Unlike claim 1 and its dependent claims, claim 14 and its dependent claims (asserted claims 23 and 25) are method claims and each recites a series of steps. Therefore, and again unlike claim 1, the scope of claim 14 specifies the limits on the performance of those steps. As with any other type of claim, courts must carefully avoid importing limitations from the specification into method claims. See CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1231 (Fed. Cir. 2005) ("In examining the specification for proper context, however, this court will not at any time import limitations from the specification into the claims."). Nonetheless the specification informs the meaning of the claims. In Phillips v. AWH Corp., 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc), this court acknowledged the difficult distinction between "using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." This court explained, however, that the distinction is manageable "if the . . . focus remains on understanding how a person of ordinary skill in the art would understand the claim terms." Id. Also, although a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim

explicitly or implicitly requires a specific order.    See Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1342-43 (Fed. Cir. 2001).    The specification or prosecution history may also require a narrower, order-specific construction of a method claim in some cases. Id.

In this case, the claims themselves contain no basis to require air content reduction before winding.    Though the claims, specification, and prosecution history require that the air content of the cleaning fabric be reduced prior to saturation, this does not mean that the air content must be reduced prior to winding on the roll. Also, in relying on the dependent claims to inform the meaning of "reduced air content cleaning fabric" in claims 1 and 14, the district court effectively imported limitations it saw in dependent claims into the independent claims, contrary to basic claim construction principles.    The effect of this process was to bootstrap a temporal restraint on the occurrence of a winding step relative to air content reduction, even though winding is not even explicitly recited in either claim 1 or claim 14. As independent claims, claims 1 and 14 are naturally broader than their dependent counterparts, making the district court's use of the dependent claims to constrict claims 1 and 14 all the more suspect. For example, claim 18 recites:

> 18.    The method as defined in claim 14 including providing an elongated core wherein said strip of cleaning fabric is wrapped about said elongated core prior to contacting said strip of cleaning fabric with said solvent.

'976 patent, col.13 ll.3-6. The district court held that the second instance "said strip of cleaning fabric" had to refer to reduced air cleaning fabric because air content must be reduced prior to contacting with solvent, and that the term should be interpreted consistently within the same claim. When read consistently, the strip of cleaning fabric

that is "wrapped about an elongated core" already has its air content reduced.  But even if the district court correctly determined that the method of claim 18 requires air content reduction prior to winding, this is an additional limitation of that particular dependent claim, and not a requirement of independent claim 14.   In short, the dependent claims simply do not support the district court's determination that the fabric in all instances must have its air content reduced prior to being wound on a roll.

Furthermore, the '976 patent's specification, in simple terms, does not warrant such a narrow reading.  With an eye to the understanding of an ordinarily skilled artisan, this court cannot find support for widely varying interpretations of the term "fabric" and related terms throughout the claims.  An ordinarily skilled artisan would simply not construe similar terminology so differently from one usage to another.   The passages from the specification cited by the district court in support of its temporally restricted construction are not dispositive.   For example, the district court quoted from the summary of the invention, which states that "[a] cleaning fabric with a reduced air content is wrapped around the core to form a fabric roll."   Reconsideration Order, slip op. at 12 (quoting '976 patent, col.3 ll.65-66).  For the district court, this use of "with" suggested that air content reduction must occur prior to winding.  But this language, like the other passages cited by the district court, does not unequivocally preclude a different order of steps, and this court sees no justification in the specification for imposing a temporal constraint on claim 14 that is not required by or implicit in the language of the claim itself.

Finally, the district court's reliance on the prosecution history, namely the singular comment by the applicants during prosecution that the air content reduction occurs prior

to saturation, provides no support whatsoever for the district court's construction requiring air content reduction before winding. By no means does this statement constitute something akin to a disavowal of claim scope. See Purdue Pharma L.P. v. Endo Pharm., Inc., 438 F.3d 1123, 1136 (Fed. Cir. 2006) (disavowal of claim scope must be "clear and unmistakable"). Moreover, even if this statement constituted a disavowal of scope with respect to the method claims, it would not justify the district court's construction, because the statement would, at best, require reduction before saturation, not necessarily before winding. After all, winding could occur before saturation. For these reasons, the district court's final construction of "reduced air content cleaning fabric" was erroneous. But the district court's initial construction of this term as not limited to a particular method (calendaring) for producing reduced air content cleaning fabric was correct. As the district court astutely observed, the specification merely prefers, not requires, calendaring. This court therefore remands for further proceedings consistent with this opinion.

III

In this case, the claim construction issues entirely drive the summary judgment analysis. With respect to claim 32 of the Reissue patent, even though the district court erred in limiting "a pre-soaked fabric roll" to a single roll, there is no dispute that Siebert's accused products are not heat-sealed, so this court affirms the district court's summary judgment of non-infringement as to this patent. But the district court's error in construing "reduced air content cleaning fabric" requires this court to reverse and remand for further proceedings because under the district court's initial construction of

this claim term, with which this court agrees, the district court declined to grant Siebert's

motion for summary judgment of non-infringement of the '976 patent.

<u>AFFIRMED-IN-PART</u>, <u>REVERSED-IN-PART</u>, <u>AND REMANDED</u>

COSTS

Each party shall bear its own costs.

# EXHIBIT B

ambient. The American Heritage® Dictionary of the English Language: Fourth Edition. 2000.    Page 1 of 1





Home | Subjects | Titles | Authors    | Encyclopedia | Dictionary | Thesaurus | Quotations | English Usage

Reference > American Heritage® > Dictionary

‹ ambience                                                                                    ambiguity ›

CONTENTS · INDEX · ILLUSTRATIONS · BIBLIOGRAPHIC RECORD

The American Heritage® Dictionary of the English Language: Fourth Edition.  2000.

# ambient

SYLLABICATION:    am·bi·ent

PRONUNCIATION:    ăm′bē-ənt

ADJECTIVE:    Surrounding; encircling: *ambient sound; ambient air.*

ETYMOLOGY:    Latin *ambiēns, ambient-*, present participle of *ambīre*, to surround :
*amb-, ambi-*, around; see ambi– + *īre*, to go; see ei– in Appendix I.

The American Heritage® Dictionary of the English Language, Fourth Edition. Copyright © 2000 by Houghton Mifflin Company. Published by the
Houghton Mifflin Company. All rights reserved.

CONTENTS · INDEX · ILLUSTRATIONS · BIBLIOGRAPHIC RECORD

‹ ambience                                                                                    ambiguity ›

Google™ [                    ] [ Search ]

Click here to shop the Bartleby Bookstore.

Welcome · Press · Advertising · Linking · Terms of Use · © 2005 Bartleby.com



temperature. The American Heritage® Dictionary of the English Language: Fourth Edition. 2...    Page 1 of 1



Ads by Go



Home | Subjects | Titles | Authors    | Encyclopedia | Dictionary | Thesaurus | Quotations | English Usage

Reference > American Heritage® > Dictionary

‹ Temperate Zone                                        temperature gradient ›

CONTENTS · INDEX · ILLUSTRATIONS · BIBLIOGRAPHIC RECORD

The American Heritage® Dictionary of the English Language: Fourth Edition.  2000.

# temperature

SYLLABICATION: tem·per·a·ture

PRONUNCIATION:  🔊 tĕm′pər-ə-chōͨor′, -chər, tĕm′prə-

NOUN:  **1a.** The degree of hotness or coldness of a body or environment. **b.** A measure of the average kinetic energy of the particles in a sample of matter, expressed in terms of units or degrees designated on a standard scale. **2a.** The degree of heat in the body of a living organism, usually about 37.0°C (98.6°F) in humans. **b.** An abnormally high condition of body heat caused by illness; a fever.

ETYMOLOGY:  Middle English, temperate weather, Latin *temperātūra*, due measure, from *temperātus*, past participle of *temperāre*, to mix. See temper.

The American Heritage® Dictionary of the English Language, Fourth Edition. Copyright © 2000 by Houghton Mifflin Company. Published by the Houghton Mifflin Company. All rights reserved.

CONTENTS · INDEX · ILLUSTRATIONS · BIBLIOGRAPHIC RECORD

‹ Temperate Zone                                        temperature gradient ›

Google⁻    [ Search ]

Click here to shop the Bartleby Bookstore.

Welcome · Press · Advertising · Linking · Terms of Use  © 2007 Bartleby.com

 



